UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § § | |
| V. | § § | Case No. 4:11-cv-03425 |
| BASS PRO OUTDOOR WORLD, LLC, *et al.* | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss First Amended Complaint ("Motion"). (Doc. No. 32.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion should be **GRANTED** in part and **DENIED** in part.

### I. FACTS

The Equal Employment Opportunity Commission ("EEOC") brings this discrimination action against Bass Pro Outdoor World, LLC ("BPOW"), Tracker Marine, LLC ("Tracker"), and Bass Pro, Inc. ("BPI") (collectively, "Defendants") pursuant to Title VII of the Civil Rights Act of 1964 as amended, and Title I of the Civil Rights Act of 1991 ("Title VII"). (Doc. No. 23, Am. Compl. ¶¶ 3-4.) According to the EEOC, Defendants are an integrated enterprise, such that they are jointly and severally liable for discriminatory acts. (*Id.* ¶ 4.) The EEOC claims that all conditions precedent to the institution of this lawsuit have been fulfilled. (*Id.* ¶ 6.) The EEOC invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. (*Id.*

¶ 1.) The Amended Complaint accuses Defendants of denying employment to Black[1] applicants for hourly and salaried positions at their retail stores based on their race. (*Id.* ¶ 8.) According to the EEOC, Defendants have selected Black applicants at rates far below their availability in the relevant labor pools. (*Id.*) For example, the EEOC avers, Defendants have produced data showing that out of 600 managers at their retail stores, only 10 to 15 were Black. (*Id.*)

The EEOC asserts that Defendants also have a nationwide standard operating procedure of discouraging the hiring of Black applicants for several positions because of their race. (*Id.*) The EEOC offers four examples of alleged incidents exemplifying Defendants' discriminatory practice. (*Id.*) First, in or around the summer of 2006, a recently hired Human Resources Manager interviewed a qualified Black applicant for a position at a store in Louisiana. (*Id.*) An Assistant General Manager, who had participated in that store's hiring decisions for three years, told the Human Resources Manager that the candidate "really doesn't fit our profile." (*Id.*) When the Human Resources Manager asked for an explanation, the Assistant General Manager replied, "We don't hire niggers[2]." (*Id.*) Second, in 2005, the General Manager of a store in Katy, Texas told the Human Resources Manager: "It is getting a little dark in here; you need to hire some white people." (*Id.*) Third, several times in late 2008, a department "Lead" in a Clarksville, Indiana store was seen destroying an employment application after he decided the name on the application "sounded like a 'nigger name.'" (*Id.*) The Lead employee opined that "niggers steal" and did not make good employees. (*Id.*) Fourth, management-level individuals held a job fair for the Pearl, Mississippi store at a location far from the store, so as to discourage Blacks from applying for jobs. (*Id.*) The EEOC maintains that Defendants' denial of employment to Black applicants constitutes a pattern or practice of discrimination. (*Id.* ¶ 9.)

---

[1] The EEOC uses the term "Black" in its pleading.
[2] The Court takes extreme offense to the use of this word, and includes the full term only to convey the odiousness of the conduct alleged.

Additionally, the EEOC avers, Defendants have denied employment to Hispanic applicants for hourly and salaried positions at their retail stores nationwide because of national origin. (*Id.* ¶ 11.) The EEOC claims that Defendants hire Hispanic applicants at rates far below their availability in the relevant labor pools. (*Id.*) For example, Defendants have proffered data showing that of approximately 892 managers at their retail stores, only 33 were Hispanic. (*Id.*) The EEOC asserts that Defendants' practice is nation-wide, as shown through several examples of alleged discriminatory actions. (*Id.*) In 2005, in addition to directing a Human Resources Manager to "hire some white people," the General Manager of the Katy, Texas store frequently used the words "wetback," "Pedro," and "Mexican" to refer to people of Hispanic origin. (*Id.*) In late 2008, a Lead employee at the Clarksville, Indiana store stated, "Hispanics should be shot at the border by the border patrol." (*Id.*) A Lead employee at the Destin, Florida store stated in 2009 that Defendants have a practice of not hiring Hispanics or Blacks at that store. (*Id.*) The EEOC urges that Defendants' denial of employment to Hispanic applicants constitutes a pattern or practice of discrimination against a class of Hispanic applicants. (*Id.* ¶ 12.) According to the EEOC, Defendants have denied employment to Black and Hispanic applicants for varied positions, including cash clerk, cashier, customer relations associate, customer service representative, customer service representative credit, greeter, cashier/greeter, loss prevention, receiving clerk, sales associate, stocking associate, PACE employees, Santa's Wonderland, Lead, Team Lead, and all supervisory and managerial positions. (*Id.* ¶ 14.)

The EEOC further claims that Defendants have, on a nationwide basis, unlawfully retaliated against employees who opposed practices that they reasonably perceived to violate Title VII. (*Id.* ¶ 15.) According to the EEOC, Defendants' retaliatory acts against such employees have included: altering the terms, conditions, or privileges of their employment;

bringing false allegations against them; pressuring them to withdraw their complaints; subjecting them to heightened scrutiny; and firing them or inducing their resignations. (*Id.*) The EEOC offers two examples of alleged retaliatory acts by Defendants. (*Id.*) First, in May 2008, a managerial employee at the Spanish Fort, Alabama store complained to a Regional Human Resources Manager that the store General Manager was discriminating against female employees. (*Id.*) When the store General Manager heard about the complaint, he told his subordinate that she "better not complain about him again." (*Id.*) Later, the store Human Resources Manager fired the employee, explaining that the store General Manager had ordered her termination. (*Id.*) A manager in the Clarksville, Indiana store stated that Defendants' corporate officer permitted a store manager and Human Resources manager to listen to Defendants' anonymous discrimination hotline. (*Id.*) On one occasion, Defendants fired an employee in Clarksville, Indiana because she had a voice that sounded like one of the hotline callers. (*Id.*)

The consequence of these practices, the EEOC insists, has been to deprive Black and Hispanic applicants of equal employment opportunities and to otherwise adversely affect their status as applicants because of their race or national origin. (*Id.* ¶ 16.) Additionally, the EEOC avers, these practices have deprived employees of equal employment opportunities and otherwise adversely affected their status as employees because of their complaints or other activity protected by Title VII. (*Id.*) The EEOC also accuses Defendants of failing to preserve records relevant to the determination of whether unlawful employment practices have been or are being committed, in violation of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c). (*Id.* ¶ 17.) Such records allegedly include: relevant employment applications and personnel files, tests administered to applicants, lists of job candidates, and electronic messages and audio and

documentary records of efforts to contact the corporate complaint center. (*Id.*) For example, the EEOC claims that, after receiving notice of the Commissioner Charge which underlies this action, Defendants allowed the destruction of hotline recordings containing discrimination complaints. (*Id.*) The EEOC contends that the Defendants' unlawful employment practices were intentional and were done with malice or with reckless indifference to the federally protected rights of Black and Hispanic employee and applicants, as well as the federally protected rights of employees who engaged in activities protected by Title VII. (*Id.* ¶ 19.)

Defendants filed this Motion (Doc. No. 32), to which the EEOC filed a Response (Doc. No. 45). Defendants filed a Reply (Doc. No. 52).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).

### B. Rule 12(b)(2)

"Absent a rule or statute to the contrary, . . . a federal court [may] exercise jurisdiction over only those defendants who are subject to the jurisdiction of courts of the state in which the court sits." *Point Landing, Inc. v. Omni Capital International, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986), *aff'd sub nom. Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Because the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–17.045, is coterminous with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Court's constitutional due process inquiry into personal jurisdiction also serves as an inquiry into personal jurisdiction under the Texas long-arm statute. *Command–Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, 963 F.2d 90, 93-94 (5th Cir. 1992).

To comport with constitutional due process, a plaintiff must show that: (1) defendants purposefully availed themselves of the benefits and protections of Texas law, thereby establishing "minimum contacts" with Texas such that defendants could reasonably have

anticipated being haled into court there; and (2) under the circumstances, the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 94 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); and *Asarco, Inc. v. Glenara, Ltd*., 912 F.2d 784 (5th Cir. 1990)). See also *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) ("When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."). The minimum contacts requirement can be met through contacts sufficient to confer either specific or general jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citation omitted).

Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (citation omitted). "The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citing *Burger King*, 471 U.S. at 474). See also *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo*., 615 F.3d 364, 369 (5th Cir. 2010) ("The 'purposeful availment' element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another person or third party."). Further, specific jurisdiction "requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action." *Clemens*, 615 F.3d at 378-79. Indeed, the non-resident defendant must purposefully avail herself of the privilege of conducting activities in the forum state. *Id.* at 379. For example,

in the case of a company, relevant factors in finding specific jurisdiction would be a "regular … flow" or "regular course" of sales, or "something more," such as "special state-related design, advertising, advice, marketing," or a "specific effort" to sell in the state. *McIntyre Machinery, Ltd. v. Nicastro*, —— U.S. ——, ——, 131 S.Ct. 2780, 2792, 180 L.Ed.2d 765 (2011) (Breyer, J., concurring) (quotations omitted).

Unlike specific jurisdiction, general jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation. *Cent. Freight Lines, Inc*., 322 F.3d at 381. To determine general jurisdiction, a court views all of the defendant's contacts "over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp*., 523 F.3d 602, 609 (5th Cir. 2008).

While the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists, a *prima facie* showing suffices, and the plaintiffs need not establish jurisdiction by a preponderance of the evidence. *Love N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Moreover, "the Court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Id.* (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). "'The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

**III. ANALYSIS**

The Court concludes that the EEOC has failed to state a claim for a pattern or practice of discrimination. Likewise, the EEOC's retaliation claim cannot survive the Motion to Dismiss. The Court agrees with Defendants that the EEOC may not bring a pattern or practice claim pursuant to § 706. A 300-day limitations period applies to claims brought pursuant to § 706 or § 707; therefore, claims for failure to hire falling outside of that time period must be dismissed. The EEOC has adequately pleaded a record-keeping violation and that conditions precedent to the lawsuit have been met. The Court must defer its decision as to whether it has personal jurisdiction over BPI until the EEOC submits supplemental briefing. Finally, the Court finds that it should not dismiss BPI and Tracker on the grounds of failure to exhaust. The EEOC is granted leave to file a Second Amended Complaint within 21 days of the date of this Memorandum and Order.

## A. Parties' Briefing

### i. Defendants' Motion

In their Motion, Defendants urge the Court to dismiss all claims against them. First, Defendants explain that that § 706[3], which permits the EEOC to sue on behalf of an aggrieved person, allows for equitable relief and damages. (Mot. Dismiss at 8.) Conversely, Defendants elaborate, § 707[4] permits the EEOC alone to sue to restrain a pattern or practice of intentional

---

[3] Pursuant to § 706, "[t]he Commission is empowered … to prevent any person from engaging in any unlawful employment practice as set forth in [§ 703 or § 704]." Under § 703, it is "an unlawful employment practice for an employer—(1) fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

[4] Section 707 provides: "Whenever the Attorney General has reasonable cause to believe that a person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or

discrimination, and only provides equitable relief. (*Id.* at 10.) Under both sections, the EEOC must engage in conciliation. (*Id.* at 11.) Additionally, Defendants contend, § 707 does not provide for trial by jury or permit aggrieved individuals to intervene. (*Id.* at 12.)

According to Defendants, the Amended Complaint fails to state a § 707 pattern or practice claim. (*Id.* at 13.) Defendants insist that the EEOC—despite conducting a three-year investigation—does not identify a specific, objectively verifiable company-wide policy or practice of discrimination. (*Id.*) Instead, Defendants aver, the EEOC merely states in a wholly conclusory manner that Defendants had a "standard operating procedure of discouraging the hiring of Black and Hispanics." (*Id.* at 13-14.) Indeed, Defendants urge, the anecdotes included in the Amended Complaint demonstrate the absence of a pattern or practice. (*Id.* at 14.) Defendants insist that the EEOC's retaliation claim is likewise deficient. (*Id.* at 15.) The EEOC's examples, Defendants contend, are few in number, reflect subjective, decentralized decisions rather than any uniformity across Defendants' many stores and managers, and "are entirely consistent with the reality that individual acts of misconduct *usually are* isolated." (*Id.* at 18.) Additionally, Defendants insist that the EEOC's statistics are not meaningful. (*Id.*) For example, Defendants aver, the statistics: do not lay out the demographics of the relevant labor pool; concern managers rather than other employees; and fail to raise the inference that a company-wide policy of discrimination is implemented by discretionary decisions at the store and district level. (*Id.* at 19-20.)

Next, Defendants assert that the Amended Complaint fails to state a § 706 claim because it does not identify any alleged claimants, state what claims the individual claimants are asserting, or provide the factual basis for those claims. (*Id.* at 22.) Defendants accuse the EEOC

---

temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described."

of attempting, impermissibly, to bring a pattern or practice claim pursuant to § 706 so that it can recover compensatory and punitive damages based on an *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 336 (1997), model. (*Id.* at 24.) Reading the EEOC's draft Proposed Discovery Plan and Case Management Order (Ex. C to Mot. Dismiss), Defendants discern that the EEOC is attempting to present its § 707 pattern or practice claim to a jury, when only § 706 provides for a jury trial. (*Id.*) Additionally, Defendants believe that the EEOC plans to bifurcate the proceeding, such that one jury would determine the existence of a pattern or practice and class-wide punitive damages, and multiple other juries would decide individual liability and compensatory damages. (*Id.*) According to Defendants, such a bifurcation would violate both the Seventh Amendment and the Due Process Clause. (*Id.*) Defendants oppose the EEOC's attempt to merge § 706 and § 707 into a single, non-existent "hybrid" claim. (*Id.* at 27.)

Defendants also assert that the EEOC's conclusory statement that it has satisfied all conditions precedent to the lawsuit is insufficient under *Iqbal*. (*Id.* at 28.) Defendants submit that pre-*Iqbal* Fifth Circuit precedent, holding that general averments such as the EEOC's satisfy Rule 9(c), is no longer controlling law. (*Id.* at 29.) Defendants argue that the Amended Complaint fails to state a record-keeping claim. (*Id.*) According to Defendants, the EEOC's claims must further be dismissed to the extent they concern actions that occurred outside of the limitations period. (*Id.* at 30.)

Defendants insist that BPI should be dismissed for lack of personal jurisdiction. (*Id.* at 31.) Specifically, Defendants explain that the EEOC's claims against BPI must be dismissed because the EEOC has failed to overcome the presumption that that a subsidiary's employees are not the employees of the parent company for the purposes of specific jurisdiction. (*Id.* at 32.) Nor is there general jurisdiction over BPI, Defendants contend. (*Id.*) Finally, Defendants urge that the

EEOC's claims against BPI and Tracker are barred because the EEOC failed to exhaust its administrative remedies—as their names were not included in the Original Charge (Ex. A to Mot. Dismiss) or in the Amended Charge (Ex. B to Mot. Dismiss). (*Id.* at 33.) Defendants recognize that a party may not need to be named in an EEOC charge if there is a clear identity of interest between the named and unnamed parties; however, Defendants believe this exception applies only to unschooled plaintiffs without representation, not to the EEOC. (*Id.* at 33-34.)

### ii. The EEOC's Response

In its Response, the EEOC insists that it has met its burden of citing the specific adverse employment action challenged, the nature of the discrimination, and the time period involved. (Resp. to Mot. Dismiss at 7.) Specifically, the EEOC states that it has met its burden by: alleging an adverse employment action, alleging a nationwide standard operating procedure, providing direct evidence that hiring was tainted by discriminatory animus, specifying the job titles affected by discriminatory hiring practices, explaining the time period involved, and setting forth the nature of the hiring discrimination. (*Id.* at 8-10.) The EEOC avers that, together, these facts are sufficient to state a claim. (*Id.* at 10.) Indeed, the EEOC emphasizes, it is not required to provide summary-judgment-type evidence, such as statistical or other evidence needed to make a *prima facie* case, at the Motion to Dismiss stage. (*Id.* at 11.)

The EEOC insists that it can invoke the *Teamsters* model of proof to establish a pattern or practice of hiring discrimination under either § 706 or § 707. (*Id.* at 12.) The EEOC points out that the language of § 706 does not circumscribe the EEOC's enforcement authority to only individual disparate treatment claims. (*Id.* at 13.) The EEOC avers that numerous cases have confirmed that it can bring pattern or practice claims under § 706. (*Id.*) In fact, the EEOC insists, every private class action case using the pattern-or-practice framework of proof is a § 706 case.

(*Id.* at 13-14.) According to the EEOC, any doubt that it has the ability to pursue a class claim under § 706 was put to rest by *General Telephone Co. of the Northwest v. EEOC*, 446 U.S. 318 (1980), and *EEOC v. Monarch Machine Tool Co.*, 737 F.2d 1444, 1449 n.3 (6th Cir. 1980). (*Id.* at 15-16.) The EEOC emphasizes that, after remand, the EEOC, still proceeding under § 706, went on to try the *General Telephone* case using the *Teamsters* model of proof. (*Id.*) The EEOC accuses Defendants of conflating proof models with causes of action. (*Id.* at 16.) Indeed, the EEOC observes, it does not allege a violation of § 706 or § 707—which constitute Title VII's enforcement provisions—but rather a violation of § 703, 42 U.S.C. § 2000e-2. (*Id.*)

The EEOC urges that there is no language in § 707 that limits its suit authority under § 706. (*Id.* at 17.) Sections 706 and 707 are not mutually exclusive, the EEOC avers, and furthermore Title VII should be construed liberally in the EEOC's favor. (*Id.* at 18.) Likewise, the EEOC contends that it is empowered to seek compensatory and punitive damages in a pattern or practice case under § 706. (*Id.* at 18-19.) The EEOC goes on to insist: "It is consistent with principles of statutory interpretation to assume that Congress understood when it added the enhanced damages provisions to actions brought under Section 706, that Section 706(f)(1) provided the EEOC with the authority to pursue a discrimination claim under any method of proof, and that authorizing damages under Section 706 was sufficient to ensure that the EEOC could seek such damages when it sought to challenge a pattern or practice of discrimination." (*Id.* at 19.) The EEOC contends that Defendants' view—that the EEOC cannot seek enhanced damages in cases involving a pattern or practice of discrimination—conflicts with one of the fundamental purposes of the Civil Rights Act, namely to provide appropriate, additional remedies for intentional discrimination and unlawful harassment in the workplace. (*Id.* at 20.)

The EEOC asserts that its Amended Complaint pleads sufficient facts to state a class retaliation claim under Title VII. (*Id.* at 21.) Citing to Seventh Circuit authority, the EEOC claims that its allegations are sufficient because they state that Defendants retaliated by altering the terms, conditions, or privileges of the victims' employment; bringing false allegations against them; pressuring them to withdraw their complaints; subjecting them to heightened scrutiny; and firing them or inducing their resignations, on a nationwide basis. (*Id.* (citing *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 781-82 (7th Cir. 2007)).) Furthermore, the EEOC argues that it does not need to name all class members in its Amended Complaint. (*Id.* at 22.) The EEOC also believes that it has succeeded in stating a record-keeping violation claim. (*Id.* at 24.) The EEOC complains that it cannot identify, at this time, how and why the records were destroyed. (*Id.*) Pursuant to Fifth Circuit authority, the EEOC asserts that it is additionally not required to specifically plead how all conditions precedent to filing the suit have been fulfilled. (*Id.* at 25.)

The EEOC urges that its pattern or practice claims are not limited to the 300-day period preceding the underlying charge of discrimination, as Defendants allege. (*Id.* at 26.) Rather, the EEOC contends that the period does not apply because it has alleged that Defendants' pattern or practice of hiring discrimination constitutes a continuing violation extending beyond the 300-day period. (*Id.*) Indeed, the EEOC suggests that this Court should not decide whether the continuing violation doctrine is applicable at the Motion to Dismiss stage. (*Id.* at 27.) Additionally, the EEOC avers, § 707 does not contain a 300-day limitation. (*Id.* at 28-29.)

Lastly, the EEOC contends that BPI and Tracker should not be dismissed. (*Id.* at 29.) According to the EEOC, it has sufficiently pleaded that Defendants are an integrated enterprise, precluding dismissal of BPI for lack of personal jurisdiction. (*Id.*) Likewise, the EEOC claims that it has exhausted its administrative remedies with regard to all Defendants because of the

integrated enterprise principle. (*Id.* at 33.) The EEOC believes that it has met this burden by pleading that: BPI owns BPOW and Tracker, which is a subsidiary of BPI; Defendants are officers, directors, and/or members, and share the same business address; Defendants hire employees through a common, shared process, including a uniform application for some positions; and BPOW listed itself, BPI, and Tracker as parties with a financial interest in the outcome of this litigation. (*Id.* at 30.) The EEOC also points out that the three Defendants are currently represented by the same counsel. (*Id.*) As questions relating to jurisdiction are inextricably intertwined with the merits, the EEOC asserts, jurisdictional questions should be deferred until after discovery. (*Id.* at 30-31.) In closing, the EEOC requests that if its Amended Complaint is found to be deficient in any respect, it be granted leave to amend. (*Id.* at 35.)

### iii. Defendants' Reply

In their Reply, Defendants insist that Plaintiffs have failed to state specific facts that plausibly suggest "that Bass Pro had a centralized policy that caused every challenged hiring decision made by every manager at every Bass Pro store over more than seven years to be presumptively infected with discriminatory bias against Blacks and Hispanics." (Reply to Resp. to Mot. Dismiss at 2.) Absent identification of a centralized policy, Defendants submit, the Amended Complaint's allegations of offensive remarks made by four employees in four stores suggest nothing at all about how other managers at other stores made hiring decisions. (*Id.* at 3.) Defendants point to *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), as standing for the principle that a common policy must be alleged that ties together otherwise individualized employment decisions. (*Id.* at 3-4.) Defendants accuse the EEOC of failing to address the fact that the Amended Complaint alleges subjective, individualized employment decisions made at the store level—decisions that are at odds with a pattern or practice of discrimination. (*Id.* at 4.)

According to Defendants, the EEOC cannot bring its pattern or practice claims in a § 706 class action. (*Id.* at 5.) To so argue, Defendants contend, is to render § 707 superfluous, in contravention of established principles of statutory construction. (*Id.*) Indeed, Defendants assert, the legislative history of the Civil Rights Act of 1991 supports the logical conclusion that the distinction between § 706 and § 707 was intentional. (*Id.* at 6.) Defendants insist that *General Telephone* does not stand for the proposition that the EEOC can bring a class action under § 706 using the *Teamsters* method of proof; in fact, Defendants emphasize, *General Telephone* does not even mention *Teamsters.* (*Id.* at 7.) Consequently, Defendants aver that the EEOC's retaliation claims under § 706 must fail because the EEOC has not satisfied the preconditions to suit or alleged sufficient facts in the Amended Complaint to plausibly suggest individual retaliation claims. (*Id.* at 10.)

Defendants contend that the EEOC's assertion that no charge-filing period applies to § 707 claims is contradicted by the statute. (*Id.*) Additionally, Defendants point out, the EEOC has failed to explain why it should enjoy such a privilege when proceeding under § 706. (*Id.* at 11.) According to Defendants, the continuing violation doctrine does not change the limitations period because the EEOC alleges discrete acts. (*Id.* at 12.) Defendants go on to insist that the EEOC has failed to show that this Court has jurisdiction over BPI. (*Id.* at 13-14.) Indeed, Defendants assert, the EEOC's conclusory allegations in its Amended Complaint are insufficient to establish this Court's jurisdiction. (*Id.* at 14.) In closing, Defendants contend that the EEOC has failed to exhaust administrative remedies as to BPI and Tracker because the identity of interest exception is designed to protect plaintiffs unfamiliar with Title VII law—not the EEOC. (*Id.* at 15.) Furthermore, Defendants aver, the EEOC has not established facts to show an integrated enterprise. (*Id.*)

### B. Pattern or Practice Claim Brought Pursuant to the EEOC's Enforcement Authority Under § 707

"Under § 707, the EEOC may investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission." *EEOC v. Princeton Healthcare System*, No. 10–4126 (PGS), 2012 WL 1623870, at *16 (D.N.J. May 9, 2012) (citing 42 U.S.C. § 2000e-6(a)-(e)). "In order to establish a pattern or practice of discriminatory treatment under § 707, a plaintiff must show 'more than the mere occurrence of isolated or accidental or sporadic discriminatory acts.'" *EEOC v. Global Horizons, Inc.*, No. 11–00257 DAE–RLP, 2012 WL 928160, at *16 (D. Hawai'i March 16, 2012) (quoting *Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005)). Rather, a "[p]laintiff must show that the discrimination was the defendant's 'standard operating procedure—the regular rather than the unusual practice.'" *Id.* (quoting *Obrey*, 400 F.3d at 694). "A pattern and practice case focuses on an 'objectively verifiable policy or practice of discrimination' by an employer." *EEOC v. O'Reilly Automotive, Inc.*, No. H-08-2429, 2010 WL 5391183, at *4 (S.D. Tex. Dec. 14, 2010) (quoting *Teamsters*, 431 U.S. 324).

"'Pattern-or-practice cases differ significantly from the far more common cases involving one or more claims of individualized discrimination,' and proceed under a different burden shifting framework than the traditional *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)] framework applicable to individual claims." *EEOC v. JBS USA, LLC*, No. 10-cv-02103-PAB-KLM, 2011 WL 3471080, at *2 (D. Colo. Aug. 8, 2011) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001)). "In a pattern or practice claim, the EEOC must first establish a prima facie case of pattern or practice by 'demonstrat[ing] that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers.'" *Id.* (quoting *Teamsters*, 431 U.S. at 360). "If the

plaintiff carries this burden, the employer may defend against liability by challenging plaintiff's proof or providing nondiscriminatory explanations for the procedure." *Id.* (citing *Teamsters*, 431 U.S. at 360-61). "If the employer fails to carry this burden, 'a trial court may then conclude that a violation has occurred and determine' whether prospective relief is appropriate on a class wide basis." *Id.* (quoting *Teamsters*, 431 U.S. at 361).

However, some district courts have explained that, at the motion to dismiss stage, "[s]pecific facts are unnecessary; the complaint need only provide a short and plain statement giving [the defendant] notice of the nature and basis of the claim." *EEOC v. Scrub, Inc.*, No. 09 C 4228, 2009 WL 3458530, at *1 (N.D. Ill. Oct. 26, 2009) (citing Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555). According to these courts, "even after *Twombly*, an employment discrimination plaintiff is not required to plead specific facts but may rely on notice pleading requirements." *EEOC v. Propak Logistics, Inc.*, No. 1:09cv311, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010) (citing *Boykin v. KeyCorp*, 521 F.3d 202, 212-15 (2d Cir. 2008)). This line of cases emphasizes that "'[t]he *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)] rule that a *complaint in an employment discrimination lawsuit [need] not* contain specific facts establishing a *prima facie* case of discrimination.'" *Id.* (quoting *Reed v. Airtran Airways*, 531 F.Supp.2d 660, 666 (D.Md. 2008)). *See also Hewitt v. New York City Dept. of Health and Mental Hygiene*, No. 09–CV–5705 (RRM)(RLM), 2012 WL 1106715, at *2 (E.D.N.Y. March 31, 2012) ("The Second Circuit has reiterated that *Swierkiewicz* continues to be the proper framework for analyzing whether a plausible claim for discrimination has been stated." (citing *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010); *Boykin*, 521 F.3d at 213; *Gillman v. Inner City Broad. Corp.*, No. 08 Civ. 8909(LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18,

2009))); *Singleton v. Labor Finders*, No. 11–0732, 2011 WL 6813204, at *2 n.1 (W.D. La. Nov. 29, 2011) ("*Twombly* did not overrule *Swierkiewicz*."); *Gillman*, 2009 WL 3003244, at *3 ("*Iqbal* was not meant to displace *Swierkiewicz*'s teachings about pleading standards for employment discrimination claims because in *Twombly*, which heavily informed *Iqbal*, the Supreme Court explicitly affirmed the vitality of *Swierkiewicz*."); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (explaining that even after *Twombly*, "in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex"); *EEOC v. McIntyre Group, Ltd.*, No. 07 CV 5458, 2007 WL 4365367, at *1 (N.D. Ill. Dec. 11, 2007) (agreeing "that *Bell Atlantic* does not require the Court to apply a heightened pleading standard to complaints alleging employment discrimination" (citing *Killingsworth v. HSBC Bank Nev., N.A.*, No. 06-1616, 2007 WL 3307084, at *3 (7th Cir. Nov. 9, 2007); *Erickson v. Pardus*, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Bell Atlantic*, 127 S.Ct. at 1974; *Concentra Health Servs., Inc.*, 496 F.3d at 782)).

For example, the Northern District of Illinois has asserted that although "[a] *prima facie* case of pattern or practice discrimination may be established through a combination of strong statistical evidence of disparate impact and anecdotal evidence of the employer's intent to treat the protected class unequally," *Scrub, Inc.*, 2009 WL 3458530, at *2 (citing *Teamsters*, 431 U.S. 324; *Mozee v. Am. Commercial Marine Serv., Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991)), "[t]he manner of proof is distinct from pleading requirements," *id.* Thus, that court opined, "an employment discrimination plaintiff must satisfy notice-pleading requirements; specific facts establishing a *prima facie* case of employment discrimination are not required." *Id.* (citing *Twombly*, 550 U.S. at 570; *Swierkiewiez*, 534 U.S. at 514-15). Likewise, the Northern District of

Illinois rejected the defendant's conclusion that the EEOC's four-year investigation "warrants a more detailed complaint." *Id.* Rather, the court emphasized, "[l]itigants are entitled to discovery before 'being put to their proof.'" *Id.* (quoting *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996)). *See also Propak Logistics, Inc.*, 2010 WL 3081339, at *3 ("Even though after so many years of investigation it would seem greater detail could have been provided, the Court nonetheless concludes that the Complaint is sufficient to comply with Rule 8."). As the EEOC had identified the nature of the discrimination and the relevant time period, the Northern District of Illinois determined that the EEOC had succeeded in stating a pattern or practice claim. *Id. See also Propak Logistics, Inc.*, 2010 WL 3081339, at *5 ("[T]he Complaint contains the allegation that between October 2002 and June 2004, the Defendant had a pattern or practice of discriminatory hiring by predominantly hiring Hispanic applicants to fill vacant, available positions to the exclusion of similarly or more qualified non-Hispanic applicants. The EEOC has alleged that Defendant took a specific adverse employment action; that is, intentional discrimination, against qualified applicants and potential applicants based on their national origin…. This sufficiently identifies the nature of the discrimination—failure or refusal to hire because of national origin. The time period involved is alleged." (citations omitted)).

Despite the continuing vitality of *Swierkiewicz*, courts have acknowledged that the dictates of *Twombly* and *Iqbal* still apply to discrimination complaints. Courts reconcile these three cases by explaining that plaintiffs need not establish every element of their *prima facie* case, but must nonetheless state a plausible claim for relief under the pleading standard set forth in *Twombly* and *Iqbal*. *Moore v. Metropolitan Human Service District*, No. 09-6470, 2010 WL 1462224, at *3 (E.D. La. April 8, 2010) (footnotes omitted). *See also Hedges v. Town of Madison*, 456 Fed.Appx. 22, 22 (2d Cir. 2012) (unpublished) ("*Swierkiewicz*'s reliance on

*Conley* suggests that, at a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a prima facie case is not required."); *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed.Appx. 935, 937 (11th Cir. 2011) (unpublished) ("A complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss. But complaints alleging discrimination still must meet the 'plausibility standard' of *Twombly* and *Iqbal*." (citations omitted)); *Barbosa v. Continuum Health Partners, Inc.*, 716 F.Supp.2d 210, 215 (S.D.N.Y. 2010) ("Reconciling *Swierkiewicz*, *Twombly*, and *Iqbal*, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis of their claim." (quotations and footnote omitted)); *EEOC v. SDI of Grapevine Texas*, No. 3:08-CV-1606-L, 2009 WL 1469779, at *2 (N.D. Tex. May 27, 2009) ("The court interprets *Swierkiewicz*, *Twombly*, and Rule 8 to require that a complaint set forth the allegations in sufficient detail to provide fair notice of the nature of the claim and that the right to relief must be above the speculative level. Details beyond this threshold may be obtained through discovery and a motion for a more definite statement." (citation omitted)).

Defendants urge this Court to examine the Amended Complaint in light of *Twombly* and *Wal-Mart*. (Reply to Resp. to Mot. Dismiss at 4.) According to Defendants, the fact that *Wal-Mart* concerned class certification is irrelevant; surely, Defendants press, *Wal-Mart*'s standard is useful in evaluating what facts must be alleged to state a claim. (*Id.*) Indeed, Defendants assert, *Wal-Mart*'s commonality finding consisted in part of the question of whether a pattern or practice existed. (*Id.*) Defendants are correct that *Wal-Mart* explained that "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that

21

examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*" 131 S.Ct. at 2552 (emphasis in original). Additionally, the *Wal-Mart* Court noted that "[t]he only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of *allowing discretion* by local supervisors over employment matters." *Id.* at 2554 (emphasis in original). The Court opined that "that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices." *Id.* (emphasis in original). However, the Court declines Defendants' invitation to fashion a new pleading standard for pattern or practice cases based on *Wal-Mart*. In fact, the *Wal-Mart* Court explicitly distinguished its Rule 23 class certification holding from a pleading standard: "Rule 23 does not set forth a mere pleading standard." *Id.* at 2551. In other words, unlike a party attempting to survive a 12(b)(6) motion, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id. Wal-Mart* simply did not concern pleading standards, and the Court does not find it appropriate to evaluate the EEOC's Amended Complaint in *Wal-Mart*'s shadow.

Nonetheless, the Court concludes that the EEOC's Amended Complaint cannot survive the Motion to Dismiss. The Court finds most convincing the case law that reconciles *Twombly* and *Iqbal* with *Swierkiewicz*. Specifically, the Court agrees that although *Swierkiewicz*'s finding that a plaintiff need not make a *prima facie* case of discrimination retains its vitality, *Twombly* and *Iqbal* demand that plaintiffs state a plausible claim for relief. "Accordingly, while a complaint need not contain specific facts establishing a *prima facie* case of employment discrimination to overcome a Rule 12(b)(6) motion to dismiss, it must nevertheless give fair

notice of the basis of Plaintiff's claims, and the claims must be facially plausible." *Gillman*, 2009 WL 3003244, at *4.

Here, the EEOC has failed to state a facially plausible pattern or practice claim. The EEOC alleges that Defendants have denied employment to Black applicants for hourly and salaried positions at their retail stores nationwide based on their race. The EEOC explains that of about 600 managers at Defendants' retail stores, only about 10 to 15 were Black. (Am. Compl. ¶ 8.) This data may be sufficient to state a plausible claim that Defendants had a pattern or practice of failing to hire Black managers. However, the EEOC alleges that Defendants have denied employment to Black applicants for many salaried and hourly positions, not just managers. (*Id.*) Defendants go on to provide four examples of discriminatory behavior. (*Id.*) While these examples concern extremely troubling racist comments surrounding hiring decisions, the EEOC provides few facts showing that any applicants were actually denied positions based on their race. Nor does this handful of alleged incidents render the EEOC's allegations of a nationwide pattern or practice plausible. Similarly, the EEOC explains that of the 892 managers at Defendants' retail stores, only 33 were Hispanic.[5] (*Id.* ¶ 11.) Additionally, the EEOC provides two examples of racist comments by employees about Hispanics, with only one example of an employee actually stating that Defendants had a practice, at a particular store, of not hiring Hispanics or Blacks. (*Id.*) Of course, the EEOC is not burdened with the requirement of demonstrating that their claims are probable. Yet this handful of racist incidents, however disturbing, fails even to render the EEOC's allegations of a *company-wide* pattern or practice plausible. The EEOC's Amended Complaint merely offers conclusory allegations and unwarranted deductions. For these reasons, Defendants are entitled to dismissal of the EEOC's pattern or practice claims.

---

[5] The EEOC provides two different counts for the total number of managers at Defendants' stores.

The EEOC requests, in the alternative, leave to amend its Amended Complaint. The Court evaluates the EEOC's request for leave to amend under Federal Rule of Civil Procedure 15, which provides that this Court "'should freely give leave when justice so requires.'" *Cole v. Sandel Med. Indus., LLC.*, 413 F.App'x 683, 688 (5th Cir. 2011) (quoting Fed. R. Civ. P. 15(a)(2)). "[T]he language of this rule evinces a bias in favor of granting leave to amend," and the Court "must have a substantial reason to deny a request for leave to amend." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quotations and citations omitted).

Leave to amend "'is not automatic,'" however. *Udoewa v. Plus4 Credit Union*, No. H-08-3054, 2010 WL 1169963, at *1 (S.D. Tex. March 23, 2010) (quoting *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F.Supp.2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981))). In considering whether to grant leave to amend, the Court may weigh multiple factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). The Court may also consider whether the EEOC knew "'or should have known of the facts upon which the proposed amendment is based but fail[ed] to include them in the original complaint.'" *Udoewa*, 2010 WL 1169963, at *2 (quoting *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994)). *See also Ross v. Houston Housing Authority*, No. H-09-2361, 2010 WL 1726908, at *2 (S.D. Tex. April 28, 2010) (denying motion to amend on the basis that plaintiff had prior knowledge and possession of supporting evidence); *Pope v. MCI Telecommunications Corp.*, 937 F.2d 258, 263 (5th Cir. 1991) (denying motion for leave to amend in part because plaintiff could have added her proposed amendment years earlier, as it "was not about something recently discovered" but "based upon the same facts as her previous claims").

Balancing these factors, the Court determines that the EEOC should be granted leave to amend its Amended Complaint. The Court has no reason to believe that amendment will be futile. Defendants will not be heavily prejudiced by leave to amend, as discovery has not yet begun in this case and a Scheduling Order has not been entered. The EEOC has amended its Complaint only once, and did so without the benefit of guidance from the Court as to its pleading requirements; thus, the EEOC is not guilty of repeated failure to amend. In sum, the EEOC is granted leave to file a Second Amended Complaint within 21 days of the date of this Memorandum and Order.

### C. Claims Brought Pursuant to the EEOC's Enforcement Authority Under § 706

"Section 706 of Title VII authorizes the EEOC to bring claims involving the rights of aggrieved individuals challenging an unlawful employment practice on an individual or class-wide basis." *Global Horizons*, 2012 WL 928160, at *16 (citing 42 U.S.C. § 2000(e)-5(f)(1); *EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F.Supp.2d 1117, 1143 (D. Nev. 2007)). "The 1991 amendments to Title VII expanded the remedies available for § 706 claims from purely equitable remedies, including backpay, to include punitive and compensatory damages, without similarly expanding the damages available for claims brought pursuant to § 707." *JBS USA, LLC*, 2011 WL 3471080, at *4 (citing 42 U.S.C. § 1981 a(a)(1); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 287 (2002)). Thus, under § 706, "[t]he EEOC is entitled to equitable relief, and may also usually pursue compensatory and punitive damages." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009) (citing 42 U.S.C. § 2000e-5(g); 42 U.S.C. § 1981a(a)). "A § 706 claim involves the rights of aggrieved *individuals* challenging unlawful employment practice on an individual *or* class-wide basis, whereas a § 707 claim involves a pattern-or-practice of *systemic* discrimination challenging widespread discrimination through a company on

a *group* basis." *Scolari Warehouse Mtks., Inc.*, 488 F.Supp.2d at 1143 (citing *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F.Supp. 1059, 1084 (C.D. Ill. 1998); *General Telephone*, 446 U.S. at 324) (emphasis in original). Additionally, "the *Teamsters* framework generally applies to pattern or practice claims brought under § 707, whereas the *McDonnell Douglas* framework applies to individual claims brought under § 706." *JBS USA, LLC*, 2011 WL 3471080, at *4 (citing *Serrano v. Cintas Corp.*, 711 F.Supp.2d 782, 794 (E.D. Mich. 2010)). Under *McDonnell Douglas*, a plaintiff bears the burden of proving a prima facie case that the defendant made an employment decision that was motivated by a protected factor. 411 U.S. at 802-03. To state a prima facie case, the plaintiff must establish that (i) she is a member of a protected class; (ii) she is qualified for the position; (iii) an adverse employment action occurred; and (iv) she was replaced by someone outside the protected group or was treated less favorably than other similarly situated employees outside the protected group. *Id.* If a plaintiff makes a prima facie case, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (footnote omitted).

"Notwithstanding those differences, courts have blurred the line between class-wide claims brought pursuant to § 706 and pattern-or-practice claims brought pursuant to § 707." *Scolari Warehouse Mkts., Inc.*, 488 F.Supp.2d at 1143 (citing *General Telephone*, 446 U.S. at 328 n.12; *EEOC v. Gen. Tel. Co. of the Northwest, Inc.*, 885 F.2d 575, 577 (9th Cir. 1989); *EEOC v. Foster Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 528200, at *1 (N.D. Ill. 1999)). Some courts have determined that "the EEOC may bring suit alleging a pattern or practice of unlawful discrimination under section 706 or section 707, but if the suit arises from a charge filed pursuant to section 706, then the EEOC must meet the prerequisites of section 706

before filing suit." *EEOC v. Int'l Profit Associates, Inc.*, No. 01 C 4427, 2007 WL 844555, at *9 (N.D. Ill. March 16, 2007). For example, in *Scolari*, the District Court of Nevada determined that pattern-or-practice claims could be brought pursuant to § 706, even though doing so, "when Congress specifically created another avenue to bring such claims[,] creates an apparent redundancy in the law that troubles the Court." *Scolari Warehouse Mkts., Inc.*, 488 F.Supp.2d at 1144. The court based its decision on several factors. First, the court observed that there were several intersections between § 706 and § 707, including the fact that § 707(e) incorporates the procedural requirements of § 706. *Id.* Second, as the court noted, Title VII has long been construed liberally in favor of complainants. *Id.* at 1145. The court expressed concern that "allowing punitive and compensatory damages for class-wide claims and not for pattern-or-practice claims, when both are equally severe in magnitude, would disrupt Title VII's purpose to eradicate widespread discrimination and to make persons whole again." *Id.* (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417-18, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). Third, the court found that § 706 and § 707 claims are similar in that "the interest in bringing a class action and/or a pattern-or-practice claim is the same: to prevent against unlawful employment practices affecting a group of individuals with related claims." *Id.* (citing *Harriss v. Pan Am. World Airways, Inc.*, 74 F.R.D. 24, 41-42 (N.D. Cal. 1977); *Charosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003)). The court concluded that "[g]iven the similar nature of such claims and the remedial purpose of Title VII," there was "little legal or prudential reason to foreclose the EEOC from bringing a pattern-or-practice claim pursuant to §§ 706 and 707 for the purpose of seeking punitive and compensatory damages." *Id.*

Other courts have reached the contrary conclusion. Disagreeing with *Scolari*, the District Court for the Eastern District of Michigan insisted "that allowing punitive and compensatory

damages in § 706, but not § 707, actions may 'disrupt Title VII's purpose' is … irrelevant—Congress apparently did not think so, as the 1992 amendments to 42 U.S.C. § 1981a *only extended punitive and compensatory damages to § 706 actions, not § 707 actions.*" *Serrano*, 711 F.Supp.2d at 793 (emphasis in original). That court went on to find that the EEOC could not proceed solely under § 706, but reserved its "judgment on the propriety of allowing the EEOC to 'blur the lines' … between the two statutory sections" in cases where the EEOC pursued both § 706 and § 707 actions simultaneously. *Id.* at 794. Similarly, the Northern District of Iowa opined that, "[l]ike § 706, § 707 grants the EEOC the right to seek equitable relief against employers found to have intentionally engaged in a pattern or practice of unlawful employment discrimination." *CRST Van Expedited, Inc.*, 611 F.Supp.2d at 930 (citing 42 U.S.C. § 2000e-6(a)). "Unlike § 706, however, the EEOC is not authorized to seek compensatory or punitive damages under § 707; the relevant portion of 42 U.S.C. § 1981a only authorized recovery of compensatory and punitive damages '[i]n an action brought by a complaining party under [§ 706].'" *Id.* (citing 42 U.S.C. § 1981a(a)). The *CRST Van Expedited* court accused the EEOC of "attempting to have its cake and eat it too" by trying "to avail itself of the *Teamsters* burden-shifting framework yet still seek compensatory and punitive damages under § 706." *Id.* at 934. "Complicating matters further," that court observed, "it is important to remember that the Supreme Court designed the *Teamsters* burden-shifting framework with only equitable relief in mind." *Id.* (citing *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1290 n.4 (8th Cir. 1997)). Fortunately, the *CRST Van Expedited* court did not need to "cut through this cloud of confusion" because the defendant did not argue that the EEOC's complaint failed to state a pattern or practice claim. *Id.*

Examining these precedents, the Court concludes that the EEOC cannot bring a hybrid pattern or practice claim that melds the respective frameworks of § 706 and § 707. Rather, the Court interprets § 706 to not provide a vehicle for pattern or practice claims. Likewise, the Court believes § 707 only permits equitable relief. The Court does not read *General Telephone*, 446 U.S. 318, or *Monarch Machine Tool Co.*, 737 F.2d 1444, to empower the Court to blend the § 706 and § 707 frameworks; indeed, neither case squarely addressed that issue. The Court finds no support in the case law, or in the statutes themselves, for the EEOC's proposition that § 707's pattern or practice language is merely a redundancy.

Similar to its pattern or practice claim, any allegations brought pursuant to the EEOC's powers under § 706 must include sufficient facts to state a plausible claim for relief. Currently, the EEOC appears to bring a claim for retaliation. Nonetheless, the EEOC fails to plead sufficient facts to state a retaliation claim. While the EEOC is not obligated to provide the identities of all § 706 class members, the Court cannot locate a case in which the EEOC brought a § 706 claim without identifying a single plaintiff. *EEOC v. River View Coal, LLC*, No. 4:11–CV–00117–JHM, 2012 WL 1593138, at *6 (W.D. Ky. May 4, 2012) ("In its Amended Complaint, the EEOC has stated the claiming parties' race, relevant dates, positions applied for, and that the applicants were qualified for the positions which were filled with less qualified white applicants. These facts apprise Defendant of the EEOC's claim and the grounds upon which they rest." (quotation and citation omitted)); *EEOC v. 5042 Holdings Ltd.*, No. 3:09-CV-61, 2010 WL 148085, at *2 (N.D. W.Va. Jan. 11, 2010) (rejecting defendant's contention that the EEOC had to provide names of other aggrieved class members in complaint, and explaining that complaint was sufficient because the EEOC had identified: "1) the statutes defendant allegedly violated; 2) the time frames of the alleged violations; 3) the identity of the alleged

29

perpetrators; 4) the name of one presently identified victim and a description of the class of aggrieved persons; 5) the specific claims alleged and their elements as to Charging Party Bland and the class of aggrieved persons; 6) the types of defendant conduct to which [the Charging Party] and the class were subjected; and 7) the remedies being sought"); *EEOC v. Man Mar, Inc*., No. 09-60761-CIV, 2009 WL 3462217, at *2 (S.D. Fla. Oct. 22, 2009) (finding pleading sufficient to meet 12(b)(6) when the EEOC alleged generally that it was seeking relief for a class of individuals similarly situated to claimant, and pleaded that the individuals were protected within the meaning of the ADA and were subjected "to a hostile work environment because of age, including unwelcome ageist remarks, disparate terms and conditions of employment because of age, disparate discipline compared to a similarly situated younger employee, and termination and/or constructive discharge"); *EEOC v. Family Dollar, Inc.*, No. 07 C 6996, 2008 WL 687284, at *2 (N.D. Ill. March 12, 2008) ("While the EEOC has not provided an extended factual narrative, the allegations and factual statements in the complaint clearly put [defendant] on notice that the instant action is based on [defendant]'s alleged discrimination on the basis of skin color against [the main plaintiff] and other employees starting in 2005, all in violation of Title VII."); *EEOC v. McIntyre Group, Ltd.*, No. 07 CV 5458, 2007 WL 4365367, at *3 (N.D. Ill. Dec. 11, 2007) ("With respect to McIntyre's argument that the EEOC's failure to identify class members [besides the Charging Party] mandates dismissal under Rule 12(b)(6), the Court notes that McIntyre cites to no authority to support its position…. Moreover, paragraph 7 [of the Complaint] provides (1) the relevant time period during which the alleged unlawful acts occurred, (2) the specific facility at which they allegedly occurred, (3) the race of the employees against which the alleged unlawful acts were perpetrated, (4) specific unlawful acts that were allegedly perpetrated, and (5) specific protected activities under Title VII that McIntyre allegedly

acted to thwart."). Thus, any claims brought pursuant to the EEOC's powers under § 706 must be dismissed. For the reasons outlined in the prior section, the Court grants the EEOC leave to amend.

### D. Conditions Precedent to Lawsuit

Defendants urge that the EEOC has failed to state a claim that all conditions precedent have been met, in compliance with *Iqbal.* (Mot. Dismiss at 28.) Rule 9(c) provides: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). The Fifth Circuit has explained that "there is no requirement, statutory or otherwise, that the EEOC specifically plead that conciliation efforts have failed." *EEOC v. Klinger Elec. Corp.* 636 F.2d 104, 106 (5th Cir. 1981) (per curiam). Rather, "[a] general averment that 'all conditions precedent to the institution of this lawsuit have been fulfilled' is quite adequate for pleading purposes." *Id.* at 106-07 (citing Fed. R. Civ. P. 9(c); *EEOC v. Standard Forge and Axle Co., Inc.*, 496 F.2d 1392 (5th Cir. 1974)). A decision by a prior panel cannot be overruled except by another panel or by the unequivocal direction of the Supreme Court. *U.S. v. Uniga-Salinas*, 945 F.2d 1302, 1306 (5th Cir. 1991) (citing *Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991)). *Iqbal* did not concern the pleading standards for claims under Rule 9(c). As *Klinger* has not been overruled by another panel or unequivocally discredited by a decision of the Supreme Court, it retains precedential value. In light of *Klinger*, the EEOC's general pleading that all conditions precedent have been met is sufficient to survive the Motion to Dismiss. *See also  EEOC v. Service Temps, Inc.*, No. 3:08-CV-1552-D, 2010 WL 1644909, at *4 (N.D. Tex. April 22, 2010) ("The EEOC's general allegation that all conditions precedent to filing suit have been fulfilled complies with Rule 9(c), which permits parties to 'allege generally that all conditions precedent have occurred or been

performed.'" (quoting Fed. R. Civ. P. 9(c); citing *Klinger*, 636 F.2d at 106)). *But see Napster,*

*LLC v. Rounder Records Corp.*, 761 F.Supp.2d 200, 206 (S.D.N.Y. 2011) ("The cases Napster

cites holding Fed. R. Civ. P. 9(c) 'requires no more than a general statement by a plaintiff that all

conditions precedent have been satisfied to successfully make out a claim' all predate *Twombly*

and *Iqbal*." (citations omitted)); *Restrepo v. Wells Fargo Bank, N.A.*, No. 09-22436-CIV, 2010

WL 374771, at *3 (S.D. Fla. Feb. 3, 2010) ("Plaintiff argues that it has pled that all conditions

precedent to suit have been satisfied. However, under *Twombly* and *Iqbal* this is insufficient

because it is a conclusory allegation which is not supported by factual allegations.").

### E. Record-Keeping Claim

Pursuant to 42 U.S.C. § 2000e-8(c), "[e]very employer, employment agency, and labor

organization" must "make and keep such records relevant to the determinations of whether

unlawful employment practices have been or are being committed," and "preserve such records

for such periods … as the [EEOC] shall prescribe by regulation." The EEOC alleges that

"[r]ecords which Defendants unlawfully failed to retain include, but are not limited to, relevant

employment applications and personnel files, tests administered to applicants, lists of job

candidates, electronic messages and audio and documentary records of efforts to contact the

corporate complaint center." (Am. Compl. ¶ 17.) For example, the EEOC claims, Defendants

"allowed the destruction of hotline recordings containing discrimination complaints made by

employees" after receiving notice of the Commissioner Charge that underlies this action.

Importantly, "a record-keeping violation may occur whether the records are purposely destroyed

or merely lost." *EEOC v. T.R. Orr, Inc.*, No. CV 04-2003-PCT-JAT, 2007 WL 505293, at *4 (D.

Ariz. Feb. 14, 2007) (citing *Lombard v. MCI Tel. Corp.*, 13 F.Supp.2d 621, 629 n.10 (N.D. Ohio

1998)). These facts, taken together, are sufficient to state a claim of a record-keeping violation. Thus, the record-keeping claim will not be dismissed.

### F. Limitations Period

"The plain language of § 707(e) authorizes the EEOC to investigate and act on a charge of a pattern or practice of discrimination, and mandates that such actions be taken in accordance with the procedures of § 706." *EEOC v. Kaplan Higher Educ. Corp.*, 790 F.Supp.2d 619, 623 (N.D. Ohio 2011). "Section 706 requires a charge to be filed, under the facts of this case, within 300 days after the allegedly unlawful employment practice occurred." *Id.* Courts are split as to whether the EEOC may seek relief under § 706 or § 707 for violations outside of the 300-day time period. Some courts have stated that "[u]nlike private litigants, a statute of limitations does not apply when the EEOC brings a pattern-or-practice suit." *Scolari Warehouse Mkts., Inc.*, 488 F.Supp.2d at 1136 (footnote omitted). Accordingly, this line of cases has asserted, "a § 706 claim is subject to timeliness requirements because the individual nature of the claims may be isolated even when brought on a class-wide basis; no such limitation exists for § 707 claims because isolating instances of systematic discrimination would be impossible." *Id.* at 1143 (citing *Mitsubishi Motor Mfg. of Am., Inc.*, 990 F.Supp. at 1084-87). *See also EEOC v. Bloomberg L.P.*, 751 F.Supp.2d 628, 645 (S.D.N.Y. 2010) ("Whether section 707 incorporates the charge-filing period of section 706 is a question that has divided district courts and has eluded the courts of appeals." (citing *EEOC v. Freeman*, No. 09 Civ. 2573, 2010 WL 1728847, at *2 (D. Md. Apr. 27, 2010))); *EEOC v. Sterling Jewelers, Inc.*, No. 08-CV-706, 2010 WL 86376, at *2 (W.D.N.Y. Jan. 6, 2010) (finding that the statute of limitations in § 706 does not apply to the EEOC); *EEOC v. LA Weight Loss*, 509 F.Supp.2d 527, 535 (D. Md. 2007) ("The language of sections 2000e-5(e) and 2000e-6(e) is not so plain as to warrant the application of § 2000e-5(e)'s limitations

period for individual charges to pattern-or-practice claims brought by the EEOC under § 2000e-6.").

This Court concludes that the EEOC is bound by the 300-day limitations period when proceeding pursuant to either § 706 or § 707. "The Court need not look any farther than the plain language of Section 706(e)(1) to conclude that the class of individuals for whom the EEOC can seek relief is limited to those who could have filed an EEOC charge during the filing period." *Freeman*, 2010 WL 1728847, at *4. "The plain language of section 707 incorporates this procedure into pattern or practice actions." *Bloomberg*, 751 F.Supp.2d at 645 (citing 42 U.S.C. § 2000e-6(e); *Freeman,* 2010 WL 1728847, at *4; *EEOC v. Custom Cos., Inc.*, No. 02 Civ. 3768, 2004 WL 765891, at *8 (N.D. Ill. Apr. 7, 2004); *EEOC v. Optical Cable Corp.*, 169 F.Supp.2d 539, 546 (W.D. Va. 2001)). "Nothing in the text of Section 706 or 707 suggests that the EEOC can recover for individuals whose claims are otherwise time-barred." *Freeman*, 2010 WL 1728847, at *4. "If Congress intended to make an exception for the EEOC to revive stale claims under Section 706 and 707, it should have said so." *Id.*

"The continuing violation doctrine creates an equitable exception to the statute of limitations set forth in Section 706(e)(1)." *Id.* at *5. "To prove a continuing violation, a plaintiff must demonstrate an ongoing pattern of discrimination and that at least one act of discrimination occurred during the charging period." *Id.* (citing *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139-42 (4th Cir. 2007)). "It is true that, '[p]rovided that an act contributing to the [hostile work environment] claim occurs within the filing period,' the court may consider acts outside the statutory time period as evidence of the hostile work environment." *JBS USA, LLC*, 794 F.Supp.2d at 1205 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). "In [*Nat'l R.R. Passenger Corp. v.*] *Morgan*, the Supreme

Court indicated close adherence to Title VII's statutory text was proper, and equitable tolling doctrines—such as the continuing violations doctrine—should be 'applied sparingly.'" *Moni v. University of Texas at Austin*, No. A-10-CA-180-SS, 2011 WL 90472, at *7 (W.D. Tex. Jan. 10, 2011) (quoting *Morgan*, 536 U.S. at 113). Plaintiffs cannot bring claims based on discrete acts of discrimination falling outside of the statutory period. *JBS USA, LLC*, 794 F.Supp.2d at 1205 ("All of the intervenors allege discriminatory practices that subsisted throughout their employment, thereby falling within the filing period. However, the intervenors also bring claims based on discrete acts of discrimination, including failure to accommodate religion; discriminatory discipline and discharge; and retaliation. The intervenors cannot base these claims on events outside the statutory period."). "Refusing to hire and terminating employment are discrete decisions." *Kaplan Higher Educ. Corp.*, 790 F.Supp.2d at 625 (citing *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061; *Ferguson v. Snow*, 185 Fed.Appx. 456, 462-63 (6th Cir. 2006)).

Thus, "[e]ven in a pattern-or-practice case such as this, the discrete decisions to refuse to hire and to terminate employment cannot be linked together to create a continuing violation." *Id.* "First, the continuing violation doctrine permits the inclusion of additional, but otherwise time-barred, *claims*—not the inclusion of otherwise time-barred *parties*." *Freeman*, 2010 WL 1728847, at *6 (emphasis in original). Furthermore, "[a] pattern or practice of refusing to hire job applicants does not constitute a continuing violation." *Id.* This is because "[t]he refusal to hire an applicant … is undoubtedly a discrete act of discrimination." *Id.* (citing *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061 ("Discrete acts such as termination, failure to promote, denial of transfer, or *refusal to hire* are easy to identify." (emphasis added))). "It follows that Title VII precludes recovery in a pattern or practice claim for discrete acts of unlawfully denying a particular applicant a job … if the decision is made outside of the limitations period." *Id. See*

*also O'Reilly Automotive, Inc.*, 2010 WL 5391183, at *10 ("The EEOC also argues that the 300-day limitation period does not apply to continuing violations. But the continuing violation doctrine does not apply to discrete acts of discrimination such as a failure to promote." (citing *Morgan*, 536 U.S. at 113-14, 122 S.Ct. 2061; *Celestine v. Petroleos De Venezuela SA*, 108 Fed.Appx. 180, 182 n.3 (5th Cir. 2004) ("This Court did not and still does not apply the continuing violation doctrine to discrete incidents such as training, hiring, and promotion."))). As the 300-day period applies to all of the EEOC's claims, any claims for discrete violations occurring outside of that period—including a pattern or practice of failure to hire—must be dismissed.

### G. Personal Jurisdiction over BPI

The EEOC does not argue that BPI, in its capacity as a separate corporation, has independent minimum contacts with Texas. (Resp. to Mot. Dismiss at 30.) Rather, the EEOC asserts, the minimum contacts and due process personal jurisdiction tests are satisfied by the integrated enterprise theory. (*Id.* at 31.) In *Trevino v. Celanese Corp.*, the Fifth Circuit Court of Appeals explained that in Title VII cases, "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." 701 F.2d 397, 404 (5th Cir. 1983). To make such a finding, the Fifth Circuit clarified, courts should consider: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership and financial control. *Id.* The most critical question is, "'What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Maradiaga v. Intermodal Bridge Transport, Inc.*, No. 3:10-CV-1028-L, 2011 WL 856872, at *6 (N.D. Tex. March 11, 2011) (quoting *Trevino*, 701 F.2d at 404). "That common management, officers and ownership exist between two entities, along with their

sharing a common headquarters building and a main telephone number, is insufficient to permit the inference that the entities operate as an integrated enterprise, absent evidence that there is centralized control of labor operations." *Id.* (citations omitted).

The integrated enterprise theory described by the EEOC is a liability standard, however, not a jurisdictional standard. "The purpose of the single integrated-enterprise theory is to determine whether two entities constitute a single employer for the purposes of Title VII liability; the minimum-contracts test makes certain that persons are not drug into the courts of far-away jurisdictions in which they did not envision being involved and in which the existence of jurisdiction would be fundamentally unfair." *Walker v. THI of New Mexico at Hobbs Center*, 801 F.Supp.2d 1128, 1153 (D.N.M. 2011) (quotations omitted). "'[T]hat a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised.'" *EEOC v. AMX Communications, Ltd.*, No. WDQ–09–2483, 2011 WL 3555831, at *6 (D. Md. Aug. 8, 2011) (quoting *Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000)).

Thus, this Court "does not believe that it should confuse liability and jurisdiction by using the single-employer theory to determine whether it has personal jurisdiction" over BPI. *Walker*, 801 F.Supp.2d at 1153 (quotations omitted). Indeed, that BPI may "be liable under Title VII if the Court has personal jurisdiction over them is not relevant to the question whether the Court can exercise personal jurisdiction over them," and conversely "if the Court does not have personal jurisdiction over [them], it cannot render a valid judgment on the merits of other issues"—including whether BPI and the other Defendants are part of a single, integrated enterprise. *Id.* at 1154 (citations omitted). *See also AMX Communications, Ltd.*, 2011 WL 3555831, at *6 (in a Title VII case, rejecting application of the integrated enterprise test for

jurisdictional purposes); *Smit v. Isiklar Holding A.S.*, 354 F.Supp.2d 260, 267 (S.D.N.Y. 2005) ("[P]laintiff conflates ERISA subject matter jurisdiction and the due process analysis required for personal jurisdiction. Even if ERISA considers all the defendants a 'single employer' and a 'controlled group' and 'common control' with Isiklar Holding—issues I need not reach here—it would not empower the Court to impute the actions of one entity to another for the purposes of establishing personal jurisdiction."). *But see King v. Enterprise Leasing Co. of DFW*, No. 3:05-CV-0026-D, 2006 WL 784885, at *4 (N.D. Tex. March 28, 2006) ("Because King has made a prima facie showing that Enterprise Company was her employer and discriminated and retaliated against her in Texas, where she was employed, she has likewise made a prima facie showing of specific jurisdiction, i.e., that Enterprise Company's contacts with Texas arise from, or are directly related to, the cause of action."); *Procaccino-Hague v. Boll Filter Corp.*, No. 303CV1560(GLG), 2004 WL 78155, at *3 (D. Conn. Jan. 13, 2004) (finding personal jurisdiction based on an integrated enterprise theory).

As support, the EEOC cites to case law that is actually based on the single business enterprise theory of personal jurisdiction—not the single enterprise theory of Title VII liability. However, that theory is no longer valid under Texas law. Relying on what it perceived to be Texas courts' single business enterprise theory, the Northern District of Texas found personal jurisdiction over a foreign company based on the fact that, as a parent company, it had an excessive amount of control over its Texas-based subsidiary. *Berry v. Lee*, 428 F.Supp.2d 546, 554 (N.D. Tex. 2006). Since that decision, however, the Texas Supreme Court has clarified that it does not recognize a single business enterprise theory of personal jurisdiction. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007). *See also Guzman v. Memorial Hermann Hospital System*, No. H-07-3973, 2008 WL 5273713, at *10 (S.D. Tex. Dec. 17, 2008)

38

(observing that "the Texas Supreme Court recently held that the relevant factors for 'jurisdictional veil-piercing' in a case involving a parent and a subsidiary are not those factors associated with the single enterprise theory"). Rather, the Texas Supreme Court held that plaintiffs seeking to fuse a parent and its subsidiary for jurisdictional purposes must prove the parent controls the internal business operations and affairs of the subsidiary to a degree greater than that normally associated with common ownership and directorship. *Id.* (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002)). The Texas Supreme Court explained that the evidence must go so far as to "'show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.'" *Id.* (quoting *BMC Software*, 83 S.W.3d at 799). The Court found guidance in a leading treatise, which opined that "courts should determine whether the subsidiary is 'separate and distinct from its parent corporation for personal jurisdiction purposes,' taking into account the amount of the subsidiary's stock owned by the parent corporation, the existence of separate headquarters, the observance of corporate formalities, and the degree of the parent's control over the general policy and administration of the subsidiary." *Id.* (quoting 4A Wright & Miller, Federal Practice & Procedure § 1069.4). Thus, the single business enterprise theory of personal jurisdiction does not exist under Texas law.

Additionally, it is important to note that the EEOC bears the burden of making a *prima facie* case of personal jurisdiction. In the supporting precedents the EEOC cites, plaintiffs prevailed on personal jurisdiction only after presenting supporting evidence. For example, in *Procaccino-Hague*, cited by the EEOC, the plaintiff alleged that the defendants were "an integrated enterprise and constitute a single enterprise in that the two entities have interrelated operations, a centralized control of labor relations, common management and financial control

by the parent." 2004 WL 78155, at *3. In addition, the plaintiff offered an affidavit showing that the companies used the same presidents, set forth some of the same terms and conditions of employment, shared financial statements, had staff regularly travel between them, and generally did not operate as separate entities. *Id.* Similarly, in *King*, the court found personal jurisdiction over a company when the plaintiff provided proof that the department she worked for was a component of the company; that she received direction, supervision, and work policies from the company; that her benefits were governed by the company; and that she participated in the company's profit-sharing plan. 2006 WL 784885, at *4. The EEOC has provided no such support beyond its conclusory assertions, which do not merit deference in an evaluation of a Rule 12(b)(2) motion.

The Court concludes, however, that it will not dismiss BPI from the lawsuit at this time. Rather, the Court defers its ruling on whether it has personal jurisdiction over BPI. Within 14 days of filing its Second Amended Complaint, the EEOC should file supplemental briefing with accompanying affidavits or other evidence supporting this Court's personal jurisdiction over BPI. Defendants may file supplemental briefing in response. After examining an enriched record, the Court will rule on its personal jurisdiction over BPI. The Court's other rulings in this Memorandum and Order do not apply as to BPI.

### H. Failure to Exhaust Administrative Remedies as to BPI and Tracker

"Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies with the EEOC." *JBS USA, LLC*, 794 F.Supp.2d at 1199 (citing *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005)). "'A corollary of this general rule is that a party must be named in the EEOC charge before that party may be sued under Title VII unless there is a clear identity of interest between [the unnamed party] and a party named in the

EEOC charge.'" *Steward v. Aries Freight Systems, L.P.*, No. H-07-1651, 2007 WL 3001660, at *3 (S.D. Tex. Oct. 12, 2007) (quoting *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987); *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988)). One test finds an identity of interest if the unnamed party has been provided with adequate notice of the charge and received the opportunity to engage in conciliation. *See also Alexander v. Local 496 Laborers' Int'l Union of North Am.*, 177 F.3d 394, 412 (6th Cir. 1999) (citing *Romain*, 836 F.2d at 245). Alternatively, to determine identity of interest for the purposes of an EEOC charge, courts may scrutinize "the 'relationship between the named and unnamed parties at the time the charge is filed and conciliation efforts occur.'" *Steward*, 2007 WL 3001660, at *3 (quoting *Romain*, 836 F.2d at 245-46; *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1977)). "In looking at the relationship, the court examines four factors: whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; … whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party and whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Id.* (citing *Romain*, 836 F.2d at 246). "This criterion has been further refined to the point that '[t]he critical question to be answered then is: What entity made the final decisions regarding employment matters related to the persons claiming discrimination?'" *Jurek v. Williams WPC-I, Inc.*, No. H-08-01451, 2009 WL 1748732, at *5 (S.D. Tex. June 17, 2009) (quoting *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 343 (5th Cir. 2005)).

Courts have held that the record, at a 12(b)(6) stage, is insufficiently developed to allow the court to adequately apply the applicable test; as such, courts have deferred the identity of interest analysis until the summary judgment stage. *Steward*, 2007 WL 3001660, at *4; *Szoke v. United Parcel Service of Am., Inc.*, No. 1:03CV1628, 2006 WL 2792170, at *2 (N.D. Ohio Sept. 26, 2006) ("In the context of this motion to dismiss, the Court lacks sufficient information to conclude as a matter of law that an identity of interest is lacking."); *EEOC v. Jeff Wyler Eastgate, Inc.*, No. 1:03CV662, 2006 WL 2785774, at *4 (S.D. Ohio Jan. 9, 2006) ("At the very least, this Court should not dismiss the case based on a lack of identity of interest before the record is fully developed and all of the *Glus* factors can be equitably weighed." (citing *Fletcher v. Columbus Bd. of Education*, 2003 WL 21799944 (S.D. Ohio 2003) (denying motion to dismiss based on a lack of identity of interest because the record was not fully developed and the court could not adequately apply either of the two accepted tests))).

Defendants point the Court to case law that suggests courts developed this exception to the naming rule "to protect plaintiffs who are 'unfamiliar with the technicalities of formal pleadings' and the 'vagaries' of Title VII law." *Upshaw v. Bd. of Supervisors of Southern University and Agricultural College,* No. 10-184-JJB-SCR, 2011 WL 2970950, at *5 (M.D. La. July 19, 2011) (quoting *Fassbender v. Treasure Chest Casino*, 2008 WL 170071, at *6 (E.D. La. 2008)). Pursuant to this precedent, "'[t]he leniency accorded a layman in drafting the EEOC charge should not be extended to an attorney.'" *Id.* (quoting *Fassbender*, 2008 WL 170071, at *6). Accordingly, "courts have held that the exception does not apply—and an unnamed party may not be sued—if the plaintiff is an attorney or is represented by counsel." *Id.* (citing *Fassbender*, 2008 WL 170071, at *6). *See also Wei Hong Zheng v. Wong*, No. 07-CV-4768 (FB)(JO), 2009 WL 2601313, at *4 (E.D.N.Y. Aug. 24, 2009) (agreeing "with the majority of

the district courts in the Second Circuit that the exception only applies where plaintiff was not represented by counsel at the time of the EEOC filing" (quotations, citation, and punctuation omitted)); *McLaughlin v. Kvaerner ASA*, No. 04-5559, 2007 WL 764290, at *2 (E.D. Pa. March 8, 2007) ("'The applicability of the exception, however, is limited to plaintiffs who were not represented by counsel at the time the EEOC complaint was filed.'" (quoting *Fordham v. Augusta Westland, N.V.*, 2007 U.S. Dist. LEXIS 2979, at *7-9 (E.D. Pa. Jan. 11, 2007))); *Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F.Supp.2d 374, 379 (S.D.N.Y. 2001) ("This identity of interest exception, however, is limited to situations where a plaintiff was not represented by counsel at the time the EEOC charge was filed." (citing *Harrington v. Hudson Sheraton Corp.*, 2 F.Supp.2d 475, 477 (S.D.N.Y. 1998); *Sharkey v. Lasmo (Aul Ltd.)*, 906 F.Supp. 949, 954 (S.D.N.Y. 1995))).

Not all courts agree that the identity of interest exception should be limited to *pro se* plaintiffs, however. Indeed, "[d]istrict courts have split over whether *pro se* status before the agency is a threshold issue precluding application of the 'identity of interests' test." *Consolmagno v. Hospital of St. Raphael*, No. 3:11cv109 (PCD), 2011 WL 4804774, at *7 n.14 (D. Conn. Oct. 11, 2011) (citing *Anderson v. Derby Bd. of Educ.*, 718 F.Supp.2d 258, 275 (D.Conn. 2010) (holding that *pro se* status at the administrative stage is required before applying "identity of interests" exception); *Olvera-Morales v. Sterling Onions, Inc.*, 322 F.Supp.2d 211, 216 (N.D.N.Y. 2004) (applying "identity of interests" exception when experienced Title VII counsel failed to name respondent before EEOC)). *See also Turk v. Salisbury Behavioral Health, Inc.*, No. 09-CV-6181, 2010 WL 1718268, at *3 (E.D. Pa. April 27, 2010) ("Although the *Glus* court notes that the exception helps those unrepresented by counsel avoid a technical stumbling block, the Third Circuit did not limit the identity of interest exception to pro se litigants. Nor will

this Court. So long as the *Glus* factors are satisfied, a claim under the ADEA may be brought against a party unnamed in the EEOC complaint."); *Jeff Wyler Eastgate*, 2006 WL 2785774, at *4 (applying identity of interests analysis in an EEOC case).

The Court concludes that the identity of interests exception may still apply to cases brought by the EEOC. In *Glus*, the Sixth Circuit noted the importance of "the availability of complete redress of legitimate grievances without undue encumbrance by procedural requirements especially when demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first instance." *Glus*, 562 F.2d at 888. The Court of Appeals opined: "We cannot believe Congress intended that a person filing charges should accurately ascertain, at the risk of later facing dismissal of their suit, at the time the charges were made, every separate entity which in some way may have violated Title VII." *Id.* These concerns, although perhaps more pressing when concerning *pro se* plaintiffs, *id.* ("'To expect a complainant at the administrative stage, usually without the aid of counsel, to foresee and handle intricate procedural problems … would place a burden … which Congress did not intend." (quoting *Evans v. Sheraton Park Hotel*, 164 U.S. App. D.C. 86, 503 F.2d 177 (1974))), do not appear to be limited to them. At this stage in the litigation, there is insufficient evidence from which to evaluate whether an identity of interest existed between all Defendants. Therefore, the Court declines to dismiss Tracker on these grounds.

### IV. CONCLUSION

For the reasons explained above, Defendants' Motion is **GRANTED** in part and **DENIED** in part. In closing, the Court notes that the EEOC's burden is not great. Indeed, the EEOC need only state a *plausible* claim for relief—not a probable claim. Furthermore, the EEOC is not required to plead a prima facie case. The current Amended Complaint, however, does not

manage to state a plausible claim for a nationwide pattern or practice of discrimination against Blacks and Hispanics across the numerous positions the EEOC cites. As the Court grants the EEOC the opportunity to replead, the EEOC may succeed in pushing its Second Amended Complaint into the realm of plausibility by narrowing its claims or stating additional facts to bolster its allegations.

The Court defers its decision as to its personal jurisdiction over BPI until the submission of supplemental briefing; the remaining portions of this Memorandum and Order do not apply as to BPI. The EEOC may file a Second Amended Complaint within 21 days of this Memorandum and Order. Discovery will be stayed until the Court rules on Defendants' Motion to Dismiss the Second Amended Complaint, if such a Motion is filed. In the event Defendants do not file a Motion to Dismiss the Second Amended Complaint, the stay on discovery will be lifted when Defendants file an Answer to the Second Amended Complaint.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 31st day of May, 2012.

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**