UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § § § | |
| Plaintiff, | | |
| v. | § § | Case No. 4:11-CV-3425 |
| BASS PRO OUTDOOR WORLD, LLC, BASS PRO, INC., and TRACKER MARINE, LLC | § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction over Bass Pro, Inc. ("BPI"). After reviewing the supplemental briefing ordered by this Court and the applicable law, the Court finds that Defendant's Motion must be **GRANTED**, but without prejudice to the right of Plaintiff to conduct jurisdictional discovery regarding Tracker Marine Retail, LLC.

**I. FACTS**

The Court reviewed the facts of this case in a prior Memorandum and Order (Doc. No. 53) and will not do so again. The Equal Employment Opportunity Commission ("EEOC") brings this discrimination action against Bass Pro Outdoor World, LLC ("BPOW"), Tracker Marine, LLC ("Tracker"), and BPI (collectively, "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964 as amended, and Title I of the Civil

1

Rights Act of 1991 ("Title VII"). (Doc. No. 23, Am. Compl. ¶¶ 3-4.) The EEOC alleges that Tracker and BPOW are both owned and controlled by BPI.

The EEOC asserts that Defendants have a nationwide standard operating procedure of discouraging the hiring of Black and Hispanic applicants for many hourly and salaried positions at their retail stores because of their race. (*Id* ¶ 8.) According to the EEOC, Defendants have selected Black applicants at rates far below their availability in the relevant labor pools. (*Id*.) For example, the EEOC avers, Defendants have produced data showing that out of 600 managers at their retail stores, only 10 to 15 were Black. (*Id*.) The EEOC further claims that Defendants have, on a nationwide basis, unlawfully retaliated against employees who opposed practices that they reasonably perceived to violate Title VII. (Id. ¶ 15.) The EEOC also accuses Defendants of failing to preserve records relevant to the determination of whether unlawful employment practices have been or are being committed, in violation of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c). (Id. ¶ 17.)

Defendants assert in their Motion to Dismiss the First Amended Complaint (Doc. No. 32) that the EEOC does not have personal jurisdiction over BPI. Defendants allege that BPI is a non-resident holding company that has no appreciable contacts within Texas. BPI is incorporated and organized under the laws of the State of Delaware and maintains its principal place of business in Springfield, Missouri. (Doc. No. 32-1, ¶3-4.) The EEOC argued that the Court could assert personal jurisdiction over BPI because BPI and BPOW are an integrated enterprise. (*Id.* ¶ 4.) BPOW is a Missouri limited liability company, and has continuously been doing business in the State of Texas and the City of Katy. Because BPOW is integrated with BPI, Plaintiff attempted to use an integrated enterprise theory to establish jurisdiction over BPI.

The Court held in its previous Order that the integrated enterprise theory described by the EEOC is a liability standard, not a jurisdictional standard. *EEOC v. AMX Communications, Ltd.*, No.WDQ–09–2483, 2011 WL 3555831, at *6 (D. Md. Aug. 8, 2011) (finding that the liability of a defendant is irrelevant to the question of whether jurisdiction can be exercised). Thus, this Court did not believe that "it should confuse liability and jurisdiction by using the single-employer theory to determine whether it has personal jurisdiction" over BPI. *Walker v. THI of New Mexico at Hobbs Center*, 801 F.Supp.2d 1128, 1153 (D.N.M. 2011). Rather, the Texas Supreme Court has held that plaintiffs seeking to fuse a parent and its subsidiary for jurisdictional purposes must prove the parent controls the internal business operations and affairs of the subsidiary to a degree greater than that normally associated with common ownership and directorship. *Id.* (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002)). The Court deferred its ruling on whether it has personal jurisdiction over BPI until supplemental briefing was presented by both sides. The Court has received supplemental briefing and finds that it must dismiss BPI from the lawsuit.

The Court defers any ruling regarding Tracker because Defendants have stated that they incorrectly identified Tracker on Defendants' Certificate of Interested Parties, when Tracker Marine Retail, LLC is the correct party. (Doc. No. 74, FN 2.) Tracker is a manufacturing company that has no involvement in the underlying EEOC investigation. Until August 24, 2012, the EEOC was under the impression that Tracker, rather than Tracker Marine Retail, LLC, was the party related to this case. (*Id.*) On August 24, Defendants filed an Amended Certification of Interested Parties to correct this error. (Doc. No. 75.) Therefore, the Court finds that the dismissal of BPI is without prejudice to the right of the EEOC to conduct discovery regarding the recently identified Tracker Marine Retail, LLC.

## II. LEGAL STANDARD

"Absent a rule or statute to the contrary, a federal court [may] exercise jurisdiction over only those defendants who are subject to the jurisdiction of courts of the state in which the court sits." *Point Landing, Inc. v. Omni Capital International, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986), *aff'd sub nom. Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Because the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–17.045, is coterminous with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Court's constitutional due process inquiry into personal jurisdiction also serves as an inquiry into personal jurisdiction under the Texas long-arm statute. *Command–Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, 963 F.2d 90, 93-94 (5th Cir. 1992). To comport with constitutional due process, a plaintiff must show that: (1) defendants purposefully availed themselves of the benefits and protections of Texas law, thereby establishing "minimum contacts" with Texas such that defendants could reasonably have anticipated being haled into court there; and (2) under the circumstances, the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990).

Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the existence of a parent-subsidiary relationship, by itself, is not sufficient to warrant the assertion of jurisdiction over the foreign parent. 2 J. Moore & J. Lucas, Moore's Federal Practice ¶

4.25[6], at 4-272 (2d ed. 1982); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). It has long been recognized, however, that in some circumstances a close relationship between a parent and its subsidiary may justify a finding that the parent "does business" in a jurisdiction through the local activities of its subsidiaries. *See, e.g., Walker v. Newgent,* 583 F.2d 163, 167 (5th Cir. 1978); *Prod. Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492 (5th Cir. 1974); *Turner v. Jack Tar Grand Bahama, Ltd.*, 353 F.2d 954, 956 (5th Cir. 1965). If the parent corporation exerts such domination and control over its subsidiary, then "they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983).

The Fifth Circuit has relied on the "alter ego rule" that is generally used to pierce the corporate veil also to determine personal jurisdiction. *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978); *Gutierrez v. Raymond Int'l, Inc.*, 484 F. Supp. 241, 253 (S.D. Tex. 1979). The presumption is that a subsidiary, even a wholly-owned subsidiary, is independent of its parent company for jurisdictional purposes. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). This presumption can be overcome by clear evidence. *Id.* Such clear evidence requires an additional or a 'plus' factor, "something beyond the subsidiary's mere presence within the bosom of the corporate family." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (quoting *Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1st Cir.1990)).

In *Hargrave,* the Court of Appeals set out factors to be considered in deciding whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary. The *Hargrave* factors consider (1) how much of the subsidiary's stock is owned by the parent; (2) whether the two corporations have separate headquarters; (3) if they

5

have common officers and directors; (4) whether the parent and subsidiary observe corporate formalities; (5) whether they maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy; (7) and whether the subsidiary exercises complete authority over daily operations. *Hargrave*, 710 F. 2d at 1160, cited by *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999). A court should consider the totality of circumstances, rather than a single factor, to determine whether jurisdiction is proper. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007).

Although the burden is on the party seeking to invoke the power of the court to prove that jurisdiction exists, a *prima facie* showing suffices, and jurisdiction need not be established by a preponderance of the evidence. *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). All uncontroverted allegations in the complaint must be taken as true, and all conflicts between the facts contained in the parties' affidavits and other evidence must be resolved in favor of the party asserting jurisdiction. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

### III. ANALYSIS

The EEOC puts forward evidence of common ownership and officers, but not sufficient evidence to establish personal jurisdiction over BPI. The EEOC contends that specific jurisdiction exists through a theory of alter egos. In other words, the EEOC argues that BPI is an alter ego of BPOW, and thus, the contacts of BPOW can be imputed to BPI to

6

satisfy personal jurisdiction. The EEOC argues that all three Defendants are commonly owned, operate out of a shared corporate headquarters, and share officers and directors. The EEOC provides an affidavit from Connie K. Wilhite, a trial attorney for the EEOC, stating that all three corporations are owned by one individual, Johnny Morris, and share the same president, James Hagale. Additionally, the EEOC alleges that BPI and BPOW share board members. The EEOC claims that, through these individuals, BPI controls the internal business operations and affairs of BPOW and Tracker.

Even taking the EEOC's allegations as true, the EEOC does not show that BPI controlled its subsidiary, BPOW, to such a degree that the activities of BPOW are fairly attributable to BPI. Even 100% stock ownership and commonality of officers and directors are insufficient to establish an alter ego relationship between two corporations. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999) (one hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil). Similarly, a common corporate headquarters is not sufficient to establish alter ego liability. *Global 360, Inc. v. Spittin' Image Software, Inc.*, CIV.A3:04-CV-1857-L, 2005 WL 625493 (N.D. Tex. Mar. 17, 2005)

The EEOC alleges that BPOW and BPI owner Morris exercised control over the day-to-day operations, claiming that he was intimately involved in many of the daily decisions of BPOW stores. However, the evidence provided by the EEOC does not go that far. The EEOC presents one phone interview that includes the statement "whenever I called corporate it seemed to me that everyone was waiting for Johnny Morris to make the decision" and a declaration from an employee that, in 2007, she may have spoken to Johnny Morris to complain about another employee, though she was not sure if it was he.

Some control over the subsidiary is part of the normal framework of a parent-subsidiary relationship, and the blending of corporate activities is insufficient to show that the subsidiary is an alter ego of the parent. *N. Am. Van Lines, Inc. v. Emmons,* 50 S.W.3d 103, 120 (Tex. App. 2001); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999) (plaintiff must show such domination of finances, policies and practices that the controlled corporation has no separate mind, will or existence of its own and is but a business conduit for its principal). Even taking the EEOC's facts in the most favorable light, Morris's control over BPOW is not sufficient to establish alter ego jurisdiction. In *Global 360*, a case with similar facts, the plaintiff had presented sufficient evidence to demonstrate that Ken Davies was the president of both the parent and subsidiary corporation, and exercised authority over all general policies and daily operations of the corporate defendants. *Global 360,* 2005 WL 625493, at 1. Still, the court did not find that the activities of the subsidiary could be fairly attributable to the parent, and thus did not find personal jurisdiction. *Id.* The Court finds that the EEOC falls short of the mark in producing sufficient evidence to demonstrate that Morris exercised "complete control" over BPOW, which is the level required by the *Hargrave* factors.

Although the EEOC insists that BPI and BPOW are fused, it offers as evidence nothing more than various printouts from third-party websites.[1] In one of these documents, BPOW stores are referred to as "branches" of BPI. However, these printouts were prepared by unverified third-parties. If the information in such documents were to be accepted as true, it might arguably establish the existence of some corporate relationship between BPOW and BPI, which is not in dispute, but would not overcome the presumption of corporate

---

[1] The third-party website printouts include Answers.com, Dun & Bradstreet, and LinkedIn.com. The information was not prepared or provided by Defendants. The Dun & Bradhseet document contains a disclaimer that it is an incomplete history.

separateness. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (court rejected plaintiff's printouts from third-party websites attempting to establish that parent and subsidiary were indistinguishable).

The Court acknowledges that the EEOC put forward other pieces of evidence demonstrating the relationship between BPOW and BPI. The evidence included a shared website, recruitment forms, training, and staffing procedures. However, this evidence—even in its totality—is not sufficient to constitute the 'plus' factor and subject BPI to personal jurisdiction in Texas. In cases with comparable facts, courts have not found alter ego jurisdiction. *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 419 (Tex. App. 1997) (shared office headquarters, salaried employees on the same payroll system, shared bank account, shared officers, and fifty percent of revenue generated from subsidiary were not sufficient to assert jurisdiction over parent corporation); *Global 360, Inc. v. Spittin' Image Software, Inc.*, CIV.A3:04-CV-1857-L, 2005 WL 625493 (N.D. Tex. Mar. 17, 2005) (shared stock ownership, office space, same president, managing director, bookkeeper, and sole employee, eighty percent of stock ownership by parent, closely related accounting systems were insufficient to establish alter ego jurisdiction); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002) (consolidated financial report, shared financial assistance, shared office space, shared recruitment process, same letterhead was not sufficient).

Additionally, the Court notes that the EEOC has not alleged that BPI and BPOW shared financial assets. The importance of this factor is encapsulated in two of the *Hargrave* factors—whether the corporations observed corporate formalities and whether they maintained separate accounting systems. Although the EEOC alleges that BPOW generated more than 75% of BPI's total revenue, this does not mean that there was a breakdown of

corporate formalities or that they had the same accounting system. The EEOC bears the burden of establishing that BPI's control over BPOW's budget is such that they "functionally became the same entity." *Administrators of Tulane Educ. Fund v. Ipsen*, S.A., 450 F. App'x 326, 332 (5th Cir. 2011); *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010). Thus, the Court concludes that the exercise of jurisdiction over BPI would violate "traditional notions of fair play and substantial justice." *Asahi,* 480 U.S. at 113.

That leaves the question of whether further discovery should be authorized. The Court previously granted leave for parties to supplement the record with affidavits and other evidence tending to show personal jurisdiction over BPI. The EEOC has not alleged with any specificity the additional facts regarding BPI it would hope to obtain through further discovery.

However, the Court does find that additional discovery regarding Tracker's relationship to this case is warranted. In Defendants' Supplemental Briefing, Defendants assert that Tracker should also be dismissed for lack of personal jurisdiction, but the EEOC has not had the opportunity to fully engage in discovery regarding Tracker's relationship to the case. Defendants misidentified Tracker on Defendants' Certificate of Interested Parties, rather than Tracker Marine Retail, LLC, the correct entity. Until August 24th, 2012, this error was not corrected and Plaintiff was unaware of the error. When the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations, more discovery is appropriate. *Estate of Manook v. Research Triangle Institute, International and Unity Resources Group, L.L.C.*, 693 F. Supp. 2d 4 (D.D.C. 2010). FPP, § 2008.3 Relevancy to the Subject Matter—Discovery About Jurisdictional Issues, 8 Fed. Prac. & Proc. Civ. § 2008.3 (3d ed.). Thus, the Court will allow

further jurisdictional discovery regarding the role and relationship of Tracker Marine Retail, LLC to BPOW and BPI.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants' Motion to Dismiss BPI for lack of personal jurisdiction should be **GRANTED.** The Court grants BPI's Motion without prejudice to the right of the EEOC to conduct discovery regarding Tracker's role in this case.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 19th day of October, 2012.

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**