**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | § | |
| **COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 11-CV-3425** |
| | § | **HON. KEITH P. ELLISON** |
| **BASS PRO OUTDOOR WORLD, LLC** | § | |
| **and TRACKER MARINE RETAIL, LLC**, | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

---

**FOURTH AMENDED COMPLAINT OF THE**
**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

---

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

By Order dated March 4, 2014 (ECF No. 151), the Court granted EEOC's motion for leave to file a Fourth Amended Complaint to substitute Tracker Marine Retail, LLC as a defendant for Tracker Marine, LLC. In filing this Fourth Amended Complaint, EEOC also makes changes related to the Court's earlier dismissal of Bass Pro, Inc. from this action (ECF No. 95). In filing this Fourth Amended Complaint, EEOC reserves all rights and does hereby not intend to waive any claims.

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 as amended, and Title I of the Civil Rights Act of 1991 ("Title VII") to correct unlawful employment practices on the basis of race, national origin, and retaliation, and to provide appropriate relief to Black and Hispanic applicants and to employees who were adversely affected by such practices. As alleged

with greater particularity below, Defendants have engaged in, and continue to engage in, unlawful discrimination by (1) maintaining a standard operating procedure of denying employment to Black and Hispanic applicants for positions in their retail stores nationwide, and otherwise discriminating in hiring against Blacks on the basis of race, and against Hispanics on the basis of national origin; and (2) retaliating against employees who opposed actions by Defendants that those employees reasonably perceived to constitute unlawful employment discrimination.  Additionally, Defendants unlawfully destroyed, or otherwise failed to preserve, records relevant to whether unlawful employment practices have been or are being committed, in violation of the applicable record-keeping regulations issued pursuant to Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c).

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) and 707(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) and 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The unlawful employment practices alleged in this Complaint were committed in numerous locations across the United States, including within the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division.  Venue is appropriate in this Court.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and

enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) and 707 of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6.

4.      At all relevant times, Defendant Bass Pro Outdoor World, LLC ("BPOW"), a Missouri limited liability company, has continuously been doing business in the State of Texas and the City of Katy, and has continuously had at least 15 employees.  BPOW may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201.

5.      At all relevant times, Defendant Tracker Marine Retail, LLC ("Tracker"), a Delaware limited liability company, has continuously been doing business in the State of Texas and the City of Katy, and has continuously had at least 15 employees.  Tracker may be served with process through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  BPOW and Tracker shall sometimes herein collectively be referred to as "Defendants" or "Bass Pro."

6.      At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7.      BPOW is a chain of almost 60 sporting equipment retail outlets or megastores with a special emphasis on fishing, hunting and camping.  The BPOW stores also sell a variety of "Bass Pro" branded items.  Tracker is one of the largest boat retailers in the country and operates showrooms located within BPOW megastores.  BPOW and Tracker both are subsidiaries of parent Bass Pro, Inc. ("BPI").

8.      BPOW and Tracker have interrelated operations, centralized control of labor relations, common management and common ownership and financial control as demonstrated by the illustrative facts below.

a.      BPOW and Tracker are privately held and commonly owned by founder Johnny Morris.

b.      BPOW and Tracker share a common corporate headquarters and business address: 2500 E. Kearney St., Springfield, Missouri.  Both entities operate out of that headquarters.  The term "corporate" as used herein refers to Defendants' operations above the store level, such as headquarters or regional operations.

c.      Defendants' Owner and Founder Morris exercises authority over corporate operations and decisions of Defendants.  Morris is involved in day-to-day operations and decision-making for BPOW stores and the Tracker showrooms within. When contacting the corporate headquarters for Defendants with questions about marketing strategies and other issues, some BPOW General Managers found that corporate staff could or would not provide a response without Morris's guidance. Further, managers at the stores sometimes contacted Morris directly to seek his input concerning complaints and inquiries. The terms "General Manager" or "Store General Manager" are synonymous as used herein and refer to the top-ranking official at a Bass Pro store.

d.      James Hagale has served as the President of BPOW and Tracker.  As a result, Hagale has responsibility for oversight of BPOW and Tracker.

e.      Top managers of Tracker in the BPOW stores, as well as management for the restaurants in the stores, report or reported during the relevant time period to the top BPOW manager in each store.

f.      Store Human Resources Managers for BPOW perform the personnel/human resources functions for the in-store Tracker showrooms, and the human resources function of both BPOW and Tracker is overseen by BPI.   The human resources/labor relations functions of Defendants have been concentrated at the Defendants' shared headquarters.

g.      A standard employment application is utilized for hiring at BPOW stores, including for the BPOW departments and the Tracker department.   Further, the personnel forms used for hiring, wage changes, job reassignments, terminations and other employment actions for Defendants are almost always generated on "Bass Pro" letterhead or bear the BPI name.

h.      Employment training for the BPOW stores and Store Human Resources Managers, in particular, is not limited to local or in-store training, but involves managers from other locations assigned by management at the shared headquarters.   For example, Amber Quarles served as the Store Human Resources Manager at the Hampton, Virginia BPOW store in the mid-2000's.   Quarles was trained, in part, by Store Human Resources Managers from the Nashville, Tennessee and Auburn, New York stores.

i.      BPOW and Tracker share an internet website: www.basspro.com.   It is the common retail/public relations website used by and identified BPOW and Tracker.   The website lists, among many other things, all "store locations" as well as job postings and recruitment practices for both BPOW and Tracker.   It provides an email address for the

- 5 -

submission of applications which is common to all employment positions, including both hourly and "salaried/management opportunities" at BPOW and Tracker.   Job opportunities are identified not by company but by BPOW "location."   A notice posted on the website encourages job applicants to apply for hourly job openings available at BPOW "locations" in person at Defendants' shared headquarters on an on-going, daily basis.   Further, the website informs individuals interested in salaried positions "relevant to [their] experience" in the various "departments" located at "our General Office Headquarters in Springfield, MO" to forward their resumes for consideration for future salaried opportunities to: prostaffr@basspro.com.

        j.      BPOW and Tracker share common company practices and policies, including those related to customer service and the handling of on-line purchases and returns, as set forth on the www.basspro.com  website.

        k.      In its Amended Certificate of Interested Parties filed with the Court (ECF No. 75), BPOW listed itself and Tracker as parties with a financial interest in the outcome of this litigation.

**Defendants Constitute an Integrated Enterprise,**
**or Single Employer, and Are Each Jointly and**
**Severally Liable for the Violations of Title VII Alleged Herein**

        9.      Defendants are jointly and severally liable for the discriminatory acts and claims asserted herein because, as set forth more fully in paragraphs 4 to 8 above, the facts demonstrate that BPOW and Tracker constitute an integrated enterprise.   In summary, at all relevant times, BPOW and Tracker have operated out of the same corporate headquarters with shared personnel, policies and management, and have had interrelated operations, centralized control of labor

relations, common management and common ownership and financial control.  By their own admission, BPOW and Tracker are parties with a financial interest in the outcome of this case.

10.     All of the acts and failures to act alleged herein were duly performed by and attributable to each Defendant, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise, and/or under the direction and control of the other Defendants. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the unlawful acts and omissions by Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant, such allegations and reference shall also be deemed to mean the acts and failures to act of all the Defendants acting individually, jointly, and/or severally.

## STATEMENT OF CLAIMS

11.     More than thirty days prior to the institution of this lawsuit, a charge was filed with the Commission by Stuart J. Ishimaru, a member thereof, alleging violations of Title VII by Defendants.  All conditions precedent to the institution of this lawsuit have been fulfilled.

### COUNT ONE:
### DEFENDANTS HAVE DISCRIMINATED
### AGAINST BLACKS AND HISPANICS BY DENYING
### THEM EMPLOYMENT AT DEFENDANTS' STORES NATIONWIDE

12.     As described below, since at least November 2005, Defendants have engaged in unlawful employment practices at their retail stores and facilities nationwide, in violation of Sections 703(a) and 707(a) of Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-6(a).

### Scope and Nature of the Discrimination

13.     As alleged with more particularity elsewhere herein, Defendants have discriminated in hiring against Blacks as a class on a company-wide basis.[1]

14.     As alleged with more particularity elsewhere herein, Defendants have discriminated in hiring against Hispanics as a class on a company-wide basis.

15.     As alleged with more particularity elsewhere herein, Defendants have discriminated in hiring against Blacks as a class at some or all of their retail stores.

16.     As alleged with more particularity elsewhere herein, Defendants have discriminated in hiring against Hispanics as a class at some or all of their retail stores.

17.     As alleged with more particularity elsewhere herein, Defendants' hiring discrimination against Blacks is Defendants' standard operating procedure on a company-wide basis.

18.     As alleged with more particularity elsewhere herein, Defendants' hiring discrimination against Hispanics is Defendants' standard operating procedure on a company-wide basis.

19.     As alleged with more particularity elsewhere herein, Defendants' hiring discrimination against Blacks is Defendants' standard operating procedure at some or all of their retail stores.

20.     As alleged with more particularity elsewhere herein, Defendants' hiring discrimination against Hispanics is Defendants' standard operating procedure at some or all of their retail stores.

---

[1]     Consistent with Federal Rule of Civil Procedure 8(d), EEOC asserts that all of its allegations subsume any related "lesser included offenses."  For example, EEOC's allegations that Defendants discriminate on a company-wide basis subsumes its allegations concerning discrimination at individual stores.  If the Court or a jury dismissed EEOC's allegations of company-wide discrimination, the "lesser included offense" of discrimination at individual stores may still be considered by the fact-finder.

21.     As alleged with more particularity elsewhere herein, irrespective of whether hiring discrimination is a company-wide practice, Defendants' hiring discrimination against Blacks as a class, at any one or more of their retail stores, constitutes systemic discrimination in violation of Title VII.

22.     As alleged with more particularity elsewhere herein, irrespective of whether hiring discrimination is a company-wide practice, Defendants' hiring discrimination against Hispanics as a class, at any one or more of their retail stores, constitutes systemic discrimination in violation of Title VII.

23.     As alleged with more particularity elsewhere herein, Defendants have discriminated in hiring against Blacks in regard to some or all non-managerial positions.

24.     As alleged with more particularity elsewhere herein, Defendants have discriminated in hiring against Blacks in regard to some or all managerial positions.

25.     As alleged with more particularity elsewhere herein, Defendants have discriminated in hiring against Hispanics in regard to some or all non-managerial positions.

26.     As alleged with more particularity elsewhere herein, Defendants have discriminated in hiring against Hispanics in regard to some or all managerial positions.

27.     The part-time and full-time retail store positions for which Defendants denied employment to Black and Hispanic applicants include, but are not limited to, cash clerk, cashier, customer relations associate, customer service representative, customer service representative credit, greeter, cashier/greeter, loss prevention, receiving clerk, sales associate, stocking associate, "PACE" employees, Santa's Wonderland, "lead," "team lead," and all supervisory and managerial positions.

28.     As alleged with more particularity elsewhere herein, Defendants' hiring discrimination against Blacks and Hispanics will be supported by direct evidence, evidence of centralized, systemic practices and/or policies, numeric and/or statistical evidence, and/or anecdotal evidence.

29.     Defendants' hiring discrimination against Blacks as a class, as alleged with more particularity herein, constitutes an unlawful "pattern or practice of resistance to the full enjoyment of any of the rights secured by" Title VII, in violation of Section 707(a).

30.     Defendants' hiring discrimination against Hispanics as a class, as alleged with more particularity herein, constitutes an unlawful "pattern or practice of resistance to the full enjoyment of any of the rights secured by" Title VII, in violation of Section 707(a).

31.     Defendants' hiring discrimination against Blacks as a class, as alleged with more particularity herein, constitutes an unlawful employment practice in violation of Section 703 of Title VII.

32.     Defendants' hiring discrimination against Hispanics as a class, as alleged with more particularity herein, constitutes an unlawful employment practice in violation of Section 703 of Title VII.

33.     Defendants' hiring discrimination, as alleged with more particularity elsewhere herein, against any one of the Black Identified Aggrieved Individuals named herein, or against any person in like or related circumstances, constitutes an unlawful employment practice in violation of Section 703 of Title VII.

34.     Defendants' hiring discrimination, as alleged with more particularity elsewhere herein, against any one of the Hispanic Identified Aggrieved Individuals named herein, or

against any person in like or related circumstances, constitutes an unlawful employment practice in violation of Section 703 of Title VII.

35.    For each and every violation of Section 703 alleged herein, and as to each victim of such unlawful conduct, EEOC reserves the right to seek all remedies deemed appropriate by the Court or a jury, including but not limited to damages pursuant to 42 U.S.C. § 1981a(a)(1), back pay, instatement, and/or other available relief.

36.    For each and every violation of Section 707(a) alleged herein, and as to each victim of such unlawful conduct, EEOC reserves the right to seek all remedies deemed appropriate by the Court or a jury, including, but not limited to, back pay damages, instatement, and/or other available relief.

**Defendants Have Maintained a Standard Operating
Procedure of Denying Employment to Blacks Based on
Race and Hispanics Based on National Origin at Stores Nationwide**

37.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 36 above as if set forth fully herein.

38.    As described in paragraphs 39 to 123 below, Defendants have maintained a standard operating procedure of denying employment to Black applicants based on their race and Hispanic applicants based on their national origin at stores nationwide.

39.    Defendants' standard operating procedure of discriminating against minorities in hiring emanates from Defendants' top management, and, in particular, from Defendants' owner and founder, John "Johnny" Morris, and has been communicated to, repeated by, and carried out by Store General Managers.

40.    In a meeting of Store General Managers in 2004 or 2005, Morris made clear he did not want Defendants to hire minority applicants, such as Blacks and Hispanics.  Answering a

question concerning racial quotas at that meeting, Morris said, "this company will never have a quota system because that's not the kind of people I want working in my stores."  He made similar comments while attending one or more store openings.

41.    Morris's statement regarding not wanting minorities at his stores constituted a directive to Store General Managers nationwide to favor Whites in the hiring process and to discriminate against minorities.

42.    Defendants' hiring preference for Whites was known and followed by store managers throughout the company and was sometimes referred to simply as "the Profile."  Only White applicants fit the Profile.

43.    The centralized and pervasive nature of Defendants' discriminatory hiring practices is shown by the evidence set forth in this section and elsewhere in this Complaint, including in the numeric allegations set forth below in paragraphs 123 to 174 and paragraphs 360 to 407.

**Defendants' Top Corporate Managers
Encourage and Assist Store Managers In
Implementing Discriminatory Hiring Practices in Their Retail Stores**

44.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 43 above as if set forth fully herein.

45.    Defendants' corporate Human Resources Managers and store managers communicated the corporate racial hiring directive — the Profile — to other managers.

46.    For example, at the Bossier City, Louisiana, store, in 2005, when a newly hired Store Human Resources Manager was asked to justify his interviewing a Black female job candidate, he informed the store Assistant General Manager that he was going to offer a job to the Black applicant.   In response, the Assistant General Manager told the Store Human

Resources Manager that he could not hire her as she did not fit the Profile.  When this new Store Human Resources Manager asked what the Profile was, the Assistant General Manager stated, "We don't hire niggers."  The Assistant General Manager was hired before the Bossier City store opened in late 2003, and remained there enforcing the racial preference for Whites for about five years.

47.     Defendants' illegal use of the Profile to discriminate against minorities continues to the present.

48.     At the August 2011 job fair in Harlingen, Texas, Human Resources Managers from Bass Pro stores in three different states acknowledged Morris's directive that applicants be hired based on their "physical characteristics," a coded reference to discrimination against minorities on the basis of race, national origin, and other impermissible factors.

49.     To assure that store-level hiring is consistent with their discriminatory Profile, Defendants' management has used a number of practices to prioritize the hiring of Whites and undermine minorities' hiring prospects.

50.      Defendants' human resources functions are highly centralized.  Just two top corporate Human Resources Managers have exceedingly broad authority over all stores. Michael Rowland has been the top corporate Human Resources Manager since 1983 and is the Vice President of Human Resources.  He was hired when Defendants had just one retail store. He had no human resources experience in the retail context at hire.  Rowland is second in command at BPOW.

51.     Rowland has stated that he hired only one Black employee in the corporate Human Resources department, a clerk, during his first 26 years of employment with Defendants.

52.     In 1999, Michael Rowland hired Brent Day as Director of Human Resources for retail stores.

53.     Shortly after hire, Day assumed a broad range of authority over the hiring of store managers.  The few Regional Human Resources Managers are recruited by Rowland and Day and report directly to Day.

54.     At present, there are just two Regional Human Resources Managers for all of Defendants' stores, one of whom was promoted from a Store Human Resources Manager position.

55.     Corporate Human Resources trains new managers and selects experienced White field managers to train and provide support for them.

56.     Defendants heavily rely on loyal White store managers to staff job fairs at new stores, sometimes located far from the stores where those managers work.  Brent Day and his few Regional Human Resources Managers play a large role in selecting the job fair recruiting staff.  Black and Hispanic employees are rarely utilized to staff job fairs.  Minority job applicants have stated that they have rarely observed or been interviewed by minority managers at the job fairs.

57.     To discourage Black applicants from applying, Brent Day, who selects job fair sites nationwide, or delegates that to subordinates and certain store managers, instructed or otherwise encouraged Store Human Resources Managers to hold job fairs in locations designed to draw White applicants and deter minority applicants.

58.     Defendants have excluded minority applicants by informing employment agencies that they are not interested in recruiting affirmative action candidates.

59.     Defendants require some applicants to complete a pre-employment survey, called the Orion test.  When a field manager commented that Black applicants had done poorly on the Orion test, a high-ranking store manager expressed enthusiasm at this opportunity to eliminate Black candidates.

60.     Scores of minority applicants who were not hired by Defendants ("unsuccessful minority applicants") insist that, although Defendants' staff assured them they would be contacted about the status of their applications, Defendants never contacted them (see, generally, paragraphs 175 to 359 and paragraphs 408 to 427.  Many of these minority applicants state that, not having heard from Defendants, they contacted the Defendants to inquire about the status of their applications, but they were advised that the position or positions had been filled.

61.     Day plays a major role in sourcing, interviewing, and hiring Store Human Resources Managers on a nationwide basis and in approving the promotion of employees whom he trusts or expects to follow the discriminatory Profile to store management positions, including that of Store Human Resources Manager.

62.     Day has admitted that outdoor experience is not essential to any job at Defendants' stores.

63.     Outdoor experience, such as in camping, fishing, hunting and shooting, is — for almost all jobs at Bass Pro — not a job requirement.

64.     Little formal education is required for almost all the jobs at Defendants' retail stores.

65.     An applicant's having retail experience is a positive factor for hiring purposes, according to Brent Day.

66.     Defendants' ineffective system of responding to discrimination complaints shows malice, reckless disregard, or indifference to compliance with Title VII.

67.     As discussed in more detail in paragraphs 429 to 504 below,  Store Human Resources Managers and other store managers who have challenged Defendants' orders not to hire qualified Black or Hispanic applicants have been terminated, forced to quit, or otherwise subjected to retaliation.  Such managers have directly informed Brent Day of evidence regarding discriminatory hiring practices, but Day has not effectively or meaningfully investigated their contentions.

68.     Rowland and Day have acknowledged that neither they, nor Defendants, have ever considered or initiated any program to recruit qualified minority job applicants for any jobs at Defendants' stores.

69.     Defendants have not tasked anyone in Human Resources to engage in efforts to recruit qualified minority job candidates.

70.      Defendants have not utilized diversity job fairs to recruit qualified minority candidates.

71.     Defendants are required by federal law to submit annual reports, called EEO-1's, describing the companies' work force demographics.

72.     For many years, as Vice President of Human Resources, Michael Rowland has certified, under penalty of federal law, the accuracy of Defendants' annual EEO-1 reports that set forth, by race and national origin, the number of employees on a store-by-store basis, for corporate headquarters and in the aggregate.

73.     Up until the time that the Commissioner Charge which gave rise to this lawsuit was issued in 2007, Michael Rowland had never reviewed any of Defendants' EEO-1's to

determine if Defendants' demographics suggested discrimination against, or underutilization of minorities overall or in any specific job category.

74.     As discussed with more particularity in paragraphs 124 to 174 and paragraphs 360 to 407, Defendants' EEO-1's have consistently shown clear underutilization, and strikingly low representation, of minorities in Defendants' workforce.  Defendants' lack of concern or action, despite the obvious underutilization of minorities revealed in their EEO-1's, is indicative of Defendants' standard operating procedure of hiring discrimination, their lack of good faith efforts to comply with Title VII, and their malice or reckless indifference for rights protected by Title VII.

75.     Up until the time that the Commissioner Charge was issued in 2007, Michael Rowland had never instructed anyone in the Human Resources department or any other department to determine if Defendants' EEO-1 reports suggested that Defendants were employing too few minorities overall or in any specific job category.

**Across The Country, Defendants'
Hiring Officials Give Hiring Preference to Whites**

The following are examples of Defendants' discriminatory hiring practices at specific stores.  These examples are illustrative and are not intended to be exhaustive.

76.     Most Bass Pro retail stores are open to the public at least eighty hours a week. Each retail store is managed by a Store General Manager, who supervises the other store managers as well as the managers for Tracker, the boat and marine department, and the managers of restaurants owned by Defendants that are nearby or within the store.  With rare exception, all salaried employees who supervise store departments are characterized as "managers," not "supervisors."  Defendants' stores typically employ over a hundred employees, and sometimes as many as two hundred or more.

77.     Defendants' standard operating procedure of discriminating against qualified Black and Hispanic applicants in hiring is carried out at the store level by managers and hiring officials who encourage staff to mistreat and otherwise discourage minority job applicants, mistreat minority customers, and, at times, even the few minorities employed by Defendants.

### Louisiana

78.     The Bossier City store aggressively enforced the centralized directive to hire by the "Profile," per the stated guidance of owner Morris, by discriminating against Black and Hispanic applicants and favoring Whites.

79.     Ed Billingsley, the Store General Manager in Bossier City, Louisiana, from about 2004 to 2008, instructed a customer service manager not to hire any more Black employees.

80.     Billingsley admitted that he was following Morris's hiring directive of favoring White applicants over minority applicants, in defending his discriminatory practices.

81.     In a meeting with General Manager Billingsley and Assistant General Manager Richard Wisher, the Bossier City store's customer service manager recommended hiring a female applicant in the customer service department.  Wisher objected because the applicant was Black, arguing that the store's "Bubba Clientele" — a stereotyped term reflecting Wisher's assumption that White customers would be prejudiced against Black employees — would have a difficult time accepting a "Black woman" refusing them credit for returned items.  Billingsley did not contradict or countermand Wisher's directive at the meeting.

82.     A former Bossier City Store Human Resources Manager attested that the store was run like a "Good Old Boy" system favoring White males, that personnel documents were routinely doctored to help those favored by management, and that White males were given better

treatment than their non-White counterparts regarding pay, severance, leave, workload, and transfers.

## Iowa

83.     A restaurant manager in Bass Pro's Concord, Iowa, store stated that the hiring managers issued a directive that all hiring had to be done by the Profile.  After the manager asked what the Profile meant, the regional manager explained by pointing out that a Black employee did not fit the Profile, whereas a White employee did.

84.     The restaurant manager complained to Brent Day about the discrimination resulting from use of the Profile, as Day had been involved in hiring the manager.  The restaurant manager who complained was fired shortly after expressing his opposition to the Profile to Day.

## Texas

85.     In 2005, Dianne Raydon, the Store General Manager of Defendants' store in Katy, Texas, told the Store Human Resources Manager that "it was getting a little dark in here. You need to hire some White people."

86.     Dianne Raydon called Black employees "lazy."

87.      Raydon referred to Hispanic customers, employees (and Hispanics in general) as "wetback," "*vato*" (Spanish slang for "dude"), "spic," "Pedro," and "Mexican," and called Blacks "pimps" and "Monkeys."

88.     Raydon directly addressed minorities with racial slurs.  Raydon did not want Blacks hired, she said, because "if we get too many of those, they'll steal us blind."

89.     Between August 2008 and July 2009, a Lead, Danny Wentz, imposed hiring barriers on Black applicants, but not White applicants, by requiring only Black job seekers to take and pass specialized exams that were meant to be training exams for current employees.

90.     The front end, hunting, and fishing and marine managers Danny Wentz, Mark Davison, and Wes Blanton disparaged minority applicants, by admonishing that "if they [minorities] want to dress like that, or act like that, they need to go to Wal-mart or Academy." Wentz also made comments such as "this ain't the street or the ghetto."

**Mississippi**

91.     To discourage Blacks from applying for jobs, Brent Day permitted Pat Renegar, the Store General Manager, to locate a job fair site in Richland, Mississippi, a predominantly White area which is farther from integrated residential neighborhoods than Jackson's more accessible sites.  Defendants' intent was to reduce the number of minority applicants.

92.     A former Pearl, Mississippi, Store Human Resources Manager attested that store and corporate management were "on a mission to just hire Whites."

93.     The Store Human Resources Manager asked why the Pearl job fair was being held in Richland, a remote location. Brent Day, and Renegar, Store General Manager, who organized the event, told the Store Human Resources Manager that they needed to deter "bad applicants" from applying.

94.     When the Store Human Resources Manager pressed Day about having so few Black employees when so many Blacks lived near the Pearl store itself, Day responded, "We get by because they don't apply [at the fair]."

95.     The Store Human Resources Manager observed that, although store managers would say that outdoor experience was a job requirement, many Black applicants were rejected despite having more outdoor experience than Whites who were hired.  The Store Human Resources Manager attested that "We just kick [] out the Black applicants at a much higher rate than we do the White applicants who have less outdoor experience."

96.    At the Pearl job fair and other job fairs, Black applicants had to be very persistent to obtain an interview, let alone a job offer.

97.    As is the case at many other Bass Pro stores, the Pearl store usually did not advertise job vacancies or promotional opportunities either in the media or by posting signs or notices in the stores.

98.    Defendants have often filled vacancies quickly with pre-selected White applicants so that the few Black employees learned about possible vacancies only after those jobs had already been filled.

99.    Ambitious Black employees were fired arbitrarily and stigmatized with slurs, one being called a "cocky nigger" when he sought a promotion.

100.    It was well known among the staff that Pat Renegar, the Pearl Store General Manager, did not want to hire Blacks.

101.    Some of the few Black employees were subjected to racial harassment, such as being called, by both managers and co-workers, "ghetto," "nigger," "lazy," and "boy" by White supervisors and White co-workers.

102.    White managers at the Pearl store would often complain that the store had too many Black employees, even though there were very few.

**North Carolina**

103.    Michael Chopp, the long tenured Store Human Resources Manager in the Charlotte, North Carolina, store, screened out applicants if their physical appearance did not fit the desirable "demographics," a code for race.

104.    On several occasions, Chopp ostensibly "lost" the job applications of minorities. As a consequence, the Store Human Resources Manager provided the White Loss Prevention Manager with job applications from Whites only.

105.    Tim Bloodworth, Operations Manager, and Chopp instructed the White Loss Prevention Manager to watch "them," referring to Black shoppers.

106.    Bloodworth and Ron Kinney, merchandising manager, often used the term "nigger" and "damned niggers" when referring to Black customers in Defendants' Concord, North Carolina, store.

107.    The lone Black manager's store identification card was defaced with the word "nigger."  The Black manager told the top store managers about this and he demanded that an investigation, but Defendants took no action. This same Black manager said White employees frequently used racial epithets such as "nigger" in the lunch room, and directed this epithet toward then-presidential candidate Barack Obama in particular.

**Virginia**

108.    Dominique Terry applied at the Hampton, Virginia, store in 2009 (and he also applied at the Gurnee, Illinois store in 2010).  While waiting in the Hampton store for the opportunity to interview, a White Bass Pro employee approached him and advised him that "niggers aren't allowed to work here."  Bass Pro did not hire Terry.

**Oklahoma**

109.    In 2005, Brian Goforth, the General Manager in Bass Pro's Broken Arrow, Oklahoma, store, criticized a restaurant Assistant General Manager, Gerard Lachance.  His remarks included asking sarcastically, "You got enough niggers hired yet?"

110.    Regarding a Black female employee whose skin condition lightened her complexion, Goforth chastised the restaurant manager by saying, "So, what, we are hiring White niggers, too?"

111.    Goforth also criticized the Assistant General Manager for hiring Hispanics, by accusing him of hiring the "Rio Grande Express," a derogatory comment concerning Hispanics.

112.    A few days after Lachance informed management about the discriminatory hiring practices and comments, he was fired, based on the false contention that he was trying to undermine Goforth's authority in order to get his job.  When Lachance appealed his termination to Brent Day, Day did nothing to investigate the retaliation claim, and Lachance's termination was sustained.

## Indiana

113.    Managers in Defendants' Clarksville, Indiana, store did not disguise their hostility toward Black and Hispanic applicants and customers.

114.    The store General Manager, Mike Benningfield, the Operations Manager, Mike Caudill, and the Store Human Resources Manager, Mary Vaughn, disparaged Hispanics who lived in housing units near the Clarksville store by calling their neighborhood "Little Mexico" and a "whorehouse."  They insisted Mexicans were "dangerous" and whenever something was missing in the store, they would remark that "the Mexicans stole it," despite no evidence of who was responsible for the loss.

115.    Allen Bramer, Lead Loss Prevention agent, stated that "Niggers steal and do not make good employees," and did what he could to assure that minorities would not be hired.

116.    Several times in late 2008, Bramer was seen discarding employment applications just after declaring that the applicant's name "sounded like a 'nigger' name."

117.   Of Hispanics, Bramer said "they should be shot at the border by the border patrol."

118.   Bramer tried to ban Black and Hispanic shoppers by harassing them.  Without any factual basis, he followed them around the store.  Applying the Profile to the sales floor, he claimed minorities "didn't fit the profile of what we want in the store, hunters and fishermen. They look like they are from the projects across the street."

**Alabama**

119.   Before holding a job fair for their Leeds, Alabama, store around October 2008, Defendants had preselected many employees, including White loss prevention associates who had worked in a Bass Pro store for a contracted private security firm before the Leeds store opened.  Though that private security firm employed qualified Black agents who were more experienced than their White counterparts, Defendants chose to recruit only the White agents, and later promoted a White loss prevention agent who was less experienced than the two Black loss prevention staffers.

120.   Despite the fact that many minority applicants applied and that the store was in an area with large Black and Hispanic populations, Defendants hired very few Blacks or Hispanics, and appointed younger, less experienced Whites to managerial and lead positions.   More experienced minority applicants were either not hired or were hired into positions below their level of experience and competence.

121.   In Defendants' Spanish Fort, Alabama store, in late 2010, a White Lead employee accused a recently hired White subordinate of calling two Black PACE employees "worthless niggers."   "PACE" is a term used by Defendants to refer to employees who are available as needed to work, such as for special sales events, holidays, and vacation periods. Without any

- 24 -

documentation and without conducting any witness interviews, the Store Human Resources Manager baselessly concluded that there was merely a "personality conflict" between the lead employee and the newly hired worker.  The Store Human Resources Manager disregarded the allegation of the use of racial slurs.  Thereafter, one of the targets of the slur accused another White co-worker of calling her a "nigger," and, again, without interviewing any witnesses, the Store Human Resources Manager disregarded the complaint because the accused White worker denied making the slurs.

122.    The Human Resources Manager in Defendants' Spanish Fort store, alarmed that more than a few Blacks had been hired, instructed the other department managers, "You can't hire all Blacks."

### Georgia

123.    Despite being located near a large Black population, and having a sizeable percentage of Black applicants, Defendants' Savannah, Georgia, store has had only a small number of Black employees.  Nearby comparable stores, such as Dillard's, Home Depot, Target, and Wal-Mart (some of which are in the same mall as Bass Pro), have had a higher percentage of Black workers.

### REPORTS PREPARED BY DEFENDANTS CONTAINING THE RACIAL COMPOSITION OF THEIR WORKFORCE SHOW A PLAUSIBLE CLAIM OF HIRING DISCRIMINATION AGAINST BLACKS

#### DEFENDANTS' DISCRIMINATORY FAILURE TO HIRE BLACK EMPLOYEES

124.    During EEOC's administrative investigation, Defendants produced hiring data for 24 of their retail stores.

125.    According to the hiring data for 24 of Defendants' retail stores that Defendants produced to EEOC during EEOC's administrative investigation, out of 14,374 employees hired

during the relevant time period, only 995 (6.9%) of the hires were Black.  The time periods for the hiring data varied depending on the store.  For eight of the stores, the data was from January 2005 through May 2007.  For one of the stores, the data was from January 2005 through March 2009.  For the other 15 stores, the data was from January 2005 through July 2009. (Unless otherwise stated, general reference to "employees" encompasses total employment and includes managerial and non-managerial employees.)

126.    According to Defendants, "For the time period from 2005 to the present [April 2012], Bass Pro has had over 60,000 successful applicants."

127.    The Census Bureau produces a Census 2000 Special EEO file for those Federal agencies responsible for monitoring employment practices and enforcing civil rights laws in the workforce, and for all employers, so they can measure their compliance with the laws. The Census 2000 Special EEO Tabulation serves as the primary external benchmark for conducting comparisons between the racial, ethnic, and sex composition of each employer's workforce to its available labor market.

128.    According to the hiring data for 24 of Defendants' retail stores that Defendants produced to EEOC during EEOC's administrative investigation, 23 (95.8%) of the 24 stores hired a lower percentage of Black employees compared to the representation rate of Black employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

> a.    Defendants' Bossier City, Louisiana, store, where out of 255 employees hired from January 2005 through May 2007, only 26 (10.2%) were Black, compared to a representation rate of 26.7% Black employees in the county.

b.    Defendants' Broken Arrow, Oklahoma, store, where out of 1,220 employees hired from January 2005 through July 2009, only 25 (2%) were Black, compared to a representation rate of 7.8% Black employees in the county.

c.    Defendants' Cincinnati, Ohio, store, where out of 285 employees hired from January 2005 through May 2007, only 11 (3.9%) were Black, compared to a representation rate of 13.3% Black employees in the county.

d.    Defendants' Clarksville, Indiana, store, where out of 1,395 employees hired from January 2005 through July 2009, only 23 (1.6%) were Black, compared to a representation rate of 5.5% Black employees in the county.

e.    Defendants' Dania, Florida, store, where out of 1,251 employees hired from January 2005 through July 2009, only 150 (12%) were Black, compared to a representation rate of 18.5% Black employees in the county.

f.    Defendants' Destin, Florida, store, where out of 430 employees hired from January 2005 through July 2009, only 3 (.7%) were Black, compared to a representation rate of 7.6% Black employees in the county.

g.    Defendants' Duluth, Georgia, store, where out of 640 employees hired from January 2005 through July 2009, only 37 (5.8%) were Black, compared to a representation rate of 15.7% Black employees in the county.

h.    Defendants' Garland, Texas, store, where out of 216 employees hired from January 2005 through May 2007, only 7 (3.2%) were Black, compared to a representation rate of 14.7% Black employees in the county.

i.      Defendants' Grapevine, Texas, store, where out of 285 employees hired from January 2005 through May 2007, only 2 (.7%) were Black, compared to a representation rate of 10.1% Black employees in the county.

j.      Defendants' Hampton, Virginia, store, where out of 786 employees hired from January 2005 through July 2009, only 136 (17.3%) were Black, compared to a representation rate of 37.2 % Black employees in the county.

k.      Defendants' Hanover, Maryland, store, where out of 101employees hired from January 2005 through May 2007, only 4 (4%) were Black, compared to a representation rate of 14.6% Black employees in the county.

l.      Defendants' Katy, Texas, store, where out of 306 employees hired from January 2005 through May 2007, only 8 (2.6%) were Black, compared to a representation rate of 15% Black employees in the county.

m.      Defendants' Las Vegas, Nevada, store, where out of 867 employees hired from January 2005 through July 2009, only 30 (3.5%) were Black, compared to a representation rate of 7.4% Black employees in the county.

n.      Defendants' Macon, Georgia, store, where out of 250 employees hired from January 2005 through May 2007, only 48 (19.2%) were Black, compared to a representation rate of 33.2% Black employees in the county.

o.      Defendants' Memphis, Tennessee, store, where out of 428 employees hired from January 2005 through July 2009, only 35 (8.2%) were Black, compared to a representation rate of 36.4% Black employees in the county.

p.      Defendants' Miami, Florida, store, where out of 367 employees hired from January 2005 through July 2009, only 11 (3%) were Black, compared to a representation rate of 15.2% Black employees in the county.

q.      Defendants' Myrtle Beach, South Carolina, store, where out of 783 employees hired from January 2005 through July 2009, only 83 (10.6%) were Black, compared to a representation rate of 15.6% Black employees in the county.

r.      Defendants' Nashville, Tennessee, store, where out of 839 employees hired from January 2005 through July 2009, only 51 (6.1%) were Black, compared to a representation rate of 15.7% Black employees in the county.

s.      Defendants' Oklahoma City, Oklahoma, store, where out of 761 employees hired from January 2005 through July 2009, only 33 (4.3%) were Black, compared to a representation rate of 9.8% Black employees in the county.

t.      Defendants' Orlando, Florida, store, where out of 946 employees hired from January 2005 through July 2009, only 53 (5.6%) were Black, compared to a representation rate of 12.1% Black employees in the county.

u.      Defendants' Saint Charles, Missouri, store, where out of 643 employees hired from January 2005 through July 2009, only 15 (2.3%) were Black, compared to a representation rate of 4.5% Black employees in the county.

v.      Defendants' San Antonio, Texas, store, where out of 273 employees hired from January 2005 through May 2007, only 4 (1.5%) were Black, compared to a representation rate of 6% Black employees in the county.

w.      Defendants' Savannah, Georgia, store, where out of 538 employees hired from January 2005 through March 2009, only 101 (18.8%) were Black, compared to a representation rate of 30.1% Black employees in the county.

129.    Comparing the number of Black employees hired (as specified in the hiring data for 24 of Defendants' retail stores that Defendants produced to EEOC during EEOC's administrative investigation) to the representation rate of Black employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 1,097 Black employees.

### Defendants' Discriminatory Failure to Hire
### Black Employees at Defendants' Retail Stores in 2007

130.    According to Defendants' 2007 EEO-1 reports, out of a total employment of 8,186 employees in 43 retail stores, only 365 (4.5%) employees were Black.

131.    According to Defendants' 2007 EEO-1 reports, 41 (95.3%) of Defendants' 43 retail stores had a lower percentage of Black employees compared to the representation rate of Black in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.      Defendants' Auburn, New York, store, where out of 153 employees, not one was Black, compared to a representation rate of 1% Black employees in the county.

b.      Defendants' Auburn Hills, Michigan, store, where out of 153 employees, only 3 (2%) were Black, compared to a representation rate of 11.9% Black employees in the county.

c.      Defendants' Bolingbrook, Illinois, store, where out of 195 employees, only 9 (4.6%) were Black, compared to a representation rate of 8.7% Black employees in the county.

d.      Defendants' Bossier City, Louisiana, store, where out of 195 employees, only 15 (7.7%) were Black, compared to a representation rate of 26.7% Black employees in the county.

e.      Defendants' Branson, Missouri, store, where out of 109 employees, not one was Black, compared to a representation rate of .2% Black employees in the county.

f.      Defendants' Broken Arrow, Oklahoma, store, where out of 177 employees, only 1 (.6%) was Black, compared to a representation rate of 7.8% Black employees in the county.

g.      Defendants' Cincinnati, Ohio, store, where out of 229 employees, only 6 (2.6%) were Black, compared to a representation rate of 13.3% Black employees in the county.

h.      Defendants' Clarksville, Indiana, store, where out of 272 employees, only 3 (1.1%) were Black, compared to a representation rate of 5.5% Black employees in the county.

i.      Defendants' Columbia, Missouri, store, where out of 125 employees, not one was Black, compared to a representation rate of 6.4% Black employees in the county.

j.      Defendants' Concord, North Carolina, store, where out of 242 employees, only 11 (4.5%) were Black, compared to a representation rate of 12.4% Black employees in the county.

k.      Defendants' Council Bluffs, Iowa, store, where out of 177 employees, not one was Black, compared to a representation rate of 1.6% Black employees in the county.

l.      Defendants' Dania, Florida, store, where out of 255 employees, only 12 (4.7%) were Black, compared to a representation rate of 18.5% Black employees in the county.

m.      Defendants' Denver, Colorado, store, where out of 241 employees, only seven (2.9%) were Black, compared to a representation rate of 6.4% Black employees in the county.

n.      Defendants' Destin, Florida, store, where out of 108 employees, only one (.9%) was Black, compared to a representation rate of 7.6% Black employees in the county.

o.      Defendants' Duluth Georgia, store, where out of 208 employees, only seven (3.4%) were Black, compared to a representation rate of 15.7% Black employees in the county.

p.      Defendants' Ft. Myers, Florida, store, where out of 190 employees, only five (2.6%) were Black, compared to a representation rate of 5.9% Black employees in the county.

q.      Defendants' Garland, Texas, store, where out of 139 employees, only one (.7%) was Black, compared to a representation rate of 14.7% Black employees in the county.

r.      Defendants' Grapevine, Texas, store, where out of 300 employees, only seven (2.3%) were Black, compared to a representation rate of 10.1% Black employees in the county.

s.      Defendants' Gurnee, Illinois, store, where out of 211 employees, only nine (4.3%) were Black, compared to a representation rate of 6% Black employees in the county.

t.      Defendants' Hampton, Virginia, store, where out of 164 employees, only 23 (14%) were Black, compared to a representation rate of 37.2% Black employees in the county.

u.      Defendants' Hanover, Maryland, store, where out of 172 employees, only 7 (4.1%) were Black, compared to a representation rate of 14.6% Black employees in the county.

v.      Defendants' Harrisburg, Pennsylvania, store, where out of 240 employees, only 11 (4.6%) were Black, compared to a representation rate of 8.4% Black employees in the county.

w.      Defendants' Islamorada, Florida, store, where out of 63 employees, only three (4.8%) were Black, compared to a representation rate of 5.3% Black employees in the county.

x.      Defendants' Katy, Texas, store, where out of 143 employees, only three (2.1%) were Black, compared to a representation rate of 15% Black employees in the county.

y.      Defendants' Las Vegas, Nevada, store, where out of 210 employees, only five (2.4%) were Black, compared to a representation rate of 7.4% Black employees in the county.

z.      Defendants' Macon, Georgia, store, where out of 156 employees, only thirty-four (21.8%) were Black, compared to a representation rate of 33.2% Black employees in the county.

aa.     Defendants' Memphis, Tennessee, store, where out of 143 employees, only seven (4.9%) were Black, compared to a representation rate of 36.4% Black employees in the county.

bb.     Defendants' Mesa, Arizona, store, where out of 187 employees, only one (.5%) was Black, compared to a representation rate of 3.2% Black employees in the county.

cc.     Defendants' Miami, Florida, store, where out of 220 employees, only ten (4.5%) were Black, compared to a representation rate of 15.2% Black employees in the county.

dd.     Defendants' Myrtle Beach, South Carolina, store, where out of 151 employees, only thirteen (8.6%) were Black, compared to a representation rate of 15.6% Black employees in the county.

ee.     Defendants' Nashville, Tennessee, store, where out of 200 employees, only six (3%) were Black, compared to a representation rate of 15.7% Black employees in the county.

ff.     Defendants' Oklahoma City, Oklahoma, store, where out of 155 employees, only four (2.6%) were Black, compared to a representation rate of 9.8% Black employees in the county.

gg.     Defendants' Olathe, Kansas, store, where out of 174 employees, only three (1.7%) were Black, compared to a representation rate of 5.3% Black employees in the county.

hh.     Defendants' Orlando, Florida, store, where out of 277 employees, only fifteen (5.4%) were Black, compared to a representation rate of 12.1% Black employees in the county.

ii.     Defendants' Pearl, Mississippi, store, where out of 164 employees, only fourteen (18.5%) were Black, compared to a representation rate of 26.8% Black employees in the county.

jj.     Defendants' Portage, Indiana, store, where out of 200 employees, only four (2%) were Black, compared to a representation rate of 3.7% Black employees in the county.

kk.     Defendants' Prattville, Alabama, store, where out of 193 employees, only 17 (8.8%) were Black, compared to a representation rate of 14.2% Black employees in the county.

ll.     Defendants' Rancho Cucamonga, California, store, where out of 305 employees, only 16 (5.2%) were Black, compared to a representation rate of 6.8% Black employees in the county.

mm.    Defendants' Saint Charles, Missouri, store, where out of 224 employees, only nine (4%) were Black, compared to a representation rate of 4.5% Black employees in the county.

nn.    Defendants' San Antonio, Texas, store, where out of 197 employees, only one (.5%) was Black, compared to a representation rate of 6% Black employees in the county.

oo.    Defendants' Savannah, Georgia, store, where out of 147 employees, only 21 (14.3%) were Black, compared to a representation rate of 30.1% Black employees in the county.

132.    Comparing the number of Black employees employed by Defendants (as specified in Defendants' 2007 EEO-1 reports for 43 retail stores) to the representation rate of Black employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 589 Black employees in 2007.

**Defendants' Discriminatory Failure to Hire**
**Black Employees at Defendants' Retail Stores in 2008**

133.    According to Defendants' 2008 EEO-1 reports, out of a total employment of 8,410 employees in 49 retail stores, only 379 (4.5%) employees were Black.

134.    According to Defendants' 2008 EEO-1 reports, 47 (95.9%) of Defendants' 49 retail stores had a lower percentage of Black employees compared to the representation rate of Black employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.      Defendants' Ashland, Virginia, store, where out of 171 employees, only 13 (7.6%) were Black, compared to a representation rate of 16.2% Black employees in the county.

b.      Defendants' Auburn, New York, store, where out of 135 employees, not one was Black, compared to a representation rate of 1% Black employees in the county.

c.      Defendants' Auburn Hills, Michigan, store, where out of 148 employees, only 2 (1.4%) were Black, compared to a representation rate of 11.9% Black employees in the county.

d.      Defendants' Bolingbrook, Illinois, store, where out of 177 employees, only 10 (5.6%) were Black, compared to a representation rate of 8.7% Black employees in the county.

e.      Defendants' Bossier City, Louisiana, store, where out of 171 employees, only 14 (8.2%) were Black, compared to a representation rate of 26.7% Black employees in the county.

f.      Defendants' Branson, Missouri, store, where out of 101 employees, not one was Black, compared to a representation rate of .2% Black employees in the county.

g.      Defendants' Broken Arrow, Oklahoma, store, where out of 212 employees, only 2 (.9%) were Black, compared to a representation rate of 7.8% Black employees in the county.

h.      Defendants' Cincinnati, Ohio, store, where out of 222 employees, only seven (3.2%) were Black, compared to a representation rate of 13.3% Black employees in the county.

i.      Defendants' Clarksville, Indiana, store, where out of 223 employees, only 2 (.09%) were Black, compared to a representation rate of 5.5% Black employees in the county.

j.      Defendants' Columbia, Missouri, store, where out of 98 employees, not one was Black, compared to a representation rate of 6.4% Black employees in the county.

k.      Defendants' Concord, North Carolina, store, where out of 196 employees, only nine (4.6%) were Black, compared to a representation rate of 12.4% Black employees in the county.

l.      Defendants' Council Bluffs, Iowa, store, where out of 165 employees, only one (.6%) was Black, compared to a representation rate of 1.6% Black employees in the county.

m.      Defendants' Dania, Florida, store, where out of 229 employees, only 14 (6.1%) were Black, compared to a representation rate of 18.5% Black employees in the county.

n.      Defendants' Denham Springs, Louisiana, store, where out of 166 employees, only 4 (2.4%) were Black, compared to a representation rate of 9.5% Black employees in the county.

o.      Defendants' Denver, Colorado, store, where out of 198 employees, only 5 (2.5%) were Black, compared to a representation rate of 6.4% Black employees in the county.

p.      Defendants' Destin, Florida, store, where out of 99 employees, only 1 (1%) were Black, compared to a representation rate of 7.6% Black employees in the county.

q.      Defendants' Duluth, Georgia, store, where out of 193 employees, only six (3.1%) were Black, compared to a representation rate of 15.7% Black employees in the county.

r.      Defendants' Foxborough, Massachusetts, store, where out of 207 employees, only 3 (1.4%) were Black, compared to a representation rate of 3.7% Black employees in the county.

s.      Defendants' Ft. Myers, Florida, store, where out of 172 employees, only 2 (1.2%) were Black, compared to a representation rate of 5.9% Black employees in the county.

t.      Defendants' Garland, Texas, store, where out of 123 employees, only one (.8%) was Black, compared to a representation rate of 14.7% Black employees in the county.

u.      Defendants' Grapevine, Texas, store, where out of 291 employees, only eight (2.7%) were Black, compared to a representation rate of 10.1% Black employees in the county.

v.      Defendants' Gurnee, Illinois, store, where out of 175 employees, only seven (4%) were Black, compared to a representation rate of 6% Black employees in the county.

w.      Defendants' Hampton, Virginia, store, where out of 165 employees, only 34 (20.6%) were Black, compared to a representation rate of 37.2% Black employees in the county.

x.      Defendants' Hanover, Maryland, store, where out of 221 employees, only 17 (7.7%) were Black, compared to a representation rate of 14.6% Black employees in the county.

y.      Defendants' Harrisburg, Pennsylvania, store, where out of 234 employees, only 12 (5.1%) were Black, compared to a representation rate of 8.4% Black employees in the county.

z.      Defendants' Independence, Missouri, store, where out of 166 employees, only one (.6%) was Black, compared to a representation rate of 13% Black employees in the county.

aa.     Defendants' Islamorada, Florida, store, where out of 61 employees, only 3 (4.9%) were Black, compared to a representation rate of 5.3% Black employees in the county.

bb.     Defendants' Katy, Texas, store, where out of 129 employees, only six (4.7%) were Black, compared to a representation rate of 15% Black employees in the county.

cc.     Defendants' Kodak, Tennessee, store, where out of 195 employees, only one (.5%) was Black, compared to a representation rate of .9% Black employees in the county.

dd.     Defendants' Las Vegas, Nevada, store, where out of 195 employees, only 3 (1.5%) were Black, compared to a representation rate of 7.4% Black employees in the county.

ee.     Defendants' Macon, Georgia, store, where out of 158 employees, only 21 (13.3%) were Black, compared to a representation rate of 33.2% Black employees in the county.

ff.     Defendants' Memphis, Tennessee, store, where out of 125 employees, only ten (8%) were Black, compared to a representation rate of 36.4% Black employees in the county.

gg.     Defendants' Mesa, Arizona, store, where out of 154 employees, only 2 (1.3%) were Black, compared to a representation rate of 3.2% Black employees in the county.

hh.     Defendants' Miami, Florida, store, where out of 119 employees, only one (.8%) was Black, compared to a representation rate of 15.2% Black employees in the county.

ii.     Defendants' Myrtle Beach, South Carolina, store, where out of 136 employees, only 13 (9.6%) were Black, compared to a representation rate of 15.6% Black employees in the county.

jj.   Defendants' Nashville, Tennessee, store, where out of 196 employees, only 5 (2.6%) were Black, compared to a representation rate of 15.7% Black employees in the county.

kk.   Defendants' Oklahoma City, Oklahoma, store, where out of 130 employees, only 7 (5.4%) were Black, compared to a representation rate of 9.8% Black employees in the county.

ll.   Defendants' Olathe, Kansas, store, where out of 156 employees, only four (2.6%) were Black, compared to a representation rate of 5.3% Black employees in the county.

mm.   Defendants' Orlando, Florida, store, where out of 224 employees, only 14 (6.3%) were Black, compared to a representation rate of 12.1% Black employees in the county.

nn.   Defendants' Pearl, Mississippi, store, where out of 153 employees, only 12 (7.8%) were Black, compared to a representation rate of 26.8% Black employees in the county.

oo.   Defendants' Portage, Indiana, store, where out of 157 employees, only one (.6%) was Black, compared to a representation rate of 3.7% Black employees in the county.

pp.   Defendants' Prattville, Alabama, store, where out of 187 employees, only nine (4.8%) were Black, compared to a representation rate of 14.2% Black employees in the county.

qq.     Defendants' Rancho Cucamonga, California, store, where out of 260 employees, only 13 (5%) were Black, compared to a representation rate of 6.8% Black employees in the county.

rr.     Defendants' Rossford, Ohio, store, where out of 216 employees, only three (1.4%) were Black, compared to a representation rate of 4.1% Black employees in the county.

ss.     Defendants' San Antonio, Texas, store, where out of 179 employees, only one (.6%) was Black, compared to a representation rate of 6% Black employees in the county.

tt.     Defendants' Savannah, Georgia, store, where out of 118 employees, only 24 (20.3%) were Black, compared to a representation rate of 30.1% Black employees in the county.

uu.     Defendants' Spanish Fort, Alabama, store, where out of 197 employees, only 21 (10.7%) were Black, compared to a representation rate of 5.3% Black employees in the county.

135.    Comparing the number of Black employees employed by Defendants (as specified in Defendants' 2008 EEO-1 reports for 49 retail stores) to the representation rate of Black employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 586 Black employees in 2008.

**Defendants' Discriminatory Failure to Hire**
**Black Employees at Defendants' Retail Stores in 2009**

136.    According to Defendants' 2009 EEO-1 reports, out of a total employment of 8,561 employees in 52 retail stores, only 356 (4.2%) employees were Black.

137.     According to Defendants' 2009 EEO-1 reports, 48 (92.3%) of Defendants' 52 retail stores had a lower percentage of Black employees compared to the representation rate of Black employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.      Defendants' Altoona, Iowa, store, where out of 208 employees, only one (.5%) was Black, compared to a representation rate of 2.9% Black employees in the county.

b.      Defendants' Ashland, Virginia, store, where out of 202 employees, only 15 (7.4%) were Black, compared to a representation rate of 16.2% Black employees in the county.

c.      Defendants' Auburn, New York, store, where out of 144 employees, not one was Black, compared to a representation rate of 1% Black employees in the county.

d.      Defendants' Auburn Hills, Michigan, store, where out of 137 employees, only two (1.5%) were Black, compared to a representation rate of 11.9% Black employees in the county.

e.      Defendants' Bolingbrook, Illinois, store, where out of 168 employees, only six (3.6%) were Black, compared to a representation rate of 8.7% Black employees in the county.

f.      Defendants' Bossier City, Louisiana, store, where out of 166 employees, only 17 (10.2%) were Black, compared to a representation rate of 26.7% Black employees in the county.

g.      Defendants' Branson, Missouri, store, where out of 97 employees, not one was Black, compared to a representation rate of .2% Black employees in the county.

h.      Defendants' Broken Arrow, Oklahoma, store, where out of 210 employees, only four (1.9%) were Black, compared to a representation rate of 7.8% Black employees in the county.

i.      Defendants' Cincinnati, Ohio, store, where out of 220 employees, only six (2.7%) were Black, compared to a representation rate of 13.3% Black employees in the county.

j.      Defendants' Clarksville, Indiana, store, where out of 223 employees, only one (.4%) was Black, compared to a representation rate of 5.5% Black employees in the county.

k.      Defendants' Columbia, Missouri, store, where out of 74 employees, not one was Black, compared to a representation rate of 6.4% Black employees in the county.

l.      Defendants' Concord, North Carolina, store, where out of 189 employees, only nine (4.8%) were Black, compared to a representation rate of 12.4% Black employees in the county.

m.      Defendants' Council Bluffs, Iowa, store, where out of 172 employees, not one was Black, compared to a representation rate of 1.6% Black employees in the county.

n.      Defendants' Dania, Florida, store, where out of 233 employees, only nine (3.9%) were Black, compared to a representation rate of 18.5% Black employees in the county.

o.      Defendants' Denham Springs, Louisiana, store, where out of 160 employees, only two (1.3%) were Black, compared to a representation rate of 9.5% Black employees in the county.

p.      Defendants' Denver, Colorado, store, where out of 216 employees, only eight (3.7%) were Black, compared to a representation rate of 6.4% Black employees in the county.

q.      Defendants' Destin, Florida, store, where out of 100 employees, only two (2%) were Black, compared to a representation rate of 7.6% Black employees in the county.

r.      Defendants' Duluth, Georgia, store, where out of 182 employees, only four (2.2%) were Black, compared to a representation rate of 15.7% Black employees in the county.

s.      Defendants' Foxborough, Massachusetts, store, where out of 188 employees, only one (.5%) was Black, compared to a representation rate of 3.7% Black employees in the county.

t.      Defendants' Ft. Myers, Florida, store, where out of 161 employees, only one (.6%) was Black, compared to a representation rate of 5.9% Black employees in the county.

u.      Defendants' Garland, Texas, store, where out of 115 employees, only two (1.7%) were Black, compared to a representation rate of 14.7% Black employees in the county.

v.      Defendants' Grapevine, Texas, store, where out of 242 employees, only five (2.1%) were Black, compared to a representation rate of 10.1% Black employees in the county.

w.      Defendants' Gurnee, Illinois, store, where out of 144 employees, only four (2.8%) were Black, compared to a representation rate of 6% Black employees in the county.

x.      Defendants' Hampton, Virginia, store, where out of 145 employees, only 34 (23.4%) were Black, compared to a representation rate of 37.2% Black employees in the county.

y.      Defendants' Hanover, Maryland, store, where out of 214 employees, only nine (4.2%) were Black, compared to a representation rate of 14.6% Black employees in the county.

z.      Defendants' Harrisburg, Pennsylvania, store, where out of 196 employees, only seven (3.6%) were Black, compared to a representation rate of 8.4% Black employees in the county.

aa.     Defendants' Independence, Missouri, store, where out of 149 employees, only one (.7%) was Black, compared to a representation rate of 13% Black employees in the county.

bb.     Defendants' Islamorada, Florida, store, where out of 55 employees, only two (3.6%) were Black, compared to a representation rate of 5.3% Black employees in the county.

cc.     Defendants' Katy, Texas, store, where out of 125 employees, only eight (6.4%) were Black, compared to a representation rate of 15% Black employees in the county.

dd.     Defendants' Las Vegas, Nevada, store, where out of 164 employees, only three (1.8%) were Black, compared to a representation rate of 7.4% Black employees in the county.

ee.     Defendants' Leeds, Alabama, store, where out of 218 employees, only twelve (5.5%) were Black, compared to a representation rate of 26.9% Black employees in the county.

ff.     Defendants' Macon, Georgia, store, where out of 137 employees, only 21 (15.3%) were Black, compared to a representation rate of 33.2% Black employees in the county.

gg.     Defendants' Manteca, California, store, where out of 186 employees, only six (3.2%) were Black, compared to a representation rate of 4.5% Black employees in the county.

hh.     Defendants' Memphis, Tennessee, store, where out of 131 employees, only seven (5.3%) were Black, compared to a representation rate of 36.4% Black employees in the county.

ii.     Defendants' Miami, Florida, store, where out of 112 employees, only one (.9%) was Black, compared to a representation rate of 15.2% Black employees in the county.

jj.     Defendants' Myrtle Beach, South Carolina, store, where out of 131 employees, only nine (6.9%) were Black, compared to a representation rate of 15.6% Black employees in the county.

kk.     Defendants' Nashville, Tennessee, store, where out of 181 employees, only one (.6%) was Black, compared to a representation rate of 15.7% Black employees in the county.

ll.     Defendants' Oklahoma City, Oklahoma, store, where out of 146 employees, only four (2.7%) were Black, compared to a representation rate of 9.8% Black employees in the county.

mm.     Defendants' Olathe, Kansas, store, where out of 128 employees, only three (2.3%) were Black, compared to a representation rate of 5.3% Black employees in the county.

nn.     Defendants' Orlando, Florida, store, where out of 214 employees, only fourteen (6.5%) were Black, compared to a representation rate of 12.1% Black employees in the county.

oo.     Defendants' Pearl, Mississippi, store, where out of 159 employees, only twelve (7.5%) were Black, compared to a representation rate of 26.8% Black employees in the county.

pp.     Defendants' Portage, Indiana, store, where out of 144 employees, only three (2.1%) were Black, compared to a representation rate of 3.7% Black employees in the county.

qq.     Defendants' Prattville, Alabama, store, where out of 148 employees, only seven (4.7%) were Black, compared to a representation rate of 14.2% Black employees in the county

rr.     Defendants' Rancho Cucamonga, California, store, where out of 260 employees, only 15 (5.8%) were Black, compared to a representation rate of 6.8% Black employees in the county.

ss.     Defendants' Rossford, Ohio, store, where out of 167 employees, only one (.6%) was Black, compared to a representation rate of 4.1% Black employees in the county.

tt.     Defendants' San Antonio, Texas, store, where out of 154 employees, only one (.6%) was Black, compared to a representation rate of 6% Black employees in the county.

uu.     Defendants' Savannah, Georgia, store, where out of 117 employees, only 26 (22.2%) were Black, compared to a representation rate of 30.1% Black employees in the county.

vv.     Defendants' Spanish Fort, Alabama, store, where out of 177 employees, only 14 (7.9%) were Black, compared to a representation rate of 11.2% Black employees in the county.

138.   Comparing the number of Black employees employed by Defendants (as specified in Defendants' 2009 EEO-1 reports for 52 retail stores) to the representation rate of Black

employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 634 Black employees in 2009.

### Defendants' Discriminatory Failure to Hire
### Black Employees at Defendants' Retail Stores in 2010

139.    According to Defendants' 2010 EEO-1 reports, out of a total employment of 8,839 employees in 52 retail stores, only 381 (4.3%) employees were Black.

140.    According to Defendants' 2010 EEO-1 reports, 50 (96.2%) of Defendants' 52 retail stores had a lower percentage of Black employees compared to the representation rate of Black employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

> a.    Defendants' Altoona, Iowa, store, where out of 189 employees, not one was Black, compared to a representation rate of 2.9% Black employees in the county.

> b.    Defendants' Ashland, Virginia, store, where out of 190 employees, only 19 (10%) were Black, compared to a representation rate of 16.2% Black employees in the county.

> c.    Defendants' Auburn, New York, store, where out of 139 employees, not one was Black, compared to a representation rate of 1% Black employees in the county.

> d.    Defendants' Auburn Hills, Michigan, store, where out of 156 employees, only 2 (1.3%) were Black, compared to a representation rate of 11.9% Black employees in the county.

e.      Defendants' Bolingbrook, Illinois, store, where out of 170 employees, only 8 (4.7%) were Black, compared to a representation rate of 8.7% Black employees in the county.

f.      Defendants' Bossier City, Louisiana, store, where out of 173 employees, only 17 (9.8%) were Black, compared to a representation rate of 26.7% Black employees in the county.

g.      Defendants' Branson, Missouri, store, where out of 105 employees, not one was Black, compared to a representation rate of .2% Black employees in the county.

h.      Defendants' Broken Arrow, Oklahoma, store, where out of 215 employees, only three (1.4%) were Black, compared to a representation rate of 7.8% Black employees in the county.

i.      Defendants' Cincinnati, Ohio, store, where out of 207 employees, only 7 (3.4%) were Black, compared to a representation rate of 13.3% Black employees in the county.

j.      Defendants' Clarksville, Indiana, store, where out of 234 employees, only one (.4%) was Black, compared to a representation rate of 5.5% Black employees in the county.

k.      Defendants' Columbia, Missouri, store, where out of 98 employees, only two (2%) were Black, compared to a representation rate of 6.4% Black employees in the county.

l.      Defendants' Concord, North Carolina, store, where out of 203 employees, only 10 (4.9%) were Black, compared to a representation rate of 12.4% Black employees in the county.

m.      Defendants' Council Bluffs, Iowa, store, where out of 190 employees, not one was Black, compared to a representation rate of 1.6% Black employees in the county.

n.      Defendants' Dania, Florida, store, where out of 227 employees, only nine (4%) were Black, compared to a representation rate of 18.5% Black employees in the county.

o.      Defendants' Denham Springs, Louisiana, store, where out of 163 employees, only five (3.1%) were Black, compared to a representation rate of 9.5% Black employees in the county.

p.      Defendants' Denver, Colorado, store, where out of 206 employees, only seven (3.4%) were Black, compared to a representation rate of 6.4% Black employees in the county.

q.      Defendants' Destin, Florida, store, where out of 106 employees, only two (1.9%) were Black, compared to a representation rate of 7.6% Black employees in the county.

r.      Defendants' Duluth, Georgia, store, where out of 183 employees, only six (3.3%) were Black, compared to a representation rate of 15.7% Black employees in the county.

s.      Defendants' Foxborough, Massachusetts, store, where out of 190 employees, only one (.5%) was Black, compared to a representation rate of 3.7% Black employees in the county.

t.      Defendants' Ft. Myers, Florida, store, where out of 157 employees, only two (1.3%) were Black, compared to a representation rate of 5.9% Black employees in the county.

u.      Defendants' Garland, Texas, store, where out of 134 employees, only three (2.2%) were Black, compared to a representation rate of 14.7% Black employees in the county.

v.      Defendants' Grapevine, Texas, store, where out of 290 employees, only eight (2.8%) were Black, compared to a representation rate of 10.1% Black employees in the county.

w.      Defendants' Gurnee, Illinois, store, where out of 159 employees, only three (1.9%) were Black, compared to a representation rate of 6% Black employees in the county.

x.      Defendants' Hampton, Virginia, store, where out of 155 employees, only 37 (23.9%) were Black, compared to a representation rate of 37.2% Black employees in the county.

y.      Defendants' Hanover, Maryland, store, where out of 225 employees, only 10 (4.4%) were Black, compared to a representation rate of 14.6% Black employees in the county.

z.      Defendants' Harrisburg, Pennsylvania, store, where out of 203 employees, only ten (4.9%) were Black, compared to a representation rate of 8.4% Black employees in the county.

aa.      Defendants' Independence, Missouri, store, where out of 153 employees, not one was Black, compared to a representation rate of 13% Black employees in the county.

bb.      Defendants' Islamorada, Florida, store, where out of 57 employees, only one (1.8%) was Black, compared to a representation rate of 5.3% Black employees in the county.

cc.      Defendants' Katy, Texas, store, where out of 120 employees, only six (5%) were Black, compared to a representation rate of 15% Black employees in the county.

dd.      Defendants' Las Vegas, Nevada, store, where out of 155 employees, only five (3.2%) were Black, compared to a representation rate of 7.4% Black employees in the county.

ee.      Defendants' Leeds, Alabama, store, where out of 182 employees, only 11 (6%) were Black, compared to a representation rate of 26.9% Black employees in the county.

ff.      Defendants' Macon, Georgia, store, where out of 155 employees, only 31 (20%) were Black, compared to a representation rate of 33.2% Black employees in the county.

gg.     Defendants' Manteca, California, store, where out of 225 employees, only 4 (1.8%) were Black, compared to a representation rate of 4.5% Black employees in the county.

hh.     Defendants' Memphis, Tennessee, store, where out of 136 employees, only 7 (5.1%) were Black, compared to a representation rate of 36.4% Black employees in the county.

ii.     Defendants' Mesa, Arizona, store, where out of 154 employees, only three (1.9) were Black, compared to a representation rate of 3.2% Black employees in the county.

jj.     Defendants' Miami, Florida, store, where out of 124 employees, only two (1.6%) were Black, compared to a representation rate of 15.2% Black employees in the county.

kk.     Defendants' Myrtle Beach, South Carolina, store, where out of 135 employees, only 13 (9.6%) were Black, compared to a representation rate of 15.6% Black employees in the county.

ll.     Defendants' Nashville, Tennessee, store, where out of 180 employees, only one (.6%) was Black, compared to a representation rate of 15.7% Black employees in the county.

mm.    Defendants' Oklahoma City, Oklahoma, store, where out of 152 employees, only two (1.3%) were Black, compared to a representation rate of 9.8% Black employees in the county.

nn.     Defendants' Olathe, Kansas, store, where out of 134 employees, only three (2.2%) were Black, compared to a representation rate of 5.3% Black employees in the county.

oo.     Defendants' Orlando, Florida, store, where out of 205 employees, only 14 (6.8%) were Black, compared to a representation rate of 12.1% Black employees in the county.

pp.     Defendants' Pearl, Mississippi, store, where out of 149 employees, only nine (6%) were Black, compared to a representation rate of 26.8% Black employees in the county.

qq.     Defendants' Portage, Indiana, store, where out of 146 employees, only three (2.1%) were Black, compared to a representation rate of 3.7% Black employees in the county.

rr.     Defendants' Prattville, Alabama, store, where out of 130 employees, only seven (5.4%) were Black, compared to a representation rate of 14.2% Black employees in the county.

ss.     Defendants' Rancho Cucamonga, California, store, where out of 281 employees, only 14 (5%) were Black, compared to a representation rate of 6.8% Black employees in the county.

tt.     Defendants' Rossford, Ohio, store, where out of 167 employees, only two (1.2%) were Black, compared to a representation rate of 4.1% Black employees in the county.

uu.      Defendants' Saint Charles, Missouri, store, where out of 190 employees, only eight (4.2%) were Black, compared to a representation rate of 4.5% Black employees in the county.

vv.      Defendants' San Antonio, Texas, store, where out of 192 employees, only one (.5%) was Black, compared to a representation rate of 6% Black employees in the county.

ww.      Defendants' Savannah, Georgia, store, where out of 113 employees, only 24 (21.2%) were Black, compared to a representation rate of 30.1% Black employees in the county.

xx.      Defendants' Spanish Fort, Alabama, store, where out of 192 employees, only 14 (7.3%) were Black, compared to a representation rate of 11.2% Black employees in the county.

141.      Comparing the number of Black employees employed by Defendants (as specified in Defendants' 2010 EEO-1 reports for 52 retail stores) to the representation rate of Black employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 629 Black employees in 2010.

### DEFENDANTS' DISCRIMINATORY FAILURE TO HIRE BLACK MANAGERS

### Defendants' Discriminatory Failure to Hire Black Managers at Defendants' Retail Stores in 2007

142.      According to Defendants' 2007 EEO-1 reports, out of a total employment of 8,186 employees in 43 retail stores, 606 (7.4%) employees were managers.

143.      According to Defendants' 2007 EEO-1 reports, out of 606 managers in Defendants' 43 retail stores, only 14 (2.3%) were Black.

144.     According to Defendants' 2007 EEO-1 reports, 36 (83.7%) of Defendants' 43 retail stores had a lower percentage of Black managers compared to the representation rate of Black managers in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

        a.     Defendants' Auburn, New York, store, where out of 12 managers, not one was Black, compared to a representation rate of .6% Black managers in the county.

        b.     Defendants' Auburn Hills, Michigan, store, where out of 13 managers, not one was Black, compared to a representation rate of 7.9% Black managers in the county.

        c.     Defendants' Bolingbrook, Illinois, store, where out of 15 managers, not one was Black, compared to a representation rate of 5% Black managers in the county.

        d.     Defendants' Bossier City, Louisiana, store, where out of 15 managers, not one was Black, compared to a representation rate of 12% Black managers in the county.

        e.     Defendants' Branson, Missouri, store, where out of ten managers, not one was Black, compared to a representation rate of .2% Black managers in the county.

        f.     Defendants' Broken Arrow, Oklahoma, store, where out of 15 managers, not one was Black, compared to a representation rate of 4.5 % Black managers in the county.

g.      Defendants' Cincinnati, Ohio, store, where out of 14 managers, not one was Black, compared to a representation rate of 7.5% Black managers in the county.

h.      Defendants' Clarksville, Indiana, store, where out of 16 managers, not one was Black, compared to a representation rate of 2.8% Black managers in the county.

i.      Defendants' Columbia, Missouri, store, where out of 12 managers, not one was Black, compared to a representation rate of 4.9% Black managers in the county.

j.      Defendants' Council Bluffs, Iowa, store, where out of 14 managers, not one was Black, compared to a representation rate of .4% Black managers in the county.

k.      Defendants' Dania, Florida, store, where out of 15 managers, only one (6.7%) was Black, compared to a representation rate of 8.3% Black managers in the county.

l.      Defendants' Denver, Colorado, store, where out of 17 managers, not one was Black, compared to a representation rate of 4.6% Black managers in the county.

m.      Defendants' Destin, Florida, store, where out of 10 managers, not one was Black, compared to a representation rate of 5.3% Black managers in the county.

n.      Defendants' Duluth, Georgia, store, where out of 16 managers, not one was Black, compared to a representation rate of 10.3% Black managers in the county.

o.      Defendants' Ft. Myers, Florida, store, where out of 14 managers, not one was Black, compared to a representation rate of 1.3% Black managers in the county.

p.      Defendants' Garland, Texas, store, where out of 14 managers, only one (7.1%) was Black, compared to a representation rate of 9.3% Black managers in the county.

q.      Defendants' Grapevine, Texas, store, where out of 21 managers, not one was Black, compared to a representation rate of 6% Black managers in the county.

r.      Defendants' Hampton, Virginia, store, where out of 13 managers, only one (7.7%) was Black, compared to a representation rate of 23% Black managers in the county.

s.      Defendants' Hanover, Maryland, store, where out of 13 managers, not one was Black, compared to a representation rate of 8.8% Black managers in the county.

t.      Defendants' Harrisburg, Pennsylvania, store, where out of 14 managers, not one was Black, compared to a representation rate of 5.8% Black managers in the county.

u.      Defendants' Islamorada, Florida, store, where out of six managers, not one was Black, compared to a representation rate of 1.9% Black managers in the county.

v.      Defendants' Katy, Texas, store, where out of 13 managers, not one was Black, compared to a representation rate of 9.6% Black managers in the county.

w.      Defendants' Kodak, Tennessee, store, where out of 14 managers, not one was Black, compared to a representation rate of 1% Black managers in the county.

x.      Defendants' Las Vegas, Nevada, store, where out of 13 managers, not one was Black, compared to a representation rate of 5.1% Black managers in the county.

y.      Defendants' Macon, Georgia, store, where out of 12 managers, only one (8.3%) was Black, compared to a representation rate of 20.5% Black managers in the county.

z.      Defendants' Memphis, Tennessee, store, where out of 14 managers, only one (7.1%) was Black, compared to a representation rate of 21.6% Black managers in the county.

aa.     Defendants' Mesa, Arizona, store, where out of 16 managers, not one was Black, compared to a representation rate of 2.5% Black managers in the county.

bb.     Defendants' Miami, Florida, store, where out of 14 managers, not one was Black, compared to a representation rate of 8% Black managers in the county.

cc.     Defendants' Nashville, Tennessee, store, where out of 14 managers, not one was Black, compared to a representation rate of 8.8% Black managers in the county.

dd.     Defendants' Oklahoma City, Oklahoma, store, where out of 15 managers, not one was Black, compared to a representation rate of 6.1% Black managers in the county.

ee.     Defendants' Orlando, Florida, store, where out of 17 managers, not one was Black, compared to a representation rate of 6.9% Black managers in the county.

ff.     Defendants' Pearl, Mississippi, store, where out of 14 managers, only one (7.1%) was Black, compared to a representation rate of 10.5% Black managers in the county.

gg.     Defendants' Portage, Indiana, store, where out of 14 managers, not one was Black, compared to a representation rate of 2.1% Black managers in the county.

hh.     Defendants' Prattville, Alabama, store, where out of 16 managers, not one was Black, compared to a representation rate of 4.2% Black managers in the county.

ii.     Defendants' Rancho Cucamonga, California, store, where out of 20 managers, not one was Black, compared to a representation rate of 5.1% Black managers in the county.

jj.     Defendants' San Antonio, Texas, store, where out of 16 managers, not one was Black, compared to a representation rate of 5.5% Black managers in the county.

145.    Comparing the number of Black managers employed by Defendants (as specified in Defendants' 2007 EEO-1 reports for 43 retail stores) to the representation rate of Black managers in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 27 Black managers in 2007.

**Defendants' Discriminatory Failure to Hire**
**Black Managers at Defendants' Retail Stores in 2008**

146.    According to Defendants' 2008 EEO-1 reports, out of a total employment of 8,410 employees in 49 retail stores, 630 (7.5%) employees were managers.

147.    According to Defendants' 2008 EEO-1 reports, out of 630 managers in Defendants' 49 retail stores, only 17 (2.7%) were Black.

148.    According to Defendants' 2008 EEO-1 reports, 39 (79.6%) of Defendants' 49 retail stores had a lower percentage of Black managers compared to the representation rate of Black managers in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

        a.    Defendants' Auburn, New York, store, where out of 12 managers, not one was Black, compared to a representation rate of .6% Black managers in the county.

        b.    Defendants' Auburn Hills, Michigan, store, where out of 13 managers, not one was Black, compared to a representation rate of 7.9% Black managers in the county.

        c.    Defendants' Bolingbrook, Illinois, store, where out of 11 managers, not one was Black, compared to a representation rate of 5% Black managers in the county.

        d.    Defendants' Bossier City, Louisiana, store, where out of 12 managers, not one was Black, compared to a representation rate of 12% Black managers in the county.

e.       Defendants' Branson, Missouri, store, where out of 9 managers, not one was Black, compared to a representation rate of .2% Black managers in the county.

f.       Defendants' Broken Arrow, Oklahoma, store, where out of 12 managers, not one was Black, compared to a representation rate of 4.5 % Black managers in the county.

g.       Defendants' Cincinnati, Ohio, store, where out of 14 managers, not one was Black, compared to a representation rate of 7.5% Black managers in the county.

h.       Defendants' Columbia, Missouri, store, where out of 12 managers, not one was Black, compared to a representation rate of 4.9% Black managers in the county.

i.       Defendants' Council Bluffs, Iowa, store, where out of 12 managers, not one was Black, compared to a representation rate of .4% Black managers in the county.

j.       Defendants' Dania, Florida, store, where out of 15 managers, only one (6.7%) was Black, compared to a representation rate of 8.3% Black managers in the county.

k.       Defendants' Denham Springs, Louisiana, store, where out of 14 managers, not one was Black, compared to a representation rate of 3.7% Black managers in the county.

l.      Defendants' Denver, Colorado, store, where out of 14 managers, not one was Black, compared to a representation rate of 4.6% Black managers in the county.

m.      Defendants' Destin, Florida, store, where out of 9 managers, not one was Black, compared to a representation rate of 5.3% Black managers in the county.

n.      Defendants' Duluth, Georgia, store, where out of 15 managers, not one was Black, compared to a representation rate of 10.3% Black managers in the county.

o.      Defendants' Ft. Myers, Florida, store, where out of 11 managers, not one was Black, compared to a representation rate of 1.3% Black managers in the county.

p.      Defendants' Garland, Texas, store, where out of 10 managers, not one was Black, compared to a representation rate of 9.3% Black managers in the county.

q.      Defendants' Grapevine, Texas, store, where out of 19 managers, not one was Black, compared to a representation rate of 6% Black managers in the county.

r.      Defendants' Hanover, Maryland, store, where out of 14 managers, not one was Black, compared to a representation rate of 8.8% Black managers in the county.

s.      Defendants' Harrisburg, Pennsylvania, store, where out of 12 managers, not one was Black, compared to a representation rate of 5.8% Black managers in the county.

t.      Defendants' Independence, Missouri, store, where out of 14 managers, not one was Black, compared to a representation rate of 9.1% Black managers in the county.

u.      Defendants' Islamorada, Florida, store, where out of 6 managers, not one was Black, compared to a representation rate of 1.9% Black managers in the county.

v.      Defendants' Katy, Texas, store, where out of 11 managers, only one (9.1%) was Black, compared to a representation rate of 9.6% Black managers in the county.

w.      Defendants' Kodak, Tennessee, store, where out of 15 managers, not one was Black, compared to a representation rate of 1% Black managers in the county.

x.      Defendants' Las Vegas, Nevada, store, where out of 14 managers, not one was Black, compared to a representation rate of 5.1% Black managers in the county.

y.      Defendants' Macon, Georgia, store, where out of 11 managers, not one was Black, compared to a representation rate of 20.5% Black managers in the county.

z.      Defendants' Memphis, Tennessee, store, where out of 13 managers, only one (7.7%) was Black, compared to a representation rate of 21.6% Black managers in the county.

aa.     Defendants' Mesa, Arizona, store, where out of 14 managers, not one was Black, compared to a representation rate of 2.5% Black managers in the county.

bb.     Defendants' Miami, Florida, store, where out of 12 managers, not one was Black, compared to a representation rate of 8% Black managers in the county.

cc.     Defendants' Myrtle Beach, South Carolina, store, where out of 13 managers, not one was Black, compared to a representation rate of 5% Black managers in the county.

dd.     Defendants' Nashville, Tennessee, store, where out of 15 managers, not one was Black, compared to a representation rate of 8.8% Black managers in the county.

ee.     Defendants' Oklahoma City, Oklahoma, store, where out of 15 managers, not one was Black, compared to a representation rate of 6.1% Black managers in the county.

ff.     Defendants' Orlando, Florida, store, where out of 17 managers, not one was Black, compared to a representation rate of 6.9% Black managers in the county.

gg.     Defendants' Pearl, Mississippi, store, where out of 14 managers, only one (7.1%) was Black, compared to a representation rate of 10.5% Black managers in the county.

hh.     Defendants' Portage, Indiana, store, where out of 12 managers, not one was Black, compared to a representation rate of 2.1% Black managers in the county.

ii.     Defendants' Prattville, Alabama, store, where out of 14 managers, not one was Black, compared to a representation rate of 4.2% Black managers in the county.

jj.      Defendants' Rancho Cucamonga, California, store, where out of 15 managers, not one was Black, compared to a representation rate of 5.1% Black managers in the county.

kk.      Defendants' Rossford, Ohio, store, where out of 13 managers, not one was Black, compared to a representation rate of 2.1% Black managers in the county.

ll.      Defendants' San Antonio, Texas, store, where out of 15 managers, not one was Black, compared to a representation rate of 5.5% Black managers in the county.

mm.      Defendants' Savannah, Georgia, store, where out of 13 managers, only one (7.7%) was Black, compared to a representation rate of 14.9% Black managers in the county.

149.      Comparing the number of Black managers employed by Defendants (as specified in Defendants' 2008 EEO-1 reports for 49 retail stores) to the representation rate of Black managers in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 24 Black managers in 2008.

### Defendants' Discriminatory Failure to Hire
### Black Managers at Defendants' Retail Stores in 2009

150.      According to Defendants' 2009 EEO-1 reports, out of a total employment of 8,561 employees in 52 retail stores, 588 (6.9%) employees were managers.

151.      According to Defendants' 2009 EEO-1 reports, out of 588 managers in Defendants' 52 retail stores, only 11 (1.9%) were Black.

152.      According to Defendants' 2009 EEO-1 reports, 48 (92.3%) of Defendants' 52 retail stores had a lower percentage of Black managers compared to the representation rate of

Black managers in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

        a.      Defendants' Altoona, Iowa, store, where out of 12 managers, not one was Black, compared to a representation rate of 1.3% Black managers in the county.

        b.      Defendants' Auburn, New York, store, where out of 11 managers, not one was Black, compared to a representation rate of .6% Black managers in the county.

        c.      Defendants' Auburn Hills, Michigan, store, where out of 11 managers, not one was Black, compared to a representation rate of 7.9% Black managers in the county.

        d.      Defendants' Bolingbrook, Illinois, store, where out of 10 managers, not one was Black, compared to a representation rate of 5% Black managers in the county.

        e.      Defendants' Bossier City, Louisiana, store, where out of 11 managers, not one was Black, compared to a representation rate of 12% Black managers in the county.

        f.      Defendants' Branson, Missouri, store, where out of 10 managers, not one was Black, compared to a representation rate of .2% Black managers in the county.

        g.      Defendants' Broken Arrow, Oklahoma, store, where out of 12 managers, not one was Black, compared to a representation rate of 4.5 % Black managers in the county.

h.      Defendants' Cincinnati, Ohio, store, where out of 11 managers, not one was Black, compared to a representation rate of 7.5% Black managers in the county.

i.      Defendants' Clarksville, Indiana, store, where out of 13 managers, not one was Black, compared to a representation rate of 2.8% Black managers in the county.

j.      Defendants' Columbia, Missouri, store, where out of 10 managers, not one was Black, compared to a representation rate of 4.9% Black managers in the county.

k.      Defendants' Concord, North Carolina, store, where out of 12 managers, not one was Black, compared to a representation rate of 4.2% Black managers in the county.

l.      Defendants' Council Bluffs, Iowa, store, where out of 12 managers, not one was Black, compared to a representation rate of .4% Black managers in the county.

m.      Defendants' Dania, Florida, store, where out of 13 managers, only one (7.7%) was Black, compared to a representation rate of 8.3% Black managers in the county.

n.      Defendants' Denham Springs, Louisiana, store, where out of 11 managers, not one was Black, compared to a representation rate of 3.7% Black managers in the county.

o.      Defendants' Denver, Colorado, store, where out of 13 managers, not one was Black, compared to a representation rate of 4.6% Black managers in the county.

p.      Defendants' Destin, Florida, store, where out of 9 managers, not one was Black, compared to a representation rate of 5.3% Black managers in the county.

q.      Defendants' Duluth, Georgia, store, where out of 12 managers, not one was Black, compared to a representation rate of 10.3% Black managers in the county.

r.      Defendants' Foxborough, Massachusetts, store, where out of 15 managers, not one was Black, compared to a representation rate of 2.2% Black managers in the county.

s.      Defendants' Ft. Myers, Florida, store, where out of 12 managers, not one was Black, compared to a representation rate of 1.3% Black managers in the county.

t.      Defendants' Garland, Texas, store, where out of nine managers, not one was Black, compared to a representation rate of 9.3% Black managers in the county.

u.      Defendants' Grapevine, Texas, store, where out of 16 managers, not one was Black, compared to a representation rate of 6% Black managers in the county.

v.      Defendants' Gurnee, Illinois, store, where out of 11 managers, not one was Black, compared to a representation rate of 4.1% Black managers in the county.

w.      Defendants' Hampton, Virginia, store, where out of 11 managers, only two (19.2%) were Black, compared to a representation rate of 23% Black managers in the county.

x.      Defendants' Hanover, Maryland, store, where out of 12 managers, not one was Black, compared to a representation rate of 8.8% Black managers in the county.

y.      Defendants' Harrisburg, Pennsylvania, store, where out of nine managers, not one was Black, compared to a representation rate of 5.8% Black managers in the county.

z.      Defendants' Independence, Missouri, store, where out of 12 managers, only one (8.3%) was Black, compared to a representation rate of 9.1% Black managers in the county.

aa.      Defendants' Islamorada, Florida, store, where out of six managers, not one was Black, compared to a representation rate of 1.9% Black managers in the county.

bb.      Defendants' Katy, Texas, store, where out of nine managers, not one was Black, compared to a representation rate of 9.6% Black managers in the county.

cc.      Defendants' Kodak, Tennessee, store, where out of 12 managers, not one was Black, compared to a representation rate of 1% Black managers in the county.

dd.      Defendants' Las Vegas, Nevada, store, where out of 11 managers, not one was Black, compared to a representation rate of 5.1% Black managers in the county.

ee.      Defendants' Leeds, Alabama, store, where out of 12 managers only one (8.3%) was Black, compared to a representation rate of 15.3% Black managers in the county.

ff.      Defendants' Macon, Georgia, store, where out of 11 managers, not one was Black, compared to a representation rate of 20.5% Black managers in the county.

gg.      Defendants' Manteca, California, store, where out of 12 managers, not one was Black, compared to a representation rate of 2.7% Black managers in the county.

hh.      Defendants' Memphis, Tennessee, store, where out of 11 managers, only one (7.7%) was Black, compared to a representation rate of 21.6% Black managers in the county.

ii.      Defendants' Mesa, Arizona, store, where out of 12 managers, not one was Black, compared to a representation rate of 2.5% Black managers in the county.

jj.      Defendants' Miami, Florida, store, where out of 11 managers, not one was Black, compared to a representation rate of 8% Black managers in the county.

kk.      Defendants' Myrtle Beach, South Carolina, store, where out of ten managers, not one was Black, compared to a representation rate of 5% Black managers in the county.

ll.      Defendants' Nashville, Tennessee, store, where out of 12 managers, not one was Black, compared to a representation rate of 8.8% Black managers in the county.

mm.     Defendants' Oklahoma City, Oklahoma, store, where out of 11 managers, not one was Black, compared to a representation rate of 6.1% Black managers in the county.

nn.     Defendants' Olathe, Kansas, store, where out of 11 managers, not one was Black, compared to a representation rate of 3.6% Black managers in the county.

oo.     Defendants' Orlando, Florida, store, where out of 13 managers, not one was Black, compared to a representation rate of 6.9% Black managers in the county.

pp.     Defendants' Pearl, Mississippi, store, where out of 12 managers, only one (7.1%) was Black, compared to a representation rate of 10.5% Black managers in the county.

qq.     Defendants' Pearland, Texas, store, where out of ten managers, only one (7.1%) was Black, compared to a representation rate of 5.8% Black managers in the county.

rr.     Defendants' Portage, Indiana, store, where out of 11 managers, not one was Black, compared to a representation rate of 2.1% Black managers in the county.

ss.     Defendants' Prattville, Alabama, store, where out of 11 managers, not one was Black, compared to a representation rate of 4.2% Black managers in the county.

tt.     Defendants' Rancho Cucamonga, California, store, where out of 12 managers, not one was Black, compared to a representation rate of 5.1% Black managers in the county.

uu.     Defendants' Rossford, Ohio, store, where out of 12 managers, not one was Black, compared to a representation rate of 2.1% Black managers in the county.

vv.     Defendants' San Antonio, Texas, store, where out of 13 managers, not one was Black, compared to a representation rate of 5.5% Black managers in the county.

153.    Comparing the number of Black managers employed by Defendants (as specified in Defendants' 2009 EEO-1 reports for 52 retail stores) to the representation rate of Black managers in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 27 Black managers in 2009.

### Defendants' Discriminatory Failure to Hire Black Managers at Defendants' Retail Stores in 2010

154.    According to Defendants' 2010 EEO-1 reports, out of a total employment of 8,839 employees in 52 retail stores, 586 (6.6%) employees were managers.

155.    According to Defendants' 2010 EEO-1 reports, out of 586 managers in Defendants' 52 retail stores, only 12 (2%) were Black.

156.    According to Defendants' 2010 EEO-1 reports, 45 (86.5%) of Defendants' 52 retail stores had a lower percentage of Black managers compared to the representation rate of Black managers in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.      Defendants' Altoona, Iowa, store, where out of 12 managers, not one was Black, compared to a representation rate of 1.3% Black managers in the county.

b.      Defendants' Auburn, New York, store, where out of 10 managers, not one was Black, compared to a representation rate of .6% Black managers in the county.

c.      Defendants' Auburn Hills, Michigan, store, where out of 11 managers, not one was Black, compared to a representation rate of 7.9% Black managers in the county.

d.      Defendants' Bolingbrook, Illinois, store, where out of 11 managers, not one was Black, compared to a representation rate of 5% Black managers in the county.

e.      Defendants' Bossier City, Louisiana, store, where out of 10 managers, not one was Black, compared to a representation rate of 12% Black managers in the county.

f.      Defendants' Branson, Missouri, store, where out of 10 managers, not one was Black, compared to a representation rate of .2% Black managers in the county.

g.      Defendants' Broken Arrow, Oklahoma, store, where out of 12 managers, not one was Black, compared to a representation rate of 4.5 % Black managers in the county.

h.      Defendants' Cincinnati, Ohio, store, where out of 11 managers, not one was Black, compared to a representation rate of 7.5% Black managers in the county.

i.      Defendants' Clarksville, Indiana, store, where out of 13 managers, not one was Black, compared to a representation rate of 2.8% Black managers in the county.

j.      Defendants' Columbia, Missouri, store, where out of 10 managers, not one was Black, compared to a representation rate of 4.9% Black managers in the county.

k.      Defendants' Concord, North Carolina, store, where out of 12 managers, not one was Black, compared to a representation rate of 4.2% Black managers in the county.

l.      Defendants' Council Bluffs, Iowa, store, where out of 12 managers, not one was Black, compared to a representation rate of .4% Black managers in the county.

m.      Defendants' Dania, Florida, store, where out of 13 managers, only one (7.7%) was Black, compared to a representation rate of 8.3% Black managers in the county.

n.      Defendants' Denham Springs, Louisiana, store, where out of 12 managers, not one was Black, compared to a representation rate of 3.7% Black managers in the county.

o.      Defendants' Destin, Florida, store, where out of 10 managers, not one was Black, compared to a representation rate of 5.3% Black managers in the county.

p.      Defendants' Duluth, Georgia, store, where out of 12 managers, not one was Black, compared to a representation rate of 10.3% Black managers in the county.

q.      Defendants' Foxborough, Massachusetts, store, where out of 15 managers, not one was Black, compared to a representation rate of 2.2% Black managers in the county.

r.      Defendants' Ft. Myers, Florida, store, where out of 12 managers, not one was Black, compared to a representation rate of 1.3% Black managers in the county.

s.      Defendants' Garland, Texas, store, where out of nine managers, not one was Black, compared to a representation rate of 9.3% Black managers in the county.

t.      Defendants' Gurnee, Illinois, store, where out of 11 managers, not one was Black, compared to a representation rate of 4.1% Black managers in the county.

u.      Defendants' Hampton, Virginia, store, where out of 10 managers, only two (20%) were Black, compared to a representation rate of 23% Black managers in the county.

v.      Defendants' Hanover, Maryland, store, where out of 12 managers, not one was Black, compared to a representation rate of 8.8% Black managers in the county.

w.      Defendants' Harrisburg, Pennsylvania, store, where out of 11 managers, not one was Black, compared to a representation rate of 5.8% Black managers in the county.

x.      Defendants' Independence, Missouri, store, where out of 11 managers, only one (8.3%) was Black, compared to a representation rate of 9.1% Black managers in the county.

y.      Defendants' Islamorada, Florida, store, where out of six managers, not one was Black, compared to a representation rate of 1.9% Black managers in the county.

z.      Defendants' Katy, Texas, store, where out of ten managers, not one was Black, compared to a representation rate of 9.6% Black managers in the county.

aa.     Defendants' Kodak, Tennessee, store, where out of 12 managers, not one was Black, compared to a representation rate of 1% Black managers in the county.

bb.     Defendants' Las Vegas, Nevada, store, where out of 11 managers, not one was Black, compared to a representation rate of 5.1% Black managers in the county.

cc.     Defendants' Leeds, Alabama, store, where out of 12 managers only one (8.3%) was Black, compared to a representation rate of 15.3% Black managers in the county.

dd.     Defendants' Macon, Georgia, store, where out of 11 managers, not one was Black, compared to a representation rate of 20.5% Black managers in the county.

ee.     Defendants' Manteca, California, store, where out of 12 managers, not one was Black, compared to a representation rate of 2.7% Black managers in the county.

ff.     Defendants' Memphis, Tennessee, store, where out of 11 managers, only one (7.7%) was Black, compared to a representation rate of 21.6% Black managers in the county.

gg.     Defendants' Mesa, Arizona, store, where out of 11 managers, not one was Black, compared to a representation rate of 2.5% Black managers in the county.

hh.     Defendants' Miami, Florida, store, where out of ten managers, not one was Black, compared to a representation rate of 8% Black managers in the county.

ii.     Defendants' Myrtle Beach, South Carolina, store, where out of 11 managers, not one was Black, compared to a representation rate of 5% Black managers in the county.

jj.     Defendants' Nashville, Tennessee, store, where out of 12 managers, not one was Black, compared to a representation rate of 8.8% Black managers in the county.

kk.     Defendants' Oklahoma City, Oklahoma, store, where out of 11 managers, not one was Black, compared to a representation rate of 6.1% Black managers in the county.

ll.     Defendants' Olathe, Kansas, store, where out of 11 managers, not one was Black, compared to a representation rate of 3.6% Black managers in the county.

mm.     Defendants' Orlando, Florida, store, where out of 13 managers, not one was Black, compared to a representation rate of 6.9% Black managers in the county.

nn.     Defendants' Pearl, Mississippi, store, where out of 11 managers, only one (7.1%) was Black, compared to a representation rate of 10.5% Black managers in the county.

oo.     Defendants' Pearland, Texas, store, where out of 11 managers, not one was Black, compared to a representation rate of 5.8% Black managers in the county.

pp.     Defendants' Portage, Indiana, store, where out of 11 managers, not one was Black, compared to a representation rate of 2.1% Black managers in the county.

qq.     Defendants' Prattville, Alabama, store, where out of ten managers, not one was Black, compared to a representation rate of 4.2% Black managers in the county.

rr.     Defendants' Rancho Cucamonga, California, store, where out of 12 managers, not one was Black, compared to a representation rate of 5.1% Black managers in the county.

**ss.**     Defendants' San Antonio, Texas, store, where out of 13 managers, not one was Black, compared to a representation rate of 5.5% Black managers in the county.

157.     Comparing the number of Black managers employed by Defendants (as specified in Defendants' 2010 EEO-1 reports for 52 retail stores) to the representation rate of Black managers in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 25 Black managers in 2010.

### DEFENDANTS' DISCRIMINATORY FAILURE TO HIRE BLACK SALES EMPLOYEES

### Defendants' Discriminatory Failure to Hire
### Black Sales Employees at Defendants' Retail Stores in 2007

158.     According to Defendants' 2007 EEO-1 reports, out of a total employment of 8,186 employees in 43 retail stores, 5,997 (73.3%) employees were sales employees.

159.    According to the instructions for filing EEO-1 reports in the EEO-1 Job Classification Guide and the EEO-1 Instruction Booklet provided to employers, sales employees include such positions as retail salesperson, sales representative, cashier, and other sales-related workers.

160.    According to Defendants' 2007 EEO-1 reports, out of 5,997 sales employees in Defendants' 43 retail stores, only 252 (4.2%) were Black.

161.    According to Defendants' 2007 EEO-1 reports, 38 (88.8%) of Defendants' 43 retail stores had a lower percentage of Black sales employees compared to the representation rate of Black sales employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

    a.    Defendants' Auburn, New York, store, where out of 153 employees, 126 (82.4%) were sales employees, and of those 126 sales employees, not one was Black, compared to a representation rate of .6% Black sales employees in the county.

    b.    Defendants' Auburn Hills, Michigan, store, where out of 153 employees, 110 (71.9%) were sales employees, and out of those 110 sales employees, only two (1.8%) were Black, compared to a representation rate of 11.5% Black sales employees in the county.

    c.    Defendants' Bolingbrook, Illinois, store, where out of 195 employees, 150 (76.9%) were sales employees, and out of those 150 sales employees, only eight (5.3%) were Black, compared to a representation rate of 7.2% Black sales employees in the county.

d.      Defendants' Bossier City, Louisiana, store, where out of 195 employees, 147 (75.6%) were sales employees, and out of those 147 sales employees, only 13 (8.8%) were Black, compared to a representation rate of 24.7% Black sales employees in the county.

e.      Defendants' Branson, Missouri, store, where out of 109 employees, 83 (76.1%) were sales employees, and out of those 83 sales employees, not one was Black, compared to a representation rate of .1% Black sales employees in the county.

f.      Defendants' Broken Arrow, Oklahoma, store, where out of 177 employees, 131 (74%) were sales employees, and out of those 131 sales employees, not one was Black, compared to a representation rate of 5.9% Black sales employees in the county.

g.      Defendants' Cincinnati, Ohio, store, where out of 229 employees, 183 (79.9%) were sales employees, and out of those 183 sales employees, only six (3.3%) were Black, compared to a representation rate of 10% Black sales employees in the county.

h.      Defendants' Clarksville, Indiana, store, where out of 272 employees, 210 (77.2%) were sales employees, and out of those 210 sales employees in, only one (.5%) was Black, compared to a representation rate of 4.7% Black sales employees in the county.

i.      Defendants' Columbia, Missouri, store, where out of 125 employees, 90 (72%) were sales employees, and out of those 90 sales employees, not one was

Black, compared to a representation rate of 4.9% Black sales employees in the county.

j.       Defendants' Concord, North Carolina, store, where out of 242 employees, 169 (69.8%) were sales employees, and out of those 169 sales employees, only five (3%) were Black, compared to a representation rate of 9.9% Black sales employees in the county.

k.       Defendants' Council Bluffs, Iowa, store, where out of 177 employees, 130 (73.4%) were sales employees, and out of those 130 sales employees, not one was Black, compared to a representation rate of 1.3% Black sales employees in the county.

l.       Defendants' Dania, Florida, store, where out of 255 employees, 181 (71%) were sales employees, and out of those 181 sales employees, only eight (4.4%) were Black, compared to a representation rate of 13.8% Black sales employees in the county.

m.       Defendants' Denver, Colorado, store, where out of 241 employees, 180 (74.7%) were sales employees, and out of those 180 sales employees, only six (3.3%) were Black, compared to a representation rate of 5.4% Black sales employees in the county.

n.       Defendants' Destin, Florida, store, where out of 108 employees, 79 (73.1%) were sales employees, and out of those 79 sales employees, only one (1.3%) was Black, compared to a representation rate of 5.6% Black sales employees in the county.

o.      Defendants' Duluth, Georgia, store, where out of 208 employees, 153 (77.2%) were sales employees, and out of those 153 sales employees, only two (1.3%) were Black, compared to a representation rate of 12.5% Black sales employees in the county.

p.      Defendants' Ft. Myers, Florida, store, where out of 190 employees, 136 (71.6%) were sales employees, and out of those 136 sales employees, only four (2.9%) were Black, compared to a representation rate of 3.8% Black sales employees in the county.

q.      Defendants' Garland, Texas, store, where out of 139 employees, 103 (74%) were sales employees, and out of those 103 sales employees, not one was Black, compared to a representation rate of 11.6% Black sales employees in the county.

r.      Defendants' Grapevine, Texas, store, where out of 300 employees, 148 (49.3%) were sales employees, and out of those 148 sales employees, only two (1.4%) were Black, compared to a representation rate of 8.2% Black sales employees in the county.

s.      Defendants' Hampton, Virginia, store, where out of 164 employees, 126 (76.8%) were sales employees, and out of those 125 sales employees, only 18 (14.3%) were Black, compared to a representation rate of 41.4% Black sales employees in the county.

t.      Defendants' Hanover, Maryland, store, where out of 172 employees, 128 (74.4%) were sales employees, and out of those 128 sales employees, only four

(3.1%) were Black, compared to a representation rate of 10.6% Black sales employees in the county.

u.      Defendants' Harrisburg, Pennsylvania, store, where out of 240 employees, 171 (71.3%) were sales employees, and out of those 171 sales employees, store, only eight (4.7%) were Black, compared to a representation rate of 7.9% Black sales employees in the county.

v.      Defendants' Katy, Texas, store, where out of 143 employees, 98 (68.5%) were sales employees, and out of those 98 sales employees, only one (1%) was Black, compared to a representation rate of 14.2% Black sales employees in the county.

w.      Defendants' Las Vegas, Nevada, store, where out of 210 employees, 149 (71%) were sales employees, and out of those 149 sales employees, only three (2%) were Black, compared to a representation rate of 5.9% Black sales employees in the county.

x.      Defendants' Macon, Georgia, store, where out of 156 employees, 120 (76.9%) were sales employees, and out of those 120 sales employees, only 24 (20%) were Black, compared to a representation rate of 26.7% Black sales employees in the county.

y.      Defendants' Memphis, Tennessee, store, where out of 143 employees, 106 (74.1%) were sales employees, and out of those 106 sales employees, only four (3.8%) were Black, compared to a representation rate of 27.6% Black sales employees in the county.

z.      Defendants' Mesa, Arizona, store, where out of 187 employees, 134 (71.7%) were sales employees, and out of those 134 sales employees in, only one (.7%) was Black, compared to a representation rate of 2.6% Black sales employees in the county.

aa.      Defendants' Miami, Florida, store, where out of 220 employees, 168 (76.4%) were sales employees, and out of those 168 sales employees, only seven (4.2%) were Black, compared to a representation rate of 10.3% Black sales employees in the county.

bb.      Defendants' Myrtle Beach, South Carolina, store, where out of 151 employees, 109 (72.2%) were sales employees, and out of those 109 sales employees, only ten (9.2%) were Black, compared to a representation rate of 10.3% Black sales employees in the county.

cc.      Defendants' Nashville, Tennessee, store, where out of 200 employees, 139 (69.5%) were sales employees, and out of those 139 sales employees, only three (2.2%) were Black, compared to a representation rate of 12.1% Black sales employees in the county.

dd.      Defendants' Oklahoma City, Oklahoma, store, where out of 155 employees, 118 (76.1%) were sales employees, and out of those 118 sales employees, only four (3.4%) were Black, compared to a representation rate of 8.4% Black sales employees in the county.

ee.      Defendants' Olathe, Kansa, store, where out of 174 employees, 122 (70.1%) were sales employees, and out of those 122 sales employees in, only one

(.8%) was Black, compared to a representation rate of 3.7% Black sales employees in the county.

ff.        Defendants' Orlando, Florida, store, where out of 277 employees, 204 (73.6%) were sales employees, and out of those 204 sales employees, only ten (4.9%) were Black, compared to a representation rate of 9.6% Black sales employees in the county.

gg.        Defendants' Pearl, Mississippi, store, where out of 164 employees, 108 (65.9%) were sales employees, and out of those 108 sales employees, only eight (7.4%) were Black, compared to a representation rate of 15.4% Black sales employees in the county.

hh.        Defendants' Portage, Indiana, store, where out of 200 employees, 150 (75%) were sales employees, and out of those 150 sales employees, only two (1.3%) were Black, compared to a representation rate of 1.5% Black sales employees in the county.

ii.        Defendants' Prattville, Alabama, store, where out of 193 employees, 137 (71%) were sales employees, and out of those 150 sales employees, only 13 (9.5%) were Black, compared to a representation rate of 10.4% Black sales employees in the county.

jj.        Defendants' Rancho Cucamonga, California, store, where out of 305 employees, 236 (77.4%) were sales employees, and out of those 236 sales employees, store, only ten (4.2%) were Black, compared to a representation rate of 5.6% Black sales employees in the county.

kk.      Defendants' San Antonio, Texas, store, where out of 197 employees, 145 (73.6%) were sales employees, and out of those 145 sales employees in, only one (.7%) was Black, compared to a representation rate of 5.2% Black sales employees in the county.

ll.      Defendants' Savannah, Georgia, store, where out of 147 employees, 109 (74.1%) were sales employees, and out of those 145 sales employees, only 14 (12.8%) were Black, compared to a representation rate of 28.3% Black sales employees in the county.

162.    Comparing the number of Black sales employees employed by Defendants (as specified in Defendants' 2007 EEO-1 reports for 43 retail stores) to the representation rate of Black sales employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 311 Black sales employees in 2007.

**Defendants' Discriminatory Failure to Hire
Black Sales Employees at Defendants' Retail Stores in 2008**

163.    According to Defendants' 2008 EEO-1 reports, out of a total employment of 8,410 employees in 49 retail stores, 6,214 (73.9%) employees were sales employees.

164.    According to Defendants' 2008 EEO-1 reports, out of 6,214 sales employees in Defendants' 49 retail stores, only 271 (4.4%) were Black.

165.    According to Defendants' 2008 EEO-1 reports, 43 (87.8%) of Defendants' 49 retail stores had a lower percentage of Black sales employees compared to the representation rate of Black sales employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.      Defendants' Ashland, Virginia, store, where out of 171 employees, 136 (79.5%) were sales employees, and out of those 136 sales employees, only ten (7.4%) were Black, compared to a representation rate of 8.9% Black sales employees in the county.

b.      Defendants' Auburn, New York, store, where out of 135 employees, 107 (79.3%) were sales employees, and out of those 107 sales employees, not one was Black, compared to a representation rate of .6% Black sales employees in the county.

c.      Defendants' Auburn Hills, Michigan, store, where out of 148 employees, 108 (73%) were sales employees, and out of those 108 sales employees, only one (.9%) was Black, compared to a representation rate of 11.5% Black sales employees in the county.

d.      Defendants' Bolingbrook, Illinois, store, where out of 177 employees, 137 (77.4%) were sales employees, and out of those 137 sales employees, only nine (6.6%) was Black, compared to a representation rate of 7.2% Black sales employees in the county.

e.      Defendants' Bossier City, Louisiana, store, where out of 171 employees, 132 (77.2%) were sales employees, and out of those 137 sales employees, only 11 (8.3%) were Black, compared to a representation rate of 24.7% Black sales employees in the county.

f.      Defendants' Branson, Missouri, store, where out of 101 employees, 79 (78.2%) were sales employees, and out of those 79 sales employees, not one was

Black, compared to a representation rate of .1% Black sales employees in the county.

g.      Defendants' Broken Arrow, Oklahoma, store, where out of 212 employees, 165 (77.8%) were sales employees, and out of those 165 sales employees, not one was Black, compared to a representation rate of 5.9% Black sales employees in the county.

h.      Defendants' Cincinnati, Ohio, store, where out of 222 employees, 179 (80.6%) were sales employees, and out of those 179 sales employees, only seven (3.9%) were Black, compared to a representation rate of 10% Black sales employees in the county.

i.      Defendants' Clarksville, Indiana, store, where out of 223 employees, 172 (68.4%) were sales employees, and out of those 172 sales employees, not one was Black, compared to a representation rate of 4.7% Black sales employees in the county.

j.      Defendants' Columbia, Missouri, store, where out of 98 employees, 67 (68.4%) were sales employees, and out of those 67 sales employees, not one was Black, compared to a representation rate of 4.9% Black sales employees in the county.

k.      Defendants' Concord, North Carolina, store, where out of 196 employees, 136 (69.4%) were sales employees, and out of those 136 sales employees, only five (3.7%) were Black, compared to a representation rate of 9.9% Black sales employees in the county.

l.      Defendants' Council Bluffs, Iowa, store, where out of 165 employees, 123 (74.5%) were sales employees, and out of those 123 sales employees, only one (.8%) was Black, compared to a representation rate of 1.3% Black sales employees in the county.

m.      Defendants' Dania, Florida, store, where out of 229 employees, 165 (72.1%) were sales employees, and out of those 165 sales employees, only eight (4.8%) were Black, compared to a representation rate of 13.8% Black sales employees in the county.

n.      Defendants' Denham Springs, Louisiana, store, where out of 166 employees, 111 (66.9%) were sales employees, and out of those 111 sales employees, only four (3.6%) were Black, compared to a representation rate of 5.2% Black sales employees in the county.

o.      Defendants' Denver, Colorado, store, where out of 198 employees, 145 (73.2%) were sales employees, and out of those 145 sales employees, only five (3.4%) were Black, compared to a representation rate of 5.4% Black sales employees in the county.

p.      Defendants' Destin, Florida, store, where out of 99 employees, 73 (73.7%) were sales employees, and out of those 73 sales employees, only one (1.4%) was Black, compared to a representation rate of 5.6% Black sales employees in the county.

q.      Defendants' Duluth, Georgia, store, where out of 193 employees, 144 (74.6%) were sales employees, and out of those 166 sales employees, only three

(2.1%) were Black, compared to a representation rate of 12.5% Black sales employees in the county.

r.      Defendants' Foxborough, Massachusetts, store, where out of 207 employees, 142 (68.6%) were sales employees, and out of those 142 sales employees, not one was Black, compared to a representation rate of 2.8% Black sales employees in the county.

s.      Defendants' Ft. Myers, Florida, store, where out of 172 employees, 131 (73.8%) were sales employees, and out of those 131 sales employees, only two (1.5%) were Black, compared to a representation rate of 3.8% Black sales employees in the county.

t.      Defendants' Garland, Texas, store, where out of 123 employees, 97 (78.9%) were sales employees, and out of those 97 sales employees, only one (1%) was Black, compared to a representation rate of 11.6% Black sales employees in the county.

u.      Defendants' Grapevine, Texas, store, where out of 291 employees, 147 (50.5%) were sales employees, and out of those 147 sales employees, only one (.7%) was Black, compared to a representation rate of 8.2% Black sales employees in the county.

v.      Defendants' Gurnee, Illinois, store, where out of 175 employees, 139 (79.4%) were sales employees, and out of those 139 sales employees, only five (3.6%) were Black, compared to a representation rate of 4.5% Black sales employees in the county.

w.      Defendants' Hampton, Virginia, store, where out of 165 employees, 127 (77%) were sales employees, and out of those 139 sales employees, only 24 (18.9%) were Black, compared to a representation rate of 41.4% Black sales employees in the county.

x.      Defendants' Hanover, Maryland, store, where out of 221 employees, 175 (79.2%) were sales employees, and out of those 139 sales employees, only 13 (7.4%) were Black, compared to a representation rate of 10.6% Black sales employees in the county.

y.      Defendants' Harrisburg, Pennsylvania, store, where out of 234 employees, 168 (71.8%) were sales employees, and out of those 168 sales employees, only seven (4.2%) were Black, compared to a representation rate of 7.9% Black sales employees in the county.

z.      Defendants' Independence, Missouri, store, where out of 166 employees, 125 (75.3%) were sales employees, and out of those 125 sales employees, only one (.8%) was Black, compared to a representation rate of 10.7% Black sales employees in the county.

aa.      Defendants' Katy, Texas, store, where out of 129 employees, 95 (73.6%) were sales employees, and out of those 95 sales employees, only three (3.2%) were Black, compared to a representation rate of 14.2% Black sales employees in the county.

bb.      Defendants' Las Vegas, Nevada, store, where out of 195 employees, 144 (73.8%) were sales employees, and out of those 144 sales employees, only two

(1.4%) were Black, compared to a representation rate of 5.9% Black sales employees in the county.

cc.      Defendants' Macon, Georgia, store, where out of 158 employees, 125 (79.1%) were sales employees, and out of those 144 sales employees, only 18 (14.4%) were Black, compared to a representation rate of 26.7% Black sales employees in the county.

dd.      Defendants' Memphis, Tennessee, store, where out of 125 employees, 93 (74.4%) were sales employees, and out of those 144 sales employees, only seven (7.5%) were Black, compared to a representation rate of 27.6% Black sales employees in the county.

ee.      Defendants' Mesa, Arizona, store, where out of 154 employees, 115 (74.7%) were sales employees, and out of those 115 sales employees, only two (1.7%) were Black, compared to a representation rate of 2.6% Black sales employees in the county.

ff.      Defendants' Miami, Florida, store, where out of 119 employees, 81 (68.1%) were sales employees, and out of those 81 sales employees, not one was Black, compared to a representation rate of 10.3% Black sales employees in the county.

gg.      Defendants' Nashville, Tennessee, store, where out of 196 employees, 138 (70.4%) were sales employees, and out of those 138 sales employees, only two (1.4%) were Black, compared to a representation rate of 12.1% Black sales employees in the county.

hh.     Defendants' Oklahoma City, Oklahoma, store, where out of 130 employees, 98 (75.4%) were sales employees, and out of those 98 sales employees, only six (6.1%) were Black, compared to a representation rate of 8.4% Black sales employees in the county.

ii.     Defendants' Olathe, Kansas, store, where out of 156 employees, 114 (73.1%) were sales employees, and out of those 114 sales employees, only two (1.8%) were Black, compared to a representation rate of 3.7% Black sales employees in the county.

jj.     Defendants' Orlando, Florida, store, where out of 224 employees, 166 (74.1%) were sales employees, and out of those 166 sales employees, only ten (6%) were Black, compared to a representation rate of 9.6% Black sales employees in the county.

kk.     Defendants' Pearl, Mississippi, store, where out of 153 employees, 108 (70.6%) were sales employees, and out of those 108 sales employees, only nine (8.3%) were Black, compared to a representation rate of 15.4% Black sales employees in the county.

ll.     Defendants' Portage, Indiana, store, where out of 157 employees, 117 (74.5%) were sales employees, and out of those 117 sales employees, only one (.9%) was Black, compared to a representation rate of 1.5% Black sales employees in the county.

mm.     Defendants' Prattville, Alabama, store, where out of 187 employees, 135 (72.2%) were sales employees, and out of those 135 sales employees, only eight

(5.9%) were Black, compared to a representation rate of 10.4% Black sales employees in the county.

nn.     Defendants' Rancho Cucamonga, California, store, where out of 260 employees, 201 (77.3%) were sales employees, and out of those 201 sales employees, only eight (4%) were Black, compared to a representation rate of 5.6% Black sales employees in the county.

oo.     Defendants' Rossford, Ohio, store, where out of 216 employees, 166 (76.7%) were sales employees, and out those 166 sales employees, only three (1.8%) were Black, compared to a representation rate of 1.9% Black sales employees in the county.

pp.     Defendants' San Antonio, Texas, store, where out of 179 employees, 134 (74.9%) were sales employees, and out of those 134 sales employees, not one was Black, compared to a representation rate of 5.2% Black sales employees in the county.

qq.     Defendants' Savannah, Georgia, store, where out of 118 employees, 84 (71.2%) were sales employees, and out of those 84 sales employees, only 18 (21.4%) were Black, compared to a representation rate of 28.3% Black sales employees in the county.

166.     Comparing the number of Black sales employees employed by Defendants (as specified in Defendants' 2008 EEO-1 reports for 49 retail stores) to the representation rate of Black sales employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 294 Black sales employees in 2008.

**Defendants' Discriminatory Failure to Hire
Black Sales Employees at Defendants' Retail Stores in 2009**

167.     According to Defendants' 2009 EEO-1 reports, out of a total employment of 8,561 employees in 52 retail stores, 6,496 (75.9%) employees were sales employees.

168.     According to Defendants' 2009 EEO-1 reports, out of 6,496 sales employees in Defendants' 52 retail stores, only 266 (4.1%) were Black.

169.     According to Defendants' 2009 EEO-1 reports, 44 (84.6%) of Defendants' 52 retail stores had a lower percentage of Black sales employees compared to the representation rate of Black sales employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.     Defendants' Altoona, Iowa, store, where out of 208 employees, 165 (79.3%) were sales employees, and out those 165 sales employees, only one (.6%) was Black, compared to a representation rate of 2.3% Black sales employees in the county.

b.     Defendants' Ashland, Virginia, store, where out of 202 employees, 161 (79.7%) were sales employees, and out of those 136 sales employees in, only ten (6.2%) were Black, compared to a representation rate of 8.9% Black sales employees in the county.

c.     Defendants' Auburn, New York, store, where out of 144 employees, 116 (80.6%) were sales employees, and out of those 116 sales employees, not one was Black, compared to a representation rate of .6% Black sales employees in the county.

d.     Defendants' Auburn Hills, Michigan, store, where out of 137 employees, 102 (74.5%) were sales employees, and out of those 102 sales employees, only

one (1%) was Black, compared to a representation rate of 11.5% Black sales employees in the county.

e.      Defendants' Bolingbrook, Illinois, store, where out of 168 employee, 137 (80.7%) were sales employees, and out of those 137 sales employees, only six (4.4%) were Black, compared to a representation rate of 7.2% Black sales employees in the county.

f.      Defendants' Bossier City, Louisiana, store, where out of 166 employees, 130 (78.3%) were sales employees, and out of those 130 sales employees, only 12 (9.2%) were Black, compared to a representation rate of 24.7% Black sales employees in the county.

g.      Defendants' Branson, Missouri, store, where out of 97 employees, 79 (81.4%) were sales employees, and of those 79 sales employees, not one was Black, compared to a representation rate of .1% Black sales employees in the county.

h.      Defendants' Broken Arrow, Oklahoma, store, where out of 210 employees, 152 (72.4%) were sales employees, and out of those 152 sales employees, only one (.7%) was Black, compared to a representation rate of 5.9% Black sales employees in the county.

i.      Defendants' Cincinnati, Ohio, store, where out of 220 employees, 186 (84.5%) were sales employees, and out of those 186 sales employees, only five (2.7%) were Black, compared to a representation rate of 10% Black sales employees in the county.

j.      Defendants' Clarksville, Indiana, store, where out of 223 employees, 173 (77.6%) were sales employees, and out of those 173 sales employees, not one was Black, compared to a representation rate of 4.7% Black sales employees in the county.

k.      Defendants' Columbia, Missouri, store, where out of 74 employees, 50 (67.6%) were sales employees, and out of those 50 sales employees, not one was Black, compared to a representation rate of 4.9% Black sales employees in the county.

l.      Defendants' Concord, North Carolina, store, where out of 189 employees, 143 (75.7 %) were sales employees, and out of those 143 sales employees, only eight (5.6%) were Black, compared to a representation rate of 9.9% Black sales employees in the county.

m.      Defendants' Council Bluffs, Iowa, store, where out of 172 employees, 124 (72.1%) were sales employees, and of those 124 sales employees, not one was Black, compared to a representation rate of 1.3% Black sales employees in the county.

n.      Defendants' Dania, Florida, store, where out of 233 employees, 177 (76%) were sales employees, and out of those 177 sales employees, only six (3.4%) were Black, compared to a representation rate of 13.8% Black sales employees in the county.

o.      Defendants' Denham Springs, Louisiana, store, where out of 160 employees, 118 (73.8%) were sales employees, and out of those 118 sales

employees, only one (.8%) was Black, compared to a representation rate of 5.2% Black sales employees in the county.

p.      Defendants' Denver, Colorado, store, where out of 216 employees, 167 (77.3%) were sales employees, and out of those 167 sales employees, only six (3.6%) were Black, compared to a representation rate of 5.4% Black sales employees in the county.

q.      Defendants' Destin, Florida, store, where out of 100 employees, 75 (75%) were sales employees, and out of those 75 sales employees, only one (1.3%) was Black, compared to a representation rate of 5.6% Black sales employees in the county.

r.      Defendants' Duluth, Georgia, store, where out of 182 employees, 138 (75.8%) were sales employees, and out of those 138 sales employees, only one (.7%) was Black, compared to a representation rate of 12.5% Black sales employees in the county.

s.      Defendants' Foxborough, Massachusetts, store, where out of 188 employees, 129 (68.6%) were sales employees, and out of those 129 sales employees, only one (.8%) was Black, compared to a representation rate of 2.8% Black sales employees in the county.

t.      Defendants' Ft. Myers, Florida, store, where out of 161 employees, 123 (76.4%) were sales employees, and out of those 123 sales employees, only one (.8%) was Black, compared to a representation rate of 3.8% Black sales employees in the county.

u.      Defendants' Garland, Texas, store, where out of 115 employees, 93 (80.7%) were sales employees, and out of those 93 sales employees, only two (2.2%) were Black, compared to a representation rate of 11.6% Black sales employees in the county.

v.      Defendants' Grapevine, Texas, store, where out of 242 employees, 137 (56.6%) were sales employees, and out of those 137 sales employees, only two (1.5%) were Black, compared to a representation rate of 8.2% Black sales employees in the county.

w.      Defendants' Gurnee, Illinois, store, where out of 144 employees, 112 (77.8%) were sales employees, and out of those 112 sales employees, only three (2.7%) were Black, compared to a representation rate of 4.5% Black sales employees in the county.

x.      Defendants' Hampton, Virginia, store, where out of 145 employees, 118 (81.4%) were sales employees, and out of those 118 sales employees, only 26 (22%) were Black, compared to a representation rate of 41.4% Black sales employees in the county.

y.      Defendants' Hanover, Maryland, store, where out of 214 employees, 180 (84.1%) were sales employees, and out of those 180 sales employees, only seven (3.9%) were Black, compared to a representation rate of 10.6% Black sales employees in the county.

z.      Defendants' Harrisburg, Pennsylvania, store, where out of 196 employees, 144 (73.5%) were sales employees, and out of those 144 sales employees, only

four (2.8%) were Black, compared to a representation rate of 7.9% Black sales employees in the county.

aa.     Defendants' Independence, Missouri, store, where out of 149 employees, 111 (74.5%) were sales employees, and out of those 111 sales employees, not one was Black, compared to a representation rate of 10.7% Black sales employees in the county.

bb.     Defendants' Katy, Texas, store, where out of 125 employees, 98 (78.4%) were sales employees, and out of those 98 sales employees, only five (5.1%) were Black, compared to a representation rate of 14.2% Black sales employees in the county.

cc.     Defendants' Las Vegas, Nevada, store, where out of 164 employees, 122 (74.4%) were sales employees, and out of those 122 sales employees, only three (2.5%) were Black, compared to a representation rate of 5.9% Black sales employees in the county.

dd.     Defendants' Leeds, Alabama, store, where out of 218 employees, 171 (78.4%) were sales employees, and out of those 171 sales employees, only eight (4.7%) were Black, compared to a representation rate of 21.5% Black sales employees in the county.

ee.     Defendants' Macon, Georgia, store, where out of 137 employees, 103 (75.2%) were sales employees, and out of those 103 sales employees, only 18 (17.5%) were Black, compared to a representation rate of 26.7% Black sales employees in the county.

ff.     Defendants' Memphis, Tennessee, store, where out of 131 employees, 100 (76.3%) were sales employees, and out of those 100 sales employees, only six (6%) were Black, compared to a representation rate of 27.6% Black sales employees in the county.

gg.     Defendants' Miami, Florida, store, where out of 112 employees, 80 (71.4%) were sales employees, and out of those 80 sales employees, only one (1.3%) was Black, compared to a representation rate of 10.3% Black sales employees in the county.

hh.     Defendants' Myrtle Beach, South Carolina, store, where out of 131 employees, 99 (75.6%) were sales employees, and out of those 99 sales employees, only seven (7.1%) were Black, compared to a representation rate of 10.3% Black sales employees in the county.

ii.     Defendants' Nashville, Tennessee, store, where out of 181 employees, 135 (74.6%) were sales employees, and out of those 135 sales employees, only one (.7%) was Black, compared to a representation rate of 12.1% Black sales employees in the county.

jj.     Defendants' Oklahoma City, Oklahoma, store, where out of 146 employees, 113 (77.4%) were sales employees, and out of those 113 sales employees, only four (3.5%) were Black, compared to a representation rate of 8.4% Black sales employees in the county.

kk.     Defendants' Olathe, Kansas, store, where out of 128 employees, 97 (75.8%) were sales employees, and out of those 97 sales employees, only three

(3.1%) were Black, compared to a representation rate of 3.7% Black sales employees in the county.

ll.      Defendants' Orlando, Florida, store, where out of 214 employees, 161 (75.2%) were sales employees, and out of those 161 sales employees, only 12 (7.5%) were Black, compared to a representation rate of 9.6% Black sales employees in the county.

mm.    Defendants' Pearl, Mississippi, store, where out of 159 employees, 105 (66%) were sales employees, and out of those 105 sales employees, only ten (9.5%) were Black, compared to a representation rate of 15.4% Black sales employees in the county.

nn.      Defendants' Prattville, Alabama, store, where out of 148 employees, 106 (71.6%) were sales employees, and out of those 106 sales employees, only six (5.7%) were Black, compared to a representation rate of 10.4% Black sales employees in the county.

oo.      Defendants' Rossford, Ohio, store, where out of 167 employees, 126 (75.4%) were sales employees, and out of those 126 sales employees, only one (.8%) was Black, compared to a representation rate of 1.9% Black sales employees in the county.

pp.      Defendants' San Antonio, Texas, store, where out of 154 employees, 118 (76.6%) were sales employees, and out of those 118 sales employees, only one (.8%) was Black, compared to a representation rate of 5.2% Black sales employees in the county.

qq.    Defendants' Savannah, Georgia, store, where out of 117 employees, 85 (72.6%) were sales employees, and out of those 85 sales employees, only 17 (20%) were Black, compared to a representation rate of 28.3% Black sales employees in the county.

rr.    Defendants' Spanish Fort, Alabama, store, where out of 177 employees, 145 (81.9%) were sales employees, and out of those 145 sales employees, only nine (6.2%) were Black, compared to a representation rate of 7% Black sales employees in the county.

170.    Comparing the number of Black sales employees employed by Defendants (as specified in Defendants' 2009 EEO-1 reports for 52 retail stores) to the representation rate of Black sales employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 329 Black sales employees in 2009.

**Defendants' Discriminatory Failure to Hire
Black Sales Employees at Defendants' Retail Stores in 2010**

171.    According to Defendants' 2010 EEO-1 reports, out of a total employment of 8,839 employees in 52 retail stores, 6,820 (77.2%) employees were sales employees.

172.    According to Defendants' 2010 EEO-1 reports, out of 6,820 sales employees in Defendants' 52 retail stores, only 298 (4.4%) were Black.

173.    According to Defendants' 2010 EEO-1 reports, 45 (86.5%) of Defendants' 52 retail stores had a lower percentage of Black sales employees compared to the representation rate of Black sales employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.      Defendants' Altoona, Iowa, store, where out of 189 employees, 141 (74.6%) were sales employees and of those 141 sales employees, not one was Black, compared to a representation rate of 2.3% Black sales employees in the county.

b.      Defendants' Auburn, New York, store, where out of 139 employees, 115 (82.7%) were sales employees, and of those 115 sales employees, not one was Black, compared to a representation rate of .6% Black sales employees in the county.

c.      Defendants' Auburn Hills, Michigan, store, where out of 156 employees, 118 (75.6%) were sales employees, and out those 118 sales employees, only one (.8%) was Black, compared to a representation rate of 11.5 % Black sales employees in the county.

d.      Defendants' Bolingbrook, Illinois, store, where out of 170 employee, 136 (80%) were sales employees, and out of those 136 sales employees, only eight (5.9%) were Black, compared to a representation rate of 7.2% Black sales employees in the county.

e.      Defendants' Bossier City, Louisiana, store, where out of 173 employees, 140 (80.9%) were sales employees, and out of those 140 sales employees, only 12 (8.6%) were Black, compared to a representation rate of 24.7% Black sales employees in the county.

f.      Defendants' Branson, Missouri, store, where out of 105 employees, 86 (81.9%) were sales employees, and of those 86 sales employees, not one was

Black, compared to a representation rate of .1% Black sales employees in the county.

g.      Defendants' Broken Arrow, Oklahoma, store, where out of 215 employees, 167 (77.7%) were sales employees, and out of those 167 sales employees, only two (1.2%) were Black, compared to a representation rate of 5.9% Black sales employees in the county.

h.      Defendants' Cincinnati, Ohio, store, where out of 208 employees, 175 (84.1%) were sales employees, and out of those 175 sales employees, only seven (4%) were Black, compared to a representation rate of 10% Black sales employees in the county.

i.      Defendants' Clarksville, Indiana, store, where out of 234 employees, 184 (78.6%) were sales employees, and of those 184 sales employees, not one was Black, compared to a representation rate of 4.7% Black sales employees in the county.

j.      Defendants' Columbia, Missouri, store, where out of 98 employees, 71 (72.4%) were sales employees, and out of those 71 sales employees, only two (2.8%) were Black, compared to a representation rate of 4.9% Black sales employees in the county.

k.      Defendants' Concord, North Carolina, store, where out of 203 employees, 158 (77.8 %) were sales employees, and out of those 158 sales employees, only nine (5.7%) were Black, compared to a representation rate of 9.9% Black sales employees in the county.

l.      Defendants' Council Bluffs, Iowa, store, where out of 190 employees, 143 (75.3%) were sales employees, and of those 143 sales employees, not one was Black, compared to a representation rate of 1.3% Black sales employees in the county.

m.      Defendants' Dania, Florida, store, where out of 227 employees, 173 (76.2%) were sales employees, and out of those 173 sales employees, only six (3.5%) were Black, compared to a representation rate of 13.8% Black sales employees in the county.

n.      Defendants' Denham Springs, Louisiana, store, where out of 163 employees, 118 (72.4%) were sales employees, and out of those 118 sales employees, only two (1.7%) were Black, compared to a representation rate of 5.2% Black sales employees in the county.

o.      Defendants' Denver, Colorado, store, where out of 206 employees, 159 (77.2%) were sales employees, and out of those 159 sales employees, only six (3.8%) were Black, compared to a representation rate of 5.4% Black sales employees in the county.

p.      Defendants' Destin, Florida, store, where out of 106 employees, 82 (77.4%) were sales employees, and out of those 82 sales employees, only one (1.2%) was Black, compared to a representation rate of 5.6% Black sales employees in the county.

q.      Defendants' Duluth, Georgia, store, where out of 183 employees, 141 (77%) were sales employees, and out of those 141 sales employees, only three

(2.1%) were Black, compared to a representation rate of 12.5% Black sales employees in the county.

r.      Defendants' Foxborough, Massachusetts, store, where out of 190 employees, 130 (68.4%) were sales employees, and out those 130 sales employees, only one (.8%) was Black, compared to a representation rate of 2.8% Black sales employees in the county.

s.      Defendants' Ft. Myers, Florida, store, where out of 157 employees, 120 (76.4%) were sales employees, and out of those 120 sales employees, only two (1.7%) were Black, compared to a representation rate of 3.8% Black sales employees in the county.

t.      Defendants' Garland, Texas, store, where out of 134 employees, 106 (79.1%) were sales employees, and out of those 106 sales employees, only three (2.8%) were Black, compared to a representation rate of 11.6% Black sales employees in the county.

u.      Defendants' Grapevine, Texas, store, where out of 290 employees, 191 (65.9%) were sales employees, and out of those 191 sales employees, only four (2.1%) were Black, compared to a representation rate of 8.2% Black sales employees in the county.

v.      Defendants' Gurnee, Illinois, store, where out of 159 employees, 129 (81.1%) were sales employees, and out of those 129 sales employees, only three (2.3%) were Black, compared to a representation rate of 4.5% Black sales employees in the county.

w.      Defendants' Hampton, Virginia, store, where out of 155 employees, 123 (79.4%) were sales employees, and out of those 123 sales employees, only 27 (22%) were Black, compared to a representation rate of 41.4% Black sales employees in the county.

x.      Defendants' Hanover, Maryland, store, where out of 225 employees, 191 (84.9%) were sales employees, and out of those 191 sales employees, only eight (4.2%) were Black, compared to a representation rate of 10.6% Black sales employees in the county.

y.      Defendants' Harrisburg, Pennsylvania, store, where out of 203 employees, 147 (72.4%) were sales employees, and out of those 147 sales employees, only five (3.4%) were Black, compared to a representation rate of 7.9% Black sales employees in the county.

z.      Defendants' Independence, Missouri, store, where out of 152 employees, 122 (79.7%) were sales employees, and of those 122 sales employees, not one was Black, compared to a representation rate of 10.7% Black sales employees in the county.

aa.      Defendants' Islamorada, Florida, store, where out of 57 employees, 46 (80.7%) were sales employees, and of those 46 sales employees, only one (2.2%) was Black, compared to a representation rate of 4.5% Black sales employees in the county.

bb.      Defendants' Katy, Texas, store, where out of 120 employees, 92 (76.7%) were sales employees, and out of those 92 sales employees, only three (3.3%)

were Black, compared to a representation rate of 14.2% Black sales employees in the county.

cc.     Defendants' Las Vegas, Nevada, store, where out of 155 employees, 113 (72.9%) were sales employees, and out of those 113 sales employees, only three (2.7%) were Black, compared to a representation rate of 5.9% Black sales employees in the county.

dd.     Defendants' Leeds, Alabama, store, where out of 182 employees, 145 (79.7%) were sales employees, and out of those 145 sales employees, only eight (5.5%) were Black, compared to a representation rate of 21.5% Black sales employees in the county.

ee.     Defendants' Macon, Georgia, store, where out of 155 employees, 127 (81.9%) were sales employees, and out of those 127 sales employees, only 28 (22%) were Black, compared to a representation rate of 26.7% Black sales employees in the county.

ff.     Defendants' Manteca, California, where out of 225 employees, 179 (79.6%) were sales employees, and out of those 179 sales employees, only four (2.2%) were Black, compared to a representation rate of 4% Black sales employees in the county.

gg.     Defendants' Memphis, Tennessee, store, where out of 136 employees, 105 (77.2%) were sales employees, and out of those 105 sales employees, only six (5.7%) were Black, compared to a representation rate of 27.6% Black sales employees in the county.

hh.     Defendants' Mesa, Arizona, store, where out of 154 employees, 118 (76.6%) were sales employees, and out of those 118 sales employees, only two (1.7%) were Black, compared to a representation rate of 2.6% Black sales employees in the county.

ii.     Defendants' Miami, Florida, store, where out of 124 employees, 91 (73.4%) were sales employees, and out of those 91 sales employees, only one (1.1%) was Black, compared to a representation rate of 10.3% Black sales employees in the county.

jj.     Defendants' Nashville, Tennessee, store, where out of 180 employees, 138 (76.7%) were sales employees, and out those 138 sales employees, only one (.7%) was Black, compared to a representation rate of 12.1% Black sales employees in the county.

kk.     Defendants' Oklahoma City, Oklahoma, store, where out of 152 employees, 114 (75%) were sales employees, and out of those 114 sales employees, only two (1.8%) were Black, compared to a representation rate of 8.4% Black sales employees in the county.

ll.     Defendants' Olathe, Kansas, store, where out of 134 employees, 101 (75.4%) were sales employees, and out of those 101 sales employees, only three (3%) were Black, compared to a representation rate of 3.7% Black sales employees in the county.

mm.   Defendants' Orlando, Florida, store, where out of 205 employees, 155 (75.6%) were sales employees, and out of those 155 sales employees, only 11

(7.1%) were Black, compared to a representation rate of 9.6% Black sales employees in the county.

nn.     Defendants' Pearl, Mississippi, store, where out of 149 employees, 96 (64.4%) were sales employees, and out of those 96 sales employees, only seven (7.3%) were Black, compared to a representation rate of 15.4% Black sales employees in the county.

oo.     Defendants' Prattville, Alabama, store, where out of 130 employees, 95 (73.1%) were sales employees, and out of those 95 sales employees, only seven (7.4%) were Black, compared to a representation rate of 10.4% Black sales employees in the county.

pp.     Defendants' Rossford, Ohio, store, where out of 167 employees, 125 (74.9%) were sales employees, and out those 125 sales employees, only one (.8%) was Black, compared to a representation rate of 1.9% Black sales employees in the county.

qq.     Defendants' San Antonio, Texas, store, where out of 192 employees, 149 (77.6%) were sales employees, and out those 149 sales employees, only one (.7%) was Black, compared to a representation rate of 5.2% Black sales employees in the county.

rr.     Defendants' Savannah, Georgia, store, where out of 113 employees, 84 (74.3%) were sales employees, and out of those 84 sales employees, only 18 (21.4%) were Black, compared to a representation rate of 28.3% Black sales employees in the county.

ss.     Defendants' Spanish Fort, Alabama, store, where out of 192 employees,

157 (81.8%) were sales employees, and out of those 157 sales employees, only

nine (5.7%) were Black, compared to a representation rate of 7% Black sales

employees in the county.

174.     Comparing the number of Black sales employees employed by Defendants (as

specified in Defendants' 2010 EEO-1 reports for 52 retail stores) to the representation rate of

Black sales employees in the county in which each store is located (as provided for in the Census

2000 Special EEO file) indicates that Defendants had a net shortfall of 321 Black sales

employees in 2010.

## DEFENDANTS HAVE DENIED EMPLOYMENT
## TO BLACK APPLICANTS AT STORES NATIONWIDE

175.     Plaintiff re-alleges and incorporates by reference paragraphs 1 to174 above as if

set forth fully herein.

176.     As discussed in paragraphs 177 to 359 below, Defendants have denied

employment to at least hundreds of individual Black applicants based on their race including, but

not limited to, the individuals listed below, and all persons in like or related circumstances.  The

individuals were denied employment based on their race at numerous of Defendants' stores and

from 2005 or earlier to the present.

177.     Dominique Terry is Black.  He had almost ten years of retail experience and

fishing experience when he applied in person at the Hampton, Virginia store in 2009.  While at

the store waiting for an interview, an employee approached him and stated "niggers aren't

allowed to work here."  Terry also applied at the Gurnee, Illinois, store in 2010 and was told by a

Human Resources employee that they would get back to him.  Defendants never hired Terry.

178.     Tristan Moore is Black.  Moore had experience as an assistant manager at Wal-Mart and at a portrait studio, in addition to hunting, fishing, and camping experience when he applied to the Katy, Texas store around November 2006 after seeing a "help wanted" sign in the window.   After submitting his application, Moore followed up in person at the store.   An employee told him that his application would remain in Defendants' system for a few months and that they would call him if they needed him.  Despite the "help wanted" sign remaining in the store window after he applied, Defendants never contacted or hired Moore.  He applied again at the Katy store around June 2007 by submitting his application to a manager who told him he would review it and call him for an interview.   Moore was never contacted or hired by Defendants.  Moore had previously applied at the Katy store in 2002, also after seeing a "help wanted" sign in the store window.  When he submitted his application then, the Store Human Resources Manager told him that someone would call Moore if he was needed.  Moore did not receive a call back from Defendants at that time either.

179.     Byron Keels is Black.  He has been a supervisor for 15 years at his current job, and had 20 years of boating experience and 50 years of fishing experience when he applied at the Manteca, California store around the time it opened in the fall of 2008.  Keels was interviewed on the spot at a job fair, and was told that someone would be in touch with him about his application.  Keels was never contacted or hired by Defendants.

180.     Norris Pete is Black.  Pete had a business management degree, and had worked in retail throughout college and high school.  He is also an avid fisherman.  In early 2010, Pete applied for a job at the Pearland, Texas store after an employee told him that the store was hiring.  He followed up on his application twice while shopping at the store and was told that all

positions had been filled.  However, another employee told him at the time that the store was still hiring.  Defendants never hired Pete.

181.    Victor Harvey is Black.  Harvey applied at the Macon, Georgia store around December 2006.  His job application with Defendants listed stocking experience at Kohl's and Piggly Wiggly, as well as hunting and fishing experience.  He was called to take a "work-ready" test and he scored well.  Defendants performed a background check on Harvey, which he was informed came out clear.  Despite his subsequent calls and in-person visits to follow up on his application, and despite his having seemingly cleared all pre-employment hurdles, Harvey was not offered a job by Defendants.

182.    Tekarra Jordan is Black.  Jordan had cashier experience with three different employers when she applied at the Savannah, Georgia store multiple times, including in November 2006.  She applied at the same time as a White friend, Brittney Williams.  Defendants offered a job to Williams, but never interviewed or hired Jordan.

183.    Vanessa Burton is Black.  She had many years experience working in customer service.  Additionally, she owned a boat, and did a lot of boating, fishing, hunting, and golfing.  In late 2009, Burton applied to the Pearland, Texas store.  Defendants did not hire her.

184.    Kenn Bradshaw is Black.  Bradshaw applied to the Concord, North Carolina store around 2008 after seeing a hiring sign in the store window.  Bradshaw followed up on his application in person by asking to speak to a manager.  An employee told him that all the positions at the store had been filled and they were not hiring anymore.  When Bradshaw left the store that day, he noticed that the hiring sign was still in the window.  Defendants never hired Bradshaw.

185.     William Hudgins is Black.  Hudgins had a college degree and many years of retail experience when he applied to the Katy, Texas store in late 2009 after seeing a hiring sign in the window of the store.  He also has extensive knowledge about guns.  Defendants did not hire Hudgins.

186.     Marty Blame is Black.  Blame had several years of human resources experience with a major corporation when he applied twice in 2011 for a Store Human Resources Manager position at the Prattville, Alabama store.  Defendants did interview or hire Blame.

187.     John Kenneth Harris is Black.  He applied twice at Defendants' Katy, Texas store.  He served four years in the United States Army.  On an application submitted in March 2005, Harris listed his over 20 years of experience in deer hunting, small game hunting, and bass fishing, as well as 12 years of salt water fishing experience.  Harris frequently shopped at the Katy store and had never seen a Black employee there.  Defendants never hired Harris.

188.     Mary Barnett is Black.  She applied to the Grapevine, Texas store in April 2005.  On her job application, Barnett listed her previous cashier and sales associate experience with multiple retailers, as well as her certification to operate a forklift.  Defendants interviewed Barnett.  When she followed up on her application, she was told that she was not sufficiently qualified for a job with Defendants.

189.     Talejah Arrington is Black.  She applied for a position at the Savannah, Georgia, store in January 2005.  Defendants did not hire Arrington.

190.     Yolanda Allen is Black.  She applied at the Bossier City, Louisiana store in December 2006.  On her application, she listed five years of experience at Wal-Mart, which included customer service, sales, greeting, and stocking.  She also listed her hunting, fishing, and boating experience.  She attempted to follow up on her application by going to the store, but no

one would speak to her about her application.  On later trips to the store, Allen saw that new, White employees had been hired.  Defendants did not hire Allen.

191.    Nikaye Donastorg is Black.  She had experience working as an executive assistant, accounts receivable manager, and a unit secretary when she applied for an Administrative Assistant position at the Orlando, Florida store in January 2008. She listed experience in several outdoor activities on her application.  During her interview, the interviewer commented that she had thought Donastorg was French and told Donastorg that she was sorry she had called her in because they typically hire from within the store.  At the time, Donastorg saw that there were other people waiting to be interviewed.  Donastorg saw only one Black employee at the store.  Defendants did not hire Donastorg.

192.    Audrieta Edwards is Black.  She had retail experience as a sales associate and stocker at Gymboree, Target, and Children's Place when she applied to the Orlando, Florida store in July 2008.  She also had fishing experience.  Edwards heard from an employee that the store was hiring for stocker positions, but she was told by a Human Resources employee that the store was not hiring when she turned in her application.  The same employee also told her the store was "prejudiced" because Blacks were not hired to work on the sales floor where customers might see them, although some were placed in stocking positions at the back of the store. Defendants did not hire Edwards.

193.    Terry Donner is Black.  He applied multiple times to both the Columbia, Missouri store and the Springfield, Missouri store, around 2007 and 2008.  He is the Human Resources Director for his current employer, and was seeking either Human Resources or distribution positions with Defendants.  Despite his approximately 30 years of hunting and fishing experience, he has never even received a call-back from Defendants after any of his applications.

When he applied on-line, he listed his race as Black in response to the voluntary EEO information questions.  Defendants never hired Donner.

194.   Tamela Bellamy is Black.  She applied to the Katy, Texas store in June 2005. Bellamy was not hired by Defendants.

195.   Suran Banargent is Black.  He applied to the Savannah, Georgia in March 2006. Banargent was not hired by Defendants.

196.   Fletcher Batts is Black.  Batts had visual managerial experience and other supervisory experience in retail when he applied online in December 2005 for a Visual Manager position at the Macon, Georgia location.  In January 2006, Batts was interviewed by a Human Resources Manager and a department manager.  He was not hired by Defendants.

197.   Lige Brisby is Black.  He applied twice at the Independence, Missouri store around 2007.  He was not contacted or hired by Defendants.  In 2010, after relocating to the Houston area, he spoke with a manager at the Pearland, Texas store concerning potential employment, but the manager failed to follow up and provide him with information about available jobs.  Defendants did not hire Brisby.

198.   LaTonya Anderson is Black.  She applied to the Pearl, Mississippi store in late 2007.  She completed a written application at the store, and submitted it to an employee.  She also completed a second application around the same time, which she gave to an employee at the store.  Although Anderson had retail experience and was able to work a flexible schedule, she was never contacted or hired by Defendants.  Anderson noticed that the vast majority of employees at the store were White.

199.   Thomas Davis is Black.  Around January 2006, he applied to the Savannah, Georgia store after being directed there by the local state unemployment office.  While applying

directly at the store, Davis perceived that he was treated in a demeaning fashion.  For example, Davis was made to wait two hours before being provided with an application by an employee. During this time, Davis observed that unlike other nearby retail stores with which he was familiar, Defendants' workforce was predominately White.  After submitting his application to Defendants' representative, Davis was given an Orion test, which he completed on-site. Defendants' never provided Davis with the results of the test, nor was he contacted for an interview.  Davis submitted a second application to the Savannah store between the spring of 2006 and the fall of 2007.  He received no response to that application as well.  Defendants never hired Davis.

200.    Sandra Brown is Black.  She applied for a job at the Savannah, Georgia store in about the fall of 2005 and again around February 2006.  Defendants never contacted Brown regarding her 2005 application.  Following her 2006 application, Brown was interviewed at the Savannah store for a Customer Service position by a Human Resources employee.  She was not asked about her outdoor experience, but was told that the store was currently hiring for all shifts. Brown was given Orion tests following her interview.  The test results were never discussed with her and she did not receive a job offer.  Defendants never hired Brown.

201.    Nikia Lewis is Black.  She applied to the Macon, Georgia store around March 2006 and was interviewed at a job fair.  Lewis was never called for a second interview and was never hired by Defendants.

202.    Latasia Blige is Black.  She applied to the Savannah, Georgia store around September 2006.  Blige learned of the job opening by reviewing a list of available jobs at the customer service counter in the mall where the store is located.  Despite the posted openings and her two years of experience in customer service, Blige was not contacted for an interview or

hired.  During multiple visits to the store, Blige observed that the great majority of employees at the store were White.

203.    Kwabena Ababio is Black.  He applied to the Savannah, Georgia store around September 2006, and again around October 2006.  When he first applied, Ababio told Defendants that he had tent camping, freshwater fishing, and hiking experience.  Abadio also had completed some college and speaks five languages.  In response to his first application, he was informed that he did not meet Defendants' hiring criteria.  Upon submitting his second application in October 2006, Ababio was interviewed by a Human Resources employee and then a department manager.  He also completed an Orion test and a drug screen.  Again, Ababio was informed that he did not meet Defendants' criteria for hire.

204.    Porsha Savage is Black.  Savage had experience in freshwater and salt water fishing when she applied to the Hampton, Virginia store in May 2006.  She was not interviewed or hired by Defendants.

205.    Tiara Blackshear is Black.  Blackshear had retail experience at Toys R Us and was employed at Wal-Mart when she applied at the Katy store in July 2006.  Blackshear was called in to a room with about five to six other applicants to take a personality test.  Among these applicants, Blackshear was the only Black and the only one not sent for a drug test.  Blackshear observed that she was the only Black among all the employees and applicants she saw at the store that day.  Defendants did not hire Blackshear.

206.    Ikiya Celestine-Glover, also known as Ikiya Harris, is Black.  She applied at the Macon, Georgia store in about October 2006.  She was interviewed and was given an Orion test.  She was not contacted or hired by Defendants.

207.    LaVita Childs is Black.  She had cashier experience when she applied for a cashier position at the Macon, Georgia store at a job fair in August 2006.  Childs was interviewed at the job fair, but was not contacted by Defendants despite her many attempts to determine the status of her application.  She applied again in 2010 or 2011, but was not contacted by Defendants.  Defendants did not hire Childs.

208.    Sharon Clements is Black.  She had experience as a cashier when she applied to the Macon, Georgia store in August 2006 at a job fair.  She was interviewed at the job fair, but never heard back from Defendants.  She applied again about six to 12 months later, but was not contacted by Defendants.  Defendants did not hire Clements.

209.    Kecia Coleman is Black.  She applied to the Macon, Georgia store in November 2006.  While at the store, Coleman observed that a manager was more helpful to White applicants than she had been to Coleman.  When Coleman called to check the status of her application, she was told they were not hiring at the time.  She applied again about 4 to 6 months later, but she was not contacted or hired by Defendants.

210.    Adrian Dennis is Black.  Dennis had experience as a cook and stocker when he applied to the Macon, Georgia store in November 2006.  He called to check the status of his application and was told the store was still reviewing applications.  He was not interviewed or hired by Defendants.

211.    Leroy Heath is Black.  He had extensive supervisory experience when he applied to the Macon, Georgia store at a job fair in August 2006.  At the job fair, a company representative told him he had good qualifications and experience.  He was sent to the store to complete and submit his application.  Defendants did not hire Heath.

212.    Valentina Holloway-Bailey is Black.   Holloway-Bailey had experience as a cashier and stocker when she applied to the Macon, Georgia store in September 2006.  When she called to check the status of her application, she was told that the store had completed its hiring. Around 2007, Bailey submitted an online application and was interviewed.  Defendants did not hire Holloway-Bailey.

213.    Dexter Strange is Black.  He had firearm, hunting, and fishing experience when he applied to the Pearl, Mississippi store in September 2007.  He spoke to a Human Resources employee about how to get a job and called several times to check on the status of his application.  He was told that he would be contacted if he was selected for an interview.  Strange was never contacted or hired by Defendants.

214.    Clarence White, Jr. is Black.  He applied to the Bossier City, Louisiana store in October 2005.  White was not interviewed or hired.

215.    Renata Valadez is Black.  She had cashier experience when she applied to the Bolingbrook, Illinois store in March 2008 and again later that year.  Valadez was not hired by Defendants.

216.    Ciera Royston is Black.   She applied to the Bolingbrook, Illinois store in September 2008.  She called the store to check on the status of her application, but was never contacted or hired by Defendants.

217.    O'Darrell Howard is Black.  He applied to the Macon, Georgia store in October 2006 by submitting an application at the store.  He was not contacted by Defendants.  He applied again and contacted Defendants about being interviewed, but received no response.  Defendants did not hire Howard.

218.    Sandra Howell is Black.  She applied to the Macon, Georgia store in November 2006.  When she called about the status of her application, she was told that the store was not hiring.  Defendants did not contact or hire Howell.

219.    Mary Howell is Black.  She applied to the Macon, Georgia store in November 2006.  She was told she would be contacted when she submitted her application, but was not contacted or hired by Defendants.

220.    Ramon Kizer is Black.  In August 2006, Kizer applied to the Savannah, Georgia store.  He stopped by the store and called several times to check on the status of his application.  He was not contacted or hired by Defendants.

221.    Sabrina Gates is Black.  She applied to the Savannah, Georgia store in August 2006.  She had previously worked for Defendants, but left in 2005 after twice being passed over for promotion.  When she reapplied, she was sent a rejection letter.  Despite having satisfactory job performance during her first job with Defendants, Gates was not hired after her August 2006 application.

222.    Gary Mincey is Black.  He applied in person to the Savannah, Georgia store in May 2007.  Mincey called a few times to check on the status of his application, but was not contacted back.  He applied again and was not contacted or hired by Defendants.

223.    Lucy Brown is Black.  Brown had experience in saltwater fishing and freshwater fishing, as well as experience in backpacking, rock climbing, hiking, rappelling, and tent camping when she applied to the Savannah, Georgia store in January 2006.  She was not interviewed or hired by Defendants.

224.    Keiwonda Tennerson is Black.  She applied to the Savannah, Georgia store around February 2006.  Tennerson was not hired by Defendants.

225.    Carlos Williams is Black.  He applied at the Savannah, Georgia store around May 2007.  He spoke to a manager about a boat detailer position, was interviewed and told he met the qualifications for the position.  He called to follow up regarding his application.  Defendants did not hire Williams.

226.    John Wilson is Black.  He applied to the Savannah, Georgia store around January 2006 based on a job listing he saw at the security desk at the mall where the store is located.  He called about the status of his application and was told it was being reviewed.  Defendants did not hire Wilson.

227.    LaRue Brown is Black.  Brown had almost 10 years of experience with Wal-Mart when she applied to the Savannah, Georgia store in January 2007.  Brown also had loss prevention experience at Dillard's and years of security experience at the mall in which the Savannah store is located.  She was interviewed for a Loss Prevention position.  The interviewer offered her a position, and told her to call back on Friday.  When she called back on Friday, she was advised that the position was no longer open.  Defendants retracted her job offer.

228.    Helen Marie Carter is Black.  Carter had over 8 years of retail experience with Mervyn's, Kohl's, and Target when she applied at the Bossier City, Louisiana location in December 2005.  She had previously applied when the store opened around November 2003.  Carter was not hired by Defendants.

229.    Nathaniel Carter is Black.  Carter had retail experience at Macy's and loss prevention experience at Marshall's and Lowe's when he applied twice for employment, including to the Katy, Texas store in October 2005.  Defendants did not hire Carter.

230.     Kendall Dean is Black.  He applied at the Springfield, Missouri location around September 2011 and again in January 2012.  Dean followed up on his applications by telephone, but was not contacted by Defendants.  Defendants did not hire Dean.

231.     Cheryl Fields is Black.  Fields has an MBA.  She applied at the Olathe, Kansas store around the time of its opening in February 2007 by dropping off a resume in person.  She also applied online for a manager position in 2007 or 2008 when she saw a "now hiring" sign at the store.  She was not hired by Defendants.

232.     Walter Hargrove, Jr. is Black.  Hargrove listed experience in bass fishing, trout fishing, and salt water fishing when he applied at the Katy, Texas store in March 2007.  Hargrove was not hired by Defendants.

233.     Wayne Henderson is Black.  He had forklift experience.  He applied twice to the Macon location, including in October 2006.  He inquired about the status of his application by phone and in person and was told that he would be called when a job became available.  He was not hired by Defendants.

234.     Tishanna Hollins is Black.  She applied at the Katy, Texas location in March 2005.  She was not hired by Defendants.

235.     Jakara Hood is Black.  She had customer service experience when she applied at the Macon, Georgia location in November 2006.  Hood was not hired by Defendants.

236.     Jerrell Howard, Jr. is Black.  He had customer service experience when he applied at the Macon, Georgia store about three times: in June and September 2006 and in 2010.  In 2006, Howard was interviewed but not hired.  Around the same time, Defendants hired a White acquaintance of Howard who had similar skills as Howard.

237.    Ebony Hemphill is Black.  She had retail experience when she applied to the Pearland, Texas store in September 2007.  She was given a screening test and interviewed by an employee who advised her that she would not be offered more than one shift per month if hired. Defendants did not hire Hemphill.

238.    LaKenya Hutchings is Black.  She applied at the Macon, Georgia location in January 2007 and listed fishing as a hobby.  She was not interviewed or hired by Defendants at that time.  She applied again in 2012, months after this lawsuit was filed, and was hired in May 2012.

239.    Rachel Guidry is Black.  She had experience as a cashier, stocker, and flight attendant when she submitted her application online and handed in a copy at the Bossier City, Louisiana store in the early 2011.  She called to inquire about her application and was told that it would be pulled out for review but she received no further response.  Defendants did not hire Guidry.

240.    LaSedrich Horton is Black.  Horton had experience as a Project Officer with the Mississippi Department of Wildlife and experience in archery, bow hunting, deer hunting, and small game hunting when she applied in person at the Pearl, Mississippi store in October 2007. Horton was not hired by Defendants.

241.    Anthony Gloston is Black.  Gloston listed his Peace Officer certification and work experience in construction and store management as well as his work as a police officer and a navy sailor when he applied to the Macon, Georgia store in March 2007.  He also listed water sports and fishing as some of his hobbies in addition to his experience in about nine other outdoor activities.  He applied twice, and was told that his application was being reviewed when

he inquired about the status of it, but he never heard back from Defendants.  Defendants did not hire Gloston.

242.    Sharon Gloston is Black.  Gloston listed her secretarial education, certificate in computer assisted training, and her work experience as a quality assurance clerk and auditor on her application when she applied to the Macon, Georgia store in March 2007.  She also listed fishing, swimming, and camping as her hobbies in addition to her experience in four outdoor activities.  She called to inquire about the status of her application and was told it was being reviewed but never heard anything again.  When she submitted her application at the store, she observed that all of the cashiers were White and she saw no minority employees.  Defendants did not hire Gloston.

243.    Afric Simon is Black.  He applied to the Pearl, Mississippi store in November 2007.  He called to check on the status of his application and was told to check back.  Simon was not contacted or hired by Defendants.

244.    Corvé Smith is Black.  He had retail and rock-climbing experience when he applied to the Bolingbrook, Illinois store twice in 2007.  He followed up on his applications and was told someone would call him.  He was not contacted or hired by Defendants.

245.    Martel Rudd is Black.  He had sales and cashier experience as well as recreational fishing experience when he applied to the Bolingbrook, Illinois store in the spring of 2007 after a White friend of his suggested he apply and told him that it was easy to get a job at the store.  He was not contacted or hired by Defendants.

246.    Melinda Slaton is Black.  She had 16 years of cashier experience when she applied to the Macon, Georgia store in early 2007.  She followed up on her application several times and each time was told the store was not hiring.  Slaton was not hired by Defendants.

247.   Nicole Griffith is Black.  She had cashier and management experience when she applied to the Pearl, Mississippi store in May 2006.  She was asked about her cashier experience and was told that she would be contacted.  She never was contacted, including after she called to inquire about her application on multiple occasions.  Griffith was not hired by Defendants.

248.   Cheryl Andrews is Black.  She had years of retail experience and knowledge of fishing when she attended a job fair in August 2006 and submitted an application for the planned Macon, Georgia store.  Andrews was interviewed, but she was not hired by Defendants.

249.   Willie Andrews is Black.  He had over ten years experience as a retail manager and had extensive knowledge of boating, fishing, and hunting when he applied for a position at the planned Macon, Georgia store in August 2006.  When he inquired about his application, he was told that there were no jobs available.  Andrews was not hired by Defendants.

250.   Joseph Brooks, Jr. is Black.   He had significant knowledge about outdoor recreational activities when he applied to the Macon, Georgia store in November 2006.  He was not hired by Defendants.

251.   Reginald Celestine is Black.   Celestine noted on his application that he had extensive managerial, retail, and customer service experience as well as specialized knowledge of hunting, fishing, and camping when he applied to the Katy, Texas store in February 2005.  He was not hired by Defendants.

252.   David Fox, Jr., is Black.  In 2009 and 2010, he applied at the Hampton, Virginia store.  An employee at the store told Fox's uncle that the store was hiring, which led Fox to apply.  Fox has fishing experience and has visited the store frequently.  Defendants did not hire Fox.

253.    Kareena Calhoun is Black.  She applied at the Pearl, Mississippi store twice in September 2007.  Her first application was a hard copy and around ten days later she applied online.  Both times she was administered the Orion test, and both times Calhoun authorized Defendants to conduct a pre-employment background screening.  She never heard back from Defendants and was not hired.

254.    Tavasha Tonsil is Black.  She had four years of experience in shipping, receiving, and stocking while serving in the U.S. Army when she submitted an online application for the Savannah, Georgia store in May 2007.  Defendants did not hire Tonsil.

255.    Antoine Harris-Singleton is Black.  He applied for a job at the Pearl, Mississippi store three times in May 2006.  Although the store had a sign in the window advertising job openings, Harris-Singleton was told by Customer Service staff that there were no job openings.  When he called about the status of his application, he was told that they would call him when his application was pulled for review.  When Harris-Singleton made a trip to the store around that time, he was told by a White employee that the White employee had applied for a job the day before and had been hired on the spot.  Harris-Singleton did not see any Black employees during his visits to the store.  He was not contacted or hired by Defendants.

256.    Nora McGill is Black.  She had years of customer service experience, fishing experience, and had studied Business Administration when she applied at the Pearl, Mississippi location in May 2007 and at one other time between 2006 and 2008.  She called to follow up on her application and followed up also with at least one visit to the store.  She initially was told that her application was under review but was then told that the position had been filled.  Defendants did not hire McGill.

257.    Dandrick Cornelius is Black.    In January 2006, Cornelius applied for a cook/porter position at the Bossier City, Louisiana store.  When Cornelius called to follow up on his application, he was told to reapply.  In May 2006, he submitted a second application for a cook/porter job at the Bossier City store.  He called several times to follow up and again he was told that he needed to reapply.  He was never hired by Defendants.

258.    Ancetha Dudley is Black.  She had about three years of stocking and cashier experience when she applied to the Macon, Georgia store in December 2006.  Dudley inquired about her application several times and was told that it had not been reviewed.  She was not hired by Defendants.

259.    Shanada Patrick is Black.  She had cashier and customer service experience when she applied to the Pearl, Mississippi store in September 2006.  She called multiple times to inquire about her application and was told each time that her application had not been reviewed.  Defendants did not hire Patrick.

260.    Carlos Antonio Glover is Black.  He had 4 years of experience in retail warehouse distribution when he applied for the first time at the Macon, Georgia store in September 2006.  He was not hired by Defendants.  In late 2010, Glover applied a second time for a job at the Macon store.  Again, he was not hired by Defendants.

261.    Lorenzo Partman is Black.  He had deer hunting experience when he applied to the Bossier City, Louisiana store in late 2005 and again, online, in 2007.  Defendants did not hire Partman.

262.    LaTroy West is Black.  He applied at the Springfield, Missouri store four times from 2010 to 2011.  Each time he applied, West took a skills test on the computer and scored 100%.  He also was interviewed.  He called to inquire about the status of his application after the

interviews.  During his visits to the store, West never saw a Black employee.  West was not hired by Defendants.

263.     Shamere James is Black.  She applied several times in 2006 and 2007 to the Macon, Georgia store for a cashier job.  At the time of her applications, she had relevant work experience.  James was never hired by Defendants.

264.     Anne Jenkins is Black.  Sometime in 2006, before the opening of the Macon, Georgia store, she attended a job fair for the store and submitted an application.  She was not hired.  In October 2006, Jenkins applied again online for a job at the Macon store.  She was interviewed, but she was not hired by Defendants.

265.     Danyell Johnson is Black.  Johnson had significant retail warehouse/distribution experience as well as boating and camping experience when he applied for a job at the Macon, Georgia store in 2006 and 2007.  He was not hired by Defendants.

266.     Leslie Johnson is Black.  In August 2006, Johnson applied for and was interviewed for a position at the Macon, Georgia store.  She had relevant work experience but was not hired by Defendants.

267.     Adorn Jones is Black.  Jones had significant cashier experience when she applied to the Katy, Texas store in September 2005.  She was interviewed by a manager who concluded the interview by telling her that "we're not sure you fit in."  Jones was not hired by Defendants.

268.     Orlando Franklin is Black.  He worked at Defendants' Denver, Colorado store from November 2010 to December 2010 as a PACE employee.  Franklin was terminated right before New Year's Day even though he requested a permanent position and while White PACE employees were hired for permanent positions.  His supervisor told him to apply for a boat detailing position, which he applied for, but he was never contacted about his application.  He

called to inquire about the position and was told they were not hiring.  To Franklin's observation, almost all of the staff at the store was White.  Franklin was not hired as a permanent employee with Defendants.

269.    Cecil Jordan, Sr. is Black.  He applied to the Macon, Georgia store in August 2006.  A few weeks later, an employee contacted him to say that his application had been denied but that he could return to the store to reapply.  He then reapplied sometime later in 2006.  He was interviewed by a manager who appeared uninterested in what Jordan had to say about his qualifications and who left the interview midway for a lengthy period of time without excusing himself.  Jordan is highly skilled in hunting and fishing and had work experience selling sporting goods as well as taxidermy experience.  During his interview, the interviewer had Jordan take a highly specialized archery skills test that required him to name and explain specific archery equipment.  The interviewer also quizzed him about Defendants' policies even though he had never worked for Defendants.  Jordan was not hired by Defendants.

270.    Jshell King is Black.  She had relevant work experience and experience in fishing, boating, and camping when she applied to the Macon, Georgia store in October 2006.  King was not hired by Defendants.  A White friend of hers, however, also applied for a job and was hired.

271.    Christopher Lamar is Black.  In February 2007, he applied to the Macon, Georgia store.  At the time, he had experience working in retail and stocking.  Shortly after submitting his application, he called the store to follow up and was told that the store did not have his application.  He called again and once more he was told that they did not have his application.  Lamar was never hired by Defendants.

272.    Oscar Pope is Black.  He had about 20 years experience as a manager and experience in hunting and fishing when he applied and was interviewed for a job at the Pearl,

Mississippi store in May 2007.  He knew that the store was hiring from a Sales Manager.  Pope followed up on his application several times but was never contacted or hired by Defendants.  A White former co-worker who had applied for a job at the Pearl store a few days before Pope was hired.

273.    Jesse Liggins is Black.  Liggins first applied for a Sales Associate position at the Macon, Georgia store at a hiring fair in July 2006.  He was interviewed and received an "A+" rating.  He also took a personality test that scored him as "above average" on supervisory attitudes.  At the time, he worked as a pastor and had relevant retail sales experience.  Despite these qualifications, one of the interviewers attempted to steer him into a lesser paying janitorial position even though he had no janitorial experience.  After the fair, he visited the store to speak to a manager and follow up on his application and was told they were still reviewing applications.  He reapplied for a job in August 2006 and after filling out an application and waiting some time to speak to a manager, an employee informed him that no positions were available.  He was not hired by Defendants.

274.    Charles Miles is Black.  Around November 2005, he applied to the Bossier City, Louisiana store after he saw a help wanted sign in the store window.  He later spoke to an employee about his application, who told him that they were not hiring at the time and that they had not reviewed his application.  Miles was not hired by Defendants.

275.    Luanda Archer is Black.  She attended the job fair at the Maple White church for the Macon store in summer 2006.  After the screening interview at the job fair, she was interviewed at the store site.  Although Archer came away from her second interview believing that she would be hired, Defendants did not hire Archer.

276.     Omoniyi Awontumde is Black.  He attended the job fair at the Maple White church for the Macon store in summer 2006, and he completed an application in August 2006. He took the Orion test, and scored "Average," "Above Average," or "Low Risk" in all categories.  After he was interviewed, he was told that he would be called back, but instead he received a letter stating that he was not qualified for the position.  Defendants did not hire Awontumde.

277.     Wayne Black is Black.  He applied to the Hanover, Maryland store, around February 2008.  Although he had work experience, Defendants never contacted him after he submitted his application.  He followed up by calling the store, but Defendants did not hire Black.

278.     Glenoard Roberson is Black.  In September 2006, he applied to the Bossier City, Louisiana store.  Roberson was not hired by Defendants.

279.     Kenneth Robinson is Black.  In November 2005, he attended a hiring event for the Katy, Texas store.  He was not hired by Defendants.

280.     Wanda Williams is Black.  In February 2007, Williams applied to the Savannah, Georgia store because she had heard that the store was hiring.  She submitted her application to a manager who told her that there were no jobs available.  Williams was not hired by Defendants.

281.     Rose Wimberly is Black.  In mid to late 2006, she applied to the Macon, Georgia store through Defendants' hiring fair.  Wimberly was not hired by Defendants.

282.     Fredrick Jones is Black.  He applied to the Grapevine, Texas store in January 2007.  He called twice to follow up on his application but was never contacted by Defendants. Jones was not hired by Defendants.

283.    Eric Kilpatrick is Black.  He had significant maintenance experience when he applied at the Katy, Texas store in 2011.  He was interviewed and told that he would also need to interview with the General Manager.  After he waited, he was told that the General Manager had left for the day.  Kilpatrick was not interviewed further and was not hired by Defendants.

284.    Oscar Pope is Black.  He had relevant work experience and significant outdoor experience when he applied to the Pearl, Mississippi store in 2006 and 2007.  He followed up on his applications several times, but he was never contacted or hired by Defendants.

285.    Franklyn Little is Black.  Little applied to the Macon, Georgia store in August 2006, October 2006, and again in 2008.  On his applications, he listed his extensive experience in fishing, boating, and camping as well as his having a commercial driver's license.  He was given a simple math test on which he scored 100.  When he called to inquire about his applications, he was told that someone would call him back, but he was never called back.  When he later shopped at the store, he saw that some Whites who had applied at the same time he did were now employed by Defendants.

286.    Crystal Milburn is Black.  She had retail experience when she applied at the Katy, Texas store in June 2005.  Milburn was not hired by Defendants.

287.    Evan Owens is Black.  She applied to the Pearland, Texas store in 2007 and 2008.  Owens was interviewed but not hired by Defendants.

288.    Clyefer Bass, Jr. is Black.  He had experience with outdoor activities when he applied to the Bossier City, Louisiana store around July 2006.  Upon being interviewed, a Store Human Resources Manager told Bass that his application was impressive, and that he intended to place him in the archery section of the store.  However, Bass never received a call back for a second interview and was never hired by Defendants.

289.    Karl Blair is Black.   He applied to the Independence, Missouri store around December 2010.   A Human Resources representative called Blair and told him that his application was "perfect" and "exactly what [he] was looking for."   When he came in for his interview the next day, the Human Resources representative looked at him and told him the position had been filled.   Blair was never hired by Defendants.

290.    Johnaca Burnett is Black.   She had retail experience when she applied to the Macon, Georgia store around July 2005.   When Burnett called to follow up about her application, a Human Resource representative told her that she did not meet the qualifications for the job and that the position had been filled.   Burnett was never hired by Defendants.

291.    Ron Clark is Black.   He had loss prevention experience at a large retailer when he applied for a loss prevention position at the Dania, Florida store in 2008 and again in 2009. Clark was not contacted or hired by Defendants.

292.    Kim Dang is Black and also of Asian-American descent.   She had extensive experience in human resources when she applied for a Store Human Resources Manager position in the Denver, Colorado store in March 2009.   She was screened by telephone and interviewed in person.   Dang was not contacted again or hired by Defendants.

293.    Juverlin Douglas is Black.   He had extensive outdoor experience when he applied to the Macon, Georgia store around July 2007.   Douglas was interviewed.   Initially, Douglas was told that there were several job openings, but he was never called back for a second interview. Douglas was not hired by Defendants.

294.    Vincent London is Black.   In December 2005, he applied to the Bossier City, Louisiana store by asking for an application at the store.   He informed the employee who took

his application that he had retail experience.  The employee told London that someone would contact him, but he was not contacted or hired by Defendants.

295.     Terry Hughes is Black.  He applied to the Macon, Georgia store while attending a job fair around March 2006.  He was interviewed twice at the job fair.  Hughes was not hired by Defendants.

296.     Shar-Nell Jordan is Black.  She attended a job fair in East Peoria, Illinois where Defendants were a featured recruiter.  She applied for a position at the East Peoria store, which was scheduled to open shortly after the job fair.  Jordan was interviewed at the job fair and then again a second time a few weeks later.  A Human Resources representative told Jordan that she would have a third interview, which was essentially a background check.  However, Jordan was never called back for a third interview and was never hired by Defendants.

297.     Chiquetta McCraw is Black.  She applied twice to the Bossier City, Louisiana store, including in April 2006.  McCraw submitted an application to a clerk in the store.  She was not interviewed and never heard back from Defendants.  McCraw went to the store to check on her application and was told the position was filled.  She saw only White employees while at the store.  Defendants did not hire McCraw.

298.     Charlene Sidener is Black.  Sidener had retail management and sales associate experience when she applied for managerial positions at the East Peoria, Illinois store in July 2011.  Sidener was interviewed and her experience was deemed "exceptional" by the Human Resources representative who interviewed her.  Nevertheless, Sidener was never called back for a second interview and was not hired by Defendants.

299.     Rose McClenden is Black.  She had over four years of cashier experience when she applied at the Pearl, Mississippi store in June 2007.  After turning in her application, she

called every day to follow up.  Finally, she was told that the store was not hiring anymore. Defendants did not hire McClenden.

300.    Jamian Alexander is Black.  He applied to the Pearl, Mississippi store around November 2006.  Alexander submitted both a written application in person at the store and an application online.  Alexander had retail experience and hunting and fishing experience.  When Alexander submitted his application in person, he was brushed off by store personnel who appeared disinterested in accepting his application.  At this time an employee informed him that every position had been filled.  Alexander attempted to follow up but every time he gave his name, the employees with whom he spoke told him all positions had been filled.  Alexander never saw any Blacks working in the store.  Defendants never hired him.

301.    Carolyn Reynolds is Black.  She had many years of experience as a customer service representative when she applied twice to the store in East Peoria, Illinois in May 2011. She submitted her first application in person in May 2011, which was the first day applications were accepted.  Reynolds also submitted a second application on-line.  She was first interviewed by two representatives who appeared interested in Reynolds's resume.  She returned for a second interview with a manager who was curt, spent less than five minutes with her, and appeared disinterested in what Reynolds had to say.   The manager did not ask her about her work experience.  Defendants did not hire Reynolds.

302.    Roderick Alston is Black.  He applied in person to the Hanover, Maryland store around August 2005.  Alston gave the application to a store employee, who told Alston that someone would get back with him about the application.  Defendants did not contact or hire Alston.

303.    James Bullard is Black.  He had fishing and hunting experience when he applied to the Bossier City, Louisiana store in May 2006.  Bullard submitted an application in person. He was not interviewed or contacted by Defendants.

304.    Earnest Wright is Black.  He applied to the Bossier City, Louisiana store first around September 2006, and several times again in 2007.  He was never contacted by Defendants.  When Wright called to inquire about the status of his application, he was told that the position was filled.  Defendants did not hire Wright.

305.    Michelle Younger is Black.  Younger had 10 years of cashier experience when she applied for a position with Defendants' new store in East Peoria, Illinois scheduled to open in September 2011.  She submitted her application at a job fair.  After waiting a long time, she was given a quick interview by an employee.  Younger was never called her back for a second interview or offered a job by Defendants.

306.    Chantelle Johns is Black.  In June 2006, Johns applied to the Bossier City, Louisiana store in response to ads she saw in a newspaper and online.  She submitted her application in person at the store and spoke with the manager in charge.  She informed the manager about her experience as a cashier at a casino, Wal-Mart and Home Depot.  Johns was not hired by Defendants.

307.    Reginald Johnson is Black.  He had retail work experience when he applied to the Macon, Georgia store in December 2006.  Johnson submitted his application in person at the store, but was not contacted by Defendants.  He later submitted another application, but again was not contacted by Defendants.  Defendants did not hire Johnson.

308.    Charles Allen is Black.  In fall 2008, he attended a job fair in Bossier City, Louisiana, and learned that Defendants were hiring.  Allen had previously applied to Defendants

in November 2006.  Allen made several return trips to the Bossier store to apply for a job, and was consistently told by employees to come back.  After many trips to the store, Allen was finally given an application, which he submitted in 2008.  He was never contacted by Defendants despite his attempts to follow up on his application.  Allen was never interviewed or hired by Defendants.

309.    Antonio Elzie is Black.  Around November 2006, he applied to the Pearl, Mississippi store, along with his friend Jamian Alexander.  Elzie applied both in person and on-line.  He had retail experience.  A manager hurriedly gave Elzie an application, and then tried to brush him off when he submitted the completed application.  Defendants did not hire Elzie.

310.    Jeremy Jones is Black.  Jones had 6 years of sales experience and fishing and hunting experience when he applied to the San Antonio, Texas store around September or October 2011.  During his visit to the store to submit his application, he was treated condescendingly by White staff, who told him he should apply online.  He followed up on his application by making inquiries at the store, but he was not contacted by Defendants for an interview or otherwise.  Jones was not hired by Defendants.

311.    Darryl Anthony is Black.  He applied to the Macon, Georgia store in September 2006.  Anthony was not interviewed or hired by Defendants.

312.    Daniel Winfield is Black.  Winfield had experience in retail sales and receiving when he applied to the Hanover, Maryland store in April 2006.  He was never hired by Defendants.

313.    Cathy Pearson Hiley is Black.  She applied to the Macon, Georgia store at a job fair in August 2006.  She had a short interview, but received no further contact from Defendants.  Hiley observed that many Blacks applied at the job fair and believes that none were hired.

314.     Darcy Jackson is Black.  He had outdoor experience when he applied to the East Peoria, Illinois store in September 2011 by submitting his application at a job fair.  He waited a long time for a rushed first interview.  He was told that he would receive a second interview, but he never was contacted again by Defendants.  Defendants did not hire Jackson.

315.     Shawn Gibbs is Black.  In summer 2007 and again in summer 2001, he tried to obtain a position at the Bolingbrook, Illinois store.  In 2007, Gibbs was hired as a dishwasher for the restaurant in the store.  He made attempts to transfer from the restaurant to a position in the retail store, but his Defendants did not offer him such a job.

316.     Tosha McSweeny is Black.  She applied twice to the Hampton, Virginia store.  She was not hired by Defendants.

317.     Jacqueline Johnson is Black.  She applied in person at the Savannah, Georgia store in November 2006.  Johnson later called the store to check on the status of her application, but received no response.  She was not interviewed or hired by Defendants.

318.     Jackquelin Gray is Black.  Gray had freshwater fishing experience when she applied in person at the Pearl, Mississippi store in September 2006.  After submitting her application, Gray called the store three times to check on its status.  On the first two occasions, she was told that Defendants were still going over her application.  The third time, she was told that the store was not hiring.  Defendants did not hire Gray.

319.     Ellis Hays is Black.  He indicated that he had experience in small game hunting and freshwater fishing when he applied in person at the Pearl, Mississippi store in January 2008.  Hays was never contacted or hired by Defendants.

320.     Sasha Brown is Black.  She applied multiple times to the Savannah, Georgia store, including in May 2006 and late 2007 or early 2008.  Brown submitted her written

application in person, but no one ever contacted her despite her repeated efforts to follow up on the status of her application. The first time Brown called she was transferred multiple times and unable to speak to anyone. The next time Brown called she was placed on hold for an extended period until she finally hung up. The third time Brown called no one answered. Brown saw no Blacks working at the store when she visited it. Defendants did not hire Brown.

321. Latiché Bush-Lane is Black. She has a Bachelor's Degree and a Master's Degree. She applied to the Bolingbrook, Illinois store around June 2007. Bush-Lane submitted a written application in person to a store employee. Bush-Lane was interviewed by a manager, who told her that she would be called if a position became available as all positions allegedly had been filled. Bush-Lane tried to follow up without success. Defendants did not hire Bush-Lane.

322. Rodrick Chaney applied at least twice to the Macon, Georgia store including in August 2006 before the store opened. In his August 2006 application, he listed fishing and camping experience. He asked an employee at the front desk if the store was hiring and was told they were. Chaney then submitted an application to the employee. Chaney never heard from anyone so he submitted a second application online. Chaney then called the store a couple of times to follow up and was told that someone would call him back. He was never contacted or hired by Defendants.

323. Reginald Chisholm is Black. He had retail experience and hunting and fishing experience when he applied twice to the Concord, North Carolina store. Chisholm worked at the Concord Mills mall where the Defendants' store is located. The first time Chisholm applied was when an employee told him that the store was hiring while he was shopping at the store. The employee gave Chisholm an application, which he filled out and gave back to her. The employee told Chisholm that someone would call him about his application. After he did not

hear from anyone, Chisholm called back to find out the status of his application but was unable to get an answer.  He applied again but again was not contacted.  Chisholm was concerned that the store was not calling him back as he never saw any Blacks working there when he shopped at the store.  Defendants did not hire Chisholm.

324.    Antwan Clark is Black.  He observed a large hiring sign posted in the window at the Concord, North Carolina store around 2008 or 2009 and decided to apply.  Clark submitted a written application in person at the store, but was told by a manager that the store was not hiring. Clark questioned the response due to the large "now hiring" sign in the window and was told by the manager that, notwithstanding the sign, the store was not hiring at that time.  Clark was told that he would be contacted when the store was hiring.  Clark made several follow up calls to determine if the store was hiring and to check the status of his application.  Each time Clark called and gave his name, he was told that the store was not hiring even though the hiring sign remained in the window.  When Clark mentioned the sign, a manager told him that the sign was irrelevant and they were not hiring.  During his second follow up call, an employee informed Clark that the Human Resources department was looking though the applications, but they had not made any decisions.  The third time Clark called the store he was put on extended hold before an employee told him that the store had reviewed all applications and filled all open positions.  She also said that he did not qualify for any position.  Clark believed this was not accurate as he had retail experience and hunting and fishing experience.  Clark was never hired by Defendants.

325.    Jaymie Hughes is Black.  She had over 10 years experience as a human resources manager at Wal-Mart when she applied on-line for a human resources management position at the Katy, Texas store between July and October 2009.  She saw the position posted online with

Career Builders.  Hughes was interviewed by Brent Day (Director of Human Resources (Retail)) and Jill Klimas (Regional Human Resources Manager) in October 2009.  During this interview, Hughes was told that her qualifications were excellent.  She also was told that there would be a second interview.  Hughes made numerous efforts to follow-up about the second interview, including by going to the store to inquire about the second interview, but Defendants never contacted her about it.  When she was at the store, Hughes observed that there appeared to be no minority employees.  Defendants never hired Hughes, who later secured a Director of Human Resources position with another company in Katy, Texas.

326.    Bryan Fleming is Black.  He applied twice to the Savannah, Georgia store. Around 2005, Fleming submitted a written application in person at the store and attempted to speak to a manager about it.  Fleming was told that no manager was available.  He asked if the manager would call him and was told his application would be submitted and that the manager would decide whether to call Fleming.  Fleming made several follow up calls and asked for a manager, who was never available.  Fleming was never contacted.   In May 2007, Fleming applied again and encountered the same response.  He was never able to speak to a manager despite his attempts.  Fleming was not interviewed or hired by Defendants.

327.    Shanetta Gibson is Black.  She submitted a written application to the Bossier City, Louisiana store in September 2006.  She asked to speak to a manager but none was made available.  Gibson called back to follow up on her application and was told that they were not hiring.  Defendants never hired Gibson.

328.    John Irvin is Black.  He had fishing and retail experience when he applied in person at the Macon, Georgia store in December 2007.  Irvin was never called for an interview

and was not otherwise contacted about his application.  Irvin attempted to follow up on his application, but did not succeed in obtaining an interview or a job with Defendants.

329.    Geraldine Battle is Black.  She submitted an application in person to the Macon, Georgia store in December 2006.  Battle told the person who accepted her application that she would be willing to accept any position that was available in the store, or at the factory in Macon.  She was given a test about plants and shown a film.  Battle was never interviewed or hired by Defendants.

330.    Anthony Burts, Jr. is Black.  He had hunting, fishing and military experience when he applied at the Bossier City, Louisiana store on two occasions between 2005 and 2007.  The first time he applied, Burts went to a job fair at a hotel.  He was interviewed and never heard back from Defendants.  He later went to the store and submitted another application.  The who accepted Burts' application informed him that someone would be in touch, but he was not contacted.  Burts went to the store to inquire about the status of his application, but was unsuccessful.  He was not hired by Defendants.

331.    Ebony Brogdon is Black.  She applied for a cashier or sales clerk position at the Bossier City, Louisiana store in June 2006.  Her mother, Diane Beck, also Black, applied at the same time as Brogdon.  Brogdon and Beck had cashier experience.  Brogdon and Beck submitted their applications to a manager, who did not ask them about their experience or training.  Brogdon called weekly to check on the status of their applications, and also went to the store to speak with the manager.  She was never able to speak to the manager, but was told someone would call her about their applications.  Brogdon and Beck were never called, interviewed or hired by Defendants.  Further, during her visits to the store, Brogdon never saw any Black employees.

332.    Tasheita Brown is Black.   She applied to the Savannah, Georgia store in November 2010.  Brown was interviewed by a manager who told Brown that Defendants were hiring, but that the final decision had to be made by the General Manager.   Although the manager had told Brown that she was a good candidate who would receive a second interview, she was not contacted about a second interview and not offered a job by Defendants.

333.    Aggie Glawson is Black.   She applied to the Macon, Georgia warehouse/Distribution Center at least twice, including February 2007.  She was required to take a test, for which she understood the applicants were to be paid.  Glawson received a letter indicating she passed the test and that someone would call her about filling a position.  She never received a call, was never paid for her time taking the test, and was never hired by Defendants.

334.    Kareri Irungu is Black.  He applied to the Concord, North Carolina store multiple times from 2005 through 2008.  Irungu was walking through the mall when he noticed a "Now Hiring" sign so he entered the store and asked for an application.  Irungu submitted the written application in person at the store but had some difficulty in obtaining the application from an employee even though application forms were right next to the employee's work space.  The employee was not cooperative when Irungu inquired about the available position.  Irungu noted on his application that he had retail and customer service experience.  He returned to the store twice to check on his application but was not offered any assistance, nor was he able to speak to a manager.  Defendants never hired Irungu.

335.    Carolyn Johnson is Black.  She applied to the Bossier City, Louisiana around November 2005 when she went by the name Carolyn Thomas.  She filled out an application and submitted it to an employee who told her they were not hiring.  Defendants never hired Johnson.

336.    Carolyn Williams is Black.  Williams had cashier experience when she applied to the Pearl, Mississippi store in person in June 2006, and on-line around May 2012.   After applying, Williams called the store several times a week to check on the status of her application.  She was repeatedly told that the store was not hiring, and that she could apply again if she did not receive a call within 60-90 days.  Williams was never contacted or hired by Defendants.

337.    Daphne Williams is Black.  She attended a job fair in April 2006 for the Pearl, Mississippi store.  She indicated on her application that she had cashier and sales experience, as well as experience with freshwater fishing, tent camping and RV camping.  Williams later called the store to check on the status of her application.  In response, she was told that the store was not hiring, but if they felt she was qualified for a position, they would call her.  She was never contacted or hired by Defendants.

338.    Keshun Wren is Black.  She applied in person to the Pearl, Mississippi store in August 2006.   She listed her cashier experience on her application.   Ms. Wren was never contacted or hired by Bass Pro.

339.    Pansy Evans is Black.  Around 2005 or 2006, she applied on-line for a position at the Memphis, Tennessee, store or the Pearl, Mississippi, store.  She had Human Resources and banking experience when she applied.   Defendants never hired Evans.

340.    Tamika Kyle is Black.  She applied to the Pearl, Mississippi store around May 2006 after hearing on the news that the store was hiring.  Kyle submitted her application in person, listing her retail experience, and archery and fishing experience.  She attempted to follow up with a manager and was placed on hold for a lengthy period and then told the manager was out.  She tried again within a few days and received the same lack of response.  Defendants did not interview or hire Kyle.

341.     Zabriel Mack is Black.  He applied to the Bossier City, Louisiana store around March 2007.  He submitted a written application in person at the store to a White employee who was unreceptive to his application.   He was told that someone would call him about his application, but he did not receive a call.  Mack followed up twice.  The first time he was told they had to find his application and then they would call him back.  The second time they told him they found the application and would call him back.  Defendants never called him back and did not hire him.

342.     Corey Oliver is Black.  He had retail experience when he applied to the Bossier City, Louisiana store around May 2006.  He submitted a written application in person by handing it to a manager who looked at it in an odd way and said that someone would get back to him.  Oliver made several follow up calls and despite his messages and the store's promises to get back to him, no one ever called Oliver back about his application.  Oliver never saw any Black employees at the store.  He was not hired by Defendants.

343.     Garrett Page is Black.  He applied to the Bossier City, Louisiana store around April 2006 by submitting a written application to a manager at the store.  During the entire time Page was in the store attempting to apply for a position, he was not permitted to sit down and was treated rudely.  However, a White applicant who arrived while Page was waiting was treated well and was seated so he could complete the application.  Page was never contacted or hired by Defendants.

344.     Brian Parker is Black.  He had stocking experience and fishing experience when he applied to the East Peoria, Illinois store in August 2011.  He submitted a written application online and attended a job fair where he was turned away allegedly because it was "too full."  Parker called back to check the status of his online application.  First, Parker was told they

needed to look for his application. The next time he called, Parker was told all of the positions had been filled. He was not interviewed or hired by Defendants.

345.    Ashley Robinson is Black. She had cashier experience when she applied to the Bossier City, Louisiana store around April 2006 by submitting her application to an employee at the store who informed her that someone would call her to discuss her application. Defendants did contact, interview, or hire Robinson.

346.    LeDamien Rounds is Black. He applied to the Bossier City, Louisiana store multiple times, including in January 2007. He submitted a written application in person by giving it to a Customer Service Representative, who stated it would be given to the General Manager. Rounds then spoke with an employee who informed him that he would be called for an interview. After he did not receive a call from the store, Rounds called back to inquire about his application and was told that he would be called back. Again, Rounds did not hear about the status of his application. Defendants never hired Rounds.

347.    Alonzo Spann is Black. He had relevant experience when he applied to the Pearl, Mississippi store twice: at a job fair in 2005 before the store opened and again in April 2006. Spann was interviewed by two managers who indicated they would get back with him, but they never did. Spann tried to follow up and was told that the store was still waiting to fill positions. Defendants never hired Spann.

348.    Cartavian Shamp is Black. He applied at the Bossier City, Louisiana store around 2006 after being told that the store was hiring. Shamp submitted a written application in person at the store. Each time Shamp called to follow up on his application, he was informed that someone would call to let him know about the status of his application, yet no one ever called him back. Defendants did not hire Shamp.

349.    Pearl Tyler-Tate is Black.  She had sales experience when she applied to the Pearl, Mississippi store in 2006 and again in July 2007.  Both times she submitted a written application in person at the store.  Both times she was told someone from Human Resources would call her about her application.   Tyler-Tate called back several times and was told that the store was still interviewing and reviewing applications.  She was never contacted, interviewed, or hired by Defendants.

350.    Juan Taylor is Black.  He had stocking experience and had some fishing and hunting experience when he applied to the Pearl, Mississippi store around July 2006 by submitting an application at the store.  He asked to speak to a manager but was not given an opportunity to do so.  The store employee he spoke to was not friendly and tried to brush him off by telling him that someone would get back with him about his application.  When he did not receive a call back, Taylor attempted to check on the status of his application by e-mail and was told to check back by phone.  Taylor called and was told that someone would get back with him.  When he was not contacted, Taylor tried again by phone and was placed on extended hold.  Taylor tried calling back a third time and was then told that the store was not hiring.  Defendants did not hire Taylor.

351.    Chrissy Wells is Black.  She applied to the Pearl, Mississippi store around May 2007.  Wells and her mother went to the store and were told that the store was hiring.  She submitted a written application to an employee, who told Wells that they would give her a call as soon as something became available.  Wells thought this was an odd comment as she was previously told the store were hiring.  Wells attempted to follow up with her application on several occasions.  She was told by the White manager that they were still looking and hiring and that someone would call her back.  Defendants never contacted or hired Wells.

352.    Aleshia Williams is Black.   She had sales and cashier experience when she applied to the Bossier City, Louisiana store around June 2006 by submitting a written application after seeing an online job advertisement.   Williams was interviewed by a manager and was told they would get back with her.   Williams followed up several times, and her calls were forwarded to several people who did not have any answers about her application.   Defendants did not hire Williams.

353.    Floyd Reed is Black.   He worked at the Bluegreen section inside the Garland, Texas store where he marketed time shares for Bluegreen resorts.   He applied for a position at the Garland store to work for Defendants.   Reed spoke with the General Manager about his application, but the General Manager was noncommittal.   At the time, there was only one Black employed in the whole store.   Reed was never called for an interview and was never hired by Defendants.

354.    Gerard Guy is Black.   In March 2005, Guy applied to the Katy, Texas store.   He had a phone interview with the Katy Store Human Resources Manager.   Guy had attended a leadership program at the Marine Corps Institute and had extensive fishing and camping experience.   During his in-person interview, Guy discussed his years of experience working in security, a state prison, and as a manager at Costco, where he handled loss prevention matters. The interviewer seemed uninterested and irritated at him during the interview.   She told Guy that someone would call him back, but no one did.   Guy followed up by calling the store multiple times and asking for the interviewer, but he was alternately told that she was out or was too busy to take his calls.   Defendants did not hire Guy.

355.    Johnny Thomas is Black.   In 2007 or 2008, Thomas attended a job fair for the Pearland, Texas store and was interviewed.   Despite Thomas' retail experience, he was not hired.

Around January 2011, Thomas applied online with the Pearland store after seeing a job posting on Defendants' website.  Thomas was in the process of obtaining a masters' degree in human resources management at the time.  He left messages with the Store Human Resources Manager to check on the status of his application, but he was not called back.   Defendants did not hire him.

356.    Melanie Jackson is Black.  She applied to the Macon, Georgia store in August 2006 after attending a job fair in July 2006.  She was given the Orion test and she scored very well.  She called once a week to follow up on her application, and was finally told that she "had to pay a fee to take a test to see if [she] qualified for any position."  The fee she was quoted was $85, which she initially did not have.  She called back when she had the money to pay for the test, but was told that there were no jobs available.  Defendants never hired Jackson.

357.    Anthony Reid is Black.  He had management, hunting, camping, and fishing experience when he submitted an application to the Grapevine, Texas store in July 2006 and applied online in August 2006.  He spoke to Human Resources and to store management about his application and followed up by telephone and in-person visits to the store.  He was always told that the store "didn't have any positions for [him] yet."   In all his trips to the Grapevine store, he had never seen a Black employee.  Defendants never hired Reid.

358.    Reggie Smith is Black.  He had fishing and camping experience and was a frequent customer when he applied at the Katy, Texas store in 2007 or 2008, after having previously applied in May 2005.  He also had a bachelor's degree when he applied.  Defendants never hired Smith, but he later obtained a position at a competitor – Gander Mountain.  Smith never saw a Black employee in Defendants' Fishing Department during his many visits to the Katy store.

359.    Kouros Jackson is Black.  At the time Jackson applied for a Cashier job at the Macon, Georgia store sometime in December 2006, he had worked for several years as a cashier and had outdoor experience.  Jackson knew the store was hiring because his sister, who had worked as a cleaning contractor at the store, told him.  He was never hired by Defendants.

Sheena Bibbs is Black.  She had outdoor experience as well as two years of cashier experience when she applied for a Cashier position at the Pearl, Mississippi store in June 2007.  She was not hired by Defendants.

### REPORTS PREPARED BY DEFENDANTS
### CONTAINING THE COMPOSITION OF THEIR WORKFORCE SHOW
### A PLAUSIBLE CLAIM OF HIRING DISCRIMINATION AGAINST HISPANICS

#### DEFENDANTS' DISCRIMINATORY FAILURE TO HIRE HISPANIC EMPLOYEES

360.    As stated above, during EEOC's administrative investigation, Defendants produced hiring data for 24 of their retail stores.

361.    According to the hiring data for 24 of Defendants' retail stores that Defendants produced to EEOC during EEOC's administrative investigation, out of a total 14,374 employees hired during the relevant time period, only 1,207 (8.4%) of the hires were Hispanic.

362.    According to the hiring data for 24 of Defendants' retail stores that Defendants produced to EEOC during EEOC's administrative investigation,  17 (70.8%) of the 24 stores hired a lower percentage of Hispanic employees compared to the representation rate of Hispanic employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.    Defendants' Bossier City, Louisiana, store, where out of 255 employees hired from January 2005 through May 2007, only 6 (2.4%) were Hispanic, compared to a representation rate of 2.7% Hispanic employees in the county.

b.      Defendants' Cincinnati, Ohio, store, where out of 285 employees hired from January 2005 through May 2007, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

c.      Defendants' Destin, Florida, store, where out of 430 employees hired from January 2005 through July 2009, only 11 (2.6%) were Hispanic, compared to a representation rate of 3.4% Hispanic employees in the county.

d.      Defendants' Duluth, Georgia, store, where out of 640 employees hired from January 2005 through July 2009, only 7 (1.1%) were Hispanic, compared to a representation rate of 8.5% Hispanic employees in the county.

e.      Defendants' Garland, Texas, store, where out of 216 employees hired from January 2005 through May 2007, only 12 (5.6%) were Hispanic, compared to a representation rate of 19.1% Hispanic employees in the county.

f.      Defendants' Grapevine, Texas, store, where out of 285 employees hired from January 2005 through May 2007, only 10 (3.5%) were Hispanic, compared to a representation rate of 16.5% Hispanic employees in the county.

g.      Defendants' Katy, Texas, store, where out of 306 employees hired from January 2005 through May 2007, only 28 (9.2%) were Hispanic, compared to a representation rate of 23.3% Hispanic employees in the county.

h.      Defendants' Las Vegas, Nevada, store, where out of 867 employees hired from January 2005 through July 2009, only 84 (9.7%) were Hispanic, compared to a representation rate of 17.7% Hispanic employees in the county.

i.      Defendants' Macon, Georgia, store, where out of 250 employees hired from January 2005 through May 2007, only 2 (.8%) were Hispanic, compared to a representation rate of 1.2% Hispanic employees in the county.

j.      Defendants' Memphis, Tennessee, store, where out of 428 employees hired from January 2005 through July 2009, only 5 (1.2%) were Hispanic, compared to a representation rate of 2.4% Hispanic employees in the county.

k.      Defendants' Myrtle Beach, South Carolina, store, where out of 783 employees hired from January 2005 through July 2009, only 13 (1.7%) were Hispanic, compared to a representation rate of 2.8% Hispanic employees in the county.

l.      Defendants' Nashville, Tennessee, store, where out of 839 employees hired from January 2005 through July 2009, only 11 (1.3%) were Hispanic, compared to a representation rate of 3.3% Hispanic employees in the county.

m.      Defendants' Oklahoma City, Oklahoma, store, where out of 761 employees hired from January 2005 through July 2009, only 24 (3.2%) were Hispanic, compared to a representation rate of 5.8% Hispanic employees in the county.

n.      Defendants' Orlando, Florida, store, where out of 946 employees hired from January 2005 through July 2009, only 94 (9.9%) were Hispanic, compared to a representation rate of 15.6% Hispanic employees in the county.

o.      Defendants' Saint Charles, Missouri, store, where out of 643 employees hired from January 2005 through July 2009, only 2 (.3%) were Hispanic, compared to a representation rate of 1.1% Hispanic employees in the county.

p.      Defendants' San Antonio, Texas, store, where out of 273 employees hired from January 2005 through May 2007, only 98 (35.9%) were Hispanic, compared to a representation rate of 48% Hispanic employees in the county.

q.      Defendants' Savannah, Georgia, store, where out of 538 employees hired from January 2005 through March 2009, only 8 (1.5%) were Hispanic, compared to a representation rate of 2.1% Hispanic employees in the county.

363.    Comparing the number of Hispanic employees hired (as specified in the hiring data for 24 of Defendants' retail stores that Defendants produced to EEOC during EEOC's administrative investigation) to the representation rate of Hispanic employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 187 Hispanic employees.

### Defendants' Discriminatory Failure to Hire
### Hispanic Employees at Defendants' Retail Stores in 2007

364.    According to Defendants' 2007 EEO-1 reports, out of a total employment of 8,186 employees in 43 retail stores, only 656 (8%) employees were Hispanic.

365.    According to Defendants' 2007 EEO-1 reports, 36 (83.7%) of Defendants' 43 retail stores had a lower percentage of Hispanic employees compared to the representation rate of Hispanic employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.      Defendants' Bolingbrook, Illinois, store, where out of 195 employees, only ten (5.1%) were Hispanic, compared to a representation rate of 9.5% Hispanic employees in the county.

b.      Defendants' Bossier City, Louisiana, store, where out of 195 employees, only five (2.6%) were Hispanic, compared to a representation rate of 2.7% Hispanic employees in the county.

c.      Defendants' Broken Arrow, Oklahoma, store, where out of 177 employees, only two (1.1%) were Hispanic, compared to a representation rate of 4.6% Hispanic employees in the county.

d.      Defendants' Cincinnati, Ohio, store, where out of 229 employees, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

e.      Defendants' Clarksville, Indiana, store, where out of 272 employees, not one was Hispanic, compared to a representation rate of 1.6% Hispanic employees in the county.

f.      Defendants' Concord, North Carolina, store, where out of 242 employees, only four (1.7%) were Hispanic, compared to a representation rate of 3.9% Hispanic employees in the county.

g.      Defendants' Council Bluffs, Iowa, store, where out of 177 employees, not one was Hispanic, compared to a representation rate of 4.5% Hispanic employees in the county.

h.      Defendants' Dania, Florida, store, where out of 255 employees, only 45 (17.6%) were Hispanic, compared to a representation rate of 17.7% Hispanic employees in the county.

i.      Defendants' Denver, Colorado, store, where out of 241 employees, only 25 (10.4%) were Hispanic, compared to a representation rate of 17.3% Hispanic employees in the county.

j.      Defendants' Destin, Florida, store, where out of 108 employees, only two (1.9%) were Hispanic, compared to a representation rate of 3.4% Hispanic employees in the county.

k.      Defendants' Duluth, Georgia, store, where out of 208 employees, only four (1.9%) were Hispanic, compared to a representation rate of 8.5% Hispanic employees in the county.

l.      Defendants' Ft. Myers, Florida, store, where out of 190 employees, only four (2.1%) were Hispanic, compared to a representation rate of 9.2% Hispanic employees in the county.

m.      Defendants' Garland, Texas, store, where out of 139 employees, only ten (7.2%) were Hispanic, compared to a representation rate of 19.1% Hispanic employees in the county.

n.      Defendants' Grapevine, Texas, store, where out of 300 employees, only 33 (11%) were Hispanic, compared to a representation rate of 16.5% Hispanic employees in the county.

o.      Defendants' Gurnee, Illinois, store, where out of 211 employees, only seven (3.3%) were Hispanic, compared to a representation rate of 13.1% Hispanic employees in the county.

p.      Defendants' Harrisburg, Pennsylvania, store, where out of 240 employees, only four (1.7%) were Hispanic, compared to a representation rate of 2.2% Hispanic employees in the county.

q.      Defendants' Islamorada, Florida, store, where out of 63 employees, only four (6.3%) were Hispanic, compared to a representation rate of 15.5% Hispanic employees in the county.

r.      Defendants' Katy, Texas, store, where out of 143 employees, only 25 (16.8%) were Hispanic, compared to a representation rate of 23.3% Hispanic employees in the county.

s.      Defendants' Kodak, Tennessee, store, where out of 217 employees, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

t.      Defendants' Las Vegas, Nevada, store, where out of 210 employees, only 15 (7.1%) were Hispanic, compared to a representation rate of 17.7% Hispanic employees in the county.

u.      Defendants' Macon, Georgia, store, where out of 156 employees, only one (.6%) was Hispanic, compared to a representation rate of 1.2% Hispanic employees in the county.

v.      Defendants' Memphis, Tennessee, store, where out of 143 employees, not one was Hispanic, compared to a representation rate of 2.4% Hispanic employees in the county.

w.      Defendants' Mesa, Arizona, store, where out of 187 employees, only 14 (7.5%) were Hispanic, compared to a representation rate of 19.6% Hispanic employees in the county.

x.      Defendants' Myrtle Beach, South Carolina, store, where out of 151 employees, not one was Hispanic, compared to a representation rate of 2.8% Hispanic employees in the county.

y.      Defendants' Nashville, Tennessee, store, where out of 200 employees, store, only three (1.5%) were Hispanic, compared to a representation rate of 3.3% Hispanic employees in the county.

z.      Defendants' Oklahoma City, Oklahoma, store, where out of 155 employees, only two (1.3%) were Hispanic, compared to a representation rate of 5.8% Hispanic employees in the county.

aa.     Defendants' Olathe, Kansas, store, where out of 174 employees, only six (3.4%) were Hispanic, compared to a representation rate of 4.8% Hispanic employees in the county.

bb.     Defendants' Orlando, Florida, store, where out of 277 employees, only 24 (8.7%) were Hispanic, compared to a representation rate of 15.6% Hispanic employees in the county.

cc.     Defendants' Pearl, Mississippi, store, where out of 164 employees, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

dd.      Defendants' Pearland, Texas, store, where out of 205 employees, only 24 (11.7%) were Hispanic, compared to a representation rate of 20.6% Hispanic employees in the county.

ee.      Defendants' Portage, Indiana, store, where out of 200 employees, only six (3%) were Hispanic, compared to a representation rate of 4% Hispanic employees in the county.

ff.      Defendants' Prattville, Alabama, store, where out of 193 employees, only one (.5%) was Hispanic, compared to a representation rate of .9% Hispanic employees in the county.

gg.      Defendants' Rancho Cucamonga, California, store, where out of 305 employees, only 102 (33.4%) were Hispanic, compared to a representation rate of 33.9% Hispanic employees in the county.

hh.      Defendants' Saint Charles, Missouri, store, where out of 224 employees, only one (.4%) was Hispanic, compared to a representation rate of 1.1% Hispanic employees in the county.

ii.      Defendants' San Antonio, Texas, store, where out of 197 employees, only 90 (45.7%) were Hispanic, compared to a representation rate of 48% Hispanic employees in the county.

jj.      Defendants' Savannah, Georgia, store, where out of 147 employees, not one was Hispanic, compared to a representation rate of 2.1% Hispanic employees in the county.

366.    Comparing the number of Hispanic employees employed by Defendants (as specified in Defendants' 2007 EEO-1 reports for 43 retail stores) to the representation rate of

Hispanic employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 224 Hispanic employees in 2007.

**Defendants' Discriminatory Failure to Hire**
**Hispanic Employees at Defendants' Retail Stores in 2008**

367.   According to Defendants' 2008 EEO-1 reports, out of a total employment of 8,410 employees in 49 retail stores, only 504 (6%) employees were Hispanic.

368.   According to Defendants' 2008 EEO-1 reports, 43 (87.8%) of Defendants' 49 retail stores had a lower percentage of Hispanic employees compared to the representation rate of Hispanic employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.     Defendants' Ashland, Virginia, store, where out of 171 employees, only three (1.8%) were Hispanic, compared to a representation rate of 2.7% Hispanic employees in the county.

b.     Defendants' Bolingbrook, Illinois, store, where out of 177 employees, only five (2.8%) were Hispanic, compared to a representation rate of 9.5% Hispanic employees in the county.

c.     Defendants' Bossier City, Louisiana, store, where out of 171 employees, only four (2.3%) were Hispanic, compared to a representation rate of 2.7% Hispanic employees in the county.

d.     Defendants' Branson, Missouri, store, where out of 101 employees, only one (1%) was Hispanic, compared to a representation rate of 1.7% Hispanic employees in the county.

e.      Defendants' Broken Arrow, Oklahoma, store, where out of 212 employees, only four (1.9%) were Hispanic, compared to a representation rate of 4.6% Hispanic employees in the county.

f.      Defendants' Cincinnati, Ohio, store, where out of 222 employees, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

g.      Defendants' Clarksville, Indiana, store, where out of 223 employees, not one was Hispanic, compared to a representation rate of 1.6% Hispanic employees in the county.

h.      Defendants' Columbia, Missouri, store, where out of 98 employees, only one (1%) was Hispanic, compared to a representation rate of 1.3% Hispanic employees in the county.

i.      Defendants' Concord, North Carolina, store, where out of 196 employees, only two (1%) were Hispanic, compared to a representation rate of 3.9% Hispanic employees in the county.

j.      Defendants' Council Bluffs, Iowa, store, where out of 165 employees, only one (.6%) was Hispanic, compared to a representation rate of 4.5% Hispanic employees in the county.

k.      Defendants' Dania, Florida, store, where out of 229 employees, only 39 (17%) were Hispanic, compared to a representation rate of 17.7% Hispanic employees in the county.

l.      Defendants' Denham Springs, Louisiana, store, where out of 166 employees, only one (.6%) was Hispanic, compared to a representation rate of .8% Hispanic employees in the county.

m.      Defendants' Denver, Colorado, store, where out of 198 employees, only 18 (9.1%) were Hispanic, compared to a representation rate of 17.3% Hispanic employees in the county.

n.      Defendants' Destin, Florida, store, where out of 99 employees, only two (2%) were Hispanic, compared to a representation rate of 3.4% Hispanic employees in the county.

o.      Defendants' Duluth, Georgia, store, where out of 193 employees, only two (1%) were Hispanic, compared to a representation rate of 8.5% Hispanic employees in the county.

p.      Defendants' Foxborough, Massachusetts, store, where out of 207 employees, only three (1.4%) were Hispanic, compared to a representation rate of 2.5% Hispanic employees in the county.

q.      Defendants' Ft. Myers, Florida, store, where out of 172 employees, only four (2.3%) were Hispanic, compared to a representation rate of 9.2% Hispanic employees in the county.

r.      Defendants' Garland, Texas, store, where out of 123 employees, only ten (8.1%) were Hispanic, compared to a representation rate of 19.1% Hispanic employees in the county.

s.      Defendants' Grapevine, Texas, store, where out of 291 employees, only 32 (11%) were Hispanic, compared to a representation rate of 16.5% Hispanic employees in the county.

t.      Defendants' Gurnee, Illinois, store, where out of 175 employees, only three (1.7%) were Hispanic, compared to a representation rate of 13.1% Hispanic employees in the county.

u.      Defendants' Hanover, Maryland, store, where out of 221 employees, only four (1.8%) were Hispanic, compared to a representation rate of 2.8% Hispanic employees in the county.

v.      Defendants' Harrisburg, Pennsylvania, store, where out of 234 employees, only three (1.3%) were Hispanic, compared to a representation rate of 2.2% Hispanic employees in the county.

w.      Defendants' Independence, Missouri, store, where out of 166 employees, only two (1.2%) were Hispanic, compared to a representation rate of 3.8% Hispanic employees in the county.

x.      Defendants' Islamorada, Florida, store, where out of 61 employees, only five (8.2%) were Hispanic, compared to a representation rate of 15.5% Hispanic employees in the county.

y.      Defendants' Katy, Texas, store, where out of 129 employees, only 13 (10.1%) were Hispanic, compared to a representation rate of 23.3% Hispanic employees in the county.

z.      Defendants' Las Vegas, Nevada, store, where out of 195 employees, only 19 (9.7%) were Hispanic, compared to a representation rate of 17.7% Hispanic employees in the county.

aa.     Defendants' Macon, Georgia, store, where out of 158 employees, only one (.6%) was Hispanic, compared to a representation rate of 1.2% Hispanic employees in the county.

bb.     Defendants' Memphis, Tennessee, store, where out of 125 employees, only one (.8%) was Hispanic, compared to a representation rate of 2.4% Hispanic employees in the county.

cc.     Defendants' Mesa, Arizona, store, where out of 154 employees, only 16 (10.4%) were Hispanic, compared to a representation rate of 19.6% Hispanic employees in the county.

dd.     Defendants' Myrtle Beach, South Carolina, store, where out of 136 employees, not one was Hispanic, compared to a representation rate of 2.8% Hispanic employees in the county.

ee.     Defendants' Nashville, Tennessee, store, where out of 196 employees, only two (1%) were Hispanic, compared to a representation rate of 3.3% Hispanic employees in the county.

ff.     Defendants' Oklahoma City, Oklahoma, store, where out of 130 employees, only three (2.3%) were Hispanic, compared to a representation rate of 5.8% Hispanic employees in the county.

gg.     Defendants' Olathe, Kansas, store, where out of 156 employees, only four (2.6%) were Hispanic, compared to a representation rate of 4.8% Hispanic employees in the county.

hh.     Defendants' Orlando, Florida, store, where out of 224 employees, only 19 (8.5%) were Hispanic, compared to a representation rate of 15.6% Hispanic employees in the county.

ii.     Defendants' Pearl, Mississippi, store, where out of 153 employees, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

jj.     Defendants' Pearland, Texas, store, where out of 123 employees, only 19 (15.4%) were Hispanic, compared to a representation rate of 20.6% Hispanic employees in the county.

kk.     Defendants' Portage, Indiana, store, where out of 157 employees, only five (3.2%) were Hispanic, compared to a representation rate of 4% Hispanic employees in the county.

ll.     Defendants' Prattville, Alabama, store, where out of 187 employees, only one (.5%) was Hispanic, compared to a representation rate of .9% Hispanic employees in the county.

mm.     Defendants' Rancho Cucamonga, California, store, where out of 260 employees, only 71 (27.3%) were Hispanic, compared to a representation rate of 33.9% Hispanic employees in the county.

nn.     Defendants' Saint Charles, Missouri, store, where out of 184 employees, only one (.5%) was Hispanic, compared to a representation rate of 1.1% Hispanic employees in the county.

oo.     Defendants' San Antonio, Texas, store, where out of 179 employees, only 75 (41.9%) were Hispanic, compared to a representation rate of 48% Hispanic employees in the county.

pp.     Defendants' Savannah, Georgia, store, where out of 118 employees, only one (.8%) was Hispanic, compared to a representation rate of 2.1% Hispanic employees in the county.

qq.     Defendants' Spanish Fort, Alabama, store, where out of 197 employees, only one (.5%) was Hispanic, compared to a representation rate of 1.8% Hispanic employees in the county.

369.    Comparing the number of Hispanic employees employed by Defendants (as specified in Defendants' 2008 EEO-1 reports for 49 retail stores) to the representation rate of Hispanic employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 254 Hispanic employees in 2008.

## Defendants' Discriminatory Failure to Hire
## Hispanic Employees at Defendants' Retail Stores in 2009

370.    According to Defendants' 2009 EEO-1 reports, out of a total employment of 8,561 employees in 52 retail stores, only 498 (5.8%) employees were Hispanic.

371.    According to Defendants' 2009 EEO-1 reports, 44 (84.6%) of Defendants' 52 retail stores had a lower percentage of Hispanic employees compared to the representation rate of

Hispanic employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.      Defendants' Altoona, Iowa, store, where out of 208 employees, only two (1%) were Hispanic, compared to a representation rate of 2.9% Hispanic employees in the county.

b.      Defendants' Ashland, Virginia, store, where out of 202 employees, only two (1%) were Hispanic, compared to a representation rate of 2.7% Hispanic employees in the county.

c.      Defendants' Bolingbrook, Illinois, store, where out of 168 employees, only six (3.6%) were Hispanic, compared to a representation rate of 9.5% Hispanic employees in the county.

d.      Defendants' Bossier City, Louisiana, store, where out of 166 employees, only four (2.4%) were Hispanic, compared to a representation rate of 2.7% Hispanic employees in the county.

e.      Defendants' Branson, Missouri, store, where out of 97 employees, not one was Hispanic, compared to a representation rate of 1.7% Hispanic employees in the county.

f.      Defendants' Broken Arrow, Oklahoma, store, where out of 210 employees, only eight (3.8%) were Hispanic, compared to a representation rate of 4.6% Hispanic employees in the county.

g.      Defendants' Cincinnati, Ohio, store, where out of 220 employees, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

h.      Defendants' Clarksville, Indiana, store, where out of 223 employees, not one was Hispanic, compared to a representation rate of 1.6% Hispanic employees in the county.

i.      Defendants' Columbia, Missouri, store, where out of 74 employees, not one was Hispanic, compared to a representation rate of 1.3% Hispanic employees in the county.

j.      Defendants' Concord, North Carolina, store, where out of 189 employees, only three (1.6%) were Hispanic, compared to a representation rate of 3.9% Hispanic employees in the county.

k.      Defendants' Council Bluffs, Iowa, store, where out of 172 employees, only one (.6%) was Hispanic, compared to a representation rate of 4.5% Hispanic employees in the county.

l.      Defendants' Denham Springs, Louisiana, store, where out of 160 employees, only one (.6%) was Hispanic, compared to a representation rate of .8% Hispanic employees in the county.

m.      Defendants' Denver, Colorado, store, where out of 216 employees, only 21 (9.7%) were Hispanic, compared to a representation rate of 17.3% Hispanic employees in the county.

n.      Defendants' Destin, Florida, store, where out of 100 employees, only two (2%) were Hispanic, compared to a representation rate of 3.4% Hispanic employees in the county.

o.      Defendants' Duluth, Georgia, store, where out of 182 employees, only one (.5%) was Hispanic, compared to a representation rate of 8.5% Hispanic employees in the county.

p.      Defendants' Foxborough, Massachusetts, store, where out of 188 employees, only one (.5%) was Hispanic, compared to a representation rate of 2.5% Hispanic employees in the county.

q.      Defendants' Ft. Myers, Florida, store, where out of 161 employees, only three (1.9%) were Hispanic, compared to a representation rate of 9.2% Hispanic employees in the county.

r.      Defendants' Garland, Texas, store, where out of 115 employees, only seven (6.1%) were Hispanic, compared to a representation rate of 19.1% Hispanic employees in the county.

s.      Defendants' Grapevine, Texas, store, where out of 242 employees, only 30 (12.4%) were Hispanic, compared to a representation rate of 16.5% Hispanic employees in the county.

t.      Defendants' Gurnee, Illinois, store, where out of 144 employees, only one (.7%) was Hispanic, compared to a representation rate of 13.1% Hispanic employees in the county.

u.      Defendants' Hanover, Maryland, store, where out of 214 employees, only three (1.4%) were Hispanic, compared to a representation rate of 2.8% Hispanic employees in the county.

v.      Defendants' Harrisburg, Pennsylvania, store, where out of 196 employees, only three (1.5%) were Hispanic, compared to a representation rate of 2.2% Hispanic employees in the county.

w.      Defendants' Independence, Missouri, store, where out of 149 employees, not one was Hispanic, compared to a representation rate of 3.8% Hispanic employees in the county.

x.      Defendants' Islamorada, Florida, store, where out of 55 employees, only four (7.3%) were Hispanic, compared to a representation rate of 15.5% Hispanic employees in the county.

y.      Defendants' Katy, Texas, store, where out of 125 employees, only 15 (12%) were Hispanic, compared to a representation rate of 23.3% Hispanic employees in the county.

z.      Defendants' Las Vegas, Nevada, store, where out of 164 employees, only 16 (9.8%) were Hispanic, compared to a representation rate of 17.7% Hispanic employees in the county.

aa.     Defendants' Leeds, Alabama, store, where out of 218 employees, not one was Hispanic, compared to a representation rate of 1.6% Hispanic employees in the county.

bb.     Defendants' Macon, Georgia, store, where out of 137 employees, only one (.7%) was Hispanic, compared to a representation rate of 1.2% Hispanic employees in the county.

cc.     Defendants' Manteca, California, store, where out of 186 employees, only 24 (12.9%) were Hispanic, compared to a representation rate of 26.3% Hispanic employees in the county.

dd.     Defendants' Memphis, Tennessee, store, where out of 131 employees, only 3 (2.3%) were Hispanic, compared to a representation rate of 2.4% Hispanic employees in the county.

ee.     Defendants' Mesa, Arizona, store, where out of 155 employees, only 14 (9%) were Hispanic, compared to a representation rate of 19.6% Hispanic employees in the county.

ff.     Defendants' Myrtle Beach, South Carolina, store, where out of 131 employees, not one was Hispanic, compared to a representation rate of 2.8% Hispanic employees in the county.

gg.     Defendants' Nashville, Tennessee, store, where out of 181 employees, not one was Hispanic, compared to a representation rate of 3.3% Hispanic employees in the county.

hh.     Defendants' Oklahoma City, Oklahoma, store, where out of 146 employees, not one was Hispanic, compared to a representation rate of 5.8% Hispanic employees in the county.

ii.     Defendants' Olathe, Kansas, store, where out of 128 employees, only three (2.3%) were Hispanic, compared to a representation rate of 4.8% Hispanic employees in the county.

jj.　　Defendants' Orlando, Florida, store, where out of 214 employees, only 16 (7.5%) were Hispanic, compared to a representation rate of 15.6% Hispanic employees in the county.

kk.　　Defendants' Pearl, Mississippi, store, where out of 159 employees, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

ll.　　Defendants' Pearland, Texas, store, where out of 124 employees, only 21 (16.9%) were Hispanic, compared to a representation rate of 20.6% Hispanic employees in the county.

mm.　　Defendants' Prattville, Alabama, store, where out of 148 employees, only one (.7%) was Hispanic, compared to a representation rate of .9% Hispanic employees in the county.

nn.　　Defendants' Rancho Cucamonga, California, store, where out of 260 employees, only 61 (23.5%) were Hispanic, compared to a representation rate of 33.9% Hispanic employees in the county.

oo.　　Defendants' Saint Charles, Missouri, store, where out of 187 employees, only one (.5%) was Hispanic, compared to a representation rate of 1.1% Hispanic employees in the county.

pp.　　Defendants' San Antonio, Texas, store, where out of 154 employees, only 68 (44.2%) were Hispanic, compared to a representation rate of 48% Hispanic employees in the county.

qq.   Defendants' Savannah, Georgia, store, where out of 117 employees, only one (.9%) was Hispanic, compared to a representation rate of 2.1% Hispanic employees in the county.

rr.   Defendants' Spanish Fort, Alabama, store, where out of 177 employees, not one was Hispanic, compared to a representation rate of 1.8% Hispanic employees in the county.

372.   Comparing the number of Hispanic employees employed by Defendants (as specified in Defendants' 2009 EEO-1 reports for 52 retail stores) to the representation rate of Hispanic employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 275 Hispanic employees in 2009.

### Defendants' Discriminatory Failure to Hire
### Hispanic Employees at Defendants' Retail Stores in 2010

373.   According to Defendants' 2010 EEO-1 reports, out of a total employment of 8,839 employees in 52 retail stores, only 550 (6.2%) employees were Hispanic.

374.   According to Defendants' 2010 EEO-1 reports, 44 (84.6%) of Defendants' 52 retail stores had a lower percentage of Hispanic employees compared to the representation rate of Hispanic employees in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.   Defendants' Altoona, Iowa, store, where out of 189 employees, only two (1.1%) were Hispanic, compared to a representation rate of 2.9% Hispanic employees in the county.

b.      Defendants' Ashland, Virginia, store, where out of 190 employees, only two (1.1%) were Hispanic, compared to a representation rate of 2.7% Hispanic employees in the county.

c.      Defendants' Auburn, New York, store, where out of 139 employees, only one (.7%) was Hispanic, compared to a representation rate of 1.4% Hispanic employees in the county.

d.      Defendants' Bolingbrook, Illinois, store, where out of 170 employees, only four (2.4%) were Hispanic, compared to a representation rate of 9.5% Hispanic employees in the county.

e.      Defendants' Branson, Missouri, store, where out of 105 employees, not one was Hispanic, compared to a representation rate of 1.7% Hispanic employees in the county.

f.      Defendants' Broken Arrow, Oklahoma, store, where out of 215 employees, only six (2.8%) were Hispanic, compared to a representation rate of 4.6% Hispanic employees in the county.

g.      Defendants' Cincinnati, Ohio, store, where out of 208 employees, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

h.      Defendants' Clarksville, Indiana, store, where out of 234 employees, not one was Hispanic, compared to a representation rate of 1.6% Hispanic employees in the county.

i.      Defendants' Columbia, Missouri, store, where out of 98 employees, not one was Hispanic, compared to a representation rate of 1.3% Hispanic employees in the county.

j.      Defendants' Concord, North Carolina, store, where out of 203 employees, only three (1.5%) were Hispanic, compared to a representation rate of 3.9% Hispanic employees in the county.

k.      Defendants' Council Bluffs, Iowa, store, where out of 190 employees, only four (2.1%) were Hispanic, compared to a representation rate of 4.5% Hispanic employees in the county.

l.      Defendants' Denham Springs, Louisiana, store, where out of 163 employees, only one (.6%) was Hispanic, compared to a representation rate of .8% Hispanic employees in the county.

m.      Defendants' Denver, Colorado, store, where out of 206 employees, only 19 (9.2%) were Hispanic, compared to a representation rate of 17.3% Hispanic employees in the county.

n.      Defendants' Destin, Florida, store, where out of 106 employees, only three (2.8%) were Hispanic, compared to a representation rate of 3.4% Hispanic employees in the county.

o.      Defendants' Duluth, Georgia, store, where out of 183 employees, only four (2.2%) were Hispanic, compared to a representation rate of 8.5% Hispanic employees in the county.

p.      Defendants' Foxborough, Massachusetts, store, where out of 190 employees, only one (.5%) was Hispanic, compared to a representation rate of 2.5% Hispanic employees in the county.

q.      Defendants' Ft. Myers, Florida, store, where out of 157 employees, only seven (4.5%) were Hispanic, compared to a representation rate of 9.2% Hispanic employees in the county.

r.      Defendants' Garland, Texas, store, where out of 134 employees, only nine (6.7%) were Hispanic, compared to a representation rate of 19.1% Hispanic employees in the county.

s.      Defendants' Grapevine, Texas, store, where out of 290 employees, only 20 (10%) were Hispanic, compared to a representation rate of 16.5% Hispanic employees in the county.

t.      Defendants' Gurnee, Illinois, store, where out of 159 employees, not one was Hispanic, compared to a representation rate of 13.1% Hispanic employees in the county.

u.      Defendants' Hampton, Virginia, store, where out of 155 employees, only three (1.9%) were Hispanic, compared to a representation rate of 2% Hispanic employees in the county.

v.      Defendants' Hanover, Maryland, store, where out of 225 employees, only two (.9%) were Hispanic, compared to a representation rate of 2.8% Hispanic employees in the county.

w.      Defendants' Harrisburg, Pennsylvania, store, where out of 203 employees, only three (1.5%) were Hispanic, compared to a representation rate of 2.2% Hispanic employees in the county.

x.      Defendants' Independence, Missouri, store, where out of 153 employees, not one was Hispanic, compared to a representation rate of 3.8% Hispanic employees in the county.

y.      Defendants' Islamorada, Florida, store, where out of 57 employees, only six (10.5%) were Hispanic, compared to a representation rate of 15.5% Hispanic employees in the county.

z.      Defendants' Katy, Texas, store, where out of 120 employees, only 12 (10%) were Hispanic, compared to a representation rate of 23.3% Hispanic employees in the county.

aa.      Defendants' Las Vegas, Nevada, store, where out of 155 employees, only 17 (11%) were Hispanic, compared to a representation rate of 17.7% Hispanic employees in the county.

bb.      Defendants' Leeds, Alabama, store, where out of 182 employees, not one was Hispanic, compared to a representation rate of 1.6% Hispanic employees in the county.

cc.      Defendants' Manteca, California, store, where out of 225 employees, only 31 (13.8%) were Hispanic, compared to a representation rate of 26.3% Hispanic employees in the county.

dd.     Defendants' Memphis, Tennessee, store, where out of 136 employees, only two (1.5%) were Hispanic, compared to a representation rate of 2.4% Hispanic employees in the county.

ee.     Defendants' Mesa, Arizona, store, where out of 154 employees, only 14 (9.1%) were Hispanic, compared to a representation rate of 19.6% Hispanic employees in the county.

ff.     Defendants' Myrtle Beach, South Carolina, store, where out of 135 employees, only one (.7%) was Hispanic, compared to a representation rate of 2.8% Hispanic employees in the county.

gg.     Defendants' Nashville, Tennessee, store, where out of 180 employees, only three (1.7%) were Hispanic, compared to a representation rate of 3.3% Hispanic employees in the county.

hh.     Defendants' Oklahoma City, Oklahoma, store, where out of 152 employees, only one (.7%) was Hispanic, compared to a representation rate of 5.8% Hispanic employees in the county.

ii.     Defendants' Olathe, Kansas, store, where out of 134 employees, only four (3%) were Hispanic, compared to a representation rate of 4.8% Hispanic employees in the county.

jj.     Defendants' Orlando, Florida, store, where out of 205 employees, only 12 (5.9%) were Hispanic, compared to a representation rate of 15.6% Hispanic employees in the county.

kk.     Defendants' Pearl, Mississippi, store, where out of 149 employees, not one was Hispanic, compared to a representation rate of 1% Hispanic employees in the county.

ll.     Defendants' Pearland, Texas, store, where out of 150 employees, only 27 (18%) were Hispanic, compared to a representation rate of 20.6% Hispanic employees in the county.

mm.     Defendants' Prattville, Alabama, store, where out of 130 employees, not one was Hispanic, compared to a representation rate of .9% Hispanic employees in the county.

nn.     Defendants' Rancho Cucamonga, California, store, where out of 281 employees, only 62 (22.1%) were Hispanic, compared to a representation rate of 33.9% Hispanic employees in the county.

oo.     Defendants' Rossford, Ohio, store, where out of 167 employees, only 6 (3.6%) were Hispanic, compared to a representation rate of 3.7% Hispanic employees in the county.

pp.     Defendants' Saint Charles, Missouri, store, where out of 190 employees, only one (.5%) was Hispanic, compared to a representation rate of 1.1% Hispanic employees in the county.

qq.     Defendants' Savannah, Georgia, store, where out of 113 employees, not one was Hispanic, compared to a representation rate of 2.1% Hispanic employees in the county.

rr.     Defendants' Spanish Fort, Alabama, store, where out of 192 employees, not one was Hispanic, compared to a representation rate of 1.8% Hispanic employees in the county.

375.     Comparing the number of Hispanic employees employed by Defendants (as specified in Defendants' 2010 EEO-1 reports) for 52 retail stores to the representation rate of Hispanic employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 281 Hispanic employees in 2010.

### DEFENDANTS' DISCRIMINATORY FAILURE TO HIRE HISPANIC MANAGERS

#### Defendants' Discriminatory Failure to Hire Hispanic Managers at Defendants' Retail Stores in 2007

376.     According to Defendants' 2007 EEO-1 reports, out of a total employment of 8,186 employees in 43 retail stores, 606 (7.4%) employees were managers.

377.     According to Defendants' 2007 EEO-1 reports, out of 606 managers in Defendants' 43 retail stores, only 33 (5.4%) were Hispanic.

378.     According to Defendants' 2007 EEO-1 reports, 35 (81.4%) of Defendants' 43 retail stores had a lower percentage of Hispanic managers compared to the representation rate of Hispanic managers in the county in which the store is located, as provided for in the Census 2000 Special EEO file, including:

a.     Defendants' Auburn, New York, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of .3% Hispanic managers in the county.

b.      Defendants' Auburn Hills, Michigan store where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.4% Hispanic managers in the county.

c.      Defendants' Bolingbrook, Illinois, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

d.      Defendants' Bossier City, Louisiana, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 1.6% Hispanic managers in the county.

e.      Defendants' Branson, Missouri, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

f.      Defendants' Broken Arrow, Oklahoma, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 2.3 % Hispanic managers in the county.

g.      Defendants' Cincinnati, Ohio, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of .7% Hispanic managers in the county.

h.      Defendants' Clarksville, Indiana, store, where out of 16 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

i.      Defendants' Columbia, Missouri, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.5% Hispanic managers in the county.

j.      Defendants' Concord, North Carolina, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

k.      Defendants' Council Bluffs, Iowa, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

l.      Defendants' Dania, Florida, store, where out of 15 managers, only two (13.3%) were Hispanic, compared to a representation rate of 14.1% Hispanic managers in the county.

m.      Defendants' Destin, Florida, store, where out of 10 managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

n.      Defendants' Duluth, Georgia, store, where out of 16 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

o.      Defendants' Ft. Myers, Florida, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 3.5% Hispanic managers in the county.

p.      Defendants' Garland, Texas, store, where out of 14 managers, only one (7.1%) was Hispanic, compared to a representation rate of 8% Hispanic managers in the county.

q.      Defendants' Grapevine, Texas, store, where out of 21 managers, only one (4.8%) was Hispanic, compared to a representation rate of 7.7% Hispanic managers in the county.

r.      Defendants' Gurnee, Illinois, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

s.      Defendants' Hampton, Virginia, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.9% Hispanic managers in the county.

t.      Defendants' Hanover, Maryland, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

u.      Defendants' Harrisburg, Pennsylvania, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

v.      Defendants' Kodak, Tennessee, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of .6% Hispanic managers in the county.

w.      Defendants' Las Vegas, Nevada, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 7.3% Hispanic managers in the county.

x.      Defendants' Macon, Georgia, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1% Hispanic managers in the county.

y.      Defendants' Memphis, Tennessee, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 1.3% Hispanic managers in the county.

z.      Defendants' Myrtle Beach, South Carolina, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1% Hispanic managers in the county.

aa.      Defendants' Nashville, Tennessee, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 1.2% Hispanic managers in the county.

bb.      Defendants' Oklahoma City, Oklahoma, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 3.1% Hispanic managers in the county.

cc.      Defendants' Olathe, Kansas, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

dd. Defendants' Orlando, Florida, store, where out of 17 managers, only one (5.9%) was Hispanic, compared to a representation rate of 8.6% Hispanic managers in the county.

ee. Defendants' Pearl, Mississippi, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of .5% Hispanic managers in the county.

ff. Defendants' Portage, Indiana, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 3% Hispanic managers in the county.

gg. Defendants' Rancho Cucamonga, California, store, where out of 20 managers, only three (15%) were Hispanic, compared to a representation rate of 19.3% Hispanic managers in the county.

hh. Defendants' Saint Charles, Missouri, store, where out of 16 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

ii. Defendants' Savannah, Georgia, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 1.6% Hispanic managers in the county.

379. Comparing the number of Hispanic managers employed by Defendants (as specified in Defendants' 2007 EEO-1 reports for 43 retail stores) to the representation rate of Hispanic managers in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 3 Hispanic managers in 2007.

**Defendants' Discriminatory Failure to Hire
Hispanic Managers at Defendants' Retail Stores in 2008**

380.   According to Defendants' 2008 EEO-1 reports, out of a total employment of 8,410 employees in 49 retail stores, 630 (7.5%) employees were managers.

381.   According to Defendants' 2008 EEO-1 reports, out of 630 managers in Defendants' 49 retail stores, only 28 (4.4%) were Hispanic.

382.   According to Defendants' 2008 EEO-1 reports, 41 (83.7%) of Defendants' 49 retail stores had a lower percentage of Hispanic managers compared to the representation rate of Hispanic managers in the county in which the store is located as provided for in the Census 2000 Special EEO file, including:

> a.      Defendants' Ashland, Virginia, store, where out of 10 managers, not one was Hispanic, compared to a representation rate of 1.4% Hispanic managers in the county.

> b.      Defendants' Auburn, New York, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of .3% Hispanic managers in the county.

> c.      Defendants' Auburn Hills, Michigan store where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.4% Hispanic managers in the county.

> d.      Defendants' Bolingbrook, Illinois, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

e.      Defendants' Bossier City, Louisiana, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.6% Hispanic managers in the county.

f.      Defendants' Branson, Missouri, store, where out of nine managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

g.      Defendants' Broken Arrow, Oklahoma, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 2.3% Hispanic managers in the county.

h.      Defendants' Cincinnati, Ohio, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of .7% Hispanic managers in the county.

i.      Defendants' Clarksville, Indiana, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

j.      Defendants' Columbia, Missouri, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.5% Hispanic managers in the county.

k.      Defendants' Concord, North Carolina, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

l.      Defendants' Council Bluffs, Iowa, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

m.      Defendants' Dania, Florida, store, where out of 15 managers, only two (13.3%) was Hispanic, compared to a representation rate of 14.1% Hispanic managers in the county.

n.      Defendants' Destin, Florida, store, where out of nine managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

o.      Defendants' Duluth, Georgia, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

p.      Defendants' Foxborough, Massachusetts, store, where out of 16 managers, not one was Hispanic, compared to a representation rate of 1.2% Hispanic managers in the county.

q.      Defendants' Ft. Myers, Florida, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3.5% Hispanic managers in the county.

r.      Defendants' Grapevine, Texas, store, where out of 19 managers, only one (5.3%) was Hispanic, compared to a representation rate of 7.7% Hispanic managers in the county.

s.      Defendants' Gurnee, Illinois, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

t.      Defendants' Hampton, Virginia, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.9% Hispanic managers in the county.

u.      Defendants' Hanover, Maryland, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

v.      Defendants' Harrisburg, Pennsylvania, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

w.      Defendants' Independence, Missouri, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

x.      Defendants' Katy, Texas, store, where out of 11 managers, only one (9.1%) was Hispanic, compared to a representation rate of 10.1% Hispanic managers in the county.

y.      Defendants' Kodak, Tennessee, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of .6% Hispanic managers in the county.

z.      Defendants' Las Vegas, Nevada, store, where out of 14 managers, only one (7.1%) was Hispanic, compared to a representation rate of 7.3% Hispanic managers in the county.

aa.     Defendants' Macon, Georgia, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1% Hispanic managers in the county.

bb.     Defendants' Memphis, Tennessee, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.3% Hispanic managers in the county.

cc.     Defendants' Miami, Florida, store, where out of 12 managers, only five (41.7%) were Hispanic, compared to a representation rate of 49.6% Hispanic managers in the county

dd.     Defendants' Myrtle Beach, South Carolina, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 1% Hispanic managers in the county.

ee.     Defendants' Nashville, Tennessee, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 1.2% Hispanic managers in the county.

ff.     Defendants' Oklahoma City, Oklahoma, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 3.1% Hispanic managers in the county.

gg.      Defendants' Olathe, Kansas, store, where out of 14 managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

hh.      Defendants' Orlando, Florida, store, where out of 17 managers, not one was Hispanic, compared to a representation rate of 8.6% Hispanic managers in the county.

ii.      Defendants' Pearl, Mississippi, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of .5% Hispanic managers in the county.

jj.      Defendants' Portage, Indiana, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 3% Hispanic managers in the county.

kk.      Defendants' Rancho Cucamonga, California, store, where out of 15 managers, only one (6.7%) was Hispanic, compared to a representation rate of 19.3% Hispanic managers in the county.

ll.      Defendants' Rossford, Ohio, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.8% Hispanic managers in the county.

mm.      Defendants' Saint Charles, Missouri, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

nn.     Defendants' Savannah, Georgia, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.6% Hispanic managers in the county.

oo.     Defendants' Spanish Fort, Alabama, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of .8 % Hispanic managers in the county.

383.     Comparing the number of Hispanic managers employed by Defendants (as specified in Defendants' 2008 EEO-1 reports for 49 retail stores) to the representation rate of Hispanic managers in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 6 Hispanic managers in 2008.

**Defendants' Discriminatory Failure to Hire
Hispanic Managers at Defendants' Retail Stores in 2009**

384.     According to Defendants' 2009 EEO-1 reports, out of a total employment of 8,561 employees in 52 retail stores, 588 (6.9%) employees were managers.

385.     According to Defendants' 2009 EEO-1 reports, out of 588 managers in Defendants' 52 retail stores, only 27 (4.6%) were Hispanic.

386.     According to Defendants' 2009 EEO-1 reports, 42 (80.8%) of Defendants' 52 retail stores had a lower percentage of Hispanic managers compared to the representation rate of Hispanic managers in the county in which the store is located as provided for in the Census 2000 Special EEO file, including:

a.     Defendants' Altoona, Iowa, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.2% Hispanic managers in the county.

b.      Defendants' Ashland, Virginia, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1.4% Hispanic managers in the county.

c.      Defendants' Auburn, New York, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of .3% Hispanic managers in the county.

d.      Defendants' Auburn Hills, Michigan store where out of 11 managers, not one was Hispanic, compared to a representation rate of 1.4% Hispanic managers in the county.

e.      Defendants' Bolingbrook, Illinois, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

f.      Defendants' Bossier City, Louisiana, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1.6% Hispanic managers in the county.

g.      Defendants' Branson, Missouri, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

h.      Defendants' Broken Arrow, Oklahoma, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 2.3% Hispanic managers in the county.

i.      Defendants' Cincinnati, Ohio, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of .7% Hispanic managers in the county.

j.      Defendants' Clarksville, Indiana, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

k.      Defendants' Columbia, Missouri, store, where out of 10 managers, not one was Hispanic, compared to a representation rate of 1.5% Hispanic managers in the county.

l.      Defendants' Concord, North Carolina, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

m.      Defendants' Council Bluffs, Iowa, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

n.      Defendants' Dania, Florida, store, where out of 13 managers, only one (7.7%) was Hispanic, compared to a representation rate of 14.1% Hispanic managers in the county.

o.      Defendants' Denver, Colorado, store, where out of 13 managers, only one (7.7%) was Hispanic, compared to a representation rate of 8.2% Hispanic managers in the county.

p.      Defendants' Destin, Florida, store, where out of nine managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

q.      Defendants' Duluth, Georgia, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

r.      Defendants' Foxborough, Massachusetts, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 1.2% Hispanic managers in the county.

s.      Defendants' Ft. Myers, Florida, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 3.5% Hispanic managers in the county.

t.      Defendants' Grapevine, Texas, store, where out of 16 managers, only one (6.3%) was Hispanic, compared to a representation rate of 7.7% Hispanic managers in the county.

u.      Defendants' Gurnee, Illinois, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

v.      Defendants' Hampton, Virginia, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1.9% Hispanic managers in the county.

w.      Defendants' Hanover, Maryland, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

x.      Defendants' Harrisburg, Pennsylvania, store, where out of nine managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

y.      Defendants' Independence, Missouri, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

z.      Defendants' Kodak, Tennessee, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of .6% Hispanic managers in the county.

aa.      Defendants' Leeds, Alabama, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of .8% Hispanic managers in the county.

bb.      Defendants' Macon, Georgia, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1% Hispanic managers in the county.

cc.      Defendants' Manteca, California, store, where out of 12 managers, only one (8.3%) was Hispanic, compared to a representation rate of 12.6% Hispanic managers in the county.

dd.     Defendants' Miami, Florida, store, where out of 11 managers, only five (45.5%) were Hispanic, compared to a representation rate of 49.6% Hispanic managers in the county.

ee.     Defendants' Myrtle Beach, South Carolina, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 1% Hispanic managers in the county.

ff.     Defendants' Nashville, Tennessee, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.2% Hispanic managers in the county.

gg.     Defendants' Oklahoma City, Oklahoma, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3.1% Hispanic managers in the county.

hh.     Defendants' Olathe, Kansas, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

ii.     Defendants' Orlando, Florida, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 8.6% Hispanic managers in the county.

jj.     Defendants' Pearl, Mississippi, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of .5% Hispanic managers in the county.

kk.    Defendants' Portage, Indiana, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3% Hispanic managers in the county.

ll.    Defendants' Rancho Cucamonga, California, store, where out of 12 managers, only two (16.7%) was Hispanic, compared to a representation rate of 19.3% Hispanic managers in the county.

mm.    Defendants' Rossford, Ohio, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.8% Hispanic managers in the county.

nn.    Defendants' Saint Charles, Missouri, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

oo.    Defendants' Savannah, Georgia, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1.6% Hispanic managers in the county.

pp.    Defendants' Spanish Fort, Alabama, store, where out of ten managers, not one was Hispanic, compared to a representation rate of .8 % Hispanic managers in the county.

387.    Comparing the number of Hispanic managers employed by Defendants (as specified in Defendants' 2009 EEO-1 reports for 52 retail stores) to the representation rate of Hispanic managers in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 3 Hispanic managers in 2009.

**Defendants' Discriminatory Failure to Hire**
**Hispanic Managers at Defendants' Retail Stores in 2010**

388.   According to Defendants' 2010 EEO-1 reports, out of a total employment of 8,839 employees in 52 retail stores, 586 (6.6%) employees were managers.

389.   According to Defendants' 2010 EEO-1 reports, out of 586 managers in Defendants' 52 retail stores, only 24 (4.1%) were Hispanic.

390.   According to Defendants' 2010 EEO-1 reports, 43 (82.7%) of Defendants' 52 retail stores had a lower percentage of Hispanic managers compared to the representation rate of Hispanic managers in the county in which the store is located as provided for in the Census 2000 Special EEO file, including:

   a.   Defendants' Altoona, Iowa, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.2% Hispanic managers in the county.

   b.   Defendants' Ashland, Virginia, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1.4% Hispanic managers in the county.

   c.   Defendants' Auburn, New York, store, where out of ten managers, not one was Hispanic, compared to a representation rate of .3% Hispanic managers in the county.

   d.   Defendants' Auburn Hills, Michigan store where out of 11 managers, not one was Hispanic, compared to a representation rate of 1.4% Hispanic managers in the county.

e.      Defendants' Bolingbrook, Illinois, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

f.      Defendants' Bossier City, Louisiana, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 1.6% Hispanic managers in the county.

g.      Defendants' Branson, Missouri, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

h.      Defendants' Broken Arrow, Oklahoma, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 2.3 % Hispanic managers in the county.

i.      Defendants' Cincinnati, Ohio, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of .7% Hispanic managers in the county.

j.      Defendants' Clarksville, Indiana, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

k.      Defendants' Columbia, Missouri, store, where out of 10 managers, not one was Hispanic, compared to a representation rate of 1.5% Hispanic managers in the county.

l.      Defendants' Concord, North Carolina, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

m.      Defendants' Council Bluffs, Iowa, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

n.      Defendants' Dania, Florida, store, where out of 13 managers, only one (7.7%) was Hispanic, compared to a representation rate of 14.1% Hispanic managers in the county.

o.      Defendants' Denver, Colorado, store, where out of 14 managers, only one (7.1%) was Hispanic, compared to a representation rate of 8.2% Hispanic managers in the county.

p.      Defendants' Destin, Florida, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

q.      Defendants' Duluth, Georgia, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

r.      Defendants' Foxborough, Massachusetts, store, where out of 15 managers, not one was Hispanic, compared to a representation rate of 1.2% Hispanic managers in the county.

s.      Defendants' Ft. Myers, Florida, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 3.5% Hispanic managers in the county.

t.      Defendants' Grapevine, Texas, store, where out of 16 managers, not one was Hispanic, compared to a representation rate of 7.7% Hispanic managers in the county.

u.      Defendants' Gurnee, Illinois, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3.6% Hispanic managers in the county.

v.      Defendants' Hampton, Virginia, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 1.9% Hispanic managers in the county.

w.      Defendants' Hanover, Maryland, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.7% Hispanic managers in the county.

x.      Defendants' Harrisburg, Pennsylvania, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

y.      Defendants' Independence, Missouri, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

z.      Defendants' Katy, Texas, store, where out of ten managers, only one (10%) was Hispanic, compared to a representation rate of 10.1% Hispanic managers in the county.

aa.     Defendants' Kodak, Tennessee, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of .6% Hispanic managers in the county.

bb.     Defendants' Leeds, Alabama, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of .8% Hispanic managers in the county.

cc.     Defendants' Macon, Georgia, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1% Hispanic managers in the county.

dd.     Defendants' Manteca, California, store, where out of 12 managers, only one (8.3%) was Hispanic, compared to a representation rate of 12.6% Hispanic managers in the county.

ee.     Defendants' Miami, Florida, store, where out of ten managers, only four (40%) were Hispanic, compared to a representation rate of 49.6% Hispanic managers in the county

ff.     Defendants' Myrtle Beach, South Carolina, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 1% Hispanic managers in the county.

gg.    Defendants' Nashville, Tennessee, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.2% Hispanic managers in the county.

hh.    Defendants' Oklahoma City, Oklahoma, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3.1% Hispanic managers in the county.

ii.    Defendants' Olathe, Kansas, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 2.2% Hispanic managers in the county.

jj.    Defendants' Orlando, Florida, store, where out of 13 managers, not one was Hispanic, compared to a representation rate of 8.6% Hispanic managers in the county.

kk.    Defendants' Pearl, Mississippi, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of .5% Hispanic managers in the county.

ll.    Defendants' Portage, Indiana, store, where out of 11 managers, not one was Hispanic, compared to a representation rate of 3% Hispanic managers in the county.

mm.    Defendants' Rancho Cucamonga, California, store, where out of 12 managers, only two (16.7%) were Hispanic, compared to a representation rate of 19.3% Hispanic managers in the county.

nn.     Defendants' Rossford, Ohio, store, where out of 12 managers, not one was Hispanic, compared to a representation rate of 1.8% Hispanic managers in the county.

oo.     Defendants' Saint Charles, Missouri, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 1.1% Hispanic managers in the county.

pp.     Defendants' Savannah, Georgia, store, where out of ten managers, not one was Hispanic, compared to a representation rate of 1.6% Hispanic managers in the county.

qq.     Defendants' Spanish Fort, Alabama, where out of nine managers, not one was Hispanic, compared to a representation rate of .8 % Hispanic managers in the county.

391.     Comparing the number of Hispanic managers employed by Defendants (as specified in Defendants' 2010 EEO-1 reports for 52 retail stores) to the representation rate of Hispanic managers in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 6 Hispanic managers in 2010.

### DEFENDANTS' DISCRIMINATORY FAILURE TO HIRE HISPANIC SALES EMPLOYEES

### Defendants' Discriminatory Failure to Hire
### Hispanic Sales Employees at Defendants' Retail Stores in 2007

392.     According to Defendants' 2007 EEO-1 reports, out of a total employment of 8,186 employees in 43 retail stores, 5,997 (73.3%) employees were sales employees.

393.     According to Defendants' 2007 EEO-1 reports, out of 5,997 sales employees in Defendants' 43 retail stores, only 448 (7.5%) were Hispanic.

394.    According to Defendants' 2007 EEO-1 reports, 31 (72.1%) of Defendants' 43 retail stores had a lower percentage of Hispanic sales employees compared to the representation rate of Hispanic sales employees in the county in which the store is located as provided for in the Census 2000 Special EEO file, including:

a.    Defendants' Bolingbrook, Illinois, store, where out of 195 employees, 150 (76.9%) were sales employees, and out of those 150 sales employees, only eight (5.3%) were Hispanic, compared to a representation rate of 6.4% Hispanic sales employees in the county.

b.    Defendants' Broken Arrow, Oklahoma, store, where out of 177 employees, 131 (74%) were sales employees, and out of those 131 sales employees, only one (.8%) was Hispanic, compared to a representation rate of 2.9% Hispanic sales employees in the county.

c.    Defendants' Cincinnati, Ohio, store, where out of 229 employees, 183 (79.9%) were sales employees, and out of those 183 sales employees, not one was Hispanic, compared to a representation rate of .8% Hispanic sales employees in the county.

d.    Defendants' Clarksville, Indiana, store, where out of 272 employees, 210 (77.2%) were sales employees, and out of those 210 sales employees, not one was Hispanic, compared to a representation rate of 1.8% Hispanic sales employees in the county.

e.    Defendants' Columbia, Missouri, store, where out of 125 employees, 90 (72%) were sales employees, and out of those 90 sales employees, only one

(1.1%) was Hispanic, compared to a representation rate of 1.3% Hispanic sales employees in the county.

f.      Defendants' Council Bluffs, Iowa, store, where out of 177 employees, 130 (73.4%) were sales employees, and out of those 130 sales employees, not one was Hispanic, compared to a representation rate of 2.2% Hispanic sales employees in the county.

g.      Defendants' Dania, Florida, store, where out of 255 employees, 181 (71%) were sales employees, and out of those 181 sales employees, only 26 (14.4%) were Hispanic, compared to a representation rate of 16.5% Hispanic sales employees in the county.

h.      Defendants' Denver, Colorado, store, where out of 241 employees, 180 (74.7%) were sales employees, and out of those 180 sales employees, only 14 (7.8%) were Hispanic, compared to a representation rate of 12% Hispanic sales employees in the county.

i.      Defendants' Destin, Florida, store, where out of 108 employees, 79 (73.1%) were sales employees, and out of those 79 sales employees, only two (2.5%) were Hispanic, compared to a representation rate of 3.9% Hispanic sales employees in the county.

j.      Defendants' Duluth, Georgia, store, where out of 208 employees, 153 (77.2%) were sales employees, and out of those 153 sales employees, only two (1.3%) were Hispanic, compared to a representation rate of 4.3% Hispanic sales employees in the county.

k.      Defendants' Ft. Myers, Florida, store, where out of 190 employees, 136 (71.6%) were sales employees, and out of those 136 sales employees, only three (2.2%) were Hispanic, compared to a representation rate of 6.4% Hispanic sales employees in the county.

l.      Defendants' Garland, Texas, store, where out of 139 employees, 103 (74%) were sales employees, and out of those 103 sales employees, only five (4.9%) were Hispanic, compared to a representation rate of 12.9% Hispanic sales employees in the county.

m.      Defendants' Grapevine, Texas, store, where out of 300 employees, 148 (49.3%) were sales employees, and out of those 148 sales employees, only five (3.4%) were Hispanic, compared to a representation rate of 10.6% Hispanic sales employees in the county.

n.      Defendants' Gurnee, Illinois, store, where out of 211 employees, 170 (80.6%) were sales employees, and out of those 170 sales employees, only seven (4.1%) were Hispanic, compared to a representation rate of 7.6% Hispanic sales employees in the county.

o.      Defendants' Harrisburg, Pennsylvania, store, where out of 240 employees, 171 (71.3%) were sales employees, and out of those 171 sales employees, only two (1.2%) were Hispanic, compared to a representation rate of 2.1% Hispanic sales employees in the county.

p.      Defendants' Islamorada, Florida, store, where out of 63 employees, 49 (77.8%) were sales employees, and out of those 49 sales employees, only three

(6.1%) were Hispanic, compared to a representation rate of 12.4% Hispanic sales employees in the county.

q.      Defendants' Katy, Texas, store, where out of 143 employees, 98 (68.5%) were sales employees, and out of those 98 sales employees, only 13 (13.3%) were Hispanic, compared to a representation rate of 18.3% Hispanic sales employees in the county.

r.      Defendants' Kodak, Tennessee, store, where out of 217 employees, 162 (74.7%) were sales employees, and out of those 162 sales employees, not one was Hispanic, compared to a representation rate of .8% Hispanic sales employees in the county.

s.      Defendants' Las Vegas, Nevada, store, where out of 210 employees, 149 (71%) were sales employees, and out of those 149 sales employees, only ten (6.7%) were Hispanic, compared to a representation rate of 12.2% Hispanic sales employees in the county.

t.      Defendants' Macon, Georgia, store, where out of 156 employees, 120 (76.9%) were sales employees, and out of those 120 sales employees, not one was Hispanic, compared to a representation rate of .5% Hispanic sales employees in the county.

u.      Defendants' Memphis, Tennessee, store, where out of 143 employees, 106 (74.1%) were sales employees, and out of those 106 sales employees, not one was Hispanic, compared to a representation rate of 1% Hispanic sales employees in the county.

v.      Defendants' Mesa, Arizona, store, where out of 187 employees, 134 (71.7%) were sales employees, and out of those 134 sales employees, only seven (5.2%) were Hispanic, compared to a representation rate of 12.7% Hispanic sales employees in the county.

w.      Defendants' Myrtle Beach, South Carolina, store, where out of 151 employees, 109 (72.2%) were sales employees, and out of those 109 sales employees, not one was Hispanic, compared to a representation rate of 1.3% Hispanic sales employees in the county.

x.      Defendants' Oklahoma City, Oklahoma, store, where out of 155 employees, 118 (76.1%) were sales employees, and out of those 118 sales employees, only two (1.7%) were Hispanic, compared to a representation rate of 4% Hispanic sales employees in the county.

y.      Defendants' Orlando, Florida, store, where out of 277 employees, 204 (73.6%) were sales employees, and out of those 204 sales employees, only 13 (6.4%) were Hispanic, compared to a representation rate of 15% Hispanic sales employees in the county.

z.      Defendants' Pearl, Mississippi, store, where out of 164 employees, 108 (65.9%) were sales employees, and out of those 108 sales employees, not one was Hispanic, compared to a representation rate of 1.1% Hispanic sales employees in the county.

aa.     Defendants' Pearland, Texas, store, where out of 205 employees, 152 (74.1%) were sales employees, and out of those 152 sales employees, only 18

(11.8%) were Hispanic, compared to a representation rate of 17.8% Hispanic sales employees in the county.

bb.     Defendants' Prattville, Alabama, store, where out of 193 employees, 137 (71%) were sales employees, and out of those 150 sales employees, only one (.7%) was Hispanic, compared to a representation rate of 1.2% Hispanic sales employees in the county.

cc.     Defendants' Saint Charles, Missouri, store, where out of 224 employees, 178 (79.5%) were sales employees, and out of those 178 sales employees, only one (.6%) was Hispanic, compared to a representation rate of .8 % Hispanic sales employees in the county.

dd.     Defendants' San Antonio, Texas, store, where out of 197 employees, 145 (73.6%) were sales employees, and out of those 145 sales employees, only 61 (42.1%) were Hispanic, compared to a representation rate of 45.6% Hispanic sales employees in the county.

ee.     Defendants' Savannah, Georgia, store, where out of 147 employees, 109 (74.1%) were sales employees, and out of those 145 sales employees, not one was Hispanic, compared to a representation rate of 1% Hispanic sales employees in the county.

395.    Comparing the number of Hispanic sales employees employed by Defendants (as specified in Defendants' 2007 EEO-1 reports for 43 retail stores) to the representation rate of Hispanic sales employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 82 Hispanic sales employees in 2007.

**Defendants' Discriminatory Failure to Hire**
**Hispanic Sales Employees at Defendants' Retail Stores in 2008**

396. According to Defendants' 2008 EEO-1 reports, out of a total employment of 8,410 employees in 49 retail stores, 6,214 (73.9%) employees were sales employees.

397. According to Defendants' 2008 EEO-1 reports, out of 6,214 sales employees in Defendants' 49 retail stores, only 328 (5.3%) were Hispanic.

398. According to Defendants' 2008 EEO-1 reports, 35 (71.4%) of Defendants' 49 retail stores had a lower percentage of Hispanic sales employees compared to the representation rate of Hispanic sales employees in the county in which the store is located as provided for in the Census 2000 Special EEO file, including:

a.    Defendants' Bolingbrook, Illinois, store, where out of 177 employees, 137 (77.4%) were sales employees, and out of those 137 sales employees, only two (1.5%) were Hispanic, compared to a representation rate of 6.4% Hispanic sales employees in the county.

b.    Defendants' Broken Arrow, Oklahoma, store, where out of 212 employees, 165 (77.8%) were sales employees, and out of those 165 sales employees, only three (1.8%) were Hispanic, compared to a representation rate of 2.9% Hispanic sales employees in the county.

c.    Defendants' Cincinnati, Ohio, store, where out of 222 employees, 179 (80.6%) were sales employees, and out of those 179 sales employees, not one was Hispanic, compared to a representation rate of .8% Hispanic sales employees in the county.

d.    Defendants' Clarksville, Indiana, store, where out of 223 employees, 172 (68.4%) were sales employees, and out of those 172 sales employees, not one was

Hispanic, compared to a representation rate of 1.8% Hispanic sales employees in the county.

e.      Defendants' Columbia, Missouri, store, where out of 98 employees, 67 (68.4%) were sales employees, and out of those 67 sales employees, not one was Hispanic, compared to a representation rate of 1.3% Hispanic sales employees in the county.

f.      Defendants' Concord, North Carolina, store, where out of 196 employees, 136 (69.4%) were sales employees, and out of those 136 sales employees, only two (1.5%) was Hispanic, compared to a representation rate of 1.8% Hispanic sales employees in the county.

g.      Defendants' Council Bluffs, Iowa, store, where out of 165 employees, 123 (74.5%) were sales employees, and out of those 123 sales employees, not one was Hispanic, compared to a representation rate of 2.2% Hispanic sales employees in the county.

h.      Defendants' Dania, Florida, store, where out of 229 employees, 165 (72.1%) were sales employees, and out of those 165 sales employees, only 21 (12.7%) were Hispanic, compared to a representation rate of 16.5% Hispanic sales employees in the county.

i.      Defendants' Denver, Colorado, store, where out of 198 employees, 145 (73.2%) were sales employees, and out of those 145 sales employees, only 11 (7.6%) were Hispanic, compared to a representation rate of 12% Hispanic sales employees in the county.

j.      Defendants' Destin, Florida, store, where out of 99 employees, 73 (73.7%) were sales employees, and out of those 73 sales employees, only two (2.7%) were Hispanic, compared to a representation rate of 3.9% Hispanic sales employees in the county.

k.      Defendants' Duluth, Georgia, store, where out of 193 employees, 144 (74.6%) were sales employees, and out of those 144 sales employees, only two (1.4%) were Hispanic, compared to a representation rate of 4.3% Hispanic sales employees in the county.

l.      Defendants' Ft. Myers, Florida, store, where out of 172 employees, 131 (73.8%) were sales employees, and out of those 131 sales employees, only one (.8%) was Hispanic, compared to a representation rate of 6.4% Hispanic sales employees in the county.

m.      Defendants' Garland, Texas, store, where out of 123 employees, 97 (78.9%) were sales employees, and out of those 97 sales employees, only six (6.2%) were Hispanic, compared to a representation rate of 12.9% Hispanic sales employees in the county.

n.      Defendants' Grapevine, Texas, store, where out of 291 employees, 147 (50.5%) were sales employees, and out of those 147 sales employees, only six (4.1%) were Hispanic, compared to a representation rate of 10.6% Hispanic sales employees in the county.

o.      Defendants' Gurnee, Illinois, store, where out of 175 employees, 139 (79.4%) were sales employees, and out of those 139 sales employees, only two

(1.4%) were Hispanic, compared to a representation rate of 7.6% Hispanic sales employees in the county.

p.      Defendants' Harrisburg, Pennsylvania, store, where out of 234 employees, 168 (71.8%) were sales employees, and out of those 168 sales employees, only one (.6%) was Hispanic, compared to a representation rate of 2.1% Hispanic sales employees in the county.

q.      Defendants' Independence, Missouri, store, where out of 166 employees, 125 (75.3%) were sales employees, and out of those 125 sales employees, only one (.8%) was Hispanic, compared to a representation rate of 3.2% Hispanic sales employees in the county.

r.      Defendants' Islamorada, Florida, store, where out of 61 employees, 47 (77%) were sales employees, and out of those 47 sales employees, only four (8.5%) were Hispanic, compared to a representation rate of 12.4% Hispanic sales employees in the county.

s.      Defendants' Katy, Texas, store, where out of 129 employees, 95 (73.6%) were sales employees, and out of those 95 sales employees, only eight (8.4%) were Hispanic, compared to a representation rate of 18.3% Hispanic sales employees in the county.

t.      Defendants' Las Vegas, Nevada, store, where out of 195 employees, 144 (73.8%) were sales employees, and out of those 144 sales employees, only 12 (8.3%) were Hispanic, compared to a representation rate of 12.2% Hispanic sales employees in the county.

u.      Defendants' Macon, Georgia, store, where out of 158 employees, 125 (79.1%) were sales employees, and out of those 125 sales employees, not one was Hispanic, compared to a representation rate of .5% Hispanic sales employees in the county.

v.      Defendants' Mesa, Arizona, store, where out of 154 employees, 115 (74.7%) were sales employees, and out of those 115 sales employees, only 11 (9.6%) were Hispanic, compared to a representation rate of 12.7% Hispanic sales employees in the county.

w.      Defendants' Myrtle Beach, South Carolina, store, where out of 136 employees, 97 (71.3%) were sales employees, and out of those 97 sales employees, not one was Hispanic, compared to a representation rate of 1.3% Hispanic sales employees in the county.

x.      Defendants' Nashville, Tennessee, store, where out of 196 employees, 138 (70.4%) were sales employees, and out of those 109 sales employees, only two (1.4%) were Hispanic, compared to a representation rate of 1.9% Hispanic sales employees in the county.

y.      Defendants' Oklahoma City, Oklahoma, store, where out of 130 employees, 98 (75.4%) were sales employees, and out of those 98 sales employees, not one was Hispanic, compared to a representation rate of 4% Hispanic sales employees in the county.

z.      Defendants' Olathe, Kansas, store, where out of 156 employees, 114 (73.1%) were sales employees, and out of those 114 sales employees, only three

(2.6%) were Hispanic, compared to a representation rate of 4% Hispanic sales employees in the county.

aa.    Defendants' Orlando, Florida, store, where out of 224 employees, 166 (74.1%) were sales employees, and out of those 166 sales employees, only 11 (7.2%) were Hispanic, compared to a representation rate of 15% Hispanic sales employees in the county.

bb.    Defendants' Pearl, Mississippi, store, where out of 153 employees, 108 (70.6%) were sales employees, and out of those 108 sales employees, not one was Hispanic, compared to a representation rate of 1.1% Hispanic sales employees in the county.

cc.    Defendants' Pearland, Texas, store, where out of 123 employees, 89 (72.4%) were sales employees, and out of those 89 sales employees, only 14 (15.7%) were Hispanic, compared to a representation rate of 17.8% Hispanic sales employees in the county.

dd.    Defendants' Prattville, Alabama, store, where out of 187 employees, 135 (77.3%) were sales employees, and out of those 135 sales employees, only one (.7%) was Hispanic, compared to a representation rate of 1.2% Hispanic sales employees in the county.

ee.    Defendants' Rancho Cucamonga, California, store, where out of 260 employees, 201 (77.3%) were sales employees, and out of those 201 sales employees, only 55 (27.4%) were Hispanic, compared to a representation rate of 29.7% Hispanic sales employees in the county.

ff.      Defendants' Saint Charles, Missouri, store, where out of 184 employees, 142 (77.2%) were sales employees, and out of those 142 sales employees, only one (.7%) was Hispanic, compared to a representation rate of .8% Hispanic sales employees in the county.

gg.      Defendants' San Antonio, Texas, store, where out of 179 employees, 134 (74.9%) were sales employees, and out of those 134 sales employees only 53 (39.6%) were Hispanic, compared to a representation rate of 45.6% Hispanic sales employees in the county.

hh.      Defendants' Savannah, Georgia, store, where out of 118 employees, 84 (71.2%) were sales employees, and out of those 84 sales employees, not one was Hispanic, compared to a representation rate of 1% Hispanic sales employees in the county.

ii.      Defendants' Spanish Fort, Alabama, store, where out of 197 employees, 151 (76.6%) were sales employees, and out of those 151 sales employees, only one (.7%) was Hispanic, compared to a representation rate of 1.4% Hispanic sales employees in the county.

399.    Comparing the number of Hispanic sales employees employed by Defendants (as specified in Defendants' 2008 EEO-1 reports for 49 retail stores) to the representation rate of Hispanic sales employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 116 Hispanic sales employees in 2008.

**Defendants' Discriminatory Failure to Hire**
**Hispanic Sales Employees at Defendants' Retail Stores in 2009**

400.    According to Defendants' 2009 EEO-1 reports, out of a total employment of 8,561 employees in 52 retail stores, 6,496 (75.9%) employees were sales employees.

401.    According to Defendants' 2009 EEO-1 reports, out of 6,496 sales employees in Defendants' 52 retail stores, only 317 (4.9%) were Hispanic.

402.    According to Defendants' 2009 EEO-1 reports, 41 (78.8%) of Defendants' 52 retail stores had a lower percentage of Hispanic sales employees compared to the representation rate of Hispanic sales employees in the county in which the store is located as provided for in the Census 2000 Special EEO file, including:

        a.    Defendants' Altoona, Iowa, store, where out of 208 employees, 165 (79.3%) were sales employees, and out of those 165 sales employees, only one (.6%) was Hispanic, compared to a representation rate of 1.5% Hispanic sales employees in the county.

        b.    Defendants' Ashland, Virginia, store, where out of 202 employees, 161 (79.7%) were sales employees, and out of those 161 sales employees, only two (1.2%) were Hispanic, compared to a representation rate of 1.3% Hispanic sales employees in the county.

        c.    Defendants' Bolingbrook, Illinois, store, where out of 168 employees, 137 (80.7%) were sales employees, and out of those 137 sales employees, only two (1.5%) were Hispanic, compared to a representation rate of 6.4% Hispanic sales employees in the county.

        d.    Defendants' Branson, Missouri, store, where out of 97 employees, 79 (81.4%) were sales employees, and out of those 79 sales employees, not one was

Hispanic, compared to a representation rate of .7% Hispanic sales employees in the county.

e.      Defendants' Cincinnati, Ohio, store, where out of 220 employees, 186 (84.5%) were sales employees, and out of those 186 sales employees, not one was Hispanic, compared to a representation rate of .8% Hispanic sales employees in the county.

f.      Defendants' Clarksville, Indiana, store, where out of 223 employees, 173 (77.6%) were sales employees, and out of those 173 sales employees, not one was Hispanic, compared to a representation rate of 1.8% Hispanic sales employees in the county.

g.      Defendants' Columbia, Missouri, store, where out of 74 employees, 50 (67.6%) were sales employees, and out of those 50 sales employees, not one was Hispanic, compared to a representation rate of 1.3% Hispanic sales employees in the county.

h.      Defendants' Council Bluffs, Iowa, store, where out of 172 employees, 124 (72.1%) were sales employees, and out of those 124 sales employees, only one (.8%) was Hispanic, compared to a representation rate of 2.2% Hispanic sales employees in the county.

i.      Defendants' Dania, Florida, store, where out of 233 employees, 177 (76%) were sales employees, and out of those 177 sales employees, only 24 (13.6%) were Hispanic, compared to a representation rate of 16.5% Hispanic sales employees in the county.

j.      Defendants' Denver, Colorado, store, where out of 216 employees, 167 (77.3%) were sales employees, and out of those 167 sales employees, only 12 (7.2%) were Hispanic, compared to a representation rate of 12% Hispanic sales employees in the county.

k.      Defendants' Destin, Florida, store, where out of 100 employees, 75 (75%) were sales employees, and out of those 75 sales employees, only one (1.3%) was Hispanic, compared to a representation rate of 3.9% Hispanic sales employees in the county.

l.      Defendants' Duluth, Georgia, store, where out of 182 employees, 138 (75.8%) were sales employees, and out of those 144 sales employees, only one (.7%) was Hispanic, compared to a representation rate of 4.3% Hispanic sales employees in the county.

m.      Defendants' Foxborough, Massachusetts, store, where out of 188 employees, 129 (68.6%) were sales employees, and out of those 129 sales employees, only one (.8%) was Hispanic, compared to a representation rate of 1.8% Hispanic sales employees in the county.

n.      Defendants' Ft. Myers, Florida, store, where out of 161 employees, 123 (76.4%) were sales employees, and out of those 123 sales employees, only two (1.6%) were Hispanic, compared to a representation rate of 6.4% Hispanic sales employees in the county.

o.      Defendants' Garland, Texas, store, where out of 115 employees, 93 (80.9%) were sales employees, and out of those 93 sales employees, only three

(3.2%) were Hispanic, compared to a representation rate of 12.9% Hispanic sales employees in the county.

p.      Defendants' Grapevine, Texas, store, where out of 242 employees, 137 (56.6%) were sales employees, and out of those 137 sales employees, only six (4.4%) were Hispanic, compared to a representation rate of 10.6% Hispanic sales employees in the county.

q.      Defendants' Gurnee, Illinois, store, where out of 144 employees, 112 (77.8%) were sales employees, and out of those 112 sales employees, only one (.9%) was Hispanic, compared to a representation rate of 7.6% Hispanic sales employees in the county.

r.      Defendants' Hampton, Virginia, store, where out of 145 employees, 118 (81.4%) were sales employees, and out of those 118 sales employees, only two (1.7%) were Hispanic, compared to a representation rate of 2.4% Hispanic sales employees in the county.

s.      Defendants' Hanover, Maryland, store, where out of 214 employees, 180 (84.1%) were sales employees, and out of those 180 sales employees, only three (1.7%) were Hispanic, compared to a representation rate of 2.1% Hispanic sales employees in the county.

t.      Defendants' Harrisburg, Pennsylvania, store, where out of 196 employees, 144 (73.5%) were sales employees, and out of those 144 sales employees, only one (.7%) was Hispanic, compared to a representation rate of 2.1% Hispanic sales employees in the county.

u.      Defendants' Independence, Missouri, store, where out of 149 employees, 111 (74.5%) were sales employees, and out of those 149 sales employees, not one was Hispanic, compared to a representation rate of 3.2% Hispanic sales employees in the county.

v.      Defendants' Islamorada, Florida, store, where out of 55 employees, 43 (78.2%) were sales employees, and out of those 43 sales employees, only three (7%) were Hispanic, compared to a representation rate of 12.4% Hispanic sales employees in the county.

w.      Defendants' Katy, Texas, store, where out of 125 employees, 98 (78.4%) were sales employees, and out of those 98 sales employees, only 13 (13.3%) were Hispanic, compared to a representation rate of 18.3% Hispanic sales employees in the county.

x.      Defendants' Las Vegas, Nevada, store, where out of 164 employees, 122 (74.4%) were sales employees, and out of those 122 sales employees, only eight (6.6%) were Hispanic, compared to a representation rate of 12.2% Hispanic sales employees in the county.

y.      Defendants' Leeds, Alabama, store, where out of 218 employees, 171 (78.4%) were sales employees, and out of those 171 sales employees, not one was Hispanic, compared to a representation rate of .7% Hispanic sales employees in the county.

z.      Defendants' Macon, Georgia, store, where out of 137 employees, 103 (75.2%) were sales employees, and out of those 103 sales employees, not one was

Hispanic, compared to a representation rate of .5% Hispanic sales employees in the county.

aa.      Defendants' Manteca, California, store, where out of 186 employees, 134 (72%) were sales employees, and out of those 134 sales employees, only 15 (11.2%) were Hispanic, compared to a representation rate of 18.4% Hispanic sales employees in the county.

bb.      Defendants' Mesa, Arizona, store, where out of 155 employees, 120 (77.4%) were sales employees, and out of those 120 sales employees, only nine (7.5%) were Hispanic, compared to a representation rate of 12.7% Hispanic sales employees in the county.

cc.      Defendants' Myrtle Beach, South Carolina, store, where out of 131 employees, 99 (75.6%) were sales employees, and out of those 99 sales employees, not one was Hispanic, compared to a representation rate of 1.3% Hispanic sales employees in the county.

dd.      Defendants' Nashville, Tennessee, store, where out of 181 employees, 135 (74.6%) were sales employees, and out of those 135 sales employees, not one was Hispanic, compared to a representation rate of 1.9% Hispanic sales employees in the county.

ee.      Defendants' Oklahoma City, Oklahoma, store, where out of 146 employees, 113 (77.4%) were sales employees, and out of those 113 sales employees, not one was Hispanic, compared to a representation rate of 4% Hispanic sales employees in the county.

ff.      Defendants' Olathe, Kansas, store, where out of 128 employees, 97 (75.8%) were sales employees, and out of those 97 sales employees, only two (2.1%) were Hispanic, compared to a representation rate of 4% Hispanic sales employees in the county.

gg.      Defendants' Orlando, Florida, store, where out of 214 employees, 161 (75.2%) were sales employees, and out of those 161 sales employees, only nine (5.6%) were Hispanic, compared to a representation rate of 15% Hispanic sales employees in the county.

hh.      Defendants' Pearl, Mississippi, store, where out of 159 employees, 105 (66%) were sales employees, and out of those 105 sales employees, not one was Hispanic, compared to a representation rate of 1.1% Hispanic sales employees in the county.

ii.      Defendants' Pearland, Texas, store, where out of 124 employees, 91 (73.4%) were sales employees, and out of those 91 sales employees, only 15 (16.5%) were Hispanic, compared to a representation rate of 17.8% Hispanic sales employees in the county.

jj.      Defendants' Prattville, Alabama, store, where out of 148 employees, 106 (71.6%) were sales employees, and out of those 106 sales employees, only one (.9%) was Hispanic, compared to a representation rate of 1.2% Hispanic sales employees in the county.

kk.      Defendants' Rancho Cucamonga, California, store, where out of 260 employees, 204 (78.5%) were sales employees, and out of those 204 sales

employees, only 42 (20.6%) were Hispanic, compared to a representation rate of 29.7% Hispanic sales employees in the county.

ll.      Defendants' Saint Charles, Missouri, store, where out of 187 employees, 153 (81.8%) were sales employees, and out of those 153 sales employees, only one (.7%) was Hispanic, compared to a representation rate of .8 % Hispanic sales employees in the county.

mm.    Defendants' San Antonio, Texas, store, where out of 154 employees, 118 (76.6%) were sales employees, and out of those 118 sales employees only 44 (37.3%) were Hispanic, compared to a representation rate of 45.6% Hispanic sales employees in the county.

nn.     Defendants' Savannah, Georgia, store, where out of 117 employees, 85 (72.6%) were sales employees, and out of those 117 sales employees, not one was Hispanic, compared to a representation rate of 1% Hispanic sales employees in the county.

oo.     Defendants' Spanish Fort, Alabama, store, where out of 177 employees, 145 (81.9%) were sales employees, and out of those 145 sales employees, not one was Hispanic, compared to a representation rate of 1.4% Hispanic sales employees in the county.

403.    Comparing the number of Hispanic sales employees employed by Defendants (as specified in Defendants' 2009 EEO-1 reports for 52 retail stores) to the representation rate of Hispanic sales employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 143 Hispanic sales employees in 2009.

**Defendants' Discriminatory Failure to Hire**
**Hispanic Sales Employees at Defendants' Retail Stores in 2010**

404.     According to Defendants' 2010 EEO-1 reports, out of a total employment of 8,839 employees in 52 retail stores, 6,820 (77.2%) employees were sales employees.

405.     According to Defendants' 2010 EEO-1 reports, out of 6,820 sales employees in Defendants' 52 retail stores, only 381 (5.6%) were Hispanic.

406.     According to Defendants' 2010 EEO-1 reports, 37 (71.2%) of Defendants' 52 retail stores had a lower percentage of Hispanic sales employees compared to the representation rate of Hispanic sales employees in the county in which the store is located as provided for in the Census 2000 Special EEO file, including:

> a.      Defendants' Altoona, Iowa, store, where out of 189 employees, 141 (74.6%) were sales employees, and out of those 141 sales employees, only two (1.4%) were Hispanic, compared to a representation rate of 1.5% Hispanic sales employees in the county.
>
> b.      Defendants' Auburn, New York, store, where out of 139 employees, 115 (82.7%) were sales employees, and out of those 115 sales employees, only one (.9%) was Hispanic, compared to a representation rate of 1.4% Hispanic sales employees in the county.
>
> c.      Defendants' Bolingbrook, Illinois, store, where out of 170 employees, 136 (80%) were sales employees, and out of those 136 sales employees, only three (2.2%) were Hispanic, compared to a representation rate of 6.4% Hispanic sales employees in the county.
>
> d.      Defendants' Bossier City, Louisiana, store, where out of 173 employees, 140 (80.9%) were sales employees, and out of those 140 sales employees, only

three (2.1%) were Hispanic, compared to a representation rate of 2.2% Hispanic sales employees in the county.

e.      Defendants' Branson, Missouri, store, where out of 105 employees, 86 (81.9%) were sales employees, and out of those 86 sales employees, not one was Hispanic, compared to a representation rate of .7% Hispanic sales employees in the county.

f.      Defendants' Cincinnati, Ohio, store, where out of 208 employees, 175 (84.1%) were sales employees, and out of those 175 sales employees, not one was Hispanic, compared to a representation rate of .8% Hispanic sales employees in the county.

g.      Defendants' Clarksville, Indiana, store, where out of 234 employees, 184 (78.6%) were sales employees, and out of those 184 sales employees, not one was Hispanic, compared to a representation rate of 1.8% Hispanic sales employees in the county.

h.      Defendants' Columbia, Missouri, store, where out of 98 employees, 71 (72.4%) were sales employees, and out of those 71 sales employees, not one was Hispanic, compared to a representation rate of 1.3% Hispanic sales employees in the county.

i.      Defendants' Dania, Florida, store, where out of 227 employees, 173 (76.2%) were sales employees, and out of those 173 sales employees, only 24 (13.9%) were Hispanic, compared to a representation rate of 16.5% Hispanic sales employees in the county.

j.      Defendants' Denver, Colorado, store, where out of 206 employees, 159 (77.2%) were sales employees, and out of those 159 sales employees, only 11 (6.9%) were Hispanic, compared to a representation rate of 12% Hispanic sales employees in the county.

k.      Defendants' Destin, Florida, store, where out of 106 employees, 82 (77.4%) were sales employees, and out of those 82 sales employees, only one (1.1%) was Hispanic, compared to a representation rate of 3.9% Hispanic sales employees in the county.

l.      Defendants' Duluth, Georgia, store, where out of 183 employees, 141 (77%) were sales employees, and out of those 141 sales employees, only three (2.1%) were Hispanic, compared to a representation rate of 4.3% Hispanic sales employees in the county.

m.      Defendants' Foxborough, Massachusetts, store, where out of 190 employees, 130 (68.4%) were sales employees, and out of those 130 sales employees, only one (.8%) was Hispanic, compared to a representation rate of 1.8% Hispanic sales employees in the county.

n.      Defendants' Ft. Myers, Florida, store, where out of 157 employees, 120 (76.4%) were sales employees, and out of those 120 sales employees, only five (4.2%) were Hispanic, compared to a representation rate of 6.4% Hispanic sales employees in the county.

o.      Defendants' Garland, Texas, store, where out of 134 employees, 106 (79.1%) were sales employees, and out of those 106 sales employees, only four

(3.8%) were Hispanic, compared to a representation rate of 12.9% Hispanic sales employees in the county.

p.        Defendants' Grapevine, Texas, store, where out of 290 employees, 191 (65.9%) were sales employees, and out of those 191 sales employees, only six (3.1%) were Hispanic, compared to a representation rate of 10.6% Hispanic sales employees in the county.

q.        Defendants' Gurnee, Illinois, store, where out of 159 employees, 129 (81.1%) were sales employees, and out of those 129 sales employees, not one was Hispanic, compared to a representation rate of 7.6% Hispanic sales employees in the county.

r.        Defendants' Hampton, Virginia, store, where out of 155 employees, 123 (79.4%) were sales employees, and out of those 123 sales employees, only two (1.6%) were Hispanic, compared to a representation rate of 2.4% Hispanic sales employees in the county.

s.        Defendants' Hanover, Maryland, store, where out of 225 employees, 191 (84.9%) were sales employees, and out of those 191 sales employees, only two (1%) were Hispanic, compared to a representation rate of 2.1% Hispanic sales employees in the county.

t.        Defendants' Harrisburg, Pennsylvania, store, where out of 203 employees, 147 (72.4%) were sales employees, and out of those 147 sales employees, only two (1.4%) were Hispanic, compared to a representation rate of 2.1% Hispanic sales employees in the county.

u.      Defendants' Independence, Missouri, store, where out of 153 employees, 122 (79.7%) were sales employees, and out of those 122 sales employees, not one was Hispanic, compared to a representation rate of 3.2% Hispanic sales employees in the county.

v.      Defendants' Islamorada, Florida, store, where out of 57 employees, 46 (80.7%) were sales employees out of those 46 sales employees, only five (10.9%) were Hispanic, compared to a representation rate of 12.4% Hispanic sales employees in the county.

w.      Defendants' Katy, Texas, store, where out of 120 employees, 92 (76.7%) were sales employees, and out of those 92 sales employees, only 11 (12%) were Hispanic, compared to a representation rate of 18.3% Hispanic sales employees in the county.

x.      Defendants' Las Vegas, Nevada, store, where out of 155 employees, 113 (72.9%) were sales employees, and out of those 113 sales employees, only ten (8.8%) were Hispanic, compared to a representation rate of 12.2% Hispanic sales employees in the county.

y.      Defendants' Leeds, Alabama, store, where out of 182 employees, 145 (79.7%) were sales employees, and out of those 145 sales employees, not one was Hispanic, compared to a representation rate of .7% Hispanic sales employees in the county.

z.      Defendants' Manteca, California, store, where out of 225 employees, 179 (79.6%) were sales employees, and out of those 179 sales employees, only 24

(13.4%) were Hispanic, compared to a representation rate of 18.4% Hispanic sales employees in the county.

aa.      Defendants' Mesa, Arizona, store, where out of 154 employees, 118 (76.6%) were sales employees, and out of those 118 sales employees, only seven (5.9%) were Hispanic, compared to a representation rate of 12.7% Hispanic sales employees in the county.

bb.      Defendants' Myrtle Beach, South Carolina, store, where out of 135 employees, 105 (77.8%) were sales employees, and out of those 105 sales employees, only one (1%) was Hispanic, compared to a representation rate of 1.3% Hispanic sales employees in the county.

cc.      Defendants' Oklahoma City, Oklahoma, store, where out of 152 employees, 114 (75%) were sales employees, and out of those 114 sales employees, only one (.9%) was Hispanic, compared to a representation rate of 4% Hispanic sales employees in the county.

dd.      Defendants' Orlando, Florida, store, where out of 205 employees, 155 (75.6%) were sales employees, and out of those 155 sales employees, only ten (6.5%) were Hispanic, compared to a representation rate of 15% Hispanic sales employees in the county.

ee.      Defendants' Pearl, Mississippi, store, where out of 149 employees, 96 (64.4%) were sales employees, and out of those 96 sales employees, not one was Hispanic, compared to a representation rate of 1.1% Hispanic sales employees in the county.

ff.     Defendants' Pearland, Texas, store, where out of 150 employees, 117 (78%) were sales employees, and out of those 117 sales employees, only 19 (16.2%) were Hispanic, compared to a representation rate of 17.8% Hispanic sales employees in the county.

gg.    Defendants' Prattville, Alabama, store, where out of 130 employees, 95 (73.1%) were sales employees, and out of those 95 sales employees, not one was Hispanic, compared to a representation rate of 1.2% Hispanic sales employees in the county.

hh.    Defendants' Rancho Cucamonga, California, store, where out of 281 employees, 232 (82.6%) were sales employees, and out of those 281 sales employees, only 46 (19.8%) were Hispanic, compared to a representation rate of 29.7% Hispanic sales employees in the county.

ii.     Defendants' Saint Charles, Missouri, store, where out of 190 employees, 156 (82.1%) were sales employees, and out of those 156 sales employees, only one (.6%) was Hispanic, compared to a representation rate of .8 % Hispanic sales employees in the county.

jj.     Defendants' Savannah, Georgia, store, where out of 113 employees, 84 (74.3%) were sales employees, and out of those 84 sales employees, not one was Hispanic, compared to a representation rate of 1% Hispanic sales employees in the county.

kk.    Defendants' Spanish Fort, Alabama, store, where out of 192 employees, 157 (81.8%) were sales employees, and out of those 157 sales employees, not one

was Hispanic, compared to a representation rate of 1.4% Hispanic sales employees in the county.

407.    Comparing the number of Hispanic sales employees employed by Defendants (as specified in Defendants' 2010 EEO-1 reports for 52 retail stores) to the representation rate of Hispanic sales employees in the county in which each store is located (as provided for in the Census 2000 Special EEO file) indicates that Defendants had a net shortfall of 128 Hispanic sales employees in 2010.

## DEFENDANTS HAVE DENIED EMPLOYMENT
## TO HISPANIC APPLICANTS AT STORES NATIONWIDE

408.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 407 above as if set forth fully herein.

409.    As discussed in paragraphs 410 to 427 below, Defendants have denied employment to at least hundreds of individual Hispanic applicants based on their national origin including, but not limited to, the individuals listed below, and all persons in like or related circumstances.  The individuals were denied employment based on their national origin at numerous of Defendants' stores and from 2005 or earlier to the present.

410.    Maria Jimenez is Hispanic.  In the summer of 2011, she attended a job fair that was being held in anticipation of the opening of the East Peoria, Illinois store.  Jimenez had many years of experience as a cashier and customer service representative when she applied. Defendants did not hire Jimenez.

411.    Elizabeth Solis is Hispanic.  In 2005 or 2006, she applied to the Katy, Texas store. Defendants did not hire Solis.

412.    Charles Diaz is Hispanic.  He applied in person to the Savannah, Georgia store in the summer of 2006 and again during the summer of 2008.  Diaz had hunting and fishing

experience and was able to provide personal references from people already employed at the Savannah store.  Current employees told Diaz that the store had openings around the second time he applied.  Diaz also followed up on his application by visiting or telephoning the store on several occasions.  During his visits to the store, Diaz repeatedly observed that the majority of employees were White unlike other retail stores in the same geographic area such as Target and Home Depot.  Diaz was never hired by Defendants.

413.    Jorge Luis Berber is Hispanic.  He applied to the Katy, Texas store around October 2005.  Defendants did not hire Berber.

414.    Luis Berber is Hispanic.  He had stocking, hunting, and fishing experience when he applied to the Katy, Texas store in October 2005.  After he completed the application, he had to wait a long time to speak to a manager.  An employee eventually looked at Berber's application, chuckled, and told him that someone would call him if a position was available.  When Berber called to follow up on his application and asked to speak to a manager, he was told that no manager was available to speak to him, or that that they were reviewing applications.  Defendants did not hire Berber.

415.    Gilma Delgado is Hispanic.  She had stocking experience when she applied to the Katy, Texas store around September 2006.  She previously had applied in 2002 and did not hear back at that time.  When Delgado followed up on her 2006 application a couple of weeks later, an employee told her that if no one had contacted her, they were not going to hire her.  Defendants did not hire Delgado.

416.    Ricky Ruiz is Hispanic and Black.  He applied to the Bolingbrook, Illinois store in late 2008.  He contacted the store a few times regarding his application, but was never contacted or hired by Defendants.

417.     Gregory Perez is Hispanic.  He had sales and customer service experience when he applied twice to the Bolingbrook, Illinois, store, including in August 2007.  When he called to follow up on his application, he was told that the position had already been filled, and that he was "overqualified."  Defendants did not hire Perez.

418.     Wayne Espinoza is Hispanic.  He had extensive experience as a fisherman and had a captain's license when he applied to work in the Fishing department at the Hampton, Virginia store on three occasions.  He applied around November 2010, January 2011, and again around June 2011.  Espinoza never received a call back for an interview and was never hired by Defendants.

419.     Veronica Jara is Hispanic.  Jara had ten years of human resources experience when she responded to an ad she saw online in June 2011 for a Human Resources position in the Bolingbrook, Illinois store.  She was not hired by Defendants.

420.     Robert Flores is Hispanic.  He applied to the Savannah, Georgia store around March 2008.  He had previously applied on-line in 2006.  He was not hired by Defendants.

421.     Esmeralda Lopez is Hispanic.  She had stocking experience when she submitted an online application to work at the Savannah, Georgia store in March 2007.  Defendants did not hire Ms. Lopez.

422.     Antonio Nieto is Hispanic and has dark skin.  He had extensive hunting and archery experience and had worked at another sports and outdoor goods store when he applied online in early 2011 for a position at the Harlingen, Texas store.  In late August or September 2011, he attended a job fair and was interviewed twice.  He was told that he would be called.  Nieto followed up frequently by telephone after the interviews, and an employee told him that the store had done all its hiring.  Defendants did not hire Nieto.

423.    Gabriel Ybarra is Hispanic.  When he applied at the Bolingbrook, Illinois store in May 2008, he listed on his application that his hobbies and interests included fishing and outdoors and that he had experience as a cashier.  He handed his application to a White employee at the store.  He called to follow up on his application and also went to the store to speak to a manager about his pending application and both times was told that his application was "being processed."  Defendants did not interview or hire Ybarra.

424.    Andraya Bennett is Hispanic.  She applied to the Pearl, Mississippi store in May 2007.  While shopping at the store, she was told that the store was hiring.  On her application, she listed six years of sales/customer service experience, and listed her fishing, hunting, and camping experience.  Defendants did not interview or hire Bennett.

425.    Victor Mejias is Hispanic.   Mejias had years of experience, including management experience, selling fishing supplies when he applied to the Bolingbrook, Illinois store in April 2007.  His application also listed extensive experience in hunting, fishing, boating, and camping.  He previously had applied online in March 2007.  When his previous sporting goods store employer announced that it would be closing, Mejias and two non-Hispanic employees from that store applied at the Bolingbrook store.  The non-Hispanics were both hired while Mejias was not hired or even given an interview.  Mejias had been the manager of the two employees hired by Defendants, and all three belonged to the Riverside Fishing Club.  Later, another non-Hispanic member of the Riverside Fishing Club was hired at the store.  Defendants never hired Mejias.

426.    Watson Falzarano is Hispanic.   Falzarano had an associate's degree and experience as a driver and in food service when he applied to the Orlando, Florida store in July 2007.  He also indicated on his application that he had experience in about seven different

outdoor activities.  When he turned in his application, he was told the store was not hiring, even though he had just been told elsewhere that Defendants were hiring.  He observed no Black or Hispanic employees at the store.  Defendants did not hire Falzarano.

427.    Cynthia Selent is Hispanic.  Around the summer of 2007, she applied for a Human Resources/Trainer position at the Prattville, Alabama, store, which had not yet opened. She had an initial job interview at a local hotel and a second interview with a Regional Human Resources Manager.  She informed the second interviewer that she was bi-lingual in English and Spanish.  The interviewer asked if she had learned Spanish in school, and she replied that she is Hispanic and that her mother was from Puerto Rico and her father from Argentina.  She explained that she learned Spanish and English together as she was growing up.  The interviewer folded his arms, sat back, and the interview was then cut short.  After not hearing back, Selent returned to the hotel and asked the man with whom she had interviewed if the position was still vacant, and he told her they had hired someone else.  Defendants did not hire Selent.

428.    The effect of the practices complained of in paragraphs 12 to 427 above has been to deprive Black and Hispanic applicants of equal employment opportunities and to otherwise adversely affect their status as applicants because of their race and/or national origin.

### COUNT TWO:
### UNLAWFUL RETALIATION

429.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 428 above as if set forth fully herein.

430.    Defendants have unlawfully retaliated against employees who opposed practices that they reasonably perceived to violate Title VII, in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-3(a).  Defendants' retaliatory acts against such employees have included, but are not limited to, altering the terms, conditions, or privileges of their employment; bringing false

allegations against them; subjecting them to heightened scrutiny; subjecting them to a retaliatory hostile work environment; and firing or constructively discharging them, or otherwise inducing their resignations.

431.    As described in detail in paragraphs 37 to 123, the culture of discrimination is rooted in top corporate management and implemented in many ways by Defendants' heavily centralized Human Resources department.

432.    Director of Human Resources for retail stores, Brent Day, plays a leading role in the hiring of Store General Managers and in the sourcing, interviewing, and hiring of Store Human Resources Managers nationwide.

433.    Day is also responsible for the overall investigation of discrimination claims arising in the stores.  Many employees with employment discrimination complaints are told by Store Human Resources Managers to call "Corporate HR," to report their discrimination complaints.

434.    In the experience of many employees, Day frequently does not investigate or refer complaints to one of the Regional Human Resources Managers unless the complaining party is extremely persistent.

435.    Day is aware of the retaliatory climate in Defendants' stores.  A Maintenance Manager and a Loss Prevention Team Lead in Katy, Texas, reported to Day in October 2006 that the Store General Manager threatened to retaliate against her employees if they complained to the "Corporate Office" about her.  The Loss Prevention Team Lead further reported to Day that the Store General Manager told her employees that if they contacted the "Corporate Office," she would find out and the employee would be terminated.

436.    Defendants discourage complaints and retaliate against those who make them.

**Defendants' Retaliation Against Managers**

437.    Several store managers, including Store Human Resources Managers, who have challenged Defendants' policy of not hiring Black or Hispanic applicants, have been unlawfully terminated, constructively discharged, or otherwise subjected to retaliation.  At times, those managers have directly confronted Brent Day with evidence of discriminatory hiring practices, but he has not investigated their contentions.  At other times, those managers have directly confronted a Regional Human Resources Manager, such as Jill Klimas or John Sargent, with their evidence of discriminatory hiring practices, but these Regional Human Resources Managers have either urged the complaining party to desist or they have not investigated the contentions.

438.    For example, the Assistant General Manager for the Islamorada Fish Company Restaurant in the Broken Arrow, Oklahoma, store was terminated in retaliation for complaining about derogatory and racially offensive comments that the Restaurant General Manager, Brian Goforth, made about applicants during a job fair.

439.    Within days of reporting the racist and otherwise discriminatory comments to the Store Human Resources Manager, as well as to other managers, Defendants fired the Assistant General Manager.  He was told that based on his comments and complaints, "we don't think you're a good fit for the company and we're going to have to ask you to leave."  The Assistant General Manager informed Day about his termination and sent him an e-mail documenting the discrimination.  Defendants did nothing.

440.    Defendants also retaliated against the Human Resources Manager for the Pearl, Mississippi, store for engaging in protected activity.

441.    Managers at the Pearl store asked the Human Resources Manager to fabricate employee write-ups, so the managers could later terminate the employees.  On one occasion, a

manager asked the Human Resources Manager to fabricate two write-ups for a Black cashier whom the manager referred to as a "nigger."  The Human Resources Manager refused and reported the incident to Brent Day.

442.    On another occasion, the Pearl Store General Manager, Pat Renegar, prohibited the Human Resources Manager from hiring a Black, disabled applicant in a wheelchair.  Once more, the Human Resources Manager reported this incident to Brent Day as well as other racial conduct, attitudes, and statements of managers in the store.  Defendants took no action in response to these complaints.

443.    The Human Resources Manager once recommended that they recruit a particular Black female he knew with human resources experience to work in the Human Resources department.  Rather than considering the qualified applicant, Store General Manager Renegar asked what the applicant's race was, and instead hired a young, less experienced, White female.

444.    When the Human Resources Manager continued to refuse to participate in discrimination, Defendants eliminated some of his duties.  He was no longer allowed to be involved in some of the store hiring.  In March 2005, Renegar warned the Human Resources Manager that "it's 5 against 1. And you're the 1."  Renegar suggested that he work on his off days for free to assist other managers with their departments.  Shortly after the Human Resources Manager refused, Renegar accused him of allegedly sexually harassing a female employee and using racial slurs.  Renegar offered no details or information about the accusations or their source.

445.    The Human Resources Manager was offered the choice of resigning or being terminated.  He resigned.

## Retaliation Against Non-Managerial Employees

446.    Similarly, when non-managerial employees complain of discriminatory practices and retaliation by store managers, Day has failed to take remedial action.  Despite promising that he will advise the current or former employee of the outcome of the purported investigation, he rarely does so.

447.    Additionally, when non-managerial employees complain of discriminatory practices within their stores, they are terminated or otherwise subjected to adverse actions which would dissuade a reasonable employee from complaining.

448.    For example, Defendants retaliated against a "PACE" employee for engaging in protected activity at their Spanish Fort, Alabama, store.  In late 2010, the PACE employee and a Black colleague were called "worthless niggers" by a White co-worker.  A White Lead employee complained of this slur to the Store Human Resources Manager.  The Human Resources Manager discredited the complaint after the accused employee denied making the slur.  The manager did not sustain the allegation that a racial slur had been directed against Black employees, did not conduct a thorough investigation of the complaint, and did not interview any other witnesses.

449.    The PACE employee was then called "nigger" by another co-worker.  The Human Resources Manager again, without interviewing any other witnesses, failed to sustain that complaint because this second accused White worker also denied making the slur.

450.    In the months after the PACE employee filed a discrimination complaint, Defendants did not call her back to work under the PACE program or consider her for other open positions.

**Retaliatory Climate**

451.    A retaliatory climate permeates many stores and discourages employees from complaining about employment discrimination and from obtaining any relief from the discrimination.

452.    Several employees in Defendants' Clarksville, Indiana, store feared that if they made a complaint, they would be terminated or otherwise subjected to retaliation.  They also learned that their complaints were not kept confidential by either store managers or Corporate Human Resources Managers.

453.    Employees discovered that messages left on the nationwide "hotline" in corporate headquarters were not kept confidential, and in some instances, Corporate Human Resources would help store managers identify employees who had complained anonymously, so that they could be disciplined or terminated.

454.    For example, a former Visual Manager for the Clarksville store called Corporate anonymously several times to voice concerns of misconduct.  Shortly after making her complaints, the Clarksville General Manager, Mike Benningfield, admonished staff to not complain.

455.    The Visual Manager nevertheless then complained to the Regional Human Resources Manager, John Sargent, about how Benningfield, another manager, and the store Human Resources Manager were covering up employee complaints by sending out emails to managers instructing them to support the offending managers and deny any wrongdoing.  She also complained to Sargent about retaliation and sex and race discrimination in the Clarksville store.  The Visual Manager was laid off in January 2009.

**Complaints Discouraged**

456.    Those employees who did complain to regional or corporate Human Resources were rebuffed and/or subjected to adverse employment actions.

457.    An employee who complained to Jill Klimas, Regional Human Resources Manager, about race and sex discrimination in the Bossier City, Louisiana, store was told not to act like a "victim."

458.    Defendants discourage complaints at the store, regional, and corporate levels.  In the fall of 2007, for example, an Operations Manager in Garland, Texas complained to her Store Human Resources Manager about a sexually hostile work environment created by her General Manager.  The Store Human Resources Manager immediately informed the General Manager of the complaint against him, and the General Manager then retaliated against the employee.  The aggrieved employee then complained to a regional manager, which resulted in no action by Defendants.  The employee finally complained directly to Day.  He questioned if she really wanted to file a complaint, noting that it would take time and people away from their jobs.

459.    Another employee was considered "trouble" for making complaints.  During a job fair, the General Manager for the Pearl store told the Store Human Resources Manager not to talk with an employee from another store because that employee's General Manager had said that the employee was "stirring up trouble" at his store.  The Human Resources Manager understood this to be because the employee was complaining about sexual harassment and the racial imbalance in the store.  The employee who was "stirring up trouble" was subjected to adverse employment terms and later terminated.

460.    Further illustrative examples of such retaliation include, but are not limited to, retaliation against the following individuals:

**Demar Watson**

461.    Defendants retaliated against Demar Watson, Store Human Resources Manager at the Bossier City, Louisiana, store, for engaging in protected activity.  After Watson opposed other managers' unlawful discrimination, participated in EEOC's investigation, and participated in an internal investigation of the Bossier City store, Defendants wrote Watson up and gave him a negative performance evaluation.  The evaluation noted, "The EEOC investigation was a disaster."  Furthermore, after Watson terminated an employee for making derogatory comments in the store about race, sex, and age concerning another employee, as well as making threats, Defendants terminated Watson in retaliation.

462.    When Watson became the Store Human Resources Manager in October 2006, he began investigating several pending complaints, including sexual harassment complaints.  Watson reported on his investigations to Day.

463.    Watson also became aware of racial comments that had been made by managers, including the Bossier City Store General Manager, Ed Billingsley.  For example, Watson learned that Billingsley had told another manager, "we don't hire that type of individual here" in reference to a Black, pregnant Cashier.

464.    In the summer of 2007, Watson became aware that Assistant General Manager Richard Wisher did not want him to hire Black applicants.  Wisher made comments about the number of Black applicants Watson interviewed numerous times, including informing Watson that "we're hiring too many niggers."

465.    On one occasion, when Watson was interviewing a Black candidate for a position, Wisher made a throat slashing gesture while walking by Watson's office.  After the interview,

Watson asked Wisher what he had meant by the gesture.  Wisher responded, "that's not the kind of individual we want" and said "they don't fit our profile."

466.    Watson informed Wisher that his racially offensive behavior was inappropriate. Watson also informed Billingsley about Wisher's behavior.

467.    In 2008, Watson hired a Black applicant as a Cashier.  Wisher referred to the Cashier as an "EE-OCK," apparently a phonetically pronounced acronym or nickname for EEOC, and informed Watson he considered her an EEOC "plant."

468.    In February 2008, EEOC conducted interviews in Bossier City, Louisiana.  EEOC investigators interviewed Watson for several hours.

469.    After EEOC's investigation at the store, Defendants hired a third-party consulting firm to conduct interviews in the store.  The consultant also interviewed Watson.  Jami Roper, Regional Human Resources Manager, was there for part of the investigation.  During his interview, Watson shared information about the allegations of racial comments made by managers.

470.    In June 2008, Roper wrote up Watson for alleged "loss of confidence" and for purportedly failing to follow company procedures in disclosing information.  The reasons given for the write-up were false and were a pretext for unlawful retaliation.  The write-up was an adverse action that would dissuade a reasonable person from opposing practices illegal under Title VII or from otherwise participating in investigations concerning alleged Title VII violations.

471.    Watson sent Day a letter refuting the write-up.

472.    In March 2009, Day sent Watson his evaluation for the 2008.  He gave Watson a rating of "unacceptable."  Day informed Watson that "the EEOC investigation was a disaster."

Thus, Defendants clearly took action against Watson for participating in an investigation of alleged violations of Title VII.  Watson's previous annual reviews had always met or exceeded expectations.  As a result of this rating, Watson did not receive a raise that year.  The negative evaluation and lack of a raise were adverse actions that would dissuade a reasonable person from opposing practices illegal under Title VII or from otherwise participating in investigations concerning alleged Title VII violations.

473.    Watson refuted the evaluation.

474.    In 2008, Shawn Humpert transferred to the Bossier City store from Oklahoma City to be the new Store General Manager.

475.    On one occasion, Watson recommended a Black applicant for the position of Fishing Team Lead.  Humpert refused to interview him, saying he was not qualified.  Watson disagreed and felt he was fully qualified.  Humpert interviewed only White candidates for the position.

476.    In August 2011, an employee in the Bossier City store complained to Watson that he was being harassed by another employee.  The alleged harassment included comments about his age and sexual organs, as well as threats.  Watson investigated the complaint and took witness statements.  He discovered that the alleged harasser had also made a racially derogatory comment about another associate.

477.    Watson provided all of the information and witness statements to Day, found the allegations to have merit, and recommended that the harasser be terminated.  On August 9, 2011, Day authorized the termination.

478.    Following the termination, Humpert, the Store General Manager, complained about the termination to Day.

479.     Day approached Watson at a job fair in Harlingen, Texas to discuss the termination of the associate for discriminatory behavior.  Watson confirmed that he had spoken with Humpert about his investigation and reminded Day that he had authorized the termination. Watson also agreed to speak with Humpert about it again.

480.     When Watson returned to the Bossier City store, he spoke with Humpert again about the reasons for the termination.

481.     Watson also sent an e-mail to his assistant indicating that he would not have someone in the store making threats and discriminatory comments and could not support Humpert doing so.

482.     A few weeks later, on September 7, 2011, Day terminated Watson purportedly for "poor judgment" and "loss of confidence."  Just the year before in Watson's March 2010 performance evaluation, Day noted that Watson was "a good decision maker" and "uses sound judgment."   Defendants discharged Watson for participating in an EEOC and internal investigation, opposing practices made unlawful under Title VII, and/or for otherwise engaging in activity protected by the statute.

**Laura Tarr**

483.     Starting in 2008, Defendants retaliated against Loss Prevention Agent Laura Tarr for engaging in protected activity at the Clarksville, Indiana, store.

484.     Bass Pro hired Tarr to work as a Loss Prevention Agent in September 2008.

485.     Tarr's supervisors were Allen Bramer, Lead Loss Prevention Agent, and Rod Merten, Loss Prevention Manager.

486.     In approximately late October or early November 2008, Tarr complained to the Store Human Resources Manager, Mary Vaughn, that another Loss Prevention Agent, John Comer, was sexually harassing her.

487.     Tarr told Vaughn about Comer's harassment, which included the following conduct: sending Tarr text messages of himself naked; suggesting that they have sex in multiple places, including in a storage closet within the store; taking a picture of Tarr's behind while she was bent over; refusing to trade days with Tarr unless she would come to his home and "get naked"; and misleadingly telling other employees that Tarr had sent him a picture of her breast. Before complaining to Vaughn, Tarr informed Comer that she objected to his harassment.

488.     Vaughn asked Tarr to provide her complaint in writing.  Tarr hand-wrote and signed her complaint in Vaughn's presence.  Vaughn stated that she would tell the General Manager, Mike Benningfield.

489.     Vaughn reported the complaint to the Loss Prevention Manager, Merten.

490.     Within a week after making the complaint, Loss Prevention Manager Merten and Lead Loss Prevention Agent Bramer called Tarr into Merten's office, which also functioned as the store's "interrogation room," where Loss Prevention agents question people suspected of shoplifting.  Vaughn was not present.  Merten sat as his desk in front of Tarr, while Bramer stood behind her, between Tarr and the door.  The supervisors reproached her for approximately 45 minutes, creating an environment which Tarr found hostile.  They harshly admonished her and said she should never have complained about Comer to Human Resources.  They discouraged her from going to Human Resources again.  As a result of and in response to Tarr's having complained, Merten and Bramer accused Tarr of "trying to stir up trouble."  They called her a "drama queen" for making a complaint.  Furthermore, they blamed her for Comer's actions,

telling Tarr that any harassment was her own fault and suggesting that Tarr had invited Comer's conduct.  At one point, both Merten and Bramer stopped talking for about 10-15 minutes.  After this period of prolonged silence, Tarr asked to leave and return to work.  Merten and Bramer then resumed berating her.

491.    Tarr felt intimidated by this experience.  Bramer's and Merten's conduct caused her to conclude that Bass Pro thought that she was the wrongdoer for complaining about unlawful sexual harassment.  She determined that she could not safely complain to Human Resources, because her supervisors had rebuked her for doing so.  Tarr reasonably concluded that if she were to engage in additional protected activity, Bass Pro would subject her to further, and possibly more severe, retaliation.

492.    After her complaint to Human Resources, other Loss Prevention Agents also made comments to Tarr suggesting that she should not have complained to Human Resources.

493.    Although she had complained to the Human Resources Manager about Comer's sexual harassment and provided a written statement, no Bass Pro officials followed-up with Tarr to ensure that her complaint had been resolved, or otherwise communicated with her concerning actions taken in response to her protected activity.

494.    To Tarr's knowledge, Bass Pro did not discipline Comer in any way for his harassing behavior, as reported in her complaint.

495.    Shortly after complaining to Human Resources, Tarr requested a schedule change to avoid working with Comer.  Bramer was responsible for creating the schedule for the approximately eight Loss Prevention Agents.  Loss Prevention Agents usually worked two Agents to a shift.

496.    Bramer scheduled Tarr to work with Comer on the very next schedule after Tarr's complaint.  In the context of Tarr's having been harassed by Comer, having reported Comer for sexual harassment, and having specifically requested that she not be assigned to work with Comer, Tarr reasonably construed that being scheduled to work with Comer was a failure of Bass Pro to address the sexual harassment and retaliation for her protected activity.

497.    Bramer continually scheduled Tarr to work with Comer more often than she had worked with him before her complaint.  Previously, Tarr had worked with Comer approximately one day a week.   Following her complaint, Bramer scheduled Tarr to work with Comer up to three days a week.  Because Comer did not work as many days as Tarr, almost every time Comer was scheduled to work, Tarr was scheduled to work with him.  Tarr felt that Bass Pro's repeated scheduling of her to work with Comer, after she complained of sexual harassment, was to punish and retaliate against her for having complained.

498.    Tarr was uncomfortable working with Comer because of his harassment and hostility towards her.  Comer was aware that Tarr had reported him for sexual harassment.  After Tarr rejected Comer's propositions and complained to Human Resources, Comer's harassment changed and he became hostile towards her.  Tarr and Comer had to work many hours in the store's "monitoring room," a small office with surveillance monitors that had no windows.  Each time they worked together, he called her names such as "trouble-maker" and "bitch."  Tarr tried to avoid confrontations with Comer and to avoid being alone in the monitoring room with him as much as possible.

499.    When they worked together, Comer sometimes left the monitoring room to walk the floor, leaving Tarr alone in the room for several hours without relieving her so she could use

the restroom or take a break.   This violated Bass Pro's procedures and materially altered the terms or conditions of Tarr's employment.

500.     In addition to scheduling them to work together, Bramer also scheduled Tarr and Comer to work closing shifts, which ended between 10:30 and 11:00 pm.  Working the closing shift required Tarr and Comer to stay after all other employees had left to do a final inspection of the store.  They would then lock the doors and walk into the parking lot, either alone or with one manager.  Tarr began parking in a different section of the parking lot further away, to avoid walking at night to her car with Comer.  Bramer's scheduling Tarr and Comer in this manner, after Tarr's report of sexual harassment, adversely affected the terms or conditions of Tarr's employment.

501.     Additionally, the increased night shifts which Bass Pro required Tarr to work after complaining adversely affected her and her family.  She had previously worked mainly morning or day shifts, when she had child care for her three-year old daughter.  While working mainly night shifts, on occasion Tarr had to drive an hour away and leave her daughter with family for several days at a time.  The resultant strain and emotional distress reasonably dissuaded Tarr from engaging in further protected activity.

502.     In January 2009, Tarr gave Vaughn a note stating that she could no longer tolerate the work environment and management's failure to correct the situation.  Because of Bass Pro's acts and omissions — including but not limited to the failure to take prompt remedial action in response to her sexual harassment complaints; verbally abusing Tarr for her protected activity; explicitly telling Tarr that she should not have complained and should not do so again; unreasonably rejecting Tarr's request not to work with Comer; forcing Tarr to work more closely with Comer than before her protected activity; forcing her to work alone, in close proximity with

Comer at night; failing to discipline her harasser in any way; failing to advise Tarr of any actions taken in response to her complaint; and imposing a schedule on Tarr which adversely affected her and her family — Tarr resigned.

503.     Because Tarr engaged in protected activity, Bass Pro retaliated against her, including subjecting her to retaliatory harassment, in violation of Title VII.

### Denise Marstall

504.     Starting in 2009, Defendants unlawfully retaliated against Denise Marstall, a "Camo/Hunting" Lead at Defendants' Auburn, New York store, for engaging in activity protected by Title VII of the Civil Rights Act of 1964.

505.     Defendants hired Marstall to work as a Hunting Apparel Associate in 2005.  She became a Lead in the Camo/Hunting department in 2008.

506.     Marstall's direct supervisor was Hunting Manager, Perry Planck.  The General Manager of the store was Jeff Burdick.  Planck was a supervisory employee and Bass Pro's agent, within the meaning of Title VII.

507.     Beginning in 2006, Marstall complained to Assistant Human Resources Manager, Rob Barber, that Planck's treatment of her was unprofessional and that he displayed favoritism towards the male Leads in his department.  She made several more similar complaints about Planck to Barber through 2009.

508.     To Marstall's knowledge, Bass Pro took no corrective actions in response to her complaints.  By this inaction, Bass Pro knowingly subjected Marstall to further unlawful discrimination by allowing Planck's conduct to continue, despite her complaints.

509.     In 2009, Marstall learned from a fellow male Hunting Lead that he made approximately $14 an hour, whereas she earned only $10 an hour.  This male Lead was hired approximately three years after Marstall, and had demonstrated absenteeism and performance

problems.  Marstall reasonably inferred that Bass Pro's paying the male Hunting Lead at a higher hourly rate than it paid her constituted unlawful sex discrimination.

510.    In late 2009, Marstall complained to the Assistant Human Resources Manager, Rob Barber, that she believed she was not being paid the same as other male Leads in her department.  Barber responded that there was nothing he could do about her complaint and did nothing more.  At the time, there were five male Leads and three female Leads in the Hunting Department.

511.    In late 2009, Marstall and her fellow female Leads complained to Burdick that Planck treated them less favorably than their male Lead counterparts.  Specifically, they complained that Planck assigned the female Leads more work and responsibilities than the male Leads and held the women to a higher performance standard.  They stated that Planck fraternized with the male Leads and not with female Leads.  They also stated that Planck failed to treat the women professionally and undermined their authority in front of subordinate employees.  Marstall specifically complained about the apparent pay disparity between male and female Leads.  Planck was present at the meeting.

512.    Burdick and Planck became angry at Marstall and the other women for complaining.  Burdick in particular dismissed the complaints and told Marstall she should be happy to have her job and if she was not, she could go to the Bass Pro competitor store across the street and see if she liked it better there.  Marstall felt intimidated by Burdick and Planck at the meeting, and she immediately regretted raising her complaints.

513.    Following the complaint, Burdick and Planck treated Marstall with further hostility.  Burdick began talking to Marstall abrasively, frequently using curse words to refer to her work product.  This conduct was markedly harsher than before, and followed quickly upon

Marstall's complaint.  Marstall reasonably inferred that Burdick was harassing her in retaliation for her protected activity.  Burdick's harsh criticisms of Marstall's performance were not justified or based on the manner in which she was doing her job; rather, they were committed in retribution for her complaints of sex discrimination.

514.   Planck also began to criticize her job performance in ways dramatically different than before she complained.  Both Planck and Burdick often made her tear down displays and set them up again within unrealistic timeframes.  Planck also chastised her on the storeroom floor and threatened her with termination if he learned she was talking about employee pay.  This verbal abuse constituted a direct threat of additional retaliation if Marstall were to engage in further protected activity.

515.   In addition, Planck added to her workload, assigned her more responsibilities than her male counterparts, and altered her schedule in such a way that she no longer had consistent work dates and times and had to work most weekends.  The schedule change — which was not based on business needs, and which was retaliatory — was particularly difficult on Marstall as it affected her ability to care for her daughter.

516.   In a retaliatory effort to discourage and demoralize Marstall, and to alter the terms or conditions of her employment, Bass Pro also stopped acknowledging when Marstall received customer "star cards," which customers give employees for high quality customer service.  Employees are eligible for workplace promotions and prizes based on the number of star cards they receive.  Bass Pro purports to use this system of recognition to heighten employee morale and to extol merit.  Prior to her complaint, Marstall often received these star card recognitions and as a consequence, monetary prizes and other rewards.  For example, she had received $50 and $100 store gift cards, preferred parking spots, an "Employee of the month" plaque, paid days

off, frequent invitations to "star" employee luncheons, and "star point" store discounts. After the complaint, she stopped receiving any of these recognitions. By depriving Marstall of these terms or conditions of employment, which her performance merited, Bass Pro adversely affected Marstall's work environment. Marstall reasonably found this retaliatory conduct by Bass Pro to be discouraging and demoralizing.

517.    Approximately three weeks after Marstall and other female Leads complained to the managers of sex discrimination, Planck called Marstall to Burdick's office to issue her what Planck referred to as a "final write-up" prior to termination. Bass Pro had never previously given Marstall a write-up or any kind of discipline. A first write-up could not properly be considered a "final" write-up given Bass Pro's stated progressive discipline system. Marstall reasonably discerned that Bass Pro was improperly deviating from its own progressive discipline system, and threatening Marstall with discharge, in retaliation for her protected activities. A week earlier, Marstall had had a medical emergency and followed company procedure to excuse her absence for two days. Planck based the write-up on the false accusation that Marstall was a "no-show" because she had not called in on the second day of her absence to notify them that she would not be at work.

518.    Marstall reasonably concluded that there was no legitimate basis for the write-up because she had followed company procedure and given the store notice that she would be out two days due to her emergency. Marstall reasonably inferred that Planck wrote her up, and threatened to terminate her in retaliation for her protected activities. She reasonably concluded that Planck and Burdick issued the write up to retaliate and intimidate her, to dissuade her from further protected activity, and to affect adversely the terms or conditions of her employment.

519.    In late 2009 and again in early 2010, Marstall complained of Planck's retaliatory

treatment and the sex-based pay discrimination to Barber and to Human Resources Manager Karen Roebuck.  Roebuck told Marstall to "lighten up."  Both managers told her they would look into the situation.

520.    In late spring/early summer 2010, Roebuck informed Marstall that Bass Pro would give her a $0.40 per hour raise.  Marstall believed that she was entitled to a greater increase, particularly given the fact that she learned that a less experienced male Lead was paid approximately $4 more per hour.  Roebuck admonished Marstall that the increase was to stay between "her and the fencepost," which Marstall understood to mean that she was supposed to take the raise, remain quiet, and stop complaining about her pay.

521.    Viewed in the aggregate, Burdick's, Planck's, Barber's and Roebuck's responses to the complaints of sex discrimination adversely affected Marstall and constituted retaliatory harassment.  As a result of the managers' failure to remedy the sex discrimination and their subsequent retaliation against Marstall, Marstall was forced to resign in June 2010.

522.    Bass Pro's retaliatory actions in response to Marstall's protected activities reasonably compelled Marstall to resign and/or be constructively discharged.

**Velecia Cruse**

523.    Beginning in 2008, Defendants retaliated against Store Human Resources Manager Velecia Cruse for engaging in protected activity at the Katy, Texas, store.

524.    Cruse, a Black female, had many years of human resources experience when Defendants hired her.  When Cruse started working at the Katy store in August 2008, she began to notice discriminatory practices including, among other things, that: Whites with little or no work experience were being interviewed and hired while Blacks with experience were being rejected; Black employees were assigned undesirable shifts; a White manager and other White

employees were permitted to challenge the Store Human Resources Manager's authority in their attempt to strip a Black co-worker's "employee of the month" recognition; and one of the store Leads impeded the hiring prospects of Black applicants, but not of White applicants, by requiring Black applicants to take a test that was typically given to recently hired employees.

525.   Cruse complained of the discriminatory practices to Katy Store General Manager Craig Herpin, Regional Human Resources Manager Jill Klimas, and the Director of Human Resources, Brent Day.

526.   Once Cruse started complaining, management retaliated against her by scrutinizing her work more intensely than before and assigning her undesirable work hours.

527.   In July 2009, Cruse complained about the retaliation.

528.   Shortly after Cruse's retaliation complaint, Regional Human Resources Manager Klimas visited the Katy store and accused Cruse of payroll irregularities.

529.   Defendants fired Cruse within eight days of receiving notice of her retaliation complaint.

**Eric Benitez**

530.   Defendants retaliated against Eric Benitez for engaging in activity protected by Title VII at their Miami, Florida, store.

531.   Cuban-American Benitez worked for Defendants as a Service Tech from 2007 until he was terminated in 2011.  Though Benitez had more seniority, a White co-worker, William, was promoted to the Service Manager position.  William made derogatory comments to Benitez and other Cuban-American employees, including calling them "Spic."

532.   Benitez complained several times about William's behavior to the Store General Manager, Scott Tarlow, and he also complained about William's conduct to other managers.  In

early 2011, Benitez complained, in writing, to Human Resources about other problems he was having with William.  Defendants did not meaningfully investigate Benitez's complaint.

533.    Within several weeks of Benitez's last complaint, Defendants fired him.  His termination was based on a false allegation brought against him by William, the same White supervisor Benitez complained had directed an anti-Hispanic slur against him and other Hispanics.

534.    The effect of the practices complained of in paragraphs 430 to 533 above has been to deprive employees of equal employment opportunities and to otherwise adversely affect their status as employees because of their complaints or other activities protected under Title VII.

### COUNT THREE:
### RECORDKEEPING VIOLATIONS

535.    Defendants have failed, in violation of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), to preserve records relevant to the determination of whether unlawful employment practices have been or are being committed.  Records which Defendants unlawfully failed to retain include, but are not limited to, relevant employment applications and personnel files, tests administered to applicants, lists of job candidates, electronic messages and audio and documentary records of efforts to contact to the corporate complaint center (known as the "hotline").  For example, after receiving notice of the Commissioner Charge which underlies this action, Defendants allowed the destruction of hotline recordings containing discrimination complaints made by employees.

### INTENT AND MALICE

536.    The unlawful employment practices complained of in Count One and Count Two were and are intentional.

537.    The unlawful employment practices complained of in Count One and Count Two were and continue to be done with malice or with reckless indifference to the federally protected rights of Black and Hispanic applicants, and to the federally protected rights of employees who engaged in activity protected by Title VII.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with them, from engaging in discrimination based on race and national origin in their hiring and from retaliating against employees who oppose these and other discriminatory practices, or otherwise engage in activity protected by Title VII.

B.    Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black and Hispanic applicants, and for employees who participate in activity protected by Title VII or who oppose practices made unlawful by Title VII, and which eradicate the effects of Defendants' past and present unlawful employment practices.

C.    Order Defendants to make whole aggrieved Black and Hispanic applicants and employees, and victims of unlawful retaliation as described above, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including but not limited to rightful-place hiring of qualified Black and Hispanic applicants and, where appropriate, re-instatement.

D.      Order Defendants to make and preserve all records, in accordance with the provisions of Section 709(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-8(c), relevant to the determination of whether unlawful employment practices have been or are being committed.

E.      Order Defendants to make whole aggrieved Black and Hispanic applicants and employees, and victims of unlawful retaliation as described above, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Count One and Count Two, including job search expenses, in amounts to be determined at trial.

F.      Order Defendants to make whole aggrieved Black and Hispanic applicants, and victims of unlawful retaliation as described above, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in Count One and Count Two, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.      Order Defendants to pay aggrieved Black and Hispanic applicants and victims of unlawful retaliation as described above, punitive damages for Defendants' malicious and reckless conduct described in Count One and Count Two, in amounts to be determined at trial.

H.      Grant such further relief as the Court deems necessary and proper in the public interest.

I.      Award the Commission its costs of this action.

## <u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by this Complaint which may be decided by a jury.

Respectfully submitted,

**P. DAVID LOPEZ**
General Counsel
**JAMES L. LEE**
Deputy General Counsel
**GWENDOLYN YOUNG REAMS**
Associate General Counsel
Equal Employment Opportunity
Commission
131 M Street, N.E.
Washington, D.C. 20507

/s/ Konrad Batog
**KONRAD BATOG**
*Admitted Pro Hac Vice*
NY Bar: 4420873; NJ Bar: 004312006
Trial Attorney
U.S. Equal Employment Opportunity
Commission
33 Whitehall Street, 5th floor
New York, New York 10004
(212) 336-3700
Facsimile: (212) 336-3623
konrad.batog@eeoc.gov

/s/ Gregory T. Juge
**GREGORY T. JUGE**
Attorney-in-Charge
Acting Supervisory Trial Attorney
La. State Bar # 20890
U.S. Equal Employment Opportunity
Commission
1555 Poydras Avenue, Suite 1900
New Orleans, Louisiana 70112
Direct: (504) 595-2877
Fax: (504) 595-2886
Email: gregory.juge@eeoc.gov

/s/ Robert D. Rose
**ROBERT D. ROSE**
*Admitted Pro Hac Vice*
NY Bar: RR-9174
Regional Attorney
U.S. Equal Employment Opportunity
Commission
33 Whitehall Street, 5th Floor
New York, New York 10004
Direct: (212) 336-3708
Fax: (212) 336-3623
Email: robert.rose@eeoc.gov

OF COUNSEL:

**JIM SACHER**
Regional Attorney
**ROSE ADEWALE-MENDES**
Supervisory Trial Attorney
Equal Employment Opportunity Commission
1201 Louisiana St., 6th floor
Houston, Texas 77002

**<u>CERTIFICATE OF SERVICE</u>**

  I certify that counsel for Defendants have been served with the EEOC's FOURTH

AMENDED COMPLAINT via the Court's CM/ECF system.

Dated: June 13, 2014


               <u>/s/ Konrad Batog  </u>  \
               **KONRAD BATOG**