UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | § | |
| OPPORTUNITY COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Case No. 4:11-CV-3425** |
| | § | |
| BASS PRO OUTDOOR WORLD, LLC, | § | |
| and TRACKER MARINE, LLC | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Now pending before the Court are the Equal Employment Opportunity Commission's ("EEOC's" or "the Commission's") Motion for Reconsideration and a Renewed Motion for Summary Judgment on behalf of Defendants Bass Pro Outdoor World, LLC and Tracker Marine, LLC ("Defendants" or "Bass Pro"). The Motion for Reconsideration[1] presents the question whether the EEOC may, in a lawsuit initiated by a Commissioner's Charge and brought pursuant to 42 U.S.C. § 2000e-5 (§ 706 of Title VII), rely on the standard of proof set forth by the Supreme Court in *Franks v. Bowman Transportation Company, Inc.*, 424 U.S. 747 (1976), and *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). Though it did not consider the issue in quite these terms, the Court essentially answered in the negative in an earlier Memorandum and Order. (Doc. No. 53.) The EEOC has several times asked the Court to revisit that determination. Having reviewed all new submissions and the relevant case law, the Court concludes that its earlier ruling was in error and that, subject to constraints imposed by the

---

[1] The Federal Rules of Civil Procedure do not formally recognize Motions for Reconsideration and, indeed, here the EEOC has termed its submission a Motion for Application of the *Franks / Teamsters* Model to the Section 706 Class Hiring Claim. For all intents and purposes, however, the Commission's submission is, in the colloquial sense, a Motion for Reconsideration.

Seventh Amendment and basic manageability factors, the Commission can employ the *Teamsters* framework to prove its § 706 claims.

In the second part of this Order, the Court considers Bass Pro's Renewed Motion for Summary Judgment, in which Defendant reiterates its request that the Court dismiss the lawsuit on account of the EEOC's purported failure to satisfy its pre-suit obligations. Bass Pro advances three principal arguments: that the Court was mistaken in concluding that the EEOC had not acted in bad faith in the course of conciliating its § 706 claims; that, regardless of how the Commission conducted itself in the first conciliation period, it exhibited bad faith during the recent stay; and that the EEOC failed adequately to investigate its claims before filing suit. After careful consideration of all three — the third in particular — the Court **DENIES** Bass Pro's Motion.

The disputes presented by these two motions reflect a fundamental disagreement as to the role that the Commission is to play in the vindication of rights guaranteed by Title VII and the scope of its authority to represent those who may have been aggrieved by unlawful employment practices. This clash appears to present itself in a great number of Title VII suits in which the EEOC is involved. Yet, despite the frequency with which these questions arise, the lower courts have been riven by disagreement — as to the ultimate answers, yes, but more vexingly, as to the proper way of thinking about the issues. Indeed, this is an area of law ripe for further illumination from the appellate courts. All of this is to say that, while the Court ultimately sides with the EEOC on both Motions, it is fully sensitive to the strength of the antithesis.

## I.      PROCEDURAL BACKGROUND

A more exhaustive account of the relevant procedural background was set forth in this Court's most recent Memorandum and Order. (Doc. No. 151.) To summarize, the EEOC first

filed suit in September 2011, alleging a "pattern or practice of unlawfully failing to hire Black and Hispanic applicants" and unlawful retaliation against individuals who opposed Bass Pro's practices.  (Doc. No. 1.)  The Commission filed an Amended Complaint in January 2012 (Doc. No. 23) and Defendants moved to dismiss soon thereafter (Doc. No. 32).  In the Order that is the subject of this Motion to Reconsider — and discussed in more detail below — this Court granted in part and denied in part the Motion to Dismiss.  (Doc. No. 53 at 9.)

The Commission again amended its complaint.  (*See* Doc. No. 61.)  The Second Amended Complaint described the EEOC's allegations in far greater detail than ever before, including descriptions of many of the individuals on whose behalf the Commission was pressing claims.  Defendants filed another motion to dismiss, which the Court again granted in part and denied in part.  *EEOC v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2013 WL 1124063 (S.D. Tex. Mar. 18, 2013) (Doc. No. 99).  The Court granted leave to amend, which the Commission timely did in April 2013.  (Doc. No. 104.)

The parties then both filed motions for summary judgment.  Arguing that the EEOC had abdicated its responsibility to conciliate in good faith, Defendants asked the Court to dismiss the lawsuit (Doc. No. 119); contending that the sufficiency of its endeavors to conciliate is not subject to judicial review, the EEOC essentially asked that the Court not consider Bass Pro's Motion (Doc. No. 137.)  The Court ultimately denied both requests, though it ordered a thirty-day stay for additional conciliation of the EEOC's § 706 claims.  *See EEOC v. Bass Pro Outdoor World, LLC*, 4:11-CV-3425, 2013 WL 5515345 (S.D. Tex. Oct. 2, 2013) (Doc. No. 149); *EEOC v. Bass Pro Outdoor World, LLC*, — F. Supp. 2d. —, 4:11-CV-3425, 2014 WL 838477 (S.D. Tex. Mar. 4, 2014) (Doc. No. 151).

Further attempts at conciliation were unsuccessful, prompting Defendants to file a Renewed Motion for Summary Judgment (Doc. No. 160). The Commission, for its part, filed a Fourth Amended Complaint and filed the instant Motion for Application of the *Franks / Teamsters* Model to the Section 706 Class Hiring Claim (Doc. No. 172).

## II.   MOTION FOR RECONSIDERATION[2]

### A.

In its March 2012 Motion to Dismiss, in the course of arguing for dismissal of the EEOC's claims brought pursuant to § 706, Defendants "accuse[d] the EEOC of attempting, impermissibly, to bring a pattern or practice claim pursuant to § 706 so that it can recover compensatory and punitive damages based on an *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977), model." (Doc. No. 53 at 10-11.) Defendants explained that they "oppose[d] the EEOC's attempt to merge § 706 and § 707 into a single, non-existent 'hybrid' claim." (*Id.* at 11.)

In response, "[t]he EEOC insist[ed] that it c[ould] invoke the *Teamsters* model of proof to establish a pattern or practice of hiring discrimination under either § 706 or § 707," noting that

---

[2] Both parties allude to the law-of-the-case doctrine, but it is no impediment to the Court reconsidering its own prior ruling. That doctrine "preclude[s] a reexamination of issues of law decided on appeal, explicitly or by necessary implication, either by the district court on remand or by the appellate court in a subsequent appeal." *Chapman v. Nat'l Aeronautics & Space Admin.*, 736 F.2d 238, 241 (5th Cir. 1984); *see also* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478.6 (2d ed. 2013). Here, the Court intends only to reexamine its own ruling; Federal Rule of Civil Procedure 54(b) grants the district court the authority to do so for "for any reason it deems sufficient." *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013) (internal quotation marks omitted). Indeed, the Fifth Circuit has stated unambiguously that "the law-of-the-case doctrine does not operate to prevent a district court from reconsidering prior rulings." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). As the Court has said before, when it at first rules in error, it will, whenever practicable, attempt to set things right. To borrow from Justice Frankfurter, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat. Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

"the language of § 706 does not circumscribe the EEOC's enforcement authority to only individual disparate treatment claims."  (*Id.* at 12.)  The EEOC "accuse[d] Defendants of conflating proof models with causes of action," adding that "it does not allege a violation of § 706 or § 707—which constitute Title VII's enforcement provisions — but rather a violation of § 703, 42 U.S.C. § 2000e–2."  (*Id.* at 13.)

After considering those arguments and surveying relevant case law, the Court decided that "the EEOC cannot bring a hybrid pattern or practice claim that melds the respective frameworks of § 706 and § 707."  (*Id.* at 29.)  To that end, the Court "interpret[ed] § 706 to not provide a vehicle for pattern or practice claims."  (*Id.*)  It did not agree with Plaintiff that the Supreme Court's decision in *General Telephone Company of the Northwest, Inc. v. EEOC*, 446 U.S. 318 (1980), or the Sixth Circuit's decision in *EEOC v. Monarch Mach. Tool Co.*, 737 F.2d 1444 (6th Cir. 1980), counseled in favor of a holding to the contrary.  (*Id.*)  And with that decided, the Court determined that Federal Rule of Civil Procedure 12(b)(6) required dismissal of the EEOC's § 706 claims.  (*Id.* at 31.)

The EEOC has since repleaded its § 706 claims and they are no longer the subject of a Motion to Dismiss for Failure to State a Claim.  Nevertheless, the Commission has asked the Court to reconsider its determination that § 706 claims cannot be proved using the *Teamsters* model of proof.

**B.**

*1.  Statutory Backdrop*

Section 703 of Title VII of the Civil Rights Act of 1964 makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To enforce § 703, 42 U.S.C. § 2000e-4 (§ 705) creates the EEOC and "charge[s it] with the enforcement of Title VII."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998).

As the EEOC was originally only granted the ability to employ "informal methods of conference, conciliation, and persuasion," the 1972 Amendments to the Civil Rights Act gave rise to the modern version of § 706, the purpose of which, "plainly enough, was to secure more effective enforcement of Title VII."  *General Telephone*, 446 U.S. at 325.  As amended, § 706 now requires that, upon the receipt of a charge "filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission," the EEOC is to serve the employer with notice of that charge and undertake an investigation.  § 706(b).  Where the Commission uncovers "reasonable cause" to believe the charge, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."  *Id.*  Section 706(f)(1) then authorizes the Commission to bring suit in the event that conciliation fails to secure a settlement.  Section 707, meanwhile, authorizes suits alleging "a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter."  42 U.S.C. § 2000e-6.  Section 707 allows the Commission to request a three-judge district court in cases of "general public importance" and permits appeals from such courts directly to the Supreme Court.  § 707(b).

### 2.  *Precedential Background*

As a general proposition, violations of § 703 can be proven using direct or circumstantial evidence.  Unsurprisingly, employment discrimination plaintiffs are nearly always forced to rely on the latter, as "smoking gun" style direct evidence is exceedingly difficult to unearth.  When an individual brings suit, or where the EEOC brings suit on behalf of a single individual, the most

common method of adducing circumstantial evidence of discrimination is the framework set forth by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). There, the Court crafted a three-step process for proving discrimination through circumstantial evidence. First, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of [prohibited] discrimination." *Id.* at 802. The Court explained that he or she could do so "by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* Where the plaintiff can state a *prima facie* case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* This burden is one of production, not of persuasion. If it is met, the burden shifts once more to the plaintiff, who must show that the employer's stated reason for taking an adverse employment action against the employee "was in fact pretext." *Id.* at 804. The *McDonnell Douglas* framework has been fine-tuned over the years, and modified, as necessary, for different sorts of claims, but its essence endures as herein described. *See, e.g.*, *Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

*McDonnell Douglas* does not, however, offer the *only* way to prove discrimination through circumstantial evidence. In *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747 (1976), the Supreme Court addressed "whether identifiable applicants who were denied employment because of race after the effective date and in violation of Title VII . . . may be awarded seniority status retroactive to the dates of their employment applications." *Id.* at 750. There, petitioner brought a putative class action, pursuant to § 706, against his former employer, respondent

Bowman Transportation, as well as his unions, alleging race discrimination. *Id.* The district court found that Bowman had engaged in a pattern of race discrimination that permeated its hiring, transferring, and discharging of employees, and that those practices also affected Bowman's collective-bargaining agreement. *Id.* at 751. The district court granted class certification and created two sub-classes, one comprised of black non-employees who applied for over-the-road truck driver positions and another made up of black employees who applied to transfer into those positions. *Id.* The court ordered that Bowman notify members of both subclasses of their right to priority consideration for the driving positions, but it declined "to grant to the unnamed members of classes 3 and 4 any other specific relief sought, which included an award of backpay and seniority status retroactive to the date of individual application for an [over-the-road] position." *Id.*

The district court offered two bases for its denial of seniority relief to unnamed class members. *Id.* at 771. First, the district court reasoned that unnamed class members had not filed administrative charges with the EEOC. *Id.* The Supreme Court rejected that rationale as directly contravened by precedent. *Id.* Second, the district court premised its ruling on the fact that, as to the unnamed class members, no evidence probative of "vacancy, qualification, and performance" had been presented. *Id.* at 772. That justification for denying relief was likewise repudiated. The Supreme Court explained that "[g]eneralizations concerning such individually applicable evidence cannot serve as a justification for the denial of relief to the entire class." *Id.* Instead, it reasoned that, when a class member eventually sought the equitable relief ordered by the district court, the employer would have occasion to prove that the class member in question had not in fact been the victim of race discrimination. *Id.* In short, in the language most important for present purposes, the Court concluded that "petitioners here have carried their burden of

8

demonstrating the existence of a discriminatory hiring pattern and practice by the respondents and, therefore, the burden will be upon respondents to prove that individuals who reapply were not in fact victims of previous hiring discrimination." *Id.* at 772 (citing *McDonnell Douglas*, 411 U.S. 792; *Baxter v. Savannah Sugar Ref. Corp.*, 495 F.2d 437, 443-44 (5th Cir.), *cert. denied*, 419 U.S. 1033 (1974)); *see also id.* at 773 n.32 (explaining that "Bowman may attempt to prove that a given individual [class member] was not in fact discriminatorily refused employment as an OTR driver in order to defeat the individual's claim to seniority relief as well as any other remedy ordered for the class generally").

That standard of proof received more exhaustive explication one term later in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). There, the federal government brought a § 707 suit against T.I.M.E.-D.C., Inc., a common carrier, and the International Brotherhood of Teamsters, the union that represented most of the carrier's employees. Both courts below concluded "that the employer had violated Title VII by engaging in a pattern and practice of employment discrimination against Negroes and Spanish-surnamed Americans, and that the union had violated the Act by agreeing with the employer to create and maintain a seniority system that perpetuated the effects of past racial and ethnic discrimination." *Id.* at 328.

In reviewing those decisions, the Supreme Court was asked to address petitioner's contention that "no employee should be entitled to relief until the Government demonstrates that he was an actual victim of the company's discriminatory practices." *Id.* at 357. The Court began by explaining that petitioners had "seize[d] upon the *McDonnell Douglas* pattern as the only means of establishing a prima facie case of individual discrimination." *Id.* at 358. Not so, said the Court. To the contrary, the Court noted that its "decision in [*McDonnell Douglas*] . . . did not

purport to create an inflexible formulation." *Id.* at 358.  Rather, the Court reiterated that "'the facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from (a plaintiff) is not necessarily applicable in every respect to differing factual situations.'" *Id.* at 358 (alterations omitted) (quoting *McDonnell Douglas*, 411 U.S. at 802 n.13). As such, the Court was able to clarify that that "[t]he importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Id.*

That provided a natural segue to *Franks*.  The *Teamsters* Court explained *Franks*' posture and holding and then summarized that "[t]he *Franks* case thus illustrates another means by which a Title VII plaintiff's initial burden of proof can be met." *Id.* at 359.  In a footnote that followed, the Court further elucidated that "[t]he holding in *Franks* that proof of a discriminatory pattern and practice creates a rebuttable presumption in favor of individual relief is consistent with the manner in which presumptions are created generally." *Id.* at 359 n.45.  It explained that "[p]resumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof." *Id.* (citations omitted). The *Franks* presumption adhered to both of those principles:

> Although the prima facie case did not conclusively demonstrate that all of the employer's decisions were part of the proved discriminatory pattern and practice, it did create a greater likelihood that any single decision was a component of the overall pattern.  Moreover, the finding of a pattern or practice changed the position of the employer to that of a proved wrongdoer.  Finally, the employer was in the best position to show why any individual employee was denied an employment opportunity.  Insofar as the reasons related to available vacancies or the employer's evaluation of the applicant's qualifications, the company's records were the most relevant items of proof.  If the refusal to hire was based on other

factors, the employer and its agents knew best what those factors were and the
extent to which they influenced the decision-making process.

*Id.*  The court then explained why pattern-or-practice suits fit "squarely within our holding in

*Franks*" and how the framework set forth in *Franks* would apply in the case at bar.  *Id.* at 360.

It is against this backdrop that the EEOC argues that it should be permitted to prove its

§ 706 claims using the *Franks/Teamsters* model of proof.

## C.

At the centerpiece of the Commission's argument is *Serrano v. Cintas Corp.*, 699 F.3d

884 (6th Cir. 2012), *cert. denied*, 134 S. Ct. 92 (2013).  Plaintiff Mirna Serrano had several times

applied unsuccessfully to work for defendant Cintas in Michigan and thus filed an EEOC charge

alleging sex discrimination.  *Id.* at 889.  The EEOC investigated Serrano's case, as well as

Cintas's hiring practices throughout Michigan, and issued a determination stating that it had

reasonable cause to believe that Cintas had discriminated against Serrano and "females as a

class."  *Id.*  The EEOC immediately began to conciliate on behalf of "Serrano, one-hundred and

eleven other specified women, and an unspecified number of 'other similarly situated females.'"

*Id.* (record citations omitted).

In May 2004, while conciliation was still ongoing, Serrano filed a Title VII class-action

complaint in the Eastern District of Michigan.  *Id.* at 890.  Once conciliation concluded in 2005

without an agreement, the Commission intervened in Serrano's suit.  *Id.*  The individual claims

wended their way through the court over the next several years, with all private plaintiffs

ultimately out of the case by September 2010.  *Id.*  The EEOC continued to litigate on behalf of

"a class of women in the State of Michigan."  *Id.* (citation to the record omitted).

The district court proceeded to enter several orders adverse to the EEOC.  First,

defendant successfully moved for judgment on the pleadings on the grounds that the

Commission could not pursue a pattern-or-practice claim under § 706.  *Id.*  Next, the court denied several discovery motions aimed at fleshing out the Commission's individual § 706 claims.  Then, the court denied the Commission's motion to amend its complaint to add a § 707 claim.  Finally, the court granted summary judgment in defendant's favor on each of the individual claimants' claims and granted defendant's motion alleging administrative default.  *Id.*

On appeal, the Sixth Circuit deemed the "most salient" issue to be "the disagreement among the parties as to whether the EEOC is limited to proving its allegations of discrimination pursuant to the *McDonnell Douglas* . . . burden-shifting framework, or whether it may employ the pattern-or-practice framework announced by the Supreme Court in *International Brotherhood of Teamsters v. United States*."  *Id.* at 891-92.  In short, it addressed the exact question posed here.

The Court began its analysis by "reviewing the legal landscape for Title VII discrimination claims and situating the *McDonnell Douglas* and *Teamsters* frameworks within that context."  *Id.* at 892.  As this Court has, it noted that "[t]he Title VII jurisprudence has developed to allow plaintiffs to make their showing of discriminatory intent for disparate-treatment claims either through direct or circumstantial evidence."  *Id.* at 892 (citations omitted).  It then reviewed the *McDonnell Douglas* and *Teamsters* frameworks. The court concluded that "[t]he two structures are similar insofar as they impose the initial burden on the plaintiff to present facts sufficient to create an inference of discrimination" but that "the substance of what the plaintiff must prove to prevail in establishing a prima facie case varies under each framework."  *Id.* at 893.

With the stage set, the court moved to address "whether the EEOC may employ the *Teamsters* framework only when it acts pursuant to § 707."  *Id.* at 894.  It answered that question

in the negative. *Id.* First, the court acknowledged that "Cintas is correct that § 706 does not contain the same explicit authorization as does § 707 for suits under a pattern-or-practice theory." *Id.* (comparing the text of § 706 and § 707 and highlighting the explicit reference to "pattern or practice" in the latter section). Nevertheless, it explained, "relevant Supreme Court precedent suggests that the exclusion of pattern-or-practice language from § 706 does not mean that the EEOC may utilize a pattern-or-practice theory only when bringing suit under § 707. Instead, it suggests that the inclusion of the language in § 707 simply means that the scope of the EEOC's authority to bring suit is more limited when it acts pursuant to § 707." *Id.* at 894.

To support that proposition, the court noted that "[t]he premise for the Supreme Court's decision in *Teamsters* was that *McDonnell Douglas* did not create 'an inflexible formulation' for burden shifting, but rather embodied the 'general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.'" *Id.* (quoting *Teamsters*, 431 U.S. at 358). The court observed, as this one has, that *Teamsters* taught that a plaintiff has flexibility in how she meets that initial burden, and variance based on the facts of the case is expected. *Id.* In that vein, the *Serrano* court concluded that "[t]he *Teamsters* opinion, while ostensibly specific to suits that the EEOC brings pursuant to § 707, in no way indicated an intent to tie the pattern-or-practice framework exclusively to the EEOC's enforcement authority under § 707." *Id.* Rather, the court emphasized, *Teamsters*'s "reliance on *Franks*, a class-action case invoking § 706, suggests that the holding of *Teamsters* is not to be so narrowly circumscribed." *Id.* at 895. And, the *Serrano* court asserted that "[s]ubsequent Supreme Court decisions affirming the viability of EEOC class claims under § 706 and Congress's 'general intent to accord parallel or overlapping remedies against discrimination' further support this reading of

*Teamsters*," citing in support of that conclusion (and quoting) *General Telephone*, 446 U.S. at 333. *Id.*

The strongest argument against the Commission's position, the *Serrano* court concluded, was that "allowing the EEOC to pursue Title VII claims pursuant to the *Teamsters* framework under § 706 would render § 707 superfluous — a result that Congress could not have intended." *Id.* at 895. *Serrano* further explained that Cintas's argument was "buttressed by [its] contention that Congress's 1991 amendments to § 706 adding compensatory and punitive damages — remedies not added to § 707 — evidence a desire to prevent the availability of these remedies when the EEOC seeks to vindicate pattern-or-practice discrimination." *Id.* The court acknowledged that "Cintas has a point that reading § 706 to permit *Teamsters*-style claims creates some overlap with § 707" and that "Congress may have wanted to provide the EEOC with two different vehicles for initiating two different types of Title VII suits, each with its own advantages and disadvantages in terms of scope, burden of proof, and available remedies." *Id.* at 895-96. The court, however, found "an important distinction [that] prevents § 707 from becoming superfluous even if *Teamsters* applies in the § 706 context: § 707 permits the EEOC to initiate suit without first receiving a charge filed by an aggrieved individual, as it must when initiating suit under § 706." *Id.* at 896 (citing *EEOC v. Int'l Profit Assocs., Inc.*, No. 01 C 4427, 2007 WL 844555, at *9 (N.D. Ill. Mar. 16, 2007)). That is, the court determined that "[i]t [wa]s reasonable to conclude that the presence of a previously filed charge by an aggrieved person was the distinction upon which Congress wished the availability of particular remedies to rise and fall." *Id.*

Finally, the court also cast aside Cintas's argument that "allowing the EEOC to pursue the pattern-or-practice method for § 706 claims will allow the EEOC to have its cake and eat it

14

too' because the *Teamsters* framework provides a more generous standard of proof and § 706 affords greater remedies." *Id.* The fatal flaw to that argument, the court explained, was the assumption that the *Teamsters* framework embodies a more lenient standard. Rather, "it is simply a different standard of proof." *Id.* In fact, the initial burden in *Teamsters* — proving "that discrimination 'was the company's standard operating procedure'" — is more demanding than what *McDonnell Douglas* requires. *Id.* (quoting *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012)). Consequently, "[i]t is only because this initial requirement is more arduous that after the showing is made it is assumed 'that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy.'" *Id.* (quoting *Teamsters*, 431 U.S. at 362). In short, the court summed up, "the EEOC must always weigh the risks — as well as the benefits — of proceeding under the *Teamsters* framework, for doing so involves a greater chance of losing at the prima facie stage." *Id.*

In the end, the court of appeals concluded that "the district court erred in concluding that the EEOC may not pursue a claim under the *Teamsters* pattern-or-practice framework, pursuant to its authority vested in § 706 of Title VII." *Id.*

**D.**

This Court finds *Serrano* persuasive. This Court, like the *Serrano* court, takes from *McDonnell Douglas*, *Franks*, and *Teamsters* that the Supreme Court has sanctioned a flexible approach to proving Title VII violations that can be adapted to the case at hand. The Court does *not* take from those cases that the framework to be used in proving a claim flows from the code section under which the suit is initiated. Indeed, the Court finds it significant that *Franks* itself was a case brought pursuant to § 706. The result in *Serrano* is consistent with the statutory text

and purpose, and it is supported by precedent from the Supreme Court, several courts of appeals, and other district courts.  Defendant's arguments to the contrary are unavailing.

### 1.  Statutory Text

The text of § 706 does not preclude use of the *Teamsters* model of proof.  Section 706(a) states that the EEOC is "empowered . . . to prevent any person from engaging in any unlawful employment practice as set forth in" §§ 703 or 704.[3]  Section 706(f) authorizes "the Commission [to] bring a civil action against any respondent . . . named in the charge."  And, of course, the purpose of § 706 is to authorize a suit alleging a violation of § 703, which itself makes it unlawful to refuse to hire, discharge, or otherwise discriminate on the basis of a protected characteristic.  *See* § 703(a)(1).  There simply is no indication in the statute that Congress had a particular vision as to how violations would be proven — no signals that it favored *McDonnell Douglas*, *Teamster*, or some other framework.  But it does warrant mentioning here that the Supreme Court has recognized that § 706(f)(1) "imposes no limitation upon the power of the EEOC to file suit in a federal court."  *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 366 (1977).

### 2.  Supreme Court Precedent

This Court also agrees with *Serrano* that the Supreme Court's *General Telephone* decision lends support to the EEOC's position.  There, the Court addressed whether § 706 entitles the EEOC to seek class-wide relief without abiding by the processes outlined in Federal Rule of Civil Procedure 23.  *General Telephone*, 446 U.S. at 320.  A majority of the Court said that it could.  Writing for four other Justices, Justice White explained that "[g]iven the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the

---

[3] Section 704, 42 U.S.C. § 2000e-3, prohibits retaliation and the printing or publication of notices or advertisements indicated a preference for or against members of a class protected by Title VII.

EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals." *Id.* at 324; *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 288 (2002) (same).  It rejected the availability of backpay — *i.e.* individualized relief — as a reason to require adherence to Rule 23.  *General Telephone*, 446 U.S. at 324.

It strains credulity to suggest that, in the course of granting the EEOC permission to sidestep Rule 23 in suits brought on behalf of a class and pursuant to § 706, the Court intended to require that the Commission prove each class member's claim in the manner set forth in *McDonnell Douglas*.  To so require would be entirely inconsistent with the Court's reminder that "the EEOC is not merely a proxy for the victims of discrimination and that the EEOC's enforcement suits should not be considered representative actions."  *Id.* at 326.[4]  It would also contravene what the Court recognized as a "strong congressional intent to provide 'make whole' relief to Title VII claimants," *id.* at 332 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419 (1975)), as the larger the class of aggrieved individuals, the less likely it would be that the EEOC could go about proving a case in which it has to run each individual through the *McDonnell Douglas* structure.

The subsequent history of the *General Telephone* litigation also supports the application of *Teamsters* to § 706 claims.  On remand, the Commission tried its § 706 claim using the *Teamsters* model.  The district court rejected the EEOC's statistical and anecdotal evidence and found that the Commission had failed to prove a pattern-or-practice of sex discrimination. *EEOC v. Gen. Tel. Co. of the Nw., Inc.*, No. C77-247C, 1985 WL 56622 (W.D. Wash. Oct. 18,

---

[4] This conclusion was not altered by the fact that the "EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for backpay or benefits denied, on behalf of discrimination victims."  *General Telephone*, 446 U.S. at 326.

1985). But, after initially affirming, a panel of the Ninth Circuit reversed and remanded for a new trial. *EEOC v. Gen. Tel. Co. of Nw., Inc.*, 885 F.2d 575, 577 (9th Cir. 1989), *cert. denied*, 498 U.S. 950 (1990).[5] Neither the district court nor the court of appeals questioned the Commission's reliance on the *Teamsters* framework — just whether it had been satisfied.

### 3. Decisions From the Courts of Appeals

As the Sixth Circuit in *Serrano* is the only court of appeals to address head on the question presented here, a review of other circuit precedent is far from dispositive. Though the Fifth Circuit has not expressly ruled that *Teamsters* can be employed by the EEOC in a § 706 suit, it also has not ruled it out, and, on balance, reported decisions from this circuit and the others are more easily reconciled with *Serrano* than with Defendants' position.

In *Scarlett v. Seaboard Coast Line R.R. Co.*, 676 F.2d 1043 (5th Cir. Unit B 1982), three individual plaintiffs sought to employ the *Teamsters* framework. In explaining that they could not do so, the court of appeals indicated that "[a]n individual proceeding as an individual under Title VII" must apply *McDonnell Douglas*, and, to draw a contrast, signaled its unqualified approval of using *Teamsters* in EEOC actions brought pursuant to § 707 as well as in private Rule 23 class action suits. *Id.* at 1053. The Fifth Circuit did not address EEOC suits brought pursuant to § 706 and this court is not willing to extrapolate that its holding as to three individuals would apply with equal force to the EEOC. While Bass Pro would like the Court to read *Scarlett* as cataloguing the entire universe of cases in which the *Teamsters* framework can be used, this Court prefers a more nuanced reading. The *Scarlett* court left open the question presented here.

---

[5] Interestingly, Justice White, the author of the Court's earlier opinion in *General Telephone*, dissented from denial of certiorari, though without explanation.

In *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343 (5th Cir. 2001), the Fifth Circuit again declined to apply *Teamsters* in a private, non-class suit.  The court noted that "[a] pattern or practice case is not a separate and free-standing cause of action (as the appellants assert), but is really 'merely another method by which disparate treatment can be shown,'" *id.* at 355 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1219 (5th Cir. 1995)), thus leaving open the possibility that it can be used in suits other than those brought pursuant to § 707, which *does* represent a free-standing cause of action.  The *Celestine* court's next statement — "The typical pattern or practice discrimination case is brought either by the government or as a class action to establish 'that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers,'" *id.* (quoting *Teamsters*, 431 U.S. at 360) — does little more to help Defendants.   Read in context, the Fifth Circuit there was likely contemplating suits brought under § 707 when it referred to cases "brought . . . by the government," but the Court still does not believe that the court of appeals intended to rule out the use of *Teamsters* in cases such as this one.  Indeed, the existence of a "typical" pattern or practice case presupposes the existence of an atypical one, and that is likely what this court now confronts.

The Fifth Circuit has applied the *Teamsters* model in a class action brought pursuant to Title VII and 42 U.S.C. § 1981.  In *Boykin v. Georgia-Pac. Corp.*, 706 F.2d 1384 (5th Cir. 1983), the court observed that "the standards for judging claims of pattern or practice employment discrimination under Title VII and Section 1981 are identical."  *Id.* at 1393 (citing *Rivera v. City of Wichita Falls*, 665 F.2d 531, 534 n.4 (5th Cir. Unit B 1982).  Then, noting that "[t]he validity of statistical proof as a means of proving a prima facie Title VII case has long met with acceptance in the courts," *id.* at 1387 (citations omitted), the court proceeded to analyze

plaintiffs' statistical proof and then both certify a class and grant judgment in its favor.  *Id.* at 1394.

  *Boykin* is instructive for two related reasons.  First, because § 707 only authorizes suit by the Government, to the extent *Boykin* was brought as a Title VII suit, it was brought pursuant to § 706.  Bass Pro has offered no principled reason why a private class action may employ *Teamsters* and an EEOC class action may not.  Second, insofar as the *Boykin* class brought suit pursuant to 42 U.S.C. § 1981, that statute contains no textual reference to "pattern-or-practice," undercutting, at least somewhat, that the *Teamsters* framework can be used only where the statute under which suit is brought contains the words "pattern-or-practice."  *See Payne v. Travenol Labs., Inc.*, 673 F.2d 798, 818 (5th Cir. 1982) ("Discriminatory treatment claims under § 1981 are measured by the same standards that apply to discriminatory treatment claims under Title VII. . . . Thus, we apply the *Teamsters* pattern of proof to the § 1981 claims as well as the Title VII claims in this case." (citations omitted)); *Marshall v. Sun Oil Co. (Delaware)*, 605 F.2d 1331, 1336 n.2 (5th Cir. 1979) (applying *Teamsters* framework in suit brought pursuant to ADEA).

  Other courts of appeals have more clearly acknowledged that the EEOC can use the *Teamsters* framework in a suit brought pursuant to § 706.  *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir. 1999) ("*General Telephone Co.* . . . holds that, as the plaintiff in a pattern-or-practice suit under § 706(f)(1) . . . the EEOC may seek classwide relief."); *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1188 (4th Cir. 1981) (applying *Teamsters* to suit brought pursuant to § 706[6]); *EEOC v. Monarch Mach. Tool Co.*, 737 F.2d 1444, 1449 n.3 (6th Cir. 1980)

---

[6] Though the Fourth Circuit in its 1981 *American National Bank* decision discusses the EEOC's "broad enforcement powers," it does not make plain that the suit at issue in the case had been filed under § 706.  It did do so, however, the previous time that case was up on appeal.  *See*

("Although we realize the Supreme Court in *Teamsters* was discussing the proper procedure for the district court to follow in a section 707 pattern-and-practice suit, it adopted this procedural framework from *Franks* which dealt with class actions under section 706.").

The Court would prefer that relevant precedents spoke more particularly to the issue at hand. However, a disinterested review of the case law does provide at least partial validation of the Commission's position.

### 4. District Court Cases

Recent district court opinions confirm that *Serrano* was rightly decided.

For instance, a district court within this circuit recently adopted *Serrano*'s reasoning and result. *See David v. Signal Int'l, LLC*, — F. Supp. 2d. —, No. CIV.A. 08-1220, 2013 WL 8600729 (E.D. La. Dec. 4, 2013). The EEOC there brought claims pursuant to both §§ 706 and 707. *Id.* at *1. In crafting a discovery and case management plan, defendant argued that the Commission could not use the *Teamsters* model to prove its § 706 claims. Signal relied for that proposition upon this Court's previous order that is under reconsideration here. *Id.* at *2. After reviewing this Court's reasoning, the *Signal* court pointed out that this Court had ruled before the Sixth Circuit had decided *Serrano* — and thus, not only did this Court lack the benefit of *Serrano*, so too did all the other decisions upon which this Court relied — and it determined that *Serrano*, as the only court of appeals decision to squarely consider the issue, was "persuasive." *Id.* at *3-4. Finally, the *Signal* court observed that at least one other district court had adopted *Serrano*'s holding. *Id.* (citing *EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1174 (D.N.M. 2012)).

With respect to district court decisions pre-dating *Serrano*, this Court noted several that support the Commission's position in the Memorandum and Order currently up for

---

*EEOC v. Am. Nat'l Bank*, 574 F.2d 1173, 1175 (4th Cir. 1978) ("[T]he commission brought this action pursuant to 42 U.S.C. s 2000e-5(f)(1).").

reconsideration.  *See, e.g.*, *EEOC v. Scolari Warehouse Markets, Inc.*, 488 F. Supp. 2d 1117, 1145 (D. Nev. 2007) ("Given the similar nature of such claims and the remedial purpose of Title VII, the Court sees little legal or prudential reason to foreclose the EEOC from bringing a pattern-or-practice claim pursuant to §§ 706 and 707 for the purpose of seeking punitive and compensatory damages."); *Int'l Profit Associates*, 2007 WL 844555, at *9 ("The primary distinction between a suit brought under section 706 and a suit brought under section 707 does not pertain to the legal theory under which the EEOC may proceed . . .  [T]he EEOC may still rely on the pattern or practice theory when it sues under section 706."); *EEOC v. Foster Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 528200, at *1 (N.D. Ill. July 13, 1999) (rejecting the argument that class-wide relief was "inappropriate" in a case brought by the EEOC in which compensatory and punitive damages were sought).  And in fact, the district court decisions the Court cited in support of Bass Pro in its earlier Memorandum and Order do not help Defendants much.  First, the Court relied upon the *Serrano* district court.  That opinion has since been vacated.  Second, the Court relied upon *EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918 (N.D. Iowa 2009).  Because *CRST* again features prominently in Bass Pro's argument, the Court addresses it at length below, but suffice it to say, the Court does not believe that it has much to offer about the precise question now at issue.

### E.

Bass Pro is left with four primary arguments against the EEOC's position.  First, Bass Pro contends that application of *Teamsters* in a § 706 suit would render § 707 superfluous.  Second, Defendant urges that the Civil Rights Act of 1991 evinces Congress's desire to keep § 706 and § 707 utterly distinct.  Third, Bass Pro argues that siding with the Commission would likely cause grave Seventh Amendment complications.  And finally, Bass Pro asserts that

granting the EEOC's motion would amount to breaking ranks with the welter of district courts around the country.  Though tactfully made, these arguments can ultimately be rejected in turn.

### 1.   *Application of Teamsters Here Would Not Render § 707 Superfluous*

Bass Pro's most forceful argument against application of *Teamsters* in a § 706 suit is that doing so "would render § 707 superfluous," a result which would "contravene the 'longstanding canon of statutory construction that terms in a statute should not be considered so as to render any provision of that statute meaningless or superfluous.'"  (Doc. No. 174 at 16 (quoting *Beck v. Prupis*, 529 U.S. 494, 506 (2000).)  To be fair, this Court previously embraced a version of this argument.  (*See* Doc. No. 53 at 29 ("The Court finds no support in the case law, or in the statutes themselves, for the EEOC's proposition that § 707's pattern or practice language is merely a redundancy.").)  And, this is an argument, addressed *supra*, that the *Serrano* court felt compelled to discuss.  There, the Court determined that "an important distinction prevents § 707 from becoming superfluous even if *Teamsters* applies in the § 706 context: § 707 permits the EEOC to initiate suit without first receiving a charge filed by an aggrieved individual, as it must when initiating suit under § 706."  *Serrano*, 699 F.3d at 896 (citing *Int'l Profit Associates*, 2007 WL 844555, at *9).

This Court agrees with *Serrano* that the outcome sought here by the EEOC does not in fact render § 707 superfluous, though the Court parts ways, at least to an extent, with the Sixth Circuit's reasoning.  Contrary to what *Serrano* seems to suggest,[7] a § 706 suit need not be initiated by an aggrieved individual's EEOC charge.  Rather, the text of the statute makes plain

---

[7] The EEOC argues that *Serrano* "merely notes that suit under § 707 does not depend on the filing of *any charge at all*, whereas suit under § 706 requires a charge by one of the three kinds of filers."  (Doc. No. 180 at 5.)  That may well be what the Sixth Circuit meant to say, but because the text of the opinion is susceptible to another reading, the Court addresses plain that alternate interpretation out of an abundance of caution.

that a § 706 suit can be initiated by any of three sources: "a person claiming to be aggrieved," someone filing on behalf of an aggrieved individual, or a member of the Commission. *See* § 706(b). Thus, to the extent that *Serrano* suggested that only an individual's charge can kick start a § 706 suit, it was mistaken.[8] *See also EEOC v. Shell Oil Co.*, 466 U.S. 54, 62 (1984) ("[W]hen a victim of discrimination is reluctant to file a charge himself because of fear of retaliation, a Commissioner may file a charge on behalf of the victim."). *Shell Oil* makes clear that an individual's charge and a Commissioner's charge are treated, in all relevant respects, the same. *See id.* at 76.

That said, the Court fully agrees with *Serrano* that, even if *Teamsters* can be used in suits brought pursuant to § 706, there remain important distinctions between § 706 and § 707. For instance, as the Fifth Circuit has acknowledged, "[u]nder § 707, the EEOC (formerly the Attorney General) may institute a 'pattern or practice' suit anytime that it has 'reasonable cause' to believe such a suit necessary." *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 843 (5th Cir. 1975) (citing *United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 438, (5th Cir. 1971), *cert. denied*, 406 U.S. 906 (1972)). That is, unlike § 706, "Section 707 does not

---

[8] Further undercutting *Serrano* is that *International Profit Associates*, the only case on which it relied for the proposition that § 706 suits must be initiated by an aggrieved individual's charge, does not appear ultimately to support that position. At first it does. The court notes that "the difference [between §§ 706 and 707] is that under section 707 the EEOC proceeds on its own motion while under section 706 the EEOC acts on a charge filed by aggrieved individuals." 2007 WL 844555, at *9. That seems to be the passage that inspired *Serrano*'s conclusion. But later, taking a rather unique view of the statutory text, the court points out that a "charge of a pattern or practice" can be filed by a Commissioner and then explains that "section 707 itself contemplates that when a charge is filed with the EEOC, and the charge (or the EEOC's subsequent investigation of it) gives the EEOC reasonable cause to believe that the employer is engaging in an unlawful pattern or practice of discrimination, the EEOC will bring the pattern or practice suit on behalf of the group of persons affected pursuant to section 706." *Id.* That explanation appears to suggest that a Commissioner can bring a charge pursuant to § 707 and then, upon a reasonable cause determination, the EEOC can bring suit pursuant to § 706. So *International Profit Associates* does *not* support the position that a § 706 suit cannot be initiated by a Commissioner's charge.

make it mandatory that anyone file a charge against the employer or follow administrative timetables before the suit may be brought." *Id*.; *see also id.* at 844 (noting that, in amending § 707, Congress "apparently intended that the EEOC have investigative and conciliatory authority" not that it intended that the EEOC be forced to engage in investigation and conciliation).[9] Additionally, § 706 suits, but not § 707 suits, are subject to intervention as of right by parties aggrieved. *See id.* at 843. And, whereas § 707(b) allows the EEOC to request a three-judge district court in cases of "general public importance," and to appeal a ruling by such a court directly to the Supreme Court, § 706 contains no comparable provision.

All this is to say that, though application of *Teamsters* in § 706 suits unmistakably renders such actions more similar to § 707 actions, doing so does not make the latter so superfluous that it must be contrary to Congress's intent. This Court is convinced that the most sensible interpretation of the structure of Title VII is that the "inclusion of [pattern-or-practice] language in § 707 simply limited the scope of the EEOC's authority to act under § 707." *EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1174 (D.N.M. 2012) (citing *Serrano*, 699 F.3d at 894). In other words, "pattern or practice" was included in § 707 in order to curtail the availability of

---

[9] Bass Pro argues in a footnote that this Court has already held that a § 707 action must be predicated upon a charge. (*See* Doc. No. 179 at 7 n.24 (citing Doc. No. 53 at 33-34).) To the extent the Court so indicated in its earlier Memorandum and Order, it hereby reverses course. The Court does not agree with Bass Pro that the text of the statute requires that any suit filed pursuant to § 707 be preceded by a charge. Section 707(e) states that, following the 1974 transfer of litigation authority from the Attorney General to the EEOC, "the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission" and that "[a]ll such actions shall be conducted in accordance with the procedures set forth in section 2000e-5 of this title." In short, § 707(e) dictates what must happen when a pattern-or-practice charge is filed, but does not mandate that such a charge be filed in the first instance. There is language in *General Telephone* much to the same effect, *see* 446 U.S. at 329 (explaining that, prior to 1972, the Attorney General could bring pattern-or-practice suits without a charge having been previously filed and suggesting that, following the 1972 amendments, "Congress intended the EEOC to proceed in the same manner").

suits brought without charges, tried before three-judge district courts, and appealed directly to the Supreme Court, not to dictate a particular framework of proof that could apply *only* to suits brought under that section.  "Sections 706 and 707 clearly overlap," *id.* at 1173, but "legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination."  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).

2.   *The Civil Rights Act of 1991 Does Not Compel a Particular Result Here*

These distinctions notwithstanding, Bass Pro comes back to the Civil Rights Act of 1991 and Congress's decision to permit jury trials and compensatory and punitive damages for suits brought pursuant § 706 but not under § 707.  (*See* Doc. No. 174 at 9; *see also* 42 U.S.C. § 1981a(a)(1).)  Bass Pro argues that "[t]he EEOC would have this Court judicially eliminate that distinction."  (Doc. No. 174 at 9.)  That is, Bass Pro contends that "it is impossible to believe that Congress intended in [the Civil Rights Act of 1991] to authorize the EEOC to seek legal damages for victims of a discriminatory pattern or practice but failed to" add anything to that effect to § 1981a.  (*Id.* at 17-18.)

This argument misses the mark.  Congress *did* intend to make compensatory and punitive damages available to victims of a discriminatory pattern or practice, it just required that they — or the EEOC — seek them in a § 706 suit.  Simple logic bears this out.  Wherever there is a pattern or practice of discrimination, it is axiomatic that there are individual victims who have been discriminated against.  These are the *same individuals* that could bring their own § 706 suit or whose rights the EEOC could seek to vindicate in its own § 706 action.[10]  Consequently, to hold, as Bass Pro urges, that the EEOC cannot "seek legal damages for victims of a

---

[10] Further proof of this fact is that, whether a suit is filed pursuant to § 706 or § 707, it seeks to enforce rights guaranteed by § 703.  Put another way, there is technically no such thing as a "pattern or practice violation" or a § 707 violation; there are just patterns or practices of violating § 703.

discriminatory pattern or practice" would be to place these individuals in a *worse position* than those who are discriminated against in a series of isolated incidents. *That* is what it is "impossible to believe" Congress intended. To the contrary, the effect of the 1991 amendments is to require that, even where an individual was discriminated against as a part of a pattern or practice, and even where the EEOC intends to bring suit pursuant to § 707 to address that pattern or practice, a suit that asks for compensatory and/or punitive damages, whether filed by the individual or by the EEOC, must still be brought pursuant to § 706 and thus adhere to its pre-suit prerequisites.

Taking another approach, Bass Pro instead argues that the purpose of the Civil Rights Act of 1991, as evinced by a House Report, dictates that Congress could not have meant to allow *Teamster* to be used in § 706 suits. Not so. In a supplemental filing invited by the Court, Bass Pro explains that, in passing the 1991 amendments, Congress expanded the availability of legal damages in order to "conform the remedies for intentional gender and religious discrimination to those currently available to victims of intentional race discrimination" through 42 U.S.C. § 1981. H.R. Rep. 102-40(I), at 70 (1991); *see also See* Doc. No. 179 at 5. Bass Pro further notes that the availability of compensatory and punitive damages was also designed "to encourage citizens to act as private attorneys general to enforce the statute." H.R. Rep. 102-40(I), at 65. Those two observations, Bass Pro contends, show the Act "was **not** designed to increase EEOC enforcement powers, much less broaden the EEOC's authority in pattern or practice cases." (Doc. No. 179 at 5 (emphasis in original).)

That argument leaves the Court unmoved. First, Bass Pro does not, because it cannot, argue that the 1991 amendments made compensatory and punitive damages available only in suits brought by private individuals and not in those brought by the EEOC, and so it is of little

moment that Congress's primary purpose was something other than placing another arrow in the Commission's enforcement quiver.  If it did, it did.[11]  Consequently, because no one questions that the Civil Rights Act of 1991 made legal damages obtainable in *all* § 706 suits, the question is whether Congress intended to simultaneously circumscribe the manner in which the EEOC could prove the facts sufficient to warrant such damages.  The Court does not believe that it did.  Rather, the Court believes that by the time *General Telephone* was decided — and certainly by 1991 — it was established that the framework set forth in *Franks* and *Teamsters* could be used in cases brought pursuant to § 706.  Congress was presumptively aware of the *Franks*, *Teamsters*, and *General Telephone* decisions, *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." (quoting *Lorillard v. Pons,* 434 U.S. 575, 580 (1978)), and nevertheless chose not to clarify that §706 suits had to be proven using *McDonnell Douglas* when it passed the 1991 amendments, *see United States v. O'Brien*, 560 U.S. 218, 231 (2010) ("Congress does not enact substantive changes *sub silentio*."); *see also Waffle House*, 534 U.S. at 288 ("Against the backdrop of our decision[] in . . . *General Telephone*, Congress expanded the remedies available in EEOC enforcement actions in 1991 to include compensatory and punitive damages.").  Bottom line: it is Bass Pro, not the EEOC, that needs the 1991 amendments to have produced meaningful change to the statute in order for it to prevail here, and the Court is unconvinced.

---

[11] It also warrants mentioning that a sentence of the House Report that Bass Pro has not quoted points out that "[m]onetary damages simply raise the cost of an employer's engaging in intentional discrimination, thereby providing employers with additional incentives to prevent intentional discrimination in the workplace before it happens."  H.R. Rep. 102-40(I), at 65.  It would be inconsistent with *that* rationale to constrain the manner in which the EEOC can prove up its § 706 actions.

### 3. The Seventh Amendment Is Not Necessarily Offended By Application of Teamsters to a § 706 Claim

Both parties complain that adopting the rule advocated for by the other will "lead[] to insurmountable Seventh Amendment problems." (Doc. No. 172 at 5; *see also* Doc. No. 174 at 11 ("The EEOC's admissions establish that there is no Constitutionally permissible way to try this case.").) The Seventh Amendment's Reexamination Clause dictates that "no fact tried by a jury shall be otherwise re-examined." U.S. Const. amend. VII. Bass Pro identifies two main (if related) Reexamination Clause issues that it believes would arise in the event that *Teamsters* is employed for the EEOC's § 706 claims. First, Stage II of *Teamsters* will require individualized inquiries regarding punitive damages, which "will necessarily involve overlapping factual issues with an earlier jury's determination of whether intentional discrimination was Bass Pro's standard operating procedure, leading to 'potentially inconsistent results.'" (Doc. No. 174 at 29-30 (quoting Doc. No. 41 at 17-18).) Second, "there would be obvious overlapping issues with respect to anecdotal witnesses who testified in Stage I to support a pattern or practice finding and the resolution of those same witnesses' claims in later proceedings." (*Id.* at 30.) That is, the fact-finder at Stage I will have to determine whether the anecdotes of discrimination did in fact occur; Bass Pro argues that "[p]ermitting subsequent juries to revisit those determinations in Stage II individual proceedings would clearly violate the Seventh Amendment, as the second jury may conclude *none* of the anecdotal witnesses were discriminated against, which would be inconsistent with the earlier pattern or practice liability finding." (*Id.*)

In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), the court of appeals considered the Seventh Amendment in the context of a putative Title VII class action. The Fifth Circuit observed that, by making available compensatory and punitive damages and introducing a right to a jury, the Civil Rights Act of 1991 wrought significant changes with respect to the

viability of class actions in Title VII suits.  *Id.* at 410.  Determining that the district court had not abused its discretion when it refused to certify a Rule 23(b)(3) class action, the court noted that "[i]n order to manage the case, the district court faced the likelihood of bifurcated proceedings before multiple juries.  This result in turn increased the probability that successive juries would pass on issues decided by prior ones, introducing potential Seventh Amendment problems and further decreasing the superiority of the class action device."  *Id.* at 419-20 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750-51 (5th Cir. 1996); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1302-03 (7th Cir. 1995)).  While this Court need not concern itself with superiority and the other strictures of Rule 23, the tension between ensuring manageability and respecting the Seventh Amendment is no less significant here.  The court does not blink those issues, but it also does not believe that either manageability or the Seventh Amendment make it categorically impossible to apply the *Teamsters* framework to a § 706 action.  After all, other courts have concluded that it is possible.  *See EEOC v. JBS USA, LLC ("JBS Colorado")*, No. 10-CV-02103-PAB-KLM, 2011 WL 3471080, at *4 (D. Colo. Aug. 8, 2011) ("[M]ultiple juries in bifurcated pattern or practice cases may hear overlapping evidence, so long as they decide distinct factual issues." (citing *Taylor v. D.C. Water & Sewer Auth.*, 205 F.R.D. 43, 51 (D.D.C. 2002)); *see also id.* (noting that a "Phase II jury can be specifically instructed not to re-examine the factual findings of the Phase I jury").  As such, when the Court revisits a case management plan here, it will carefully consider the Seventh Amendment implications of any such proposal.  But the Court does not believe it need do so until then.

### 4.  Additional Cases Cited by Bass Pro Are Unavailing

Bass Pro cites an array of district court cases from around the country that it asserts "agree that *Teamsters* is available to the EEOC under § 707 but not under § 706."  (Doc. No. 174 at 19.)  The cases lack the power that Bass Pro ascribes to them.

Perhaps most prominently, Bass Pro relies on a series of decisions asserting that, in § 706 cases, "it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all of the elements of their sexual harassment claims to obtain individual relief for them."  *EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 929 (N.D. Iowa 2009); *see also EEOC v. O'Reilly Auto. Inc.*, No. CIV.A. H-08-2429, 2010 WL 5391183, at *4 (S.D. Tex. Dec. 14, 2010) (same), *report and recommendation adopted sub nom. EEOC v. O'Reilly Auto. Inc.*, No. CIV.A. H-08-2429, 2010 WL 5387634 (S.D. Tex. Dec. 16, 2010); *EEOC v. IPS Indus., Inc.*, 899 F. Supp. 2d 507, 517 (N.D. Miss. 2012) (relying on *O'Reilly Auto* and *CRST* for the same proposition); *Arizona ex rel. Goddard v. GEO Grp., Inc.*, No. CV 10-1995-PHX-SRB, 2012 WL 8667598, at *7 (D. Ariz. Apr. 17, 2012) (relying on *O'Reilly Auto* and *CRST* for the same proposition).[12]  Bass Pro argues, in effect that, in making such statements, these courts implied that the *Teamsters* framework would not suffice.

There is superficial appeal to Bass Pro's argument, but after carefully reviewing the cases, this Court concludes that decisions such as these, concerning sexual harassment and hostile work environment claims, are inapposite.  A review of *McDonnell Douglas*'s and *Teamster*'s origins helps to show why.  *McDonnell Douglas* grappled with the reality that direct evidence of class-based discrimination is often hard to come by.  It is seldom the case that an

---

[12] Bass Pro also cites *Goddard* for the proposition that "different legal frameworks apply to actions under sections 706 and 707," 2012 WL 8667598, at *8, but because its *only* support for that proposition was the *Serrano* district court, this Court finds *Goddard* unpersuasive.

employer tells an employee that he is being terminated on account of his race, or that she is being terminated on account of her gender. *McDonnell Douglas* embraces that fact and offers a burden-shifting scheme through which a plaintiff can prove class-based discrimination using only circumstantial evidence. *Franks* simply adapted *McDonnell Douglas* to fit the unique circumstances presented by a § 706 class action in which individual victims have alleged that they were discriminated against as part of a pattern-or-practice of discrimination. *Teamsters* further clarified that its approach is not an alternative to *McDonnell Douglas*, but a modification. The *Teamsters* Court elucidated that "[t]he importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Teamsters*, 431 U.S. at 358. The *Franks/Teamsters* framework likewise conforms to that understanding.

Thus, acknowledging that *Teamsters* and *Franks* spring from the same root as *McDonnell Douglas*, and that the *Teamsters* framework is designed for cases in which discrimination is proved through circumstantial evidence, it becomes clear why sexual harassment and hostile work environment claims have no relevance here. The Fifth Circuit has explained that there are generally four elements to a hostile work environment claim:

> (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome . . . harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment.

*EEOC v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc) (alteration in original) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 162-63 (5th Cir. 2007)).[13]

What should by now arrest the reader is that hostile work environment claims are not proven using *McDonnell Douglas* or any other burden-shifting scheme.  They rely, for the most part, on direct evidence.  As the Supreme Court has explained, the *McDonnell Douglas* framework operates "progressively to sharpen the inquiry into the elusive factual question of intentional discrimination."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 n.8 (1981).  "In contrast . . . 'the case of . . . harassment that creates an offensive environment does not present a factual question of intentional discrimination which is at all elusive.'"  *Jones v. Flagship Int'l*, 793 F.2d 714, 720 n.5 (5th Cir. 1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 905 n.11 (11th Cir. 1982)).  As such — and as the *Henson* court concluded — nothing like *McDonnell Douglas* is needed.

The upshot is this: if hostile work environment/harassment cases do not ordinarily rely on *McDonnell Douglas* when an individual brings suit (or when the EEOC bring suit on behalf of an individual), it is no surprise that courts resist the application of *Teamsters* to cases involving multiple individuals.[14]  If there is no need for the original — *McDonnell Douglas* — there is not

---

[13] Depending on the identity of the party allegedly responsible for the harassment, there may be a fifth element not relevant here.  *See  Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012), *cert. denied,* 133 S. Ct. 136 (2012).

[14] Not all courts construing hostile work environment claims have resisted the application of *Teamsters*.  In *EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165 (D.N.M. 2012), the Commission brought suit alleging hostile working environment pursuant to §§ 706 and 707.  *Id.* at 1169-70.  Pitre argued that the EEOC could not apply *Teamsters* to § 706 claims.  The court rejected defendant's contention that "the EEOC's authority to bring suit under Title VII is clearly delineated and well-defined," finding instead that the EEOC has "broad and overlapping authority."  *Id.* at 1173.  The Court reviewed the *Serrano* decision and adopted its reasoning.

likely to be any need for its adaptation — *Teamsters*.  And for good reason.  The core inquiry is simply different in harassment and hostile work environment cases.  As the *International Profit Associates* court explained:

> [I]n a race discrimination case it is clear why a pattern or practice finding should have an effect on an employer's liability to individual claimants.  If an employer has an established policy of making employment decisions with racial animus in violation of Title VII, it is likely that any specific employment decision also violates Title VII, and if a particular decision was not discriminatory, the employer is in the best position to show why. . . . However, the impact of a pattern or practice finding in a hostile work environment sexual harassment case is not so clear.  In contrast with a race discrimination case — where the focus is on the employer's *basis* for making an employment decision that adversely affected the claimant — a sexual harassment case centers on the *gravity* of the conduct to which a claimant was exposed. . . . The sexual harassment suffered by the claimant must have been severe or pervasive enough (measured both objectively and subjectively) to constructively alter the terms or conditions of the claimant's employment by creating a hostile work environment. . . . Otherwise, no Title VII violation has occurred.  . . . Therefore, a finding that an employer had a pattern or practice of tolerating sexual harassment in violation of Title VII does not necessarily establish that an individual claimant was exposed to harassment or that the harassment an individual claimant suffered violates Title VII.  It is thus unclear what effect a pattern or practice finding should have on an individual claimant's suit for damages.

2007 WL 3120069, at *3; *see also  CRST*, 611 F. Supp. at 934 ("As several district courts have recognized over the last two decades, the *Teamsters* pattern or practice model 'breaks down' when the unlawful employment practice at issue is sexual harassment based on a hostile work environment." (citing *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1071 (C.D. Ill. 1998); *Int'l Profit Associates*, 2007 WL 3120069, at *3; *Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847, 875-76 (D. Minn. 1993))).

---

The *Pitre* court found especially relevant the Supreme Court's "reluctance, 'absent clear congressional guidance, to subject § 706(f)(1) actions to requirements that might disable the enforcement agency from advancing the public interest in the manner and to the extent contemplated by the statute.'"  *Id.* at 1174 (quoting *General Telephone*, 446 U.S. at 331)).

In short, cases like *CRST*, *O'Reilly Auto*, *IPS Industries*, and *Goddard* have little-to-no bearing on the issue this Court is presently considering.[15]

Bass Pro additionally seeks to rely upon *JBS Colorado*, 2011 WL 3471080, which undoubtedly helps Defendants' cause, but not enough to alter the Court's conclusion. There, the court held that, for certain of the EEOC's § 707 claims, it could proceed in the bifurcated fashion contemplated by *Teamsters*. *Id.* at *8. But, for individual claims for compensatory and punitive damages, the Court explained that the Commission would have to proceed under § 706, and as such, would have to stick to the *McDonnell Douglas* framework. *Id.* This Court believes that the *JBS (Colorado)* court was incorrect, for all the reasons set forth above, in drawing this final conclusion. Indeed, its primary support for the proposition that "the *McDonnell Douglas* framework applies to individual claims brought under § 706" was the *Serrano* district court opinion, which was later reversed. *Id.* at *4 (citing *Serrano v. Cintas Corp.*, 711 F. Supp. 2d 782, 794 (E.D. Mich. 2010)).

A related case, *EEOC v. JBS USA, LLC ("JBS Nebraska")*, No. 8:10CV318, 2012 WL 5906537 (D. Neb. Nov. 26, 2012), upon which Bass Pro also depends, is in fact no help at all. Contrary to Bass Pro's assertion, the *JBS Nebraska* court did *not* "expressly adopt[]" the

---

[15] *EEOC v. Global Horizons, Inc.*, — F. Supp. 2d. —, No. CV-11-3045-EFS, 2014 WL 2207866 (E.D. Wash. May 28, 2014), is similarly unavailing. Addressing a motion for summary judgment, the *Global Horizons* court rejected the EEOC's argument, grounded in *Teamsters*, that "an individualized assessment as to each Thai Claimant need not be used by the Court," reasoning that *Teamsters* was a § 707 pattern-or-practice case and that based on § 706's "language and purpose," "an individualized assessment must be used for a hostile-work-environment § [706] claim brought by the EEOC on behalf of a Claimant." *Id.* at *6. Given the court's repeated inclusion of "hostile work environment" as a qualifier for § 706 claim, and the fact that both cases cited for the aforementioned proposition were hostile work environment/harassment cases, it seems quite likely that the *Global Horizon* court's holding was cabined to such claims. For the reasons just set forth, this Court agrees that hostile work environment claims should be treated uniquely. More generally, because the *Global Horizons* court did not explain its analysis of § 706's "language and purpose," this Court has a hard time finding that decision persuasive.

Colorado court's reasoning and hold that "'the *Teamsters* method of proof is applicable only when Section 707 claims are presented, and not when Section 706 claims are at issue.'"  (Doc. No. 174 at 20 (quoting *JBS Nebraska*, 2012 WL 5906537, at *2).)  Rather, the district court there was explaining that the *magistrate judge* had adopted the *JBS Colorado* court's reasoning.  *JBS Nebraska*, 2012 WL 5906537, at *2.  The district judge noted that *JBS Colorado* had relied on the later-vacated *Serrano* decision and thus appears to have taken no position on whether "the EEOC may pursue claims under the *Teamsters* pattern-or-practice framework pursuant to its Section 706 authority."  *Id.* at *3.  The question before the *JBS Nebraska* court was whether private interveners, not proceeding as a Rule 23 class, could employ the *Teamsters* framework.  *Id.*  Based on binding Eighth Circuit precedent, the *JBS Nebraska* court said that they could not.  *Id.*  This court has no reason to cast doubt upon that conclusion, but it also has no reason to treat it as persuasive.[16]

\* \* \*

Upon exhaustive review of Title VII's statutory scheme and the cases interpreting it, the Court concludes that it was wrong to summarily conclude in its earlier Memorandum and Order that § 706 claims cannot be proven using the *Teamsters* framework.  But all of the foregoing presupposes the existence of a properly filed § 706 claim, for which the EEOC has met all of its pre-suit obligations.  Whether it has done so is a close question that the Court next addresses.

---

[16] The court is similarly unmoved by Bass Pro's citation to a later decision by the *JBS Nebraska* court in which it said that "[t]he Court has previously found that the EEOC's pattern-or-practice claims arise under [§ 707], not [§706]."  940 F. Supp. 2d 949, 962-63 (D. Neb. 2013).  That statement was made in the context of determining whether the Nebraska Equal Opportunity Commission's investigation could satisfy the EEOC's pre-suit obligations; it thus offers no indication one way or the other how a § 706 claim is to be proven.

### III.    RENEWED MOTION FOR SUMMARY JUDGMENT

This Court has twice already explained the administrative prerequisites with which Congress has asked the EEOC to comply.  (*See* Doc. Nos. 149, 151.)  The "integrated, multistep enforcement procedure" which Congress has devised begins with a charge of discrimination, proceeds to an investigation, leads, potentially, to a determination of reasonable cause, and then requires conciliation.  *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 359-60 (1977).  These obligations are important: even as the Commission has amassed wider latitude to file civil actions, less formal, administrative processes have remained "the preferred means of achieving the objectives of Title VII."  *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 468 (5th Cir. 2009) (internal quotation marks omitted).  This Court has acknowledged that, in considering whether the EEOC has fulfilled its conciliation obligation, the ultimate issue is whether the EEOC made a "good-faith attempt at conciliation."  *Agro*, 555 F.3d at 468.  In its March 2014 Memorandum and Order, the Court concluded that, "[w]ith respect to the § 707 claim, the Court believes that, by November 2010, the Commission was justified in declaring conciliation of that claim a failure.  And with respect to the § 706 failure-to-hire claim, the Court believes the Commission should have continued to engage Defendant, but that its decision to do the opposite was not made in bad faith."  (Doc. No. 151 at 41.)  The Court therefore ordered a stay for additional conciliation.

Bass Pro's renewed Motion for Summary Judgment seeks dismissal of the § 706 claims for a number of reasons.  To the extent it seeks to relitigate the same issues addressed in the last Memorandum and Order, as well as to persuade the Court that the § 706 claims should be dismissed for failure to conciliate during the Court's recently ordered stay, based on the law

37

outlined in its last Order, the Motion is **DENIED**.[17]   The remaining issue, also brought to the

fore by Bass Pro's Renewed Motion for Summary Judgment, is whether the EEOC can bring a §

706 claim on behalf of individuals whose identities were not determined (or will not be

determined) until after the EEOC completed its investigation.   The EEOC does not dispute that

some individuals on whose behalf it seeks to bring a § 706 claim still have not been identified,[18]

and in fact, there is some discrepancy in the record as to whether *any* individual whose rights the

EEOC seeks to vindicate using § 706 had been specifically identified (*i.e.* by name) during the

Commission's investigation.[19]   Whether the Commission is permitted to proceed in this fashion

is a difficult question.

---

[17] This is so even taking account of Bass Pro's attempt to clarify the state of the record as to the number of times it had asked for information about specific individual victims.  (*See* Doc. No. 161 at 27.)

[18] *See, e.g.*, Doc. No. 164 at 11-12 (explaining in an e-mail to Defendants' counsel that it still needed more information in order "to further define the class, in terms of scope, identity of class members, and damages"); Doc. No. 164 at 39 (explaining in a letter to Bass Pro that "[s]ince the suit was filed, Bass Pro has opened more stores and hired more employees, implicating the strong likelihood of many additional shortfalls and victims of discrimination"); Doc. No. 177 at 16 (concluding in recent submission to the Court that, "even if every applicant or would-be applicant were identified and their race and national origin were known, in a large class discrimination case such as this where minimal qualifications are required for the position at issue, identification of each individual who would have been hired but for Defendants' discriminatory practices is extremely difficult and such uncertainties should be resolved against Bass Pro").

[19] *Compare* Doc. No. 157 at 40-41 (statement to the Court by EEOC attorney that the Commission's "analysis is not driven by names, it's not driven by the individual circumstances of those people.  And our primary proof did not rely on names or individuals.  It's a statistical hiring case"); *id.* at 55-56 (statement by same attorney explaining that ascertaining the identities of individual victims is "a very lengthy and expensive process, which is why we don't do it beforehand"); *and* Doc. No. 177 at 26 (statement in recent brief that "[t]he investigation of the Commissioner's Charge was conducted under the principle that a finding that Bass Pro had engaged in class-wide discrimination established liability as to the allegations brought pursuant to § 706 and § 707" (internal citations omitted)), *with* Doc. No. 120-6 at 5 (letter from Commission to Bass Pro during the course of conciliation referring to "100 identified unsuccessful minority applicants and employees at the Bass Pro store in Bossier City").

## A.

The Court believes that the proper starting point is § 706 and whether it is a vehicle for the Commission to bring claims on behalf of unidentified victims.  The statute contemplates that the Commission will use § 706 to respond to charges "filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission," § 706(b) — language which, for present purposes, is inconclusive.  The reference to "a person claiming to be aggrieved" supports Bass Pro's position that § 706 actions must be brought on behalf of identifiable individuals, but that "person claiming to be aggrieved" is set off from "a member of the Commission" suggests that Commissioner charges perhaps do not need to be filed "on behalf of" identifiable victims.  And, when read keeping in mind that all courts seem to agree that victims on whose behalf the Commission seeks to bring a § 706 action need not be identified until (at least) *during* the investigation, *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985), it becomes clear that § 706(b) says little about the question the Court now considers.  Section 706(f), the statutory provision that expressly authorizes civil actions, is of little more use.  That section sets forth that "[t]he person or persons aggrieved shall have the right to intervene in a civil action," but of course, the identities of those "persons aggrieved" need not necessarily be determined during the investigation to breathe life into the Act.  In short, the text of § 706 does not help determine whether the Commission can do what it is attempting to do here.

*General Telephone*, at first blush, appears to support the position that even "class" § 706 claims must be brought on behalf of identifiable victims.  There, the Court stated that "the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals."  446 U.S. at 324.  The Court's reference to "a group of individuals" may support Defendants' view.  So too the Court's

statement that "[w]hen the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." The reference to "specific individuals" at whose "behest" the Commission acts certainly seems to indicate that § 706 suits must be brought on behalf of named victims. *Id.* at 326. And, the Court's articulation of its holding, again referencing "a group of aggrieved individuals," *id.* at 333, could be read as consistent with Bass Pro's proposed rule.

But digging a little deeper, it is not clear whether *General Telephone* actually supports Defendants' view of § 706. In introducing the facts of the case, the Supreme Court stated only that "[t]he complaint alleged discrimination against female employees in *General Telephone*'s facilities in the States of California, Idaho, Montana, and Oregon." *Id.* at 321. That statement does not necessarily help; it can be read either as indicating that the Commission sought relief on behalf of *all* such women, or on behalf of a group of specific female employees who hailed from the aforementioned states. Sifting through the litigation before it reached the Supreme Court, though, it appears that the Commission there sought relief for a class of victims, some of whom were unquestionably identifiable, *see EEOC v. Gen. Tel. Co. of Nw., Inc.*, No. C77-247M, 1979 WL 148, at *1 (W.D. Wash. Feb. 2, 1979), but others of whom appear to have been unnamed, *see id.* at *4 ("[T]he determinations indicate that the allegations were not limited to the individual facilities in which the charging parties worked."); *id.* at *6 ("I recommend that the Court deny defendant's Motion to Dismiss the complaint to the extent that it alleges company-wide exclusion of women."); *EEOC v. Gen. Tel. Co. of Nw., Inc.*, 599 F.2d 322, 325 n.1 (9th Cir. 1979) ("After investigation the Commission found reasonable cause to believe that General Telephone and the other defendants were discriminating against female employees. The EEOC identified as presumptively aggrieved by General Telephone's failure to consider women equally

'all female employees, female applicants for employment and women who would have applied but for the alleged unlawful discrimination.'"). Had the Supreme Court wished to reverse the lower courts insofar as they allowed a § 706 action on behalf of *unidentified* victims to proceed without utilizing Rule 23, it likely would have said so in far more unambiguous terms.[20]

Moreover, allowing the Commission to bring suit on behalf of individuals not identified during the investigation is consistent with the notion, seemingly implicit in *General Telephone*, that Congress wanted the Commission to have all the same rights as private litigants when it brings suit pursuant to § 706. In that vein, if private litigants can bring a Rule 23 class action to vindicate the rights of unnamed class members, *see Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976), it follows that the EEOC should be able to do likewise, uninhibited by § 706's investigation requirement.

And, *Serrano*, which the Court, as stated above, believes had a healthy understanding of § 706 and the Title VII remedial scheme, allowed the Commission to proceed with a § 706 claim on behalf of individuals not identified during the EEOC's investigation. *See* 699 F.3d at 890 ("[T]he EEOC filed an amended complaint on August 20, 2009, which limited its allegations to 'a class of women in the State of Michigan' as opposed to females nationwide."); *id.* at 904 ("[I]t is clear that the EEOC provided notice to Cintas that it was investigating class-wide instances of discrimination. . . . [T]he [proposed conciliation] agreement indicated that the EEOC sought class-based remedies by requesting relief for 'other similarly situated qualified female applicants who sought employment.'"). A collection of other courts from around the country have done

---

[20] The Court believes that saying so would have been within the bounds of the question presented, which the Supreme Court phrased as "whether the Equal Employment Opportunity Commission (EEOC) may seek classwide relief under § 706(f)(1) of Title VII of the Civil Rights Act of 1964 (Title VII) without being certified as the class representative under Rule 23 of the Federal Rules of Civil Procedure." *General Telephone*, 446 U.S. at 320.

likewise. *EEOC v. Harvey L. Walner & Associates*, 91 F.3d 963, 968 (7th Cir. 1996) (indicating that, in suits brought pursuant to § 706, the EEOC may allege in its Complaint "unlawful conduct it has uncovered during the course of its investigation" even where that means "'challeng[ing] discrimination affecting unidentified members of a known class" (citing *EEOC v. United Parcel Serv.*, 860 F.2d 372, 374 (10th Cir. 1988)); *EEOC v. Bruno's Rest.*, 13 F.3d 285, 289 (9th Cir. 1993) (finding, in a § 706 suit brought on behalf of a named individual "as well as other employees" that "[t]he EEOC conducted the statutorily mandated investigation" and that "'in a class action suit, [t]he EEOC is not required to provide documentation of individual attempts to conciliate on behalf of each potential claimant'" (quoting *EEOC v. Rhone-Poulenc, Inc.*, 876 F.2d 16 (3d Cir. 1989));[21] *EEOC v. U.S. Steel Corp.*, No. CIV.A. 10-1284, 2012 WL 3017869, at *10 (W.D. Pa. July 23, 2012) (deeming it proper for EEOC to bring suit on behalf of individuals not yet identified when complaint was filed); *EEOC v. PBM Graphics Inc.*, 877 F. Supp. 2d 334, 361 (M.D.N.C. 2012) ("To the extent PBM complains that particular class members were not identified during the conciliation process, the EEOC is under no obligation to make such a disclosure.").

Some courts have drawn an important distinction "between the significance of pre-litigation disclosure of the alleged unlawful conduct and pre-litigation disclosure of the specific identities and number of aggrieved persons." *EEOC v. Original Honeybaked Ham Co. of Georgia, Inc.*, 918 F. Supp. 2d 1171, 1179 (D. Colo. 2013). In *Original Honeybaked Ham*, the court explained that "[d]isclosure of the alleged unlawful conduct is essential. Only with knowledge of the alleged unlawful conduct can the employer meaningfully engage in pre-

---

[21] No published opinion, by the Ninth Circuit or the lower court, makes perfectly clear whether the "other employees" at issue in *Bruno's Restaurant* had been specifically named during the investigation, but the Court believes that the use of "potential" before "claimants" indicates that some had not.

litigation conciliation, by determining its exposure and what changes in procedures or policies may be warranted." *Id.* But, it explained, "[t]he greater the specificity in describing the alleged unlawful conduct, the less important it becomes to specifically identify aggrieved persons." *Id.* at 1180. To be sure, the discussion of what must be disclosed during conciliation is not a perfect analog for what must become known to the Commission during its investigation, but it does lend some support to the EEOC's position that it can conduct an adequate investigation even where it does not know the specific identities of all those who were aggrieved. The Commission's investigation of "unlawful conduct" can satisfy its pre-suit obligations in such cases.

## B.

This is not to say that there is no support for Bass Pro's position. Far from it. First, starting with the text and structure of Title VII, § 706(b)'s right of intervention is not as meaningful if the identities of victims need not be ascertained until stage II of *Teamsters*, which is likely when the Commission would prefer to identify victims. Of course, the individuals would still be able to intervene at the stage of litigation when their individual damages are to be determined, but they would have no opportunity to offer any input earlier in litigation, which is presumably their prerequisite.

Second, Bass Pro is correct that courts "will not review the sufficiency of the EEOC's pre-suit investigation" but that "'[c]ourts will review whether an investigation occurred.'" *EEOC v. JBS USA, LLC*, 940 F. Supp. 2d 949, 964 (D. Neb. 2013) (quoting *EEOC v. Hibbing Taconite Co.*, 266 F.R.D. 260, 272 (D. Minn. 2009)); *see also EEOC v. Grane Healthcare Co.*, No. CIV.A. 3:10-250, 2013 WL 1102880, at *5 (W.D. Pa. Mar. 15, 2013); *EEOC v. California Psychiatric Transitions, Inc.*, 725 F. Supp. 2d 1100, 1113 (E.D. Cal. 2010). This principle was reaffirmed most recently in *EEOC v. Sterling Jewelers, Inc.*, — F. Supp. 2d —, No. 08-CV-

00706-A, 2014 WL 916450, at *4 (W.D.N.Y. Mar. 10, 2014).   The *Sterling Jewelers* court determined that courts "may also examine the scope of that investigation, for while '[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable,'" *id.* (quoting *General Telephone*, 446 U.S. at 331), the Commission "'must discover such individuals and wrongdoing *during the course of its investigation*.'" *Id.* (quoting *CRST*, 679 F.3d at 674).   Because it found that the EEOC had not investigated *nationwide* discrimination, the court determined that "the EEOC's claim of a nationwide pattern or practice of employment discrimination by Sterling be dismissed, with prejudice." *Id.* at *9.   The *Sterling Jewelers* court acknowledged that, even if the EEOC could investigate class charges, the investigation of a regional class could not substitute for the investigation of a nationwide class. *Id.* at *6.   In another recent decision, the Fourth Circuit, affirmed the district court's decision to award attorney's fees to defendant in part because "the EEOC had failed to identify potential victims in its target class before filing its complaint." *EEOC v. Propak Logistics, Inc.*, 746 F.3d 145, 153 (4th Cir. 2014).[22]

These decisions help Bass Pro in at least two ways.   First, needless to say, Bass Pro's argument that the § 706 claims should be thrown out for failure to investigate relies on the reviewability of the Commission's investigation.   These cases establish as much.   Second, they confirm that there must be congruence between the scope of the Commission's investigation and

---

[22] The Commission rightfully points out that what appears to have really driven the *Propak* court is the fact that, not only had the Commission not yet identified the alleged victims, it knew that it would not be able to, and combined with defendant's decision to close certain plants, when the EEOC filed suit, "it was abundantly clear that a lawsuit would be moot and thus it was unreasonable to have filed it." *Propak Logistics*, 746 F.3d at 157 (internal quotation marks omitted).

its lawsuit.  To be sure, though, neither of these points makes pellucid that the investigation must turn up the *names* of the § 706 claimants.[23]

Third, a growing number of district courts — many of which the Court discussed in its last Memorandum and Order — have come fairly close to making explicit that individuals on whose behalf the EEOC intends to bring § 706 suits must have the merits of their individual claims investigated.  *See, e.g.*, *EEOC v. CRST Van Expedited, Inc.*, No. 07-CV-95-LRR, 2009 WL 2524402, at *16 (N.D. Iowa Aug. 13, 2009) ("[T]he case at bar is one of those exceptionally rare § 706 cases in which the record shows that the EEOC did not conduct *any* investigation of the specific allegations of the allegedly aggrieved persons for whom it seeks relief at trial before filing the Complaint — let alone issue a reasonable cause determination as to those allegations or conciliate them.  The record shows that the EEOC wholly abandoned its statutory duties as to the remaining 67 allegedly aggrieved persons in this case.");[24] *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 802, 814 (S.D.N.Y. 2013) (relying in large part on *CRST* and explaining that "[t]he Court is not aware of any binding legal authority, and the EEOC has provided none, that allows the EEOC to do what it is attempting to do here — namely level broad accusations of class-wide discrimination to present Bloomberg with a moving target of prospective plaintiffs and, after

---

[23] And, indeed, the distinction offered by *Original Honeybaked Ham* between an investigation of pre-litigation *conduct* and an investigation of the *victims of that conduct* undercuts the idea that, where specific victims are not identified, there is no congruence between investigation and lawsuit.  For instance, the *Sterling Jewelers* decision can be read as consistent with that principle and indicative only of the fact that, where the EEOC wishes to file suit alleging a nationwide pattern of unlawful conduct, it must investigate the defendant's conduct across the nation.  It has relatively little to say about how exacting that investigation must be.

[24] In its last Memorandum and Order, this Court distinguished *CRST* on the grounds that "the *CRST* district court determined that the EEOC had not even identified class members for its own purposes before litigation began, and based its holding just as much, if not more, on a failure to investigate as on a failure to conciliate," whereas in this case, the EEOC simply "refused to identify those claimants it said it *had discovered*."  (Doc. No. 151 at 33 (citations omitted).)  It now appears that the Court may have been working off a false premise.

unsuccessfully pursuing pattern-or-practice claims, substitute its own investigation with the fruits of discovery to identify which members of the class, none of whom were discussed specifically during conciliation, might have legitimate individual claims under Section 706").  It is no surprise that Bass Pro seeks to hang its hat on this line of cases.

* * *

In consideration of these competing concerns — and this is a *very* close question — the Court is not persuaded to dismiss the § 706 claims for failure to investigate, because the Court is not fully persuaded that the Commission is barred from bringing § 706 claims on behalf of unidentified victims.  Defendants' Motion is thus **DENIED**.

## IV.    MOTION FOR SUMMARY JUDGMENT ON RETALIATION CLAIMS

The Court did not resolve in its last Memorandum and Order Defendants' Motion for Summary Judgment on the Commission's § 706 retaliation claims.  (Doc. No. 151 at 39.)  As the Court posited in that Memorandum and Order, and as was discussed briefly the last time the parties were in Court, because the suit was initiated by a Commissioner's charge, the fate of the individual charges is immaterial.  Summary Judgment on those claims is therefore **DENIED**.

## V.    CONCLUSION

The Motion for Reconsideration and Renewed Motion for Summary Judgment were hotly contested; the questions presented by both were close.   Bass Pro has ably presented its disagreements with the conclusions that the Court reaches in this Memorandum and Order, and the Court readily acknowledges that there is ample support for Defendants' positions.  As such, while the Court believes discovery should proceed on the § 707 claims, the Court would look favorably upon a motion for certification of an interlocutory appeal as to the § 706 claims, both with respect to how the EEOC may attempt to prove them and as to whether the individuals on

whose behalf the claims are brought must be identified (by name) during the course of the EEOC's investigation.  These are important questions that will not only shape, if not resolve, the case at hand, but also help determine the Commission's actions in future cases.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 30th day of July, 2014.

**KEITH P. ELLISON**
**UNITED STATES DISTRICT JUDGE**