United States District Court
Southern District of Texas
**ENTERED**
December 28, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:11-CV-3425 |
| BASS PRO OUTDOOR WORLD, LLC, *et al*, | § § § § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

The parties in this case have submitted briefing on the impact of *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) on this case.[1] After considering the briefing, the Court finds that *Tyson* has no effect on this case and no relief is warranted.

### I.   BACKGROUND

This is an EEOC enforcement action alleging a pattern or practice of race discrimination in Bass Pro stores nationwide. The EEOC's analysis of Bass Pro's hiring data shows shortfalls of Black employees in over 95 percent of its stores and shortfalls of Hispanic employees in over 70 percent of its stores. (Doc. No. 325 at 1.) The EEOC also found 400 "inexorable zeroes" of the

---

[1] Bass Pro's opening brief was styled as a motion for judgment on the pleadings. (Doc. No. 314.) In an order dated September 29, 2016, the Court clarified that Bass Pro's brief "does not constitute a motion, but rather constitutes a brief filed as ordered by the Court in its August 26, 2016 Order." (Doc. No. 317.)

1

type decried in *Teamsters v. United States*, 431 U.S. 324 (1977). *Id.*[2] Overall, the EEOC found an aggregate net shortfall of 1,097 Black employees and 187 Hispanic employees. *Id*.

On July 30, 2014, this Court ruled that the EEOC may use the *Teamsters* framework to prove its claims under § 706 of Title VII. (Doc. No. 184.) On November 17, 2014, the July 30, 2014 Order was certified for interlocutory appeal. (Doc. No. 198.) Bass Pro appealed in early 2015.

*Tyson* was decided on March 22, 2016, while Bass Pro's appeal to the Fifth Circuit was pending (but after oral argument). On March 25, Bass Pro submitted a Rule 28(j) letter to the Fifth Circuit informing them of the *Tyson* decision and making arguments substantially similar to those presented here about the impact of *Tyson* on this case. On June 17, 2016, the Fifth Circuit affirmed this Court's July 30, 2014 Order. *EEOC v. Bass Pro*, 826 F.3d 791 (5th Cir. 2016). The Fifth Circuit opinion did not mention *Tyson*. On July 27, 2016, Bass Pro petitioned for rehearing en banc. That petition is currently pending.

At an August 5, 2016 hearing, Bass Pro raised its *Tyson* argument again. The Court ordered both sides to submit briefs on the impact of *Tyson*. (Doc. No. 301.)

## II.  RELEVANT TITLE VII CASES

Bass Pro's argument relies on the interaction of the following seminal Title VII cases:

### A.  *Teamsters*

*Teamsters v. United States*, 431 U.S. 324 (1977) established a two-stage framework for Title VII claims alleging a pattern or practice of discrimination. In the first stage ("*Teamsters*

---

[2] That is, there were 186 instances in which no Blacks were employed in sales or managerial positions and 214 instances in which no Hispanics were employed in sales or managerial positions. *Teamsters*, 431 U.S. 324.

Stage 1"), the plaintiff[3] must establish a prima facie case of discrimination, showing by a preponderance of the evidence that discrimination was the defendant's "standard operating procedure[,] the regular rather than the unusual practice." *Teamsters*, 431 U.S. at 336. One way to accomplish this is to provide statistical and anecdotal evidence. *Id*. at 337-39. If the plaintiff establishes a prima facie case, then the burden shifts to the employer to demonstrate that the plaintiff's proof is either inaccurate or insignificant. *Id*. at 360. If the employer fails to do so, then the plaintiff is entitled to prospective relief (for example, injunctive relief or an order that the employer file periodic reports with the court). *Id*. at 361.

If the plaintiff seeks individual relief for victims of the discriminatory practice, the case proceeds to the second stage ("*Teamsters* Stage 2"). At this stage, the individuals seeking relief are entitled to a presumption that "any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of [the discriminatory] policy." *Id*. at 362. The plaintiff "need only show that an alleged individual discriminatee unsuccessfully applied for a job…. [T]he burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons." *Id*.

In this case, the EEOC is pursuing its Title VII claims under the two-step *Teamsters* framework. The EEOC cites statistical and anecdotal evidence in its complaint.

### B. *Wal-Mart*

Whereas *Teamsters* was a government enforcement action, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) was a Rule 23 class action alleging Title VII violations. The theory

---

[3] Although the *Teamsters* case was a government enforcement action, the two-stage *Teamsters* framework has been applied to both public and private actions. *See, e.g.*, *EEOC v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791, 797 (5th Cir. 2016) ("the *Teamsters* pattern or practice method of proof is often used in class actions").

of the case was that a corporate culture of bias combined with discretionary decisionmaking resulted in a policy that disfavored female employees. *Wal-Mart*, 564 U.S. at 345. As such, the proposed class included all female Wal-Mart employees. *Id*.

The *Wal-Mart* plaintiffs presented three types of evidence in order to satisfy Rule 23's commonality requirement[4]: statistical evidence, anecdotal evidence, and the testimony of a sociologist regarding Wal-Mart's corporate culture. *Wal-Mart*, 564 U.S. at 346. The Supreme Court found that this evidence was insufficient to establish commonality as required by Rule 23. *Id*. at 349-60.

In a separate part of the opinion, the *Wal-Mart* Court took issue with the plaintiffs' proposed alternative method of determining backpay awards for class members, which the Court called "Trial by Formula." *Id*. at 367. The plaintiffs proposed determining liability and backpay amounts for sample set of class members via depositions. *Id*. The class recovery amount would be determined by extrapolating the percent of valid claims within the sample set and multiplying by the average backpay award. *Id*. No further individualized proceedings would take place. *Id*. Because the plaintiffs alleged a pattern or practice of discrimination, the Court held that Wal-Mart was entitled to individualized determinations of backpay awards under the *Teamsters* framework. *Id*. at 366. The Court disapproved of plaintiffs' proposed methodology and noted that the *Teamsters* two-stage framework was the established method to determine individual relief while protecting Wal-Mart's right to individualized determinations. *Id*. at 367.

---

[4] For a class to be certified, the plaintiffs must show that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2).

### C. *Tyson*

*Tyson* is an FLSA collective action case concerning the use of representative evidence. The Court found that the plaintiffs' overtime wages should be calculated to include the time spent putting on and taking off ("donning and doffing") protective gear. *Tyson*, 136 S. Ct. at 1042. However, the employer failed to record the time that each employee spent donning and doffing the protective gear. *Id*. The plaintiffs therefore provided their own evidence regarding donning and doffing time. *Id*. at 1043. The plaintiffs' evidence (which the Supreme Court refers to as "representative evidence") included employee testimony, video recordings of donning and doffing, and a report performed by an industrial relations expert (estimating donning and doffing time at 18 to 21.25 minutes per day). *Id*. The Court found that the plaintiffs were permitted to use representative evidence in light of the evidentiary gap created by the employer's failure to keep records. *Id*. at 1047.

The defendant in *Tyson* argued that *Wal-Mart* precludes the use of a representative sample to establish classwide liability. *Tyson*, 136 S. Ct. at 1048. According to the *Tyson* court, however, the key question was "whether the sample at issue could have been used to establish liability in an individual action." *Id*. The Court reasoned that, because the *Wal-Mart* employees were not similarly situated to one another, "none of them could have prevailed in an individual suit by relying on depositions detailing the ways in which other employees were discriminated against by their particular store managers." *Id*. By contrast, the *Tyson* plaintiffs "worked in the same facility, did similar work, and [were] paid under the same policy." *Id*. As such, "the experiences of a subset of employees can be probative as to the experiences of all of them." *Id*.

**III.   ANALYSIS**

Bass Pro argues that, under *Tyson*, a Title VII pattern or practice claim cannot survive unless the employees are similarly situated. (Doc. No. 314 at 1.) Bass Pro argues that the employees in this case are not similarly situated, citing variations in location and job title.[5] *Id*. at 14. Therefore, Bass Pro argues, the EEOC is barred from proceeding with this claim.

Bass Pro's similarly situated rule seems to derive from two assumptions. First, Bass Pro states (without explanation or justification) that statistical and anecdotal evidence is necessarily the sort of "representative" evidence with which *Tyson* was concerned. (Doc. No. 327 at 9 ("*Of course* the use of statistics and anecdotes demonstrating discriminatory decisions toward some claimants to prove the prima facie case of all claimants is representative evidence" (emphasis added)).) Therefore, Bass Pro argues, the statistical and anecdotal evidence typically used in *Teamsters* Stage 1 is subject to the rule announced in *Tyson*: it may only be used if it could have been used in an individual Title VII case.

Second, Bass Pro argues that statistical and anecdotal evidence can only be used in an individual action if the claimants are similarly situated. In support of this argument, Bass Pro cites Fifth Circuit precedent holding that "[a]necdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1221 (5th Cir. 1995)).

Putting those two arguments together, Bass Pro concludes that *Teamsters* Stage 1 evidence (which is necessarily representative) can only be presented to the court if the claimants

---

[5] Because the EEOC is not required to prove that the alleged discriminatees are similarly situated, there is no need to analyze whether they are in fact similarly situated.

are similarly situated (such that the evidence would be admissible in an individual Title VII action, thus satisfying *Tyson*). Because the employees in this case are not similarly situated, Bass Pro argues, the EEOC may not present its statistical and anecdotal evidence and therefore cannot survive *Teamsters* Stage 1.

### A. The rule in *Tyson* does not apply to *Teamsters* Stage 1 evidence.

The Court is not persuaded that the representative evidence rule in *Tyson* applies to *Teamsters* Stage 1 evidence (statistics and anecdotes used to establish a prima facie case of discrimination). The plaintiffs in both *Tyson* and *Wal-Mart* sought to use representative evidence in order to justify class treatment (as opposed to individual claim resolution). For that reason, it makes sense to impose a rule that restricts representative evidence if it would not be admissible in an individual employment action. To allow such evidence would be to enlarge the substantive rights of class members beyond those they would have had if each had brought her claim on an individual basis, violating the Rules Enabling Act. *See Tyson*, 136 S. Ct. at 1048; *Wal-Mart*, 564 U.S. at 367. By contrast, the EEOC is a government enforcement agency with a mandate to "advance the public interest in preventing and remedying employment discrimination," not to act as "a proxy for the victims of discrimination." *General Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 327-331 (1980) (emphasis added). As such, the EEOC is not required to justify the pursuit of large-scale pattern or practice discrimination cases, since it has statutory authority to pursue them. *See id.* In that context, it does not make sense to require that any evidence the EEOC uses be admissible in an individual employment discrimination case.

Moreover, *Tyson*'s discussion of representative evidence in *Wal-Mart* does not seem to contemplate *Teamsters* Stage 1 evidence. The *Tyson* Court focused not on the *Wal-Mart* plaintiffs' use of statistical and anecdotal evidence (analogous to the EEOC's *Teamsters* Stage 1

7

evidence here), but rather on their proposal to replace *Teamsters* Stage 2 with a "Trial by Formula." 136 S. Ct. at 1048. The "representative evidence" in *Wal-Mart* is the determination of overall liability rates and backpay amounts based on a subset of the class. *Id*. That evidence, and its intended purpose of avoiding *Teamsters* Stage 2, bear no resemblance to the EEOC's proposal to use statistical evidence and anecdotes to establish a prima facie case of discrimination at *Teamsters* Stage 1.

Because the rule announced in *Tyson* does not apply to *Teamsters* Stage 1 evidence, the EEOC is not required in this case to show that their statistical and anecdotal evidence could be used in an individual action.

### B. The Fifth Circuit's rule about similarly situated employees does not apply to statistical evidence.

Second, even if *Tyson* applied to *Teamsters* Stage 1 evidence, this case could still move forward because the EEOC's statistical evidence satisfies *Tyson*. The Fifth Circuit has repeatedly held that statistical evidence is admissible in individual Title VII cases. *See Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1138-39 (5th Cir. 1983); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973) ("statistics as to [the employer's] employment policy and practice may be helpful to a determination of whether [the employer's] refusal to rehire [the plaintiff] in this case conformed to a general pattern of discrimination"). Bass Pro argues that employees must be similarly situated for "representative" evidence to be admissible, but the cases it relies on pertain only to anecdotal evidence, not to statistical evidence. *See* Doc. No. 314 at 14-15. Therefore, even if Bass Pro is correct that *Tyson* applies to this case, and even if the EEOC's anecdotal evidence is inadmissible as a result, the EEOC may still use its statistical evidence at *Teamsters* Stage 1. The

Supreme Court has held that statistics alone can suffice to establish a prima facie case under the *Teamsters* framework. *Hazelwood School Dist. v. United States*, 433 U.S. 299, 307-08 (1977). Thus, the EEOC is able to meet its burden at *Teamsters* Stage 1 even without relying on anecdotal evidence.

### C. Bass Pro's reading of *Tyson* would constitute a significant change to the *Teamsters* framework.

In arguing for the application of a similarly situated rule, Bass Pro implicitly argues that *Tyson* added a requirement to *Teamsters* Stage 1. In addition to proving that discrimination was the defendant's "standard operating procedure[,] the regular rather than the unusual practice," *Teamsters*, 431 U.S. at 336, plaintiffs would also have to prove that the alleged discriminatees are similarly situated. Even setting aside the issues with this interpretation raised above, it seems highly unlikely that the Supreme Court intended to alter the *Teamsters* framework in this manner (upsetting nearly 40 years of pattern or practice discrimination law) without so much as referencing *Teamsters* or Title VII.

Moreover, adding a similarly situated requirement in the manner Bass Pro suggests would import into EEOC enforcement actions requirements typically associated with Rule 23 class actions (e.g., typicality). The Supreme Court has made clear, however, that Rule 23 does not apply to EEOC enforcement actions—and for good reason. In *General Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980), the Court highlighted that "[t]he EEOC exists to advance the *public* interest in preventing and remedying employment discrimination," not to act "merely [as] a proxy for the victims of discrimination." *General Tel. Co. of the Nw.*, 446 U.S. at 327, 331 (emphasis added). The Court noted that individuals retain separate private-action rights with regard to employment discrimination, including the right to bring one's own action and the right

to intervene in an EEOC enforcement action. *Id*. at 327. Finally, the Court noted that Rule 23's requirements of numerosity, typicality, commonality, and adequacy of representation do not make sense in the context of an EEOC enforcement action. *Id*. at 330-31. Because the law is clear that Rule 23 standards should not be imported into EEOC enforcement actions, *Tyson* should not be interpreted to require that discriminatees in a pattern or practice case following the *Teamsters* framework be similarly situated.

### D.  Bass Pro is not entitled to the relief it requests.

For the reasons explained above, *Tyson* has no impact on this case, and Bass Pro is not entitled to judgment on the pleadings.

As an alternative, Bass Pro requests that, "[i]f the Court believes the allegations regarding the [comments made by John Morris] could plausibly render all claimants nationwide similarly situated," discovery should be structured so as to focus initially on whether the alleged comments were actually made. (Doc. No. 314 at 19-20.) Because the EEOC is not required to prove that the discriminatees were similarly situated, there is no reason to restructure discovery in this manner.

Finally, Bass Pro argues that the EEOC must submit prior to discovery a case management order that ensures that only "actual victims" get relief. (Doc. No. 314 at 21.) This Court's 2014 Order, which was affirmed by the Fifth Circuit, stated that the Court would consider *Teamsters* Stage 2 manageability factors upon revisiting a case management plan. Moreover, *Tyson* has no bearing on the issue of *Teamsters* Stage 2 manageability. As Bass Pro itself notes, the concept that only "actual victims" can get relief in a pattern or practice case is at least as old as *Teamsters*. *See* Doc. No. 314 at 6. Therefore, the *Tyson* decision does not justify Bass Pro's request for a case management order at this stage.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 28th day of December, 2016.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE