# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20078

United States Court of Appeals
Fifth Circuit
**FILED**
June 17, 2016
Lyle W. Cayce
Clerk

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellee

v.

BASS PRO OUTDOOR WORLD, L.L.C.; TRACKER MARINE RETAIL, L.L.C.,

Defendants - Appellants

4:11-cv-3425

United States District Court
Southern District of Texas
FILED
MAY - 8 2017
David J. Bradley, Clerk of Court

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Equal Employment Opportunity Commission sued Bass Pro under Sections 706 and 707 of Title VII of the Civil Rights Act for damages and equitable relief, claiming that it engaged in a practice of racially discriminatory hiring.[1] Bass Pro moved for summary judgment, arguing that claims alleging a "pattern or practice" of discrimination can be brought only for equitable relief and only under Section 707 of the Civil Rights Act, adding that the EEOC did not satisfy administrative prerequisites to suit. The district court disagreed, allowing the litigation to proceed. Bass Pro filed this interlocutory appeal. We

---

[1] "Bass Pro" refers to Bass Pro Outdoor World, LLC, and Tracker Marine, LLC, which are wholly owned subsidiaries of Bass Pro Group, LLC.

affirm.

I.

The EEOC is nestled within a statutory framework fundamental to this case. We begin and end with the statutory language erecting this structure. Congress enacted Title VII of the Civil Rights Act in 1964 to prohibit employers from intentionally "fail[ing] or refus[ing] to hire . . . any individual . . . because of . . . race, color, religion, sex, or national origin[.]"[2] Section 705(a) of the Act "created a Commission to be known as the Equal Employment Opportunity Commission," governed by bipartisan Commissioners "appointed by the President by and with the advice and consent of the Senate."[3] The EEOC's original powers of enforcement in Section 706 did not include the power to sue; it could "make an investigation of" charges of discrimination filed by individuals and use informal methods of "conference, conciliation, and persuasion" to bring employers into compliance with Title VII.[4] If these efforts failed, the Act authorized private suits, not by the EEOC, but "by the person claiming to be aggrieved or . . . by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice."[5]

At the same time, in a separate provision, Section 707, Congress authorized the Attorney General to file suit upon "reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII]."[6] In

---

[2] Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 255 (codified as amended at 42 U.S.C. § 2000e-2(a)(1) ("Section 703")).

[3] *Id.*, 78 Stat. 258 (codified as amended at 42 U.S.C. § 2000e-5(a) ("Section 706(a)")).

[4] *Id.*, 78 Stat. 258-59 (codified as amended at 42 U.S.C. § 2000e-4(a)-(b) ("Section 705(a)-(b)")).

[5] *Id.*, 78 Stat. 260 (codified as amended at 42 U.S.C. § 2000e-5(f)(1) ("Section 706(e)")).

[6] *Id.*, 78 Stat. 261 (codified as amended at 42 U.S.C. § 2000e-6(a) ("Section 707(a)")). Congress did "not intend[]" to use the phrase "pattern or practice" as a "term of art." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 n.16 (1977). "Pattern or practice" can sometimes connote a certain kind of method of proof or litigation strategy. Like Congress,

enacting Section 707, Congress intended to "provide the government with a swift and effective weapon to vindicate the broad public interest in eliminating unlawful practices, at a level which may or may not address the grievances of particular individuals."[7] To expedite these suits, Congress did not provide private individuals with the "unconditional" right to intervene in suits brought pursuant to Section 707.[8] Between 1964 and 1972, the Attorney General filed "numerous" pattern or practice suits pursuant to this authority.[9]

Over those eight years, "Congress became convinced . . . that the 'failure to grant the EEOC meaningful enforcement powers [had proved] to be a major flaw in the operation of Title VII.'"[10] In 1972, Congress gave the EEOC the power to bring two kinds of suits against private employers alleged to have violated Title VII.[11] First, "[i]f . . . the Commission [is] unable to secure from the respondent a conciliation agreement acceptable to the Commission [under Section 706] the Commission may bring a civil action against the respondent."[12] An aggrieved individual cannot bring his own claim after the EEOC files one, but retains the right to intervene.[13] Second, "[e]ffective two years after the date of enactment," Congress transferred the Attorney General's power to bring pattern or practice suits under Section 707 to the

---

this court uses the phrase only to refer its "usual meaning" – systemic discrimination that has a broad impact across an industry, and not to a method of proof. *See id.*, citing 110 Cong. Rec. 14270 (1964).

[7] *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 843 (5th Cir. 1975).
[8] *Id.*; 42 U.S.C. § 2000e-6.
[9] 118 Cong. Rec. 4080 (1972) (remarks of Sen. Williams); *see, e.g., United States v. Jacksonville Terminal Co.*, 451 F.2d 418 (5th Cir. 1971) (suit filed by Attorney General under Section 707 alleging pattern or practice of discrimination); *U.S. by Clark v. Dillon Supply Co.*, 429 F.2d 800 (4th Cir. 1970) (same).
[10] *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 325 (1980) (quoting S. Rep. No. 92-415, p. 4 (1971)).
[11] *Id.* at 325-26.
[12] Civil Rights Act of 1972, Pub. L. No. 92-261, 86 Stat. 105 (codified as amended at 42 U.S.C. § 2000e-5(f)(1) ("Section 706(f)(1)")).
[13] 42 U.S.C. § 2000e-5(f)(1).

EEOC.[14]

In 1991, Congress further amended Title VII to allow "the complaining party under Section 706 . . .[to] recover compensatory and punitive damages."[15] Congress defined "[t]he term 'complaining party'" as "the Equal Employment Opportunity Commission, the Attorney General, or a person who may bring an action or proceeding under title VII . . . ."[16] The 1991 Amendments were intended "to strengthen existing protections and remedies available under federal civil rights laws to provide more effective deterrence and adequate compensation for victims of discrimination."[17] Congress recognized that 42 U.S.C. § 1981 had long provided these remedies to victims of intentional racial discrimination, but that Title VII did not provide them.[18] Permitting compensatory and punitive damages under Title VII would close this "serious gap."[19] In cases where the "complaining party" sought such damages, Congress provided that "any party may demand a trial by jury"[20] in order "[t]o protect the rights of all persons under the Seventh Amendment."[21]

Congress limited these expanded remedies to cases of intentional discrimination.[22] In other words, proof that an employment practice had a "disparate impact" is not enough; plaintiffs seeking compensatory or punitive damages, including the EEOC, must prove that the employers *intended* to

---

[14] *Id.*, 86 Stat. 107 (codified as amended at 42 U.S.C. § 2000e-6(c) ("Section 707(c)")); *see also* 118 Cong. Rec. 4081 (1972) (remarks of Sen. Javits) ("The EEOC . . . has the authority to institute exactly the same actions that the Department of Justice does under pattern or practice.").

[15] Civil Rights Acts of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified at 42 U.S.C. § 1981a(a)(1)).

[16] 42 U.S.C. § 1981a(d)(1).

[17] H.R. Rep. No. 102-40 at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 694.

[18] *Id.* at 3, *reprinted in id.* at 695-96.

[19] *Id.* at 24, *reprinted in id* at 717.

[20] Civil Rights Acts of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified at 42 U.S.C. § 1981a(a)(1)).

[21] H.R. Rep. P. No. 102-40 at 29 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 723.

[22] 42 U.S.C. § 1981a(a)(1).

4

discriminate by engaging in a certain practice or act.[23] Further, punitive damages are not available unless the plaintiff can "demonstrate[] that the [employer] engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual."[24] In short, Congress explicitly authorized the EEOC to sue, and upon proof of intentional discrimination, to recover compensatory and sometimes punitive damages.

II.

Title VII suits are often tried to courts under the *Teamsters* framework.[25] In *International Brotherhood of Teamsters v. United States*, the Supreme Court determined that when "a class . . . allege[s] a broad-based policy of employment discrimination," the class may pursue its pattern or practice claims in a bifurcated proceeding.[26] In its first stage, plaintiffs must establish "that unlawful discrimination has been a regular procedure . . . followed by an employer."[27] "[S]ingle, insignificant, isolated acts of discrimination" are not enough to prove a pattern or practice; nor are "sporadic incident[s]."[28] Instead,

---

[23] *Id.*

[24] *Id.* § 1981a(b)(1).

[25] The *Teamsters* bifurcated model of proof is an alternative to the *McDonnell Douglas* model. *See Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 358 (1977) (rejecting the argument that *McDonnell Douglas* is "the only means of establishing a *prima facie* case of individual discrimination"). Under *McDonnell Douglas*, the plaintiff can establish a *prima facie* case by presenting evidence that he or she (1) is a member of a protected class; (2) is qualified for the job; (3) suffered an adverse employment decision; and (4) was treated differently than similarly-situated non-protected employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[26] 431 U.S. at 359, 360 n.46. The *Teamsters* Court relied on *Franks v. Bowman Transportation Co.*, 424 U.S. 747 (1976), a Section 706 class action case. *Teamsters*, 431 U.S. at 358-60. In *Franks*, the Court said the district court erred in requiring class members to individually prove discrimination where they had already shown "the existence of a discriminatory . . . pattern and practice." *Franks*, 424 U.S. at 772. The Court in *Teamsters* said *Franks* "illustrates another means by which a Title VII plaintiff's initial burden of proof can be met." *Teamsters*, 431 U.S. at 359.

[27] *Id.* at 360.

[28] *Id.* at 336 n.16 (quoting 110 Cong. Rec. 14270 (1964) (remarks of Sen. Humphrey)).

5

plaintiffs must show that the "denial of rights" was "repeated, routine, or of a generalized nature,"[29] and that "discrimination was the company's standard operating procedure."[30]

If the plaintiff meets its initial burden of proving a pattern or practice, a subsequent remedial phase determines "the scope of individual relief."[31] During these proceedings, it is assumed "that any particular employment decision [made while] the discriminatory policy was in force[] was made in pursuit of that policy."[32] "The [plaintiff] need only show that [he] . . . unsuccessfully applied for a job" to prove a *prima facie* case, and the burden then shifts to "the employer to demonstrate that the . . . applicant was denied . . . for lawful reasons."[33]

Although the *Teamsters* pattern or practice method of proof is often used in class actions, the EEOC is not required to adhere to Rule 23 when bringing "an enforcement action . . . in its own name."[34] In *General Telephone*, the Supreme Court observed that the prerequisites to class certification under Rule 23 – "numerosity, commonality, typicality, and adequacy of representation"[35] – would inhibit the EEOC's ability to "proceed in a unified action" bringing all available claims.[36] Congress intended to endow the EEOC with broad enforcement authority outside the confines of Rule 23 because "[w]hen the EEOC acts, albeit at the behest of and for the benefit of specific

---

[29] *Id.*
[30] *Id.* at 336.
[31] *Id.* at 361.
[32] *Id.* at 362.
[33] *Id.*
[34] 446 U.S. at 323, 327 n.10 (1980) ("Since 1972, backpay has also been awarded in pattern-or-practice suits, and without suggestion that Rule 23 is implicated."). Nor was the Attorney General required to adhere to Rule 23 when he brought pattern or practice suits, before Congress transferred this authority to the EEOC, "even though specific relief was awarded to individuals not parties to the suit." *Id.* at 327.
[35] *Id.* at 330; *see* Fed. R. Civ. P. 23(a).
[36] *Gen. Tel.*, 446 U.S. at 331.

individuals, it acts also to vindicate the public interest in preventing employment discrimination."[37]

### III.

This case began in February 2007, when the EEOC issued a Commissioner's Charge stating that there was "reason to think" Bass Pro "ha[d] since at least November 2005[] discriminated against African American applicants and employees on the basis of their race at . . . retail stores and facilities nationwide." In an amended charge, the EEOC expanded its allegations to include Hispanic applicants and employees, alleging that Bass Pro "fail[ed] to recruit and/or hire" racial minorities "for all positions in its retail stores."[38] The EEOC's investigation commenced shortly thereafter.

In April 2010, the EEOC issued a Letter of Determination providing that it had "good cause" to believe that the allegations in the amended charge were true and began the conciliation process. During conciliation, the EEOC told Bass Pro that it had identified an estimated 100 individuals who were victims of discriminatory hiring, but it did not provide specific names. The parties exchanged several letters and met in person once, but made little headway. The EEOC finally declared conciliation unsuccessful in April 2011.

In September 2011, the EEOC filed this lawsuit under 42 U.S.C. § 2000e-5 ("Section 706") and § 2000e-6 ("Section 707"), alleging a pattern or practice of discriminatory hiring against African American and Hispanic applicants.

---

[37] *Id.* at 326.

[38] The amended charge also included allegations that Bass Pro discriminated against female and Asian applicants, failed to promote employees on the basis of race and gender, retaliated against employees who opposed discriminatory practices, and treated minority employees adversely. *Id.* Following the conciliation and investigation process, the EEOC limited its lawsuit to claims that Bass Pro (1) engaged in a discriminatory hiring practice impacting African American and Hispanic applicants, and (2) retaliated against employees who opposed discrimination. The district court denied summary judgment as to the retaliation claims, a decision which Bass Pro did not appeal.

7

The EEOC intended to proceed under the *Teamsters* framework, and it did not identify aggrieved individuals. Bass Pro moved to dismiss, arguing, *inter alia*, that the EEOC may not bring a pattern or practice claim under Section 706, and that the EEOC may not use the *Teamsters* bifurcated framework to prove a Section 706 claim. The district court agreed and granted the motion.

In response, the EEOC filed a second amended complaint, which included the names of more than 200 African American and Hispanic aggrieved individuals. The EEOC said they were "exemplars of a pattern or practice of discrimination." Bass Pro moved for summary judgment, arguing that the EEOC failed to satisfy the administrative prerequisites for a Section 706 suit because none of the claims of the individuals were investigated or disclosed during the administrative process. The district court granted the motion in part, holding that the claims of the recently disclosed individuals could not proceed.

In June 2014, Bass Pro renewed its motion for summary judgment. In response, the EEOC asked the district court to reconsider its ruling rejecting its Section 706 pattern or practice claim. The district court reversed its previous decision, now persuaded that the EEOC could proceed within the *Teamsters* framework in its effort to prove a pattern or practice claim under Section 706.[39] The court also found that the EEOC fulfilled the administrative prerequisites to filing suit. Pursuant to 28 U.S.C. § 1292(b), we granted Bass Pro leave to appeal from the district court's order.

IV.

A.

---

[39] The district court was persuaded in part by the Sixth Circuit's then-recent decision in *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012), *cert. denied sub nom. Cintas Corp. v. EEOC*, 134 S. Ct. 92 (2013), which addressed "the exact question posed here." *Id. Cintas* held that the EEOC could use the *Teamsters* framework for analyzing pattern or practice claims of employment discrimination. 699 F.3d at 894.

8

Bass Pro correctly notes that, unlike Section 707, Section 706 does not explicitly authorize pattern or practice suits.[40] It argues that by limiting its reach to actions under Section 706, Congress intended to maintain a basic dichotomy between suits under Section 707, where remedial relief may be had, with Section 706, with its focus upon individual acts of discrimination and money damages. The EEOC replies in part by pointing to relevant Supreme Court precedent suggesting that the want of pattern or practice language in Section 706 does not forbid its use in suits by the EEOC under Section 706.

In *General Telephone*, the EEOC alleged a pattern of discrimination against women employed by General Telephone and brought suit on behalf of "women affected by the challenged practices" pursuant to Section 706.[41] It sought "an order bifurcating the issue of class liability from the issue of individual damages."[42] General Telephone argued that the suit was a Rule 23 class action that did not meet the demands of Rule 23.[43]

Rejecting this argument, the Court held that the EEOC "may maintain its Section 706 civil actions for the enforcement of Title VII and may seek specific relief for a group of aggrieved individuals without first obtaining class certification pursuant to [Rule 23]."[44] In so holding, the Court observed that "the EEOC need look no further than § 706 for its authority to bring suit in its

---

[40] *Compare* 42 U.S.C. § 2000e-5(b), (f)(1) (§ 706) ("Whenever a charge is filed by or on behalf of a person claiming to be aggrieved" and "the Commission determines after [its] investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." If "the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against" the respondent.), *with* 42 U.S.C. § 2000e-6(a), (e) (§ 707) (the Commission may "bring a civil action" against a private entity when it "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter.").
[41] *Gen. Tel.*, 446 U.S. at 321 (1980).
[42] *Id.* at 321-22.
[43] *Id.* at 322.
[44] *Id.* at 333-34.

own name for the purpose, among others, of securing relief for a group of aggrieved individuals."[45] Congress had given the EEOC "broad enforcement powers"[46] "to advance the public interest in preventing and remedying employment discrimination."[47] The Court was therefore "reluctant, absent clear congressional guidance, to subject § 706(f)(1) actions to requirements that might disable the enforcement agency from advancing the public interest in the manner and to the extent contemplated by the statute."[48]

We heed the Court's reluctance. Bass Pro argues that *General Telephone* does not compel us to affirm because it was decided before the Civil Rights Act of 1991.[49] But "Congress is presumed to be aware of [the] . . . judicial interpretation" of a statute and "to adopt that interpretation" when it re-enacts it without changing the relevant provision.[50] The Supreme Court and courts of appeals have observed that Congress was indeed aware of *General Telephone* when it expanded the remedies available under Section 706.[51] Moreover, the

---

[45] *Id.* at 324.
[46] *Id.* at 333.
[47] *Id.* at 331.
[48] *Id.*
[49] Bass Pro also argues that allowing pattern or practice suits under Section 706 renders Section 707 functionally superfluous, in violation of the "longstanding canon of statutory construction that terms in a statute should not be considered so as to render any provision of that statute meaningless or superfluous." *Beck v. Prupis*, 529 U.S. 494, 506 (2000). The Sixth Circuit called the superfluity argument the "strongest argument" against its holding in *Cintas*, 699 F.3d 884. In highlighting the differences between Section 706 and 707, the court pointed to case law suggesting that suits under Section 706 necessarily stemmed from charges filed by "an aggrieved individual" while those under Section 707 could be raised by the EEOC of its own accord. *Id.* at 896. Because the initiating charge under Section 706 may be filed by an EEOC Commissioner, rather than a private party – as it was in this case – we do not find this difference significant. However, this is not the sole difference between the two sections. For instance, private individuals have the right to intervene in 706 actions, but not under 707. *See* § 706(f)(1). The EEOC also has access to trial by a three-judge panel when it proceeds under 707, but not under 706. *See* § 707(b).
[50] *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *see also Silva-Trevino v. Holder*, 742 F.3d 197, 202 (5th Cir. 2014) (quoting and applying *Lorillard*).
[51] *See EEOC v. Waffle House*, 534 U.S. 279, 288 (2002) ("Against the backdrop of our decision[ ] in . . . *General Telephone*, Congress expanded the remedies available in EEOC

Supreme Court recently repeated its *General Telephone* holding in *CRST Van Expedited, Inc. v. EEOC*.[52]

We conclude that Congress did not prohibit the EEOC from bringing pattern or practice suits under Section 706 and, in turn, from carrying them to trial with sequential determinations of liability and damages in a bifurcated framework. Bifurcation of liability and damage is a common tool deployed by federal district courts in a wide range of civil cases – well within its powers under Rules 16 and 26.[53] We decline to imply limits upon the trial court's management power that not only cannot be located in the language of the statute but also confound the plain language of the Federal Rules.

### B.

Bass Pro next asserts that the *Teamsters* model for proving pattern or practice claims would here be unconstitutional, offending both due process and the Seventh Amendment. The EEOC has informed Bass Pro that the injured prospective employees could include thousands of individuals. Bass Pro argues that each of these individuals were damaged, if at all, in varying degrees by its allegedly discriminatory hiring. And if it were to be found liable in the first stage of litigation, Bass Pro urges, the resulting exposure to damages would compel settlement, a functional loss of the opportunity to present distinct defenses to damages against each aggrieved person. Bass Pro characterizes this pressure to settle as a deprivation of its due process rights. But pattern or

---

enforcement actions in 1991 to include compensatory and punitive damages."); *In re Bemis Co.*, 279 F.3d 419, 421-22 (7th Cir. 2002) (availability of damages after 1991 Act does not alter "the validity or scope of *General Telephone*"); *EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 588 (9th Cir. 2000) (same). Additionally, to characterize the 1991 Act as limiting methods of proof previously available in a § 706 case is also contrary to that statute's stated purpose to provide "*additional* remedies . . . needed to deter . . . intentional discrimination in the workplace." Civil Rights Act of 1991, Pub. L. No. 102-166, § 2(1), 105 Stat. 1071 (emphasis added).

[52] 136 S. Ct. 1642, 1648 (2016).
[53] *See* Fed. R. Civ. P. 16, 26.

practice suits characteristically involve allegations of discrimination on a large scale – and the pressure to settle that attends such extensive litigation – whether they are brought under Section 706 or Section 707. The pressure remains a concern in the cost/benefit analysis inherent in settlement decisions, but necessary risks do not offend due process as long as the risk enhancements flow from structures that do not themselves offend due process.

Further, Bass Pro's argument about risk ignores the other side of the risk; not all of the incentives under *Teamsters* work in the EEOC's favor. Indeed,

> under *Teamsters,* the plaintiff's initial burden to make out a prima facie case is heightened. Unlike under the *McDonnell Douglas* framework . . . under *Teamsters* the plaintiff must demonstrate the existence of a discriminatory procedure or policy. This is no simple task, as the plaintiff must prove that discrimination was the company's standard operating procedure—the regular rather than the unusual practice. It is only because this initial requirement is more arduous that after the showing is made it is assumed that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy. Even then, the defendant still may rebut the assumption by providing lawful reasons for the employment decision.[54]

As a result of this heightened burden, "the EEOC must always weigh the risks — as well as the benefits — of proceeding under the *Teamsters* framework, including a higher risk of losing at the prima facie stage."[55] If the EEOC fails to create a genuine dispute of material fact as to the existence of a pattern or practice of discrimination, Bass Pro has recourse to Rule 56.[56]

---

[54] *Serrano v. Cintas Corp.*, 699 F.3d 884, 896 (6th Cir. 2012) (internal citations and quotations omitted).

[55] *Id.*

[56] *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

Bass Pro also points to *Wal-Mart Stores, Inc. v. Dukes*[57] for the proposition that a formulaic approach to individual liability and damages denies due process. *Wal-Mart* did hold that "trial by formula" is a denial of due process.[58] However, the Court distinguished "trial by formula" from the *Teamsters* approach, which it cited as the established procedure for trying pattern or practice claims.[59] This precedent is unchanged by the number of potentially aggrieved individuals.

Relatedly, Bass Pro argues that the *Teamsters* model has inherent manageability problems, such as the Seventh Amendment's bar to reexamination by a second jury of factual issues decided by the first jury.[60] It asserts that some issues of liability and damage are inherently inseparable, such as the degree to which a given manager was acting with malice, which may be relevant to liability and calculation of punitive damages.[61]

We do not see these difficulties as fanciful. Neither did the district court.[62] But as the district court noted, the complexities of this case do not

---

of law."). To survive summary judgment, the EEOC will need to allege more than isolated wrongful acts by errant employees; it must allege "a broad-based policy of employment discrimination." *Teamsters*, 431 U.S. at 359.

[57] 564 U.S. 338, 364-66 (2011).

[58] *Id.* at 367.

[59] *Id.*

[60] *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996) (holding that the Seventh Amendment guarantees "parties [that] . . . fact issues decided by one jury" will not be reexamined by a second jury and that the "Constitution [only] allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first[.]").

[61] *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998) (observing that the expansion of remedies available to Title VII plaintiffs "introduced . . . potential manageability problems with both practical and legal, indeed constitutional, implications" and "increased the probability that successive juries would pass on issues decided by prior ones"). But the *Allison* plaintiffs were private individuals seeking class certification under Rule 23. In this case, of course, the plaintiff is the EEOC, unbounded by Rule 23's procedural requirements. *Gen. Tel.*, 446 U.S. at 324.

[62] The court noted that there is tension "between ensuring manageability and respecting the Seventh Amendment."

make it "categorically impossible to apply the *Teamsters* framework to a § 706 action."[63] Bass Pro slights the management tools at the hand of the district court.

Indeed, nigh routine use of the tools afforded by the Federal Rules of Civil Procedure provide practical answers to Bass Pro's suggestion that with bifurcation, punitive damage liability may offend the Seventh Amendment. Bass Pro reminds that to be liable for punitive damages, the EEOC must demonstrate that it "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual."[64] This is so. However, during the first stage of the *Teamsters* litigation, the district court may employ Rule 49 to structure the jury's findings of fact.[65] First, the court can ask if the jury finds that the EEOC has proved from a preponderance of the evidence that Bass Pro engaged in a pattern or practice of discriminatory hiring. Then, if and only if the jury answers in the affirmative, the jury would answer a second question, whether the EEOC has proved from a preponderance of the evidence that Bass Pro engaged in the practice with the requisite "malice or reckless indifference."[66] With a finding that the earlier found pattern or practice was the product of malice or reckless indifference, individuals in phase two would need to show injury suffered from the pattern or practice to share in any award of punitive damages.[67] This

---

[63] *Id.*

[64] 42 U.S.C. § 1981a(b)(1).

[65] *See* Fed. R. Civ. P. 49(b) ("The court may submit to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide.").

[66] 42 U.S.C. § 1981a(b)(1).

[67] We do not here review any one method of calculating punitive damages. Several possible paths may present in pre-trial proceedings, including opportunities for agreement upon procedures that are in the best interests of all parties. There are incentives for parties – reducing exposure and easing administrative burdens – to agree. For example, limiting punitive damages to some multiplier bearing relationship to found damages. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996) ("The principle that exemplary damages must bear

system avoids the risk that a second jury would reconsider the first finding of fact or award damages for aberrational conduct of a single actor or other conduct sporadically occurring outside the found pattern.

The EEOC's pursuit of compensatory damages may prove more difficult to administer. The 1991 Amendments provided that "complaining parties" – including the EEOC[68] – may seek "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" in cases of intentional discrimination.[69] While bifurcation under *Teamsters* may struggle here to slice liability and damage, it signifies that the EEOC can proceed with a pattern or practice suit and pursue all the damages Congress authorized subject to manageability as shadowed by due process and the Seventh Amendment. As these constraints take hold in the pretrial process, the EEOC may conclude that its obligation to enforce Title VII is best discharged by not pursuing in this hiring case the relatively nuanced and elusive compensatory damages. At the same time, Bass Pro may decide that its interests are best served by moderating any exposure it may face by constructing workable management processes it would not otherwise be compelled to abide. The full bite of these constraints is not a decision that this court, remote from engagement and effectual record, ought now make.

The administration of this litigation is a challenge, but one best left for the able district court. As we have respectfully maintained, district courts have

---

a 'reasonable relationship' to compensatory damages has a long pedigree." (citations omitted)). Such self-interested accords might, by way of example only, provide that if the jury finds in the liability stage that Bass Pro engaged in a pattern or practice of discrimination with the requisite intent to warrant punitive damages, than an individual awarded damages in the second stage could recover a punitive award not to exceed three times the damages awarded to that individual. Of course Congress has limited the amount of compensatory and punitive damages to a maximum of $300,000 or less, apparently to each claimant, according to the defendant's corporate size. 42 U.S.C. § 1981a(b)(3).

[68] 42 U.S.C. § 1981a(d)(1).
[69] 42 U.S.C. § 1981a(b)(3).

the "inherent power to manage ... pending litigation," applying their experience and knowledge of the case at hand.[70] It is the district court – with the flexibility afforded to it by the Rules of Civil Procedure, here prominent Rule 49 – that is in the best position to fulfill the task of enforcing the Congressional charge to protect the rights of employees.

V.

Finally, Bass Pro alleges that the district court erred in allowing the EEOC to proceed without fulfilling mandatory administrative prerequisites under Section 706. Before filing a lawsuit under Section 706, the EEOC must: (1) receive a charge; (2) provide notice of the charge to the employer; (3) investigate the charge; (4) notify the employer if the investigation gives rise to reasonable cause to suspect a violation has occurred; and (5) attempt to conciliate the dispute.[71] These prerequisites are part of the "integrated, multistep enforcement procedure"[72] of Title VII, serving its "primary purpose" of voluntary compliance without litigation.[73]

Bass Pro argued to the district court that the EEOC's failure to name specific aggrieved individuals – and to investigate and conciliate their individual claims – failed the administrative tests of Section 706. On appeal, the parties dispute whether the EEOC in fact named any aggrieved individuals,[74] a factual question that the district court did not resolve. Instead, it concluded that the EEOC may engage in the investigation and conciliation

---

[70] *Allison*, 151 F.3d at 408.
[71] 42 U.S.C. § 2000e-5(b).
[72] *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359 (1977).
[73] *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006); accord *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).
[74] The EEOC appears to have told Bass Pro about 100 alleged victims during a conciliation meeting in August 2010, but did not provide any of their names until after the litigation began.

process without naming specific victims, although the court considered the issue "a difficult question."

The Supreme Court has since considered "whether and to what extent . . . an attempt to conciliate is subject to judicial consideration," holding in *Mach Mining* that judicial review of the EEOC's conciliation efforts is "barebones."[75] Our review is limited to verifying (1) that the Commission has informed the employer about the specific allegation, including "what the employer has done and which employees (or what class of employees) have suffered as a result," and (2) that the Commission has "tr[ied] to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice."[76] Such review, reasoned the Court, "respects the expansive discretion that Title VII gives to the EEOC over the conciliation process."[77]

On appeal, Bass Pro argues that *Mach Mining* is inapplicable. According to Bass Pro, the EEOC's conciliation efforts addressed only its claims of a pattern or practice of discrimination, not individual claims of discrimination as it argues Section 706 requires. That is, Bass Pro frames its argument not as a challenge to the *sufficiency* of the EEOC's conciliation efforts, which *Mach Mining* appears to foreclose, but rather a challenge to whether the EEOC conducted *any* conciliation with respect to its Section 706 claims. In support of this position, Bass Pro points us to the Eighth Circuit's decision in *EEOC v. CRST Van Expedited, Inc.*,[78] in which the court affirmed the dismissal of claims brought by certain individuals because the EEOC had failed to identify them to the defendants during the investigation and conciliation stages. But the court

---

[75] *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651, 1656 (2015).
[76] *Id.* at 1655-56.
[77] *Id.* at 1653.
[78] 679 F.3d 657 (8th Cir. 2012).

17

explicitly noted that the EEOC was not bringing a pattern or practice suit, and the court "express[ed] no view as to whether the EEOC's investigation . . . would be sufficient to support" such a claim.[79] Moreover, in deeming the EEOC's conciliation efforts insufficient, the *CRST* court engaged in precisely the kind of "deep dive" the Court prohibited in *Mach Mining*.[80]

Since *Mach Mining*, only one court of appeals has considered the question before us; that is, whether the EEOC can meet its conciliation and investigation requirements without naming individual class members. In *Arizona ex rel. Horne v. Geo Group, Inc.*, the Ninth Circuit concluded that it could.[81] The court "reject[ed] the [] premise that the EEOC . . . must identify and conciliate on behalf of each individual aggrieved employee . . . prior to filing a lawsuit seeking recovery on behalf of a class."[82] It held that instead, the EEOC "satisf[ies] [its] pre-suit conciliation requirements to bring a class action if [it] attempt[s] to conciliate on behalf of an identified class of individuals prior to bringing suit."[83] The court reasoned that this holding was "consistent with the Supreme Court's broad interpretation of the EEOC's enforcement powers."[84]

We similarly hold that the conciliation here satisfied the *Mach Mining* standard. Efforts began in April 2010, when the EEOC informed Bass Pro that

---

[79] *Id.* at 676 n.13.
[80] 135 S. Ct. at 1653.
[81] 816 F.3d 1189 (9th Cir. 2016).
[82] *Id.* at 1200.
[83] *Id.* The facts of *Geo* are somewhat different than those we are presently considering. The EEOC informed Geo of the names of small number of individual claimants during the conciliation process, although it withheld the names of most of the allegedly aggrieved individuals. *Id.* Here, the record does not clearly show that the EEOC named any individuals. Further, as Bass Pro points out, the Ninth Circuit explicitly declined to "consider whether the EEOC could maintain a nationwide class action against an employer based on an investigation of less than a dozen employees or whether such an investigation would be reasonable." *Id.* at 1200 n.6. But we find no basis in *Mach Mining* – nor in the reasoning of *Geo* itself – for treating this case differently on the basis of the scope of the claims against the employer.
[84] *Id.* at 1201.

18

it had reasonable cause to believe that Bass Pro had engaged in discriminatory practices. Even if the EEOC did not initially provide the names of specific victims, it informed Bass Pro about the class it had allegedly discriminated against – African American, Hispanic, and Asian applicants. The parties negotiated for eleven months, via letters and face-to-face meetings about the charges. These efforts clearly put Bass Pro on notice as to the claims against it. Further, Bass Pro's argument that the EEOC never engaged in any conciliation of its Section 706 claims assumes that the EEOC's Section 706 claims are distinct from its pattern or practice claims. Since we hold that Section 706 authorizes the EEOC to claim a pattern or practice of discrimination, conciliation efforts for its pattern or practice claims are one and the same as its Section 706 conciliation efforts. Under *Mach Mining*, those efforts were sufficient.

Bass Pro makes a similar argument regarding the EEOC's pre-suit investigation. It claims that, by relying on statistical and anecdotal evidence rather than evidence about specific aggrieved individuals, the EEOC neglected its duty to investigate its Section 706 claims. Like Bass Pro's argument that the EEOC failed to conciliate, its argument concerning failure to investigate wrongly assumes that an investigation under Section 706 necessarily rests on the identifiable individuals' claims.

Because the EEOC's Section 706 claim *is* a pattern or practice suit, our review of its investigation is limited. Title VII "does not prescribe the manner" by which the EEOC investigates, and "the nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency."[85] The record shows that the EEOC investigated its pattern or

---

[85] *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) (per curiam); *see also EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96, 191 (2d Cir. 2015) ("[C]ourts may not review the *sufficiency* of an investigation — only whether an investigation occurred.").

practice charge against Bass Pro and that the investigation gave "rise to reasonable cause to suspect a violation."[86] Over a three year period, "the parties exchanged numerous letters, met at least three times," and Bass Pro "produced over 230,000 pages of documents." The investigation yielded statistical evidence of discrimination in Bass Pro's hiring nationwide, as well as anecdotal evidence of racial discrimination. This investigation meets the EEOC's statutory burden.

Since the EEOC is authorized to bring a pattern or practice suit under Section 706, the fact that it focused on pattern or practice evidence instead of individual claims during the investigation and conciliation process is of no consequence. Our review is only to determine whether the EEOC engaged in these steps, which it did.

## VI.

Bass Pro has asked us to conclude that Sections 706 and 707 of Title VII offer dichotomous paths, with money damages available in the trial of individual actions under Section 706, leaving the aggregation of the claims of individuals injured by a pattern or practice to Section 707, with its limit of equitable remedies of injunctive and back pay relief. Perhaps this is sound policy. It has been well stated by able lawyers, but the plain language of the statute cannot yield to such adversarial persuasion. We decline to undo the structure erected by Congress in the guise of interpretation seduced by judicially preferred policy choices.

AFFIRMED.

---

[86] 42 U.S.C. § 2000e-5(b).